UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR; TAMMY
HEILMAN; DARLENE DEEGAN;
and ROBERT A. JONES III,

       Plaintiffs,

v.                       CASE NO.:  8:21-cv-00555-SDM-CPT

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

       Defendant,

_____/

## MOTION TO DISMISS, FOR MORE DEFINITE STATEMENT, OR FOR DETERMINATION OF MISJOINDER, BY DEFENDANT SHERIFF

    Defendant Chris Nocco, in his official capacity as Sheriff of Pasco County,

Fla., by and through undersigned counsel and pursuant to the provisions of Federal

Rules of Civil Procedure 12(b)(6), 12(e), and 20 and 21, hereby moves the Court

for an Order dismissing Plaintiff's Complaint, for more definite statement, and/or

for an Order determining that the claims of the four Plaintiffs are improperly joined

and should be separated, and states:

    1.    In this case, four different Plaintiffs sue the Sheriff of Pasco County

pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), for a multitude

of different incidents, occurring at different times, involving different deputies,

different law enforcement actions, and involving completely different

circumstances and even underlying claimed constitutional violations. Plaintiffs allege that over the course of these various incidents their First, Fourth, and Fourteenth Amendment rights were violated. (Doc. 1, ¶ 1).

2.     The Complaint as pled should be dismissed as a shotgun pleading because it includes in single counts multiple Plaintiffs suing over discrete incidents at different times and locations and involving very different circumstances. Defendant cannot reasonably be expected to Answer this Complaint.

3.     Moreover, it is apparent on the face of the Complaint that these claims are improperly joined under Federal Rule of Civil Procedure 20. Defendant believes that further pleading by Plaintiffs in the form of a more definite statement or repleading will simply further demonstrate that the claims cannot be joined and litigated effectively or fairly such that the Court should order them separated into different cases under Federal Rule of Civil Procedure 21.

4.     Count I, for unreasonable search and seizure as to all Plaintiffs, should be dismissed for failure to state a claim. Plaintiffs appear in this Count to equate every interaction they have with law enforcement, regardless of the cause or the underlying circumstances, to be a search or seizure. (Dkt. 1, ¶ 226-233). It is impossible to tell from the Complaint all of the incidents which involved actual searches, whether search warrants were a factor, whether probable cause was present for an arrest, etc. It also appears that many of the incidents alluded to in

other parts of the Complaint occurred more than four years prior to the filing of suit and so are barred by the statute of limitations. In other instances, such as a September 2016 arrest of Plaintiff Heilman, she alleges that she pled guilty to the offenses charged, barring a claim growing out of that incident under *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). Plaintiffs should be required to identify the date of any alleged search and seizure sued upon and to provide sufficient factual predicate a) for the Court to determine whether said search and seizure was constitutionally unreasonable, and b) for the Defendant to be able to ascertain relevant defenses.

5.     Count II, brought on behalf of all Plaintiffs for a violation of freedom of association under the First Amendment, should be dismissed for failure to state a claim. First, to the extent that Plaintiffs bring this claim on behalf of others, i.e. family and friends, Plaintiffs do not have standing to bring those claims. They also fail to allege sufficient underlying facts of particular instances of such harassment of themselves or the basis therefore, i.e. the claim that a given interaction was because of a poorly defined "association," that there was an intrusion of expressive association, or that an associational right with a family member was actually infringed upon.

6.     Count III, a Fourteenth Amendment procedural due process claim brought on behalf of three of the Plaintiffs, should be dismissed for failure to state

a claim. Plaintiffs again group many different incidents of law enforcement action into a single count, making it impossible to determine what occurred, when. No dates are provided for the inclusion on the "Targeted Person" list. And Plaintiff does not sufficiently allege a firm right to any particular process being due.

7.      Count IV, a substantive due process claim brought on behalf of all Plaintiffs, should be dismissed for failure to state a claim. The allegations of the Complaint do not meet the level of conscience shocking behavior required to state such a claim. And again, Plaintiffs lump an untold number of claims and incidents into a single count making it impossible for the Defendant to answer.

8.      Count V, for a violation of equal protection under the Fourteenth Amendment and brought on behalf of Plaintiffs Heilman, Jones, and Deegan, should be dismissed for failure to state a claim. Plaintiffs do not allege that they are within a protected class nor do they allege sufficient facts for any given incident that they were subject to "class of one" type discrimination.

9.      **Local Rule 3.01(g) certification.** Undersigned counsel has discussed the issues raised in this motion with Plaintiffs' counsel, by phone and by email, and no agreement can be reached.

WHEREFORE, Defendant Sheriff Nocco moves the Court for entry of an Order dismissing the Complaint, requiring a more definite statement, and finding that the claims in the case have been improperly joined.

## MEMORANDUM OF LAW

Pursuant to Local Rule 3.01(a), Defendant Sheriff submits the following Memorandum of Law in support of the instant motion.

### Introduction

Plaintiff's theory of § 1983 liability is based on *Monell* in that Plaintiffs contend that one policy or custom of the Sheriff in some way caused, played a role in, or contributed to all of these incidents. While Plaintiff alleges that all of these law enforcement encounters stem from the same root cause – the use of an intelligence led policing program by the defendant (the ILP) – that does not justify collapsing all claims into one case.

A *Monell* claim has two components: a showing that there was an underlying constitutional violation; and then that a policy or custom of the Sheriff caused that violation.   The Supreme Court and the Eleventh Circuit have held numerous times that in the absence of an underlying constitutional tort, there can be no viable *Monell* policy and custom claim. *City of L.A. v. Heller*, 475 U.S. 796 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Rooney v. Watson*, 101 F.3d 1378 (11th Cir.1996) (unnecessary to review argument of failure to train by sheriff when deputy did not violate a constitutional right).

While it is clear that Plaintiffs seek rhetorically to combine as many claims as they can into one lawsuit so as to create an overwhelming impression that a singular policy is bad and is always to be faulted, that puts the cart before the horse. An examination of the Complaint's factual allegations demonstrates that the legal tests as to a given underlying constitutional violation will vary from incident to incident, and from Plaintiff to Plaintiff, such that joinder of all of the claims into a single case is unreasonable, unfair to the Defendant, and inefficient for the Court.

## A.    <u>Standard of Review</u>.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court is not, however, required to accept all the statements in a complaint as true. Although the Court must accept well-pled facts as true, this does not apply to legal conclusions. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (The court is "not bound to accept as true a

legal conclusion couched as a factual allegation.")).   Nor are "unwarranted deductions of fact" in a complaint evaluated as true.   *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

Although this plausibility standard is not akin to probability, a plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.   To this end, the complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement," or if the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 557 and 561.   In short, the "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands   more   than   an   unadorned,   the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 555).

## B.   Shotgun Pleadings.

The Eleventh Circuit has long bemoaned the shotgun complaint because they make litigation unfocused, needlessly costly, and unfair to the defense to counter.   The court has described four basic categories of shotgun pleading, including the bringing of multiple claims by multiple parties in a single count with only vague allusion to the facts underlying each separate claim. "The unifying

characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir.2015).

In particular, Florida federal district courts have dismissed shotgun complaints where plaintiffs included multiple parties and multiple claims, covering multiple incidents, into a single count. *Chiron Recovery Center, LLC v. United Healthcare Services, Inc.*, Case No. 9:18-cv-81761, 2020 WL 3547047 *5 (S.D.Fla. June 30, 2020) ("Shotgun pleading exists when multiple parties or multiple claims for relief are merged into a single count."); *Higgins v. WXTL, Inc.*, Case No. 18-cv-21132, 2018 WL 10732988 *1 (S.D.Fla. March 29, 2018) ("Plaintiff's Complaint alleges wrongdoing by multiple parties across multiple transactions and is a prototypical "shotgun" pleading.")

A shotgun pleading exists when "a reader of the complaint must speculate as to which factual allegations pertain to which count." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n. 9 (11th Cir. 1997). ("Many of the factual allegations appear to relate to only one or two counts, or to none of the counts at all. Thus, a reader of the complaint must speculate as to which factual allegations pertain to which count.")

The Complaint in this case should be dismissed as shotgun pleading.

### C.   <u>Federal Rules of Civil Procedure 20 and 21</u>.

Federal Rule of Civil Procedure 20 provides in pertinent part:

(a) Persons Who May Join or Be Joined.
(1) *Plaintiffs.* Persons may join in one action as plaintiffs if:
(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all plaintiffs will arise in the action.

Federal Rule of Civil Procedure 21 provides in pertinent part:

Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

The purpose of Rule 20 is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. *Swan v. Ray*, 293 F.3d 1252, 1253 (citing *Alexander*, 207 F.3d at 1323). "The Supreme Court has instructed the lower courts to employ a liberal approach to permissive joinder of claims *and* parties in the interest of judicial economy: "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Alexander*, 207 F.3d at 1323 (emphasis in original) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).

However, joinder should not occur where, even if the claims have *some* aspect in common, management of the litigation or of trial would be unwieldy or

unfair to the defense, or where the claims really do not arise out of the same transaction or occurrence. *Rhodes v. Target Corp.*, 313 F.R.D. 656, 659 (M.D. Fla. 2016) (citing *Alexander*). Factors which the Court may consider when determining this issue include, *inter alia*: (i) the time period during which the alleged acts occurred; (ii) whether the alleged acts related to one another; (iii) whether the same actors were involved; and (iv) whether the alleged actors were at different geographical locations. *Mascaro Aviation, LLC. V. Diamond Aircraft Industries, Inc.*, Case No. 10-60556, 2011 WL 13273580 * 2 (S.D.Fla. June 14, 2011)

In *Cano-Diaz v. City of Alabaster, Ala.*, Case No. 2:11-cv-3448, 2012 WL 2924006 (N.D.Ala. July 7, 2012), seven Plaintiffs sued four Alabama cities under §1983. Plaintiffs complained that the police departments of all four cities treated Hispanic men and women unfairly with "suspicionless traffic stops and/or frisks" in violation of the Fourth Amendment and Fourteenth Amendments. The Court ordered that the actions be severed because "each Plaintiff's claims depend upon proof of facts that, although alleged to be parallel and motivated by the same animus, are not logically related. Each Plaintiff alleges that one or more law enforcement officials from one of the four municipalities at different times stopped or otherwise detained that Plaintiff. The officers cited different reasons for the detention of the various Plaintiffs. The Plaintiffs allege that each of them was individually harmed (by way of an alleged violation of constitutional rights) during

those individualized detentions." *Id*. * 3. "[T]he court finds that prosecution of all Plaintiffs' claims in one single action would most likely prejudice the Defendants, and would result in undue expense and delay. Furthermore, trial of these claims together would cause unnecessary jury confusion. Moreover, interests of judicial economy are not served by trying these cases together, since the court must deal with factually specific issues related to the elements of each constitutional claim, and the resultant damages, for each Plaintiff and each Defendant. From the court's perspective, the claims can be better managed in separate cases." *Id*.

Even where joiner is permissible it is not mandatory. *Rhodes*, 313 F.R.D. at 659. Thus, 'even if the technical requirements for joinder are met, the Court has discretion to deny joinder if it determines that the addition of a party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense[,] or delay.' " *Id.* (citations omitted). Where there are similarities or common aspects to multiple claims or claimants, the Court should not allow them to be joined where the "factual distinctions … are too pronounced to satisfy the 'series of transactions or occurrences' inquiry." *Coen v. Ga. Dept. of Corrections*, Case No. 5:16-cv-00353, 2018 WL 4365503 * 8 (M.D. Ga. September 13, 2018).

## D.   Plaintiffs' allegations of fact demonstrate that these claims cannot be joined together.

As to Plaintiff Taylor, she alleges that after she was released from prison, and between 2017 and 2020, she was designated as a "Targeted Person."  She

alleges that as a result deputies visited her home repeatedly and for no reason. (Dkt. 1, ¶ 13-19). She alleges that deputies told her they were "required to" make the visits by the ILP. (Dkt. 1, ¶ 20). Deputies sometimes asked others in her residence to grant permission to enter and sometimes got aggressive, though she does not allege what form this aggression took in every instance, when these incidents occurred with any specificity, or exactly what the allegedly unlawful conduct was on each occasion. (Dkt. 1, ¶ 22-23).

She alleges that on one occasion, she does not say when, her prior landlord and friend was threatened with a code violation for trash in her yard because deputies were unsatisfied with her answer as to Taylor's whereabouts. (Dkt. 1, ¶ 24). There is no allegation of fact of an arrest or other search or seizure of Taylor. There are only vague allusions to searches, or requests for searches. There are no dates provided. There is no description of the alleged unconstitutional conduct on the dates or incidents for which a claim is made based on ILP.

The allegations as to Plaintiff Heilman state that her son, not her, was designated as a "Targeted Person" in 2015 and that she had "repeated visits to her property" between 2015 and the publication of an article in the Tampa Bay Times in 2020.[1] (Dkt. 1, ¶29-30). Heilman alleges that unidentified deputies at an

---

[1] Plaintiffs dropped a footnote into their Complaint from a September 3, 2020 article in the Tampa Bay Times criticizing the ILP. (Dkt. 1, p. 2, n. 1.). Some of their allegations appear to be taken from the article. The article contains a brief

unidentified point in time and related to an unspecified visit told her that they were required by the Sheriff to make unannounced visits. (Dkt. 1, ¶ 31). She alleges that deputies would "sometimes" walk around her property and look through her fence, and that on one occasion a deputy knocked on her window with a flashlight. (Dkt. 1, ¶ 32, 33). Plaintiff does not allege when these incidents occurred nor does she identify specific law enforcement action in a given situation she alleges was unconstitutional.

Heilman does allege that during an incident in September 2016 she and her daughter left her home to avoid questions about the whereabouts of her son. She alleges that she and the daughter had on seat belts but were stopped for seat belt violations and that she was then arrested for refusing to leave her car. (Dkt. 1, ¶ 35-37). Plaintiff does not allege that the ILP – the *Monell* basis for the claim – caused this except to say that generally the ILP caused deputies to *sometimes* come to her home searching for her son and that a cascade of events occurred after this one particular visit resulting in her arrest.

---

link to the Sheriff's Office descriptions and explanations, defending the ILP and demonstrating why the program is not as the article has mischaracterized it. Even then, the linkage in the article admits that it is incomplete. Note in particular the Sheriff's Response to question 2 in the link, explaining that race and gender identifiers are not part of the process and that the focus is entirely on crimes actually committed. For purposes of this motion and in particular the need to break these cases down and separate the precise claims made, the point is that even based on the article on which Plaintiffs rely it is clear that the incidents of interaction with Plaintiffs span many different factual scenarios, which cannot fairly be litigated or tried together.

A claim on this particular incident is barred by the statute of limitations. Under federal law, a § 1983 action accrues when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir.1987). "Because section 1983 does not contain a statute of limitations, reference must be made to the limitation periods prescribed by the state in which the litigation arose." *Majette v. O'Connor,* 811 F.2d 1416, 1419 (11th Cir.1987). "[T]he most appropriate statute of limitations for all section 1983 actions is the personal injury statute of limitations of the state whose law is to be applied." *Id.* Because the Florida statute of limitations for personal injury cases is four years, the applicable statute of limitations in this case is also four years. § 95.11, Fla. Stat. This September 2016 incident, which is the only one described by Heilman with any precision at all, occurred more than four years prior to filing of the Complaint on March 10, 2021 and so no claim can be made based on it.

Moreover, Heilman does not even allege that the arrest occurred without probable cause. And, she alleges that she ultimately pled guilty to charges of misdemeanor battery and obstructing or resisting an officer without violence. (Dkt. 1, ¶39). This would bar a Fourth Amendment false arrest claim under *Heck.* [2]

---

[2] If Plaintiffs' argument is that this incident is not actually sued upon but instead is offered only as proof of a *Monell* custom, such argument serves only to highlight the problems created by the vague pleading and combination of claims into the

As to Plaintiff Deegan, she states that her late son developed an addiction to pain medication, leading him to engage in a series of non-violent crimes. She alleges that deputies came to her home on numerous occasions between 2016 and when her son died in 2019. She alleges that as a result of her "perceived failure to cooperate" with the ILP, she was fined $3,000 for missing house numbers and for other code violations. She described one incident where deputies left a door open after an arrest of her son and that a robbery occurred of her unidentified property. (Dkt. 1, ¶ 52-65). These are completely different types of claims than the other Plaintiffs make and the legal issues raised will be different, as well.

Plaintiff Jones states that his son, Robert, Jr., was identified as a "Targeted Person" and that on one occasion (date unknown) he allowed deputies into his home to speak to his son, with the deputies finding marijuana in the son's room and arresting him. (Dkt. 1, ¶ 68-71). Jones clams that "on some occasions" he arrived home from work to find 18 deputies at his home yelling at his daughters. (Dkt. 1, ¶ 78). Jones does not indicate when this occurred or what the underlying reason was for the deputies' presence. He also alleges that he received code violations and was arrested in 2015 and 2016 on warrants. (Dkt. 1, ¶ 80-82).

Complaint. If the Plaintiffs do not distinguish between the claims actually being made and provide basic details of which incidents are actually sued upon versus which are ancillary proof then it is not possible for the Defendant to determine exactly what underlying constitutional violation he is being sued for, when it occurred, the legal theory or constitutional right applicable, or any other relevant details that would make litigation fair and reasonable.

If the arrests were based on facially valid warrants then there is no cause of action for an unconstitutional arrest. *Thornton v. City of Tampa*, 2010 WL 427737 *5-6 (M.D.Fla. Feb. 3, 2010). And if the arrests were in 2015 and into April 2016, they are barred by the statute of limitations. The same is true of searches occurring in March 2016. (Dkt. 1, ¶ 87-92).

**E.**  **Reports of some of the incidents of deputy interactions with Plaintiffs demonstrates that the claims of the Plaintiffs are too varied to be joined together under Rule 20.**

To illustrate the significant differences between the incidents included in the Complaint, and in particular the varied legal analyses applicable to them, Defendant has attached to this motion several reports from the Pasco County Clerk's Office, including underlying arrest reports or court dispositions. The Court should take judicial notice of these at least in relation to that portion of this motion which urges that these claims cannot be litigated together.

Pursuant to Rule 201 of the Federal Rules of Evidence this Court can take judicial notice of the attached court records, which case information is available online on the Pasco County Clerk's website. See *Curry v. TD Ameritrade, Inc.*, 662 Fed. Appx. 769, 771, n. 3 (11th Cir. 2016)(citing *United States v. Rey*, 811 F.2d 1453, 1457 (11th Cir. 1987)("A court may take judicial notice of its own records and the records of inferior courts.")); See also, 21B Wright & Graham, Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.)(since the enactment of Rule 201 federal

16

courts can take notice of the records of any court, state or federal).  The Court may take judicial notice of the facts within the records "at any stage of the proceeding" under Fed. R. Evid. 201(d), including on a motion to dismiss.  See *Bryant v. Avado Brands*, 187 F.3d 1271, 1277 (11th Cir. 1999).

The attached records show the wide range of circumstances and results which would necessarily come up as to deputy interactions with Plaintiffs.  For example, although Plaintiffs blame the ILP for all[3] of their interactions with deputies, Exhibit A is a docket entry and attached arrest report showing that on January 4, 2016, Plaintiff Jones was arrested pursuant to an arrest warrant. Exhibit B shows an additional arrest of Jones occasioned by execution of a search warrant at his residence.  He was charged with marijuana possession (found in his vehicle, in his room, and in his freezer).

Exhibit C is a complaint affidavit showing that on September 18, 2018, deputies arrived at Heilman's residence to make contact with her son in reference to active probable cause for his arrest.  Heilman was alleged to have struck one of the deputies with a door and she was arrested for battery on a law enforcement officer; she was also on probation at the time for simple battery, resisting an officer

---

[3] Plaintiffs may respond that, well, not *all* of our interactions with deputies were caused by ILP, but *some* were.  That would just prove the main point of this motion: it is impossible, as pled, to tell which incidents, when, and under what circumstances, are part of this lawsuit and which are not.

without violence, and providing law enforcement a false name.   Court records included in Exhibit C indicate she pled guilty to the battery charge.

In the Complaint, Plaintiff Heilman describes an incident in September 2016 in which deputies came to her home "asking about her son." She alleges that this was *because* her son was a "Targeted Person" by ILP.   She alleges in the Complaint that she attempted to leave with her daughter, both had seatbelts on, but that she was stopped for a seatbelt violation and arrested because she would not get out of her car. (Dkt. 1, ¶35-37).

Regarding this incident, composite Exhibit D is a series of reports showing that on September 15, 2016, a deputy spoke to Heilman because her son was involved in an armed residential burglary.   Heilman, however, gave a false name to the deputy and made false statements.  The next day, the deputy came back to her residence to interview her about her statements and to seize the property and this was the cause of the interaction leading to her arrest.  She was convicted of various crimes.  And on another occasion, in May of 2019, deputies interacted with Heilman because she made a call for service for a runaway teen.  See Exhibit E.

Now, the point of all of this is not to have the Court judge at this time what actually occurred.  It is to illustrate that these encounters are all too different to be litigated together.  Moreover, it is apparent that the ILP may have nothing to do

with at least some encounters, i.e. an arrest occasioned by a warrant or a call for service by the Plaintiff.

**F.   Count I for unconstitutional search and seizure does not state a claim and should be broken into individual claims or cases.**

Count I is asserted as brought on behalf of all Plaintiffs and asserts a claim under the Fourth Amendment "as incorporated into the Fourteenth Amendment" protecting "individuals' rights to be secure on their property and free from unreasonable searches and seizures." (Dkt. 1, ¶ 225). The Fourth Amendment deals with searches and seizures, the Fourteenth with due process. Plaintiff makes no due process claim in the count whereas the count refers repeatedly to searches and seizures.

Past the label, the allegations are that the ILP caused deputies to come to Plaintiffs' homes at different times and repeatedly for purposes of harassment. That does not describe a search or seizure, yet Plaintiff attempts to merge these concepts as though all responses to all calls for service, service of warrants or other process, or simple knock and talks which occurred at odd hours or days apart are somehow converted into searches as a result of being in some respect "caused" by the ILP.

More important at this stage, Plaintiff alleges these incidents too vaguely and in loose combination such that Defendant cannot be expected to answer. Are we talking about a visit to Defendant Taylor on a particular day: Defendant might

answer that such was pursuant to serving a warrant or other legal process.  Are we talking about issuance of a fine for a code violation on some other date to some other person:  That claim might be barred if there was probable cause for it.

It is no answer for Plaintiffs to state that they relate all of their encounters with law enforcement to a single *Monell* theory.   Not all law enforcement interactions, even if traceable to the ILP, are going to be unconstitutional. Plaintiffs should be required to identify for a given Plaintiff the specific law enforcement action which was unconstitutional.

It is noteworthy in this respect that each of the Plaintiffs seeks, not only nominal damages tied to their criticism of the ILP, but also compensatory damages which will be *unique* to each one, *unique* to their own claim of arrest, citation for a code violation, entry onto property, etc.  To judge each one will require knowing why the deputies visited the residence of a given Plaintiff that day and the circumstances of the encounter.  As pled, it is impossible for the Defendant to respond to these collectivized group allegations.

G.     **Count II, for violation of freedom of association, fails to state a claim.**

In Count II, Plaintiffs assert a claim for violation of freedom of association. But, the count drifts back and forth between vaguely and en masse asserting violations of the rights of family and friends *of* the Plaintiffs, versus Plaintiffs claiming that their own associational rights were violated.  Compare Dkt. 1, ¶ 241,

242, 243, with 247.  Defendant cannot be expected to answer a Complaint which provides little to no detail on these incidents and appears to on its face to raise obvious standing issues.

As to friends of the Plaintiffs, Count II fails to state a claim because the relationship is not adequately described.  These would appear to be expressive and not familial.  See e.g. *Fagan v. City of Marco Island*, 2005 WL 1667662 (July 15, 2005).    Although the Complaint alleges that Plaintiffs could have encountered some law enforcement action based on their having been a family member of a targeted person, the Complaint fails to allege when, or in what manner, the Defendant actually infringed on a familial relationship.  *Florida Action Committee, Inc. v. Seminole County*, 212 F.Supp.3d 1213, 1227-28 (M.D.Fla. 2016) (discussing intrusion into familial relationship by ordinance).  As pled, Plaintiffs fail to allege facts – as opposed to legal conclusions -- showing that the Defendant interfered with a familial relationship.  And at this point the Defendant has no way to know which incidents would even be part of such a claim.

## H. **Counts III and IV, for violations of procedural and substantive due process rights, should be dismissed for failure to state a claim or a more definite statement of the claims alleged.**

A procedural due process claim typically involves a claim of entitlement to specific process from the State and seeks equitable relief, whereas a claim of denial of substantive due process is the basis for a claim for money damages.

Once it has been established that the due process clause applies to an issue, the question remains what process is due. *Cleveland Board of Education v. Loudermill et al.,* 470 U.S. 532, 534, 105 S.Ct. 1487, 1489, 84 L.Ed.2d 494 (1985). A substantive due process right is protected against government actions regardless of the fairness of procedures used to implement them. *McKinney,* 20 F.3d at 1556 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 123–25, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)1 (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)).) "Because [a substantive due process] right is fundamental, no amount of process can justify the infringement." *Id.* On the other hand, a procedural due process violation is only ripe when the State fails to provide due process. *Id.* (quoting *Zinermon,* 494 U.S. at 123, 110 S.Ct. at 983, 108 L.Ed.2d 100 (1990)). Consequently, the relief granted for a substantive due process violation is monetary while process-based remedies are primarily equitable. *Id.*

*Henniger v. Pinellas County*, 7 F.Supp.2d 1334, 1339 (M.D.Fla.1998)

To state a claim for deprivation of procedural due process, Plaintiff must allege facts sufficient to support three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *J.R. v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003)); *Miccosukee Tribe of Indians of Florida v. U.S.*, 716 F.3d 535, 559 (11th Cir. 2013).

Here, Plaintiffs allege simply that they were not given an opportunity to apply to be removed from the Targeted Persons list. But, they do not allege that they are due that specific process under any statute or regulation. And, Plaintiffs do not describe – especially because they do not assert specific facts for specific

instances in a meaningful way – that the actions of the Defendant in a given situation were conscience shocking so as to represent a substantive due process violation. *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003) (describing a substantive due process claim as limited to cases where government has engaged in conduct which shocks the conscience); *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense.").

As pled, insufficient facts are offered from which the Court can glean that a given law enforcement action on a given day and involving a particular Plaintiff rose to the level of "conscience shocking" and "the most egregious official conduct." Counts III and IV should be dismissed for failure to state a claim.

## I. Count V, a claim for violation of equal protection rights, fails to state a claim for relief.

In Count V, three of the four named Plaintiffs assert an equal protection claim. These Plaintiffs do not allege that they are members of a protected class. Rather, they vaguely plead that they were treated differently than other Pasco County residents because they were designated as "Targeted Persons" by the ILP. (Dkt. 1, ¶ 274). The Eleventh Circuit recently stated:

> When presenting a class of one equal protection claim, a plaintiff alleges that it is the only entity being treated differently from all other similarly situated entities, even though it does not belong to a suspect classification. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074–75, 145 L.Ed.2d 1060 (2000) (per curiam). In order

23

to prevail, a plaintiff must show that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) (quoting *Olech*, 528 U.S. at 564, 120 S. Ct. at 1074).

In this Circuit, we apply the "similarly situated" requirement "with rigor." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). "[T]he [entities] being compared 'must be *prima facie identical in all relevant respects*.' " *Irvin*, 496 F.3d at 1204 (emphasis in original) (quoting *Campbell*, 434 F.3d at 1314). Put another way, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *Campbell*, 434 F.3d at 1314 (quoting *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)). A plaintiff must ultimately show that it and any comparators are "similarly situated 'in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker.' " *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Griffin Indus.*, 496 F.3d at 1207).

*PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11ᵗʰ Cir. 2021).

The only allegation of fact in this count comparing Plaintiffs to other persons is paragraph 274, which alleges in conclusory fashion that there was an official policy and widespread custom at the Sheriff's Office to treat family members and Targeted Persons "differently from the way in which it pursues code violations for the rest of Pasco County's residents." There is no indication as to which claims this applies to, what the code violations were for, when they occurred, and whether these other comparator instances are "prima facie identical in all relevant respects" to Plaintiffs' incidents.

24

## CONCLUSION

As scattered and as unconnected as the claims are, and as vaguely pled as they are, Plaintiffs fail to state a claim for relief and should be required to offer a more definite statement. It is also apparent on the face of the Complaint that some claims, if pled with any specificity as to when they occurred and the circumstances surrounding them, are going to be barred by the statute of limitations, *Heck*, or some other basic §1983 principle. Defendant believes that it is clear based on the allegations of the Complaint as is that these claims are misjoined. That point will only become more evident when the Complaint is adequately pled.

Defendant respectfully submits that the Court should dismiss the Complaint as a shotgun pleading and order that in any repleading the precise underlying constitutional violations sued upon be identified, and its connection to the ILP articulated such that Defendant can properly respond to an amended complaint. Even then, Defendant believes it clear that these claims cannot and should not litigated as a single case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of April 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Ari S. Bargil, Esquire, *abargil@ij.org*, Institute For Justice, 2 S. Biscayne Boulevard, Suite 3180, Miami, Florida 33131; Joshua A. House, Esquire and Caroline Grace Brothers, Esquire, *jhouse@ij.org* and *cgbrothers@ij.org*, Institute For Justice, 901 N. Glebe Road, Suite 900, Arlington, Virginia 22203; and Robert E. Johnson, Esquire, *rjohnson@ij.org*, Institute For Justice, 16781 Chagrin Boulevard, Suite 256, Shaker Heights, Ohio 44120.

THOMAS W. POULTON, ESQ.
Florida Bar No. 0083798
*poulton@debevoisepoulton.com*
JEFFREY K. GRANT, ESQ.
Florida Bar No. 0091197
*grant@debevoisepoulton.com*
ERIN M. TUECHE, ESQ.
Florida Bar No. 0045104
*tueche@debevoisepoulton.com*
ROBERT D. HOLBORN, II, ESQ.
Florida Bar No. 0044186
*holborn@debevoisepoulton.com*
DeBEVOISE & POULTON, P.A.
Lakeview Office Park, Suite 1010
1035 S. Semoran Boulevard
Winter Park, Florida  32792
Telephone:  407-673-5000
Facsimile:  321-203-4304
Attorneys for Defendant Sheriff Nocco