UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR, et al.,

      Plaintiffs,

v.                                 CASE NO. 8:21-cv-555-T-23CPT

CHRIS NOCCO,

      Defendant.

_____/

## **ORDER**

The plaintiffs allege that the Pasco County Sheriff's "Intelligence-Led Policing Program" violates their rights under the First, Fourth, and Fourteenth Amendments. Moving (Doc. 20) to dismiss, the Sheriff argues that the complaint constitutes a shotgun pleading, that the claims are improperly joined, that the plaintiffs fail to state a claim, and that the statutory limitation bars several of the plaintiffs' claims. The plaintiffs respond (Doc. 25) to each of these contentions and argue generally that the complaint principally challenges the Sheriff's policy and only derivatively challenges the resulting incidents.

## **BACKGROUND**

The plaintiffs allege that the Sheriff's "Intelligence-Led Policing Program" employs a "crude computer algorithm to identify individuals who may commit unspecified future crimes." (Doc. 25 at 1) (quoting Doc. 1 at 2) After identifying the suspected violators, the program compiles a list of "targeted persons." According

to the plaintiffs, a "targeted person" receives no notice of the person's inclusion on the list.  After a targeted person appears on the list, the Sheriff "subjects those individuals and their families to relentless pursuit, arrest, and prosecution."  (Doc. 25 at 1) (quoting Doc. 1 at 2)

As part of the program's "relentless pursuit," the Sheriff's deputies allegedly "identify, catalog, track, and visit" a targeted person and the targeted person's close family and friends.  The plaintiffs allege that during the deputies' visits, described in the complaint as "offender checks," the deputies initiate pretextual code enforcement, apply a "zero-tolerance policy" to any alleged wrongdoing, and ignore a person's repeated requests to stop the vexatious intrusions.  And "deputies routinely threaten friends and family members who allegedly do not cooperate with deputies enforcing the Program."  (Doc. 1 at 3)

The complaint includes several examples of the alleged constitutional harm caused by the policy.  For example, the plaintiffs allege that the deputies conduct "ceaseless" searches without a warrant and without reasonable suspicion.  In one instance, the deputies "walked into the flower bed next to the house, knocked on the window with a flashlight, and shined a light into the home."  (Doc. 1 at 7)  And deputies issued pretextual citations for "long grass" and "missing mailbox numbers" to other plaintiffs.  (Doc. 1 at 32)  On several occasions, a targeted person or an affiliate was arrested, harassed, or fined.  (Doc. 1 at 37–40)  But in each instance, the plaintiffs assert under 42 U.S.C. § 1983 the existence of a policy that has caused a constitutional violation.  Count I asserts that the policy violates the Fourth

Amendment; Count II asserts that the policy violates the First Amendment right to freely associate; Count III asserts a procedural due process claim; Count IV asserts a substantive due process claim; and Count V asserts an equal protection claim.

## DISCUSSION

Moving (Doc. 20) to dismiss, the Sheriff asserts the existence of procedural deficiencies and argues that each count fails to state a claim.  The plaintiffs respond (Doc. 25) that the common questions of fact and law animating each claim gravitate against dismissal and that the complaint lacks procedural or substantive deficiencies.

*I. Procedural Challenges*

The Sheriff raises two procedural challenges to the complaint.  The Sheriff argues that the complaint constitutes a shotgun pleading by asserting "multiple claims by multiple parties in a single count with only vague allusion to the facts underlying each separate claim."  (Doc. 20 at 7)  The plaintiffs respond that, although the complaint alleges widespread harm, each claim relates to one program implemented by one defendant.  (Doc. 25 at 2)

Although not optimally presented, the complaint is sufficiently well-organized. The complaint alleges one program, allegedly unconstitutional for several reasons, and each claim cites allegations that support the harm caused to each plaintiff by the challenged program.  The "counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted."  *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1326 (11th Cir. 2015).  The complaint is not an impermissible "shotgun complaint."

The Sheriff objects to "significant differences between the incidents included in the complaint . . . to illustrate that these encounters are all too different to be litigated together," and the Sheriff appends "records" to support severing the several plaintiffs.  (Doc. 20 at 16, 18)  But, the complaint alleges that the several incidents of alleged harm originate from an "official policy" under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and each claim stems from the central allegation that the policy caused a series of constitutional violations.  The Sheriff insists that "[i]t is no answer . . . to state that the [plaintiffs] relate all of their encounters with law enforcement to a single *Monell* theory."  (Doc. 20 at 20)  But to impose Section 1983 liability under *Monell*, "a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.2d 1283, 1289 (11th Cir. 2004).  These elements are satisfactorily alleged in the complaint, and the Sheriff fails to establish otherwise.

Further, resolving plaintiffs' claims in one action often fosters efficiency by preventing duplicative litigation against the same defendant about the same subject. *Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1361 (5th Cir. 1979) ("The logical relation test is a loose standard which permits 'a broad realistic interpretation in the interest of avoiding a multiplicity of suits.'").  The Sheriff suggests no immediate disadvantage to allowing the claims to proceed in one action.  However, the prospect remains open — depending on the final array of parties and claims — of

a separate trial for each party or a single trial for the declaratory claims and a

separate trial for the damage claims or for some other arrangement.

## II. Substantive Challenges

Next, the Sheriff argues that the plaintiffs provide inadequate detail about the

manner in which the Sheriff infringed on a familial or expressive relationship, and

the Sheriff argues that one plaintiff fails to establish a relation that the First

Amendment protects.  The plaintiffs respond that the program's "guilt-by-

association" paradigm burdens the plaintiffs' associational rights by punishing a

targeted person's close relations.  (Doc. 25 at 14)

A person's right to freedom of association includes "expressive association,"

that is, a person's "choices to enter into and maintain certain intimate human

relationships" without undue governmental intrusion.  *Roberts v. U.S. Jaycees*,

468 U.S. 609, 617–18 (1984).  Whether this associational right includes other

"intimate associations,"[1] such as a roommate or close friend, "depends on the extent

to which those attachments share the qualities distinctive to family relationship."

*McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994).

The complaint contains sufficient facts to plausibly suggest a violation of the

plaintiffs' associational rights.  The plaintiffs allege not only that "the PCSO's zero-

tolerance arrest policy . . . extends to offenses committed by family members," the

plaintiffs allege that "PCSO deputies are ordered and expected to harass or

---

[1] *Moore v. Tolbert*, 490 F. App'x 200, 203 (11th Cir. 2012).

intimidate Prolific Offenders and their friends, family, and roommates by visiting their homes and looking for reasons to write tickets, citations, or make arrests." (Doc. 1 at 26, 30)  Further, the plaintiffs assert that the Sheriff's program subjects a targeted person's "close friends and family members" to "pretextual arrests," "repeated harassment," and "increased code enforcement."  (Doc. 1 at 45) These allegations, among others, support a plausible claim that the challenged policy constitutes "undue governmental intrusion" into an intimate relationship. *McCabe*, 12 F.3d at 1563.  The plaintiffs state a claim (sufficient to resist a motion to dismiss) that the policy violates the First Amendment.

Also, the Sheriff moves to dismiss Counts III and IV and contends that the plaintiffs fail to state either a procedural or substantive due process claim.  Regarding procedural due process, the Sheriff argues that no statute or regulation provides the plaintiffs with "an opportunity to apply to be removed from the Targeted Persons list."  (Doc. 20 at 22)  In response, the plaintiffs argue that "no court anywhere has ever said that a 'statute or regulation' is the primary guarantor of due process." (Doc. 25 at 15)

The plaintiffs allege several liberty interests infringed by the plaintiffs' inclusion on the Sheriff's "targeted persons" list.  According to the plaintiffs, the Sheriff afforded no notice of, or a hearing about, the plaintiffs' inclusion on the list. The plaintiffs state a plausible procedural due process claim.  *See J.R. v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013) (discussing the elements of a due process claim); *Mohamed v. Holder*, 995 F. Supp. 2d 520, 539 (E.D. Va. 2014) (holding that the

plaintiff states a procedural due process claim because the plaintiff was placed on a no-fly list without notice or a hearing).

Regarding substantive due process, the Sheriff contends that "the actions of the Defendant . . . were [not] conscience shocking so as to represent a substantive due process violation." (Doc. 20 at 23)  The plaintiffs observe (1) that the complaint alleges that the program infringes the plaintiffs' "fundamental right to be free from punishment for the crimes or wrongdoings of another" and (2) that the Sheriff identifies no narrow tailoring to the government's interest. (Doc. 20 at 17–18) Also,  the plaintiffs argue that the complaint includes allegations that the program implements arbitrary and irrational government action. (Doc. 20 at 17–18)

The list of fundamental rights is a "short one" that the Supreme Court admonishes against expanding, and judicial recognition of a claimed "fundamental" right is scarce enough to leave doubt that the infringement of a right offends substantive due process. *Reno v. Flores*, 507 U.S. 292, 303 (1993).  And, if a particular amendment "'provides an explicit textual source of constitutional protection' against a particular source of government behavior, that amendment and not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  The merits of the plaintiffs' substantive due process claim must await analysis on a more informative record and more "targeted" briefing.

Finally, the Sheriff moves to dismiss Count V, which asserts an entitlement to relief under the equal protection clause because the "PCSO's official policy . . .

is arbitrary, irrational, and pretextual."  The plaintiffs argue that the Sheriff mischaracterizes the equal protection claim as a "class-of-one claim" and that the program bears no rational relation to a legitimate governmental interest, including the program's stated purpose.

In a pleading "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications," *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992), and a state's action is upheld "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).  Although the plaintiffs argue that the program "makes no sense," under rational basis review a district court avoids "strik[ing] down state actions" even if "they may be unwise, improvident, or out of harmony with a particular school of thought." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488 (1955).  And deterring crime certainly constitutes "some legitimate end." *Brumit*, 2021 WL at *5 (dismissing an equal protection claim because the classification sought "crime deterrence").  Although the Sheriff's program is striking in breadth and might otherwise unsettle someone attuned to the preservation of liberty interests, the plaintiffs fail to establish that the program, which targets for enhanced contact with law enforcement a person considered likely to "commit future crimes," bears absolutely no rational relation to crime prevention.  The plaintiffs might successfully argue that the program is "improvident" or otherwise violates the law, but Count V seems deficient in an attempt to allege an equal protection violation.

## CONCLUSION

The motion (Doc. 20) to dismiss is **GRANTED-IN-PART**, and Count V is **DISMISSED**.  No later than **AUGUST 27, 2021**, the plaintiffs may amend the complaint to re-state Count V.  Otherwise, as evaluated on the present papers, the motion is **DENIED**.

ORDERED in Tampa, Florida, on August 4, 2021.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE