UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR; TAMMY
HEILMAN; DARLENE DEEGAN;
and ROBERT A. JONES III,

        Plaintiffs,

v.                             CASE NO.: 8:21-cv-00555-SDM-CPT

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

        Defendant,

                                /

## DEFENDANT SHERIFF'S MOTION TO 1) OVERRULE OBJECTIONS TO INTERROGATORIES BY ALL PLAINTIFFS,  AND 2) TO COMPEL BETTER ANSWERS TO INTERROGATORIES BY PLAINTIFFS TAYLOR AND DEEGAN

Defendant Sheriff Nocco, by and through undersigned counsel and pursuant to the provisions of Federal Rules of Civil Procedure 26, 37, and Section IV(C)(2) of Middle District Discovery Handbook (2021), moves the Court for an Order overruling objections to Interrogatories 12, 13, and 14 by all Plaintiffs and specifically requiring that Plaintiffs Taylor and Deegan provide better answers to those Interrogatories, and states:

1.     The four named Plaintiffs have brought claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against Pasco County Sheriff Chris Nocco in his official capacity asserting that Pasco County Sheriff's Deputies violated their

constitutional rights during multiple incidents.  Plaintiffs assert that these violations were caused by the Sheriff's "Intelligence-Led Policing Program," or ILP.  (Doc. 1, ¶ 2).

2.     A *Monell* claim has three distinct components:   first that Plaintiff's underlying constitutional rights were violated;   second, that an official policy or custom of the Sheriff was deliberately indifferent to that right; and third that the policy or custom was the actual cause behind the underlying constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir.2004).  It is well-settled that if there is no underlying constitutional violation, then the issue of policy or custom is rendered moot. *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996).

3.     A review of the general records of the Plaintiffs show over 200 total interactions between they and Pasco County Sheriff's Deputies.   (See Exhibit A). On the face of these Sheriff's Office documents, a large number resulted from service of arrest or search warrants, not ILP.  Some appear to be based on calls for service from Plaintiffs, themselves.   Nonetheless, the Complaint in this case lumps these incidents together and in broad terms ties all of them to ILP.  Defendant filed a motion to dismiss the complaint, in part on grounds that by combining all of these claims into singular and counts that the Defendant cannot reasonably respond.  The Court has recently denied the motion as to that ground. (Dkt. 30).

4.     While that motion to dismiss was pending, and in an effort to try to determine which of these 200-plus incidents Plaintiffs actually claim represent a constitutional violation with a causal connection to ILP, Defendant on June 21, 2021, propounded interrogatories to each of the four Plaintiffs.  After a brief extension, to which Defendant agreed, Plaintiff served their answers to the interrogatories on July 26, 2021.  This motion deals with interrogatories 12, 13 and 14. These interrogatories sought the most basic of information on the claims of underlying constitutional violations, i.e. whose constitutional rights were violated when, by whom, and with what connection to ILP.

The interrogatories are:

12.     State the dates of all interactions you have had with the Pasco Sheriff's Office that you claim were caused as a result of the Intelligence-Led Policing Program, and state the outcome of any such interactions, including whether you were detained, searched and/or arrested.

13.     For those incidents listed in your response to Question 12, state the factual basis for your claim that the Intelligence-Led Policing Program was the cause of the interactions you had had with the Pasco Sheriff's Office

14.     Identify any and all Pasco Sheriff's personnel who you contend informed you that they interacted with you due to the Intelligence-Led Policing Program, and the substance of and dates of any such statements.

5.    In response to these requests each Plaintiff asserted the same objection:

Plaintiff objects that this interrogatory seeks information already in the possession of the Defendant. As Defendant maintains detailed records in connection with the matters identified in this interrogatory, Defendant has better relative access to the requested information. Fed. R. Civ. P. 26((b)(1). Plaintiffs are seeking this information in their own discovery requests, which Defendant so far has not answered.

See Interrogatory Responses of Taylor (Exhibit B, pp. 6-7; Interrogatory Responses of Heilman (Exhibit C, pp. 6-7); Interrogatory Responses of Deegan, (Exhibit D, pp. 6-8); Interrogatory Responses of Jones (Exhibit E, pp. 6-8). Then, notwithstanding the objections, the Plaintiffs answered the interrogatories to varying degrees, as described below.

6.    As an initial matter, the Court should overrule this objection as to all four Plaintiffs. Plaintiffs have brought these claims and should be required to identify at the outset the specific incidents they claim represent underlying constitutional violations under *Monell*. That is their threshold burden in pleading and proof for such a claim and it is unreasonable to expect the Defendant Sheriff to review all 200-plus of these incidents to figure out which of them might be at issue in this case.

4

7.     Notwithstanding the objection each Plaintiff then answered the interrogatories at different levels of specificity.  Substantively, Plaintiffs Taylor and Deegan provided inadequate responses altogether and should be compelled to provide better answers.  Plaintiff Taylor provided virtually no information in response to interrogatory 12, stating initially "I do not remember the dates of each time PCSO deputies came to visit me."  She offered no dates for any interaction, at all, instead saying that between the time she was released from prison in 2017 and the date she read an article in the Tampa Bay Times in 2020 that deputies "came to my house all the time, and sometimes as often as every other day" and that "[t]hey always wanted to come inside the house to talk to me and ask me questions about what I was up to and who I was hanging out with." (Exhibit A, p. 6.).

She does refer to one specific incident on New Year's Day, year unknown, in which an unidentified friend asked unidentified deputies to stop coming by, the deputies stating that they would keep coming back for a couple of years.  She gleaned an association with ILP only because she was messaged on Facebook and then visited by a reporter from the Tampa Bay Times who told her there was a connection to ILP.

This does not reasonably advise the Court or the Defendant what the basis is for Plaintiff Taylor to contend that a visit on a particular date was caused by ILP,

much less does it advise the Court or the defense what the underlying constitutional violation was on that date and how it is connected to ILP, as is required under *Monell*. When asked in interrogatory 14 to identify any deputy who made any statement to corroborate what the reporter told her as to ILP linkage, her response was "Multiple different deputies came to my house. I don't remember their names." (Exhibit A, p. 7).

8.    Other sets of responses by other Plaintiffs are marginally better and, while providing some information, fall short of simply stating the incident date and the nature of the incident. At least Plaintiffs Jones and Heilman provide sufficient information to begin to identify interactions they would allege represented constitutional violations by providing dates and details of incidents.

9.    However, similar to Plaintiff Taylor, Plaintiff Deegan's answers should be deemed insufficient and both she and Plaintiff Taylor should be required to provide better answers. Specifically, Plaintiff Deegan in response to interrogatory 12 stated that deputies visited her home "regularly" between 2016 and 2019 and that deputies were "frequently parked outside my house." She states she does not remember the dates of each incident. She does recount an incident in October 2017 involving an undefined "raid" and code violations in June 2018 and 2019, but she does not indicate the cause or the outcome of any of these. i.e. did she pay citations

for the code violations, was the "raid" the result of service of a search or arrest warrant. No indication is given as to in what respect these incidents are caused by ILP.

When asked to provide the factual basis for the claim that a given incident was caused by ILP, her answer is that she believes this to be the case because an unidentified deputy told her that her son was a "Top 5 Offender" and that it is connected to ILP based on newspaper articles she read and having been told so by Plaintiffs' counsel. In response to interrogatory 14, she identifies one Detective, Eric Pfenninger, who gave her a business card after telling her that her son was a "Top 5 Offender."

No other information is provided, and critically no date is given for an incident in which the son being a "Top 5 Offender" actually caused a violation of Plaintiff Deegan's underlying constitutional rights, which is step one in a *Monell* claim. It is thus not possible for Defendant to, for example, raise a statute of limitations defense; a defense under *Heck v. Humphrey,* 512 U.S. 477 (1994) (§1983 claimant may not claim false arrest for charge on which he was and remains convicted); or an abstention defense to a given claim of an underlying constitutional violation. [1]

---

[1] If the claim is that Deegan was unconstitutionally given a citation for a code violation but she paid it or it remains undisturbed, then a claim based on that citation would not be a viable underlying constitutional violation under the

7

10.    In sum, Defendant submits that the identical objections offered by each Plaintiff to Interrogatories 12, 13, and 14 should be overruled.  Plaintiffs Jones and Heilman should thus be bound and limited in this litigation to the incidents described in their current responses.  Plaintiffs Taylor and Deegan should be compelled to provide better answers, such that Defendant may meaningfully prepare for and defend as to each claimed underlying constitutional violation.

11.    **LOCAL RULE 3.01(G) CERTIFICATION.**  Pursuant to Local Rule 3.01(g), undersigned counsel spoke with Plaintiffs' counsel Ari Bargil, Esq., on August 5, 2021 concerning the matters raised in this motion.  While the discussion was helpful in narrowing the issues, no agreement could ultimately be reached.

WHEREFORE, Defendant Sheriff Nocco moves he Court for entry of an Order overruling Plaintiff's objection to Interrogatories 12, 13, and 14 and compelling better responses to those Interrogatories by Plaintiffs Taylor and Deegan.

---

Rooker-Feldman doctrine.  *Valentine v. BAC Home Loans Servicing, L.P.*, 635 F.App'x 753, 756 (11th Cir. 2016) ("district court lacks jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.") (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

8

## MEMORANDUM OF LAW

Pursuant to Local Rule 3.01(a), Defendant submits the following Memorandum of Law in support of the instant motion.

Interrogatory Number 12 has an element of "contention interrogatory" to it in that it asks each Plaintiffs to identify which incidents or interaction they have had with deputies that the Plaintiff claims were caused by ILP. Similarly, interrogatory 13 asks that for each such incident the Plaintiff identify the factual basis for that Plaintiff's claim that ILP caused the interaction with deputies. Clearly, the import of these interrogatories is to begin the process of fundamentally identifying the claims of underlying constitutional violations in this case. It is, after all, step one of any *Monell* claim to articulate the underlying constitutional violations.

As this Court has held, contention interrogatories are disfavored. *Endurance American Specialty Insurance Co. v. Liberty Mutual Insurance Co.*, 2018 WL 7352150 *3 (M.D.Fla. December 20, 2018). But, such interrogatories have their place, particularly where they serve the purpose of "narrowing and sharpening issues." *Id.*, (citing advisory committee notes to 1970 and 2007 amendments to Federal R. Civ. P. 33.) Defendant believes that to be the case here because, as of right now, Defendant does not have a reasonable basis to understand exactly what he is being sued for.

Moreover, these are not purely contention interrogatories. For example, Interrogatory 12 asks each Plaintiff to indicate the outcome in each case, i.e. was the Plaintiff detained, arrested, searched. This information is important for the defense to have so that the Defendant understands in each such situation whether the issue is reasonable suspicion for detention or search, probable cause for arrest, or whether for example a *Heck v. Humphrey* or other abstention doctrine defense will apply.

As noted above undersigned counsel spoke with Mr. Bargil, counsel for Plaintiffs, concerning this matter. Based on that discussion, it is the defense impression that the Plaintiffs believe this motion is premature. Plaintiffs were previously provided a list of the 200-plus incidents. As Defendant understands it, counsel has or soon will discuss those interactions with the named Plaintiffs and then seek from the Defendant documentation concerning the incidents that might, in Plaintiffs' view, be ILP-related or which might represent underlying constitutional violations per *Monell*. Plaintiffs can then narrow their claims to specific incidents.[2]

Defendant appreciates the logic of that approach but such investigation should have occurred *prior to* filing of the lawsuit so that the parties and the Court could understand the universe of incidents which are actually relevant to the claims in the

---

[2] To that end, on August 10, 2021, Plaintiffs served discovery on the Defendant which seeks documentation or records concerning specific incidents involving Plaintiffs.

case under *Monell*. Defendant highlights this issue because the delay this causes is prejudicial to the Defendant as the Court has placed this case on an expedited schedule of sorts which makes it impractical for the defense to wait for all of that to occur.

When the Case Management Order was initially entered (Doc. 23), Defendant was surprised to see a discovery completion deadline of December 27, 2021. Defendant asked that the Court reconsider these initial deadlines. (Dkt. 24). The Court seemed skeptical of Defendant's contention that the number of incidents here is over 200, stating that the Defendant sought much longer dates for discovery based on "an ostensible" need to investigate these incidents. (Dkt. 28). As shown by Exhibit A, there are a large number of incidents and Plaintiffs have only now begun to work to narrow that list down to the incidents which will ultimately form the basis of a claim for trial.

As predicted, the Defendant finds himself in a situation where two of the named Plaintiffs have not specified at all when and how their constitutional rights were violated and the other two Plaintiffs have given loose descriptions which Defendant can at least try to work with, but will still take considerable time and effort to work through. Plaintiffs' counsel states that Plaintiffs wish to cooperate with the defense to identify the relevant incidents and will endeavor to do so at some

unidentified point in the future, and Defendant appreciates that good faith position, but it still means the Defendant does not know in the first instance exactly what the claims are in this case.

Plaintiffs have advanced this case as a collective attack on the ILP and the District Court has so far allowed the case to continue on that basis, at least to summary judgment. But that does not change the fact that Plaintiffs must identify the alleged underlying constitutional violations in some form that allows the Defendant to understand and defend against the claims made. The Court should overrule the objections to the interrogatories and require the Plaintiffs to identify the *precise incidents* and *precise claims* sued upon for each incident so that the litigation might have workable guardrails.

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Ari S. Bargil, Esquire** (*abargil@ij.org*), Institute For Justice, 2 S. Biscayne Boulevard, Suite 3180, Miami, Florida 33131; **Joshua A. House, Esquire** (*jhouse@ij.org*) and **Caroline Grace Brothers, Esquire** (*cgbrothers@ij.org*), Institute For Justice, 901 N. Glebe Road, Suite 900, Arlington, Virginia 22203; and **Robert E. Johnson, Esquire** (*rjohnson@ij.org*), Institute For Justice, 16781 Chagrin Boulevard, Suite 256, Shaker Heights, Ohio 44120.

THOMAS W. POULTON, ESQ.
Florida Bar No. 0083798
Email: *poulton@debevoisepoulton.com*
JEFFREY K. GRANT, ESQ.
Florida Bar No.: 0091197
Email: *grant@debevoisepoulton.com*
DeBEVOISE & POULTON, P.A.
Lakeview Office Park, Suite 1010
1035 S. Semoran Boulevard
Winter Park, Florida 32792
Telephone: 407-673-5000
Facsimile: 321-203-4304
Attorneys for Defendant Sheriff Nocco

13