UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR; TAMMY
HEILMAN; DARLENE DEEGAN;
and ROBERT A. JONES III,

        Plaintiffs,

v.                                  CASE NO.: 8:21-cv-00555-SDM-CPT

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

        Defendant,
_____/

## MOTION TO DISMISS COUNT V OF PLAINTIFFS' AMENDED COMPLAINT (Dkt. 41), WITH PREJUDICE, BY DEFENDANT SHERIFF

Defendant Chris Nocco, in his official capacity as Sheriff of Pasco County, Fla., by and through undersigned counsel and pursuant to the provisions of Federal Rules of Civil Procedure 12(b)(1) and (6), hereby moves the Court for an Order dismissing with prejudice Count V of Plaintiffs' Amended Complaint (Dkt. 41), a claim for violation of the Fourteenth Amendment right to equal protection.

1.     The Court previously dismissed Count V, the equal protection claim in this case, on grounds that Plaintiffs had not plausibly alleged facts showing that the Sheriff's Intelligence-Led Policing program (ILP) is not reasonably related to the goal of deterring crime. (Dkt. 30, p. 8). Plaintiffs were granted leave to amend that count and they have file an Amended Complaint at Dkt. 41.

2. In the Amended Complaint, Plaintiffs have added new factual allegations and again assert an equal protection claim in Count V. The new factual allegations fall primarily into two categories: first, Plaintiffs alleged that the Sheriff uses improper criteria (e.g. low intelligence, socio-economic status) in designating a person as a "Targeted Person"; second, Plaintiffs allege that the Sheriff unevenly applies the law to Targeted Persons in the form of zero-tolerance for violations of the law leading to more arrests of Targeted Persons and in the form of stricter enforcement of code violations by Targeted Persons.

3. As to the claim that improper criteria is used, Plaintiffs do not allege that the criteria they describe was or is being used *as to them*; they thus lack standing to challenge the constitutionality of application of such criteria in the ILP process, requiring dismissal of those claims under Rule 12(b)(1). Additionally, Plaintiffs do not plausibly allege that such criteria is actually used as to anyone, or in what manner it is used, generally failing to state a claim under Rule 12(b)(6).

4. As to the claim that uneven enforcement of the law occurs as to Targeted Persons, Plaintiffs ask that the Court apply a heightened scrutiny standard to ILP, rather than a reasonable relationship test as in the Court's earlier Order. Plaintiffs, however, have not alleged facts showing that the Plaintiffs were treated differently based on being members of a suspect class, nor have they described violations of "fundamental rights" so as to warrant a heightened scrutiny standard.

2

5. The Court should therefore once again apply a reasonable relationship test and dismiss Count V, with prejudice as further amendment would be futile as to this claim.

6. **LOCAL RULE 3.01(G) CERTIFICAITON.** Undersigned counsel has communicated with Plaintiffs' counsel who advises that Plaintiffs oppose the relief sought herein.

WHEREFORE, Defendant Sheriff Nocco moves the Court for entry of an Order dismissing Count V of the Amended Complaint, with prejudice.

## MEMORANDUM OF LAW

Pursuant to Local Rule 3.01(a), Defendant submits the following Memorandum of Law in support of the instant motion.

### I. The original complaint and grounds for dismissal of Count V under rational basis/rational relationship test

In the original complaint, three of the four Plaintiffs (Heilman, Jones, and Deegan) asserted a claim for violation of their equal protection rights. (Dkt. 1, pp. 50-51). Plaintiffs alleged that as part of his Intelligence-Led Policing program (ILP) the Sheriff has a policy and widespread custom to "pursue code enforcement cases for family members and associates of Targeted Persons differently from the way in which it pursues code violations for the rest of Pasco County's residents." Plaintiffs alleged that use of code enforcement to target family members and associates of "Targeted Persons" was a violation of their equal protection rights

3

because the designation of being a Targeted Person resulted in disparate treatment of them, their family members, and associates in an "arbitrary, irrational, and pretextual" manner. (Id., ¶ 274-275.).

On motion to dismiss by the Sheriff, the Court applied a rational basis test, sometimes referred to as a rational relationship test, to the Plaintiffs' equal protection claims. The Court noted that deference is traditionally shown to state officials in enacting programs for government functions so long as the policy or action at issue "bears a rational relation to some legitimate end." (Order, Dkt. 30, p. 8 (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). A presumption exists in favor of a rational relationship between the government action and a legitimate end, and deterring crime "certainly constitutes 'some legitimate end.'" (Order, p. 8, quoting *Brumit v. City of Granite City, Illinois*, Case No. 19-cv-1090, 2021 WL 462624 * 5 (S.D. Illinois February 9, 2021). The Court held that there is a rational relationship between the acts complained of and the goal of crime deterrence and thus dismissed Count V, granting leave to Plaintiffs to amend that count. Plaintiffs have recently filed an Amended Complaint as to Count V. (Dkt. 41).

## 2. New allegations in the Amended Complaint; Plaintiffs seek to have the Court apply a heightened scrutiny test rather than the rational relation test

At bottom, the key difference between the two complaints is that in the newly Amended Complaint Plaintiffs expressly state that the Court should not apply the rational relationship test as it did before, but instead that the Court should

4

apply a heightened scrutiny standard to evaluate Plaintiffs' claims that the ILP violates their equal protections rights. (Dkt. 41, ¶ 289). A review of the original complaint and the amended complaint reflects the following changes have been made: first, all four Plaintiffs allege equal protection claims in Count V of the Amended Complaint, not just the three listed in Count V of the original complaint. Second, Plaintiffs have added new allegations designated at the following paragraphs in the Amended Complaint:

¶ 130. The Sheriff's "algorithm" used to determine whether a person is a "Targeted Person" includes the missing of court dates as a factor in that designation;

¶¶137 -138. Once an algorithm identifies potential Targeted Persons there is a subjective review by a crime analyst to examine risk factors indicating a propensity to commit crime in the future. Plaintiffs allege that "upon information and belief" such factors can include "low intelligence," "antisocial behavior," "being a victim of personal crime," having received "poor rearing as a child" and hanging around in public;"

¶ 149, 174-175, 181, 192. In these paragraphs Plaintiffs contend that the Sheriff more strictly enforces code violations as against Targeted Persons than he does against others. Plaintiffs contend that special code enforcement officers, who are employees of the Sheriff, assist deputies in detecting and assessing code

5

violation citations against Targeted Persons beyond those citations assessed against others. Plaintiffs allege that the purpose is not to reduce safety hazards but to reduce crime "by pressuring Targeted Persons and their associates to leave the County." (See e.g. ¶ 192);

¶ 281-296. Plaintiffs allege that heightened scrutiny, and not rational relationship, applies to test the relationship between the ILP and reducing crime because the ILP criteria used to identify Targeted Persons is "deeply illogical," because application of the program burdens Plaintiffs' "fundamental rights" to be "free from arrest" or to be "secure in their homes and other property," and because the agency treats Targeted Persons differently, "punishing" them for crimes which may occur in the future or for the crimes of others. (See e.g. ¶ 285, 286).

**3.   The Court should dismiss Count V because Plaintiffs do not plausibly allege that the subject criteria was applied *to them* and so they lack standing to challenge it, and because they do not plausibly allege that the criteria was applied to anyone and so they fail to state a claim in any event**

Plaintiffs allege that the ILP has used what they would deem improper criteria as part of the process to identify Targeted Persons, i.e. socio-economic status, low intelligence, coming from a broken home, and the like. (Dkt. 41, ¶¶137-138). Critically, however, there is no allegation that the use of this criteria occurred with regard *to the named Plaintiffs*. Plaintiffs do not have standing to challenge the use of that criteria absent an allegation that they had been deemed "Targeted Persons" due to application of those criteria *to them*. *Harris v. Evans*,

6

20 F.3d 1118, 1121 (11th Cir. 1994) (standing depends on violation of plaintiff's "own legal rights and interests rather than the legal rights and interests of third parties"); *L.M.P. v. School Board of Broward County, Fla.*, 879 F.3d 1274 (11th Cir. 2018) (parents sued challenging criteria used to deliver therapy to their children but parents lacked standing to challenge that criteria because it was not applied to them). Even more particularly as to the prospective injunctive relief sought here, Plaintiffs do not plausibly allege that the subject criteria will be applied *to them* in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 97-98 (1983) (past injury insufficient to confer standing for prospective relief).

Under Rule 12(b)(1), where Plaintiffs lack standing the Court lacks subject matter jurisdiction. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir.2008). "'Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Id.* (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir.1991).

Moreover, Plaintiffs have not alleged how a crime analyst would even have this information or how it would be used as to any "Tagged Person." Plaintiffs allege only vaguely that "upon information and belief" such information could be considered by the analyst. When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations in the Complaint as true. *Bell Atl. Corp. v.*

7

*Twombly*, 550 U.S. 544, 555 (2007)). To state a claim, the complaint must plausibly suggest that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Plaintiffs' allegation that the complained-of criteria play a role in selecting people to be designated as "Targeted Persons," with no description of what role such criteria plays or that the criteria was even relevant to Plaintiffs' designation as "Targeted Persons," results in failure to state a claim under Rule 12(b)(6) and Count V should also be dismissed on that basis.

### 4. The new allegations do not justify application of a heightened scrutiny test and under the rational relationship test Count V still fails to state a claim.

As the Court previously observed, "[u]nder a rational basis test, a statute is upheld "so long as it bears a rational relation to some legitimate end" even if the statute is " 'unwise, improvident, or out of harmony with a particular school of thought.' " (Order, p. 8); *Brumit*, * 5 (citations omitted).[1]

---

[1] The Plaintiffs in *Brumit* alleged that they were being evicted pursuant to a city ordinance which allowed them to be removed because their child – not them – had committed a criminal offense. Like the Plaintiffs here, the *Brumit* plaintiffs claimed that they were being punished for the crimes of another. The district court dismissed the equal protection and due process claims founded on this theory because, even though Plaintiffs claimed that eviction did not actually serve the

8

Plaintiffs allege that the use of the above-referenced criteria, or stricter law enforcement as to Targeted Persons in the form of arrests or code violation citations, invokes a heightened scrutiny test, not a rational basis one. (See e.g. Amended Complaint, Dkt. 41, ¶ 289 urging that, because the "discrimination" between Targeted Persons and others in the community affects "fundamental rights," then "heightened scrutiny" applies.) It is correct to say that a heightened scrutiny standard may apply to a classification system which intrudes on fundamental rights. But absent that or dividing up people based on a legally recognized "suspect classification," the correct standard is, as the Court previously stated, rational basis. *U.S. v. Castillo*, 899 F.3d 1208. 1213 (11th Cir.2018) (citing *Doe v. Moore*, 410 F.3d 1337, 1346 (11th Cir.2005)).

Suspect classification refers to such things as "race, alienage, national origin, gender, or illegitimacy." *Doe*, 410 F.3d at 1346 (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995)). Plaintiffs do not plausibly allege that they belong to a suspect class and therefore the Court should reject that as grounds to employ a heightened scrutiny test.

---

ends of deterring crime, the defense "must only proffer a sound reason for the legislation." *Id.*, citing *Univ. Professionals of Illinois, Local 4100, IFT-AFT, AFL-CIO v. Edgar*, 114 F.3d 665, 667 (7th Cir. 1997). Here, the Plaintiffs themselves state that the proffered reason is that the Sheriff believes these criteria and techniques will serve the ends of deterring crime. Even if Plaintiffs allegations were completely true, the criteria and techniques described serve the ends of deterring crime, thus passing the rational basis test.

As to "fundamental rights," Plaintiffs refer to the right of the Plaintiffs to be "secure in their homes and other property" (Dkt. 41, ¶287), presumably referring to the Fourth Amendment. However, they have brought those claims under that amendment elsewhere in the Amended Complaint, see Count I. Plaintiffs also allege that a "zero tolerance arrest policy" burdens the fundamental right to be free "from arrest" (Dkt. 41, ¶288) but notably do not allege violation of a right to be free from arrest *without probable cause*, which is the actual right at issue under the Fourth Amendment.

Even if the Plaintiffs were correct and they are being arrested when others would not, that is not a constitutional violation if there is objective probable cause for a given arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir.2002; *Graham v. Connor*, 490 U.S. 386, 389 (1989). Plaintiffs should not be permitted via Count V to convert the objective standard which is well-settled to be applicable to a given Fourth Amendment claim into an inquiry into intent as subjective purpose is irrelevant to a Fourth Amendment false arrest claim. *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006) (subjective reason officer arrested plaintiff irrelevant to a Fourth Amendment claim of false arrest) (citations omitted).

Plaintiffs do not otherwise describe a fundamental right as being at issue. They allege that they have a "fundamental right" to be "free from punishment for hypothetical future crimes" and a "fundamental right" to be "presumed innocent."

10

(Amended Complaint, Dkt. 41, ¶ 285). They allude to a "fundamental right" not to be "punished" for the crimes of another. (Id., ¶ 286-288).[2]

A "fundamental right" in this context is more than recasting a traditional tort, for example the right to be from false arrest, as so important it takes on the imprimatur of being "fundamental." "To determine whether a fundamental right is recognized under the Due Process Clause, the Court begins with framing (1) 'a careful description' of the asserted right, and then determines if (2) the asserted right is one of "those fundamental rights and liberties, which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Inniss v. Aderhold*, 80 F.Supp.3d 1335, 1353 (N.D.Ga.2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)).

The Court should be hesitant to recognize any of the "rights" described by Plaintiffs as "fundamental" in this context. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3f 804, 815-816 (11th Cir.2004) (rejecting claim that recent Supreme Court decision recognized a "fundamental right" to sexual intimacy; "We are particularly hesitant to infer a new fundamental liberty

---

[2] The claim that being "punished for the crimes of another" is a violation of a "fundamental right" was made by plaintiffs in *Brumit* and rejected by the district court there. *Brumit*, * 5.

interest from an opinion whose language and reasoning are inconsistent with standard fundamental-rights analysis. The Court has noted that it must 'exercise the utmost care whenever [it is] asked to break new ground" in the field of fundamental rights ..." (citing *Glucksberg*)).

As the Court earlier concluded, rational basis applies to the claims in Count V. "Under rational basis review, we apply "a strong presumption of validity," *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993), and narrowly inquire if the "enacting government body *could* have been pursing" "a legitimate government purpose," *United States v. Ferreira*, 275 F.3d 1020, 1026 (11th Cir. 2001) (quoting *Joel v. City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000)). If there is a legitimate goal – and the Court has previously noted that deterring crime is such a goal – the Court then asks only "whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose." *Id.* (quoting *Joel*, 232 F.3d at 1358). This inquiry occurs in the abstract because "[t]he *actual* motivations of the enacting governmental body are entirely irrelevant," as is whether the legitimate "basis was actually considered by the legislative body." *Id.* (quoting *Joel*, 232 F.3d at 1358)." *Castillo*, 899 F.3d at 1213 (emphasis in original).

The additions to the Amended Complaint are in the end just more severe criticisms of the same aspects of the ILP they criticized in the original complaint.

12

But, Plaintiffs have still failed to allege facts plausibly showing that the ILP is not reasonably related to the ends of deterring crime. The Court should thus dismiss Count V. As Plaintiffs were advised by the Court of the problems inherent in Count V, have had sufficient opportunity for amendment, and as there is no reason to suspect that any new facts as to suspect class or a "fundamental right" status will emerge this late in the litigation, Defendant requests that dismissal of Count V be with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Ari S. Bargil, Esquire, *abargil@ij.org*, Institute For Justice, 2 S. Biscayne Boulevard, Suite 3180, Miami, Florida 33131; Joshua A. House, Esquire and Caroline Grace Brothers, Esquire, *jhouse@ij.org* and *cgbrothers@ij.org*, Institute For Justice, 901 N. Glebe Road, Suite 900, Arlington, Virginia 22203; and Robert E. Johnson, Esquire, *rjohnson@ij.org*, Institute For Justice, 16781 Chagrin Boulevard, Suite 256, Shaker Heights, Ohio 44120.

/s/ 

THOMAS W. POULTON, ESQ.
Florida Bar No. 0083798
*poulton@debevoisepoulton.com*
JEFFREY K. GRANT, ESQ.
Florida Bar No. 0091197
*grant@debevoisepoulton.com*
ERIN M. TUECHE, ESQ.
Florida Bar No. 0045104
*tueche@debevoisepoulton.com*
ROBERT D. HOLBORN, II, ESQ.
Florida Bar No. 0044186
*holborn@debevoisepoulton.com*
DeBEVOISE & POULTON, P.A.
Lakeview Office Park, Suite 1010
1035 S. Semoran Boulevard
Winter Park, Florida 32792
Telephone: 407-673-5000
Facsimile: 321-203-4304
Attorneys for Defendant Sheriff Nocco