**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DALANEA TAYLOR; TAMMY HEILMAN; DARLENE DEEGAN; and ROBERT A. JONES III,

*Plaintiffs*,

v.

CHRIS NOCCO, in his official capacity as Pasco County Sheriff,

*Defendant*.

Case No. 8:21-cv-00555-SDM-CPT

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT V OF PLAINTIFFS' AMENDED COMPLAINT WITH PREJUDICE**

## INTRODUCTION

In resolving the first motion to dismiss, the Court determined that Plaintiffs' challenge to the Pasco County Sheriff's Office ("PCSO") Intelligence-Led Policing Program ("the Program") may proceed under several constitutional provisions. *See* Dkt. # 30. In particular, the Court held that Plaintiffs have stated a claim under the Fourth Amendment, the First Amendment right to associate, and both the substantive and procedural aspects of the Due Process Clause. *Id.* At the same time, however, the Court held that Plaintiffs' original Complaint did not state a claim under the Equal Protection Clause, reasoning that, "Although the Sheriff's

program is striking in breadth and might otherwise unsettle someone attuned to the preservation of liberty interests, the plaintiffs fail to establish that the program . . . bears absolutely no rational relation to crime prevention." *Id.* at 8.

The First Amended Complaint now reframes the Equal Protection claim, alleging that the Program affects fundamental rights and is therefore subject to heightened scrutiny. *See, e.g.*, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966) ("We have long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined."); *Jones v. Governor*, 950 F.3d 795, 817 (11th Cir. 2020) (when a classification "burdens fundamental rights," courts "look beyond the benign glance of rational basis review and demand a tighter fit between the classification and the government's interests"). This case falls squarely within the ambit of the Equal Protection Clause, as the PCSO has effectively established parallel systems of policing: one for those on its list of disfavored individuals (and their families and associates) and another for everyone else. And that official policy of discrimination affects numerous fundamental rights, including the right to be secure in one's home, the right to personal liberty, the right to be presumed innocent, and the right to be free from punishment for the crimes of others.

In its Motion to Dismiss, Defendant does not dispute that classifications affecting fundamental rights are subject to heightened scrutiny. (After all, that proposition is well established.) And Defendant also does not attempt to argue that its Program could survive heightened scrutiny. (After all, that question must be decided on a full record, not on a motion to dismiss.) Instead, Defendant argues that the Program does not affect fundamental rights at all; according to Defendant, the Court should "be hesitant to recognize any of the 'rights' described by Plaintiffs as 'fundamental.'" Mot. 10–11. However, there is no need for this Court to "recognize" any new fundamental rights, as all the rights invoked by the First Amended Complaint have *already* been accepted as fundamental by other courts. Because the Program's official policy of discrimination affects well-recognized fundamental rights, that policy is subject to heightened scrutiny, and Defendant's motion to dismiss should accordingly be denied.

**ARGUMENT**

This brief proceeds in three parts. Part I explains that the PCSO's policy of identifying Plaintiffs and subjecting them to disfavored status draws a class-based distinction implicating the Equal Protection Clause. Part II addresses the meat of Defendant's motion to dismiss and explains that the First Amended Complaint states a claim that this class-based distinction implicates numerous fundamental rights—including the right to be secure in one's home, the right to personal liberty,

the right to be presumed innocent, and the right to be free from punishment for the crimes of others—and must therefore be subject to heightened scrutiny. Finally, Part III explains that the list is drawn in a manner that is arbitrary and irrational and cannot survive heightened scrutiny.

## I. THE PCSO'S LIST CREATES A DISCRETE DISFAVORED CLASS, THEREBY TRIGGERING EQUAL PROTECTION SCRUTINY.

At the outset, it is worth pausing to observe that this is a natural case for application of the Equal Protection Clause. After all, at its heart, this is a case about an official policy of class-based discrimination.

The PCSO through its Program has created a discrete and identifiable class consisting of those who are included on its list, whom it deems "Prolific Offenders," as well as their family members and associates. *See* First Am. Compl. ¶¶ 118–38. Listed individuals—and their family members and associates—are subject to an official policy of disparate treatment, including:

- Repeated, unwanted visits from PCSO deputies, which include warrantless searches and interrogations at all hours of the day and night;
- A "zero-tolerance" arrest policy, under which they are arrested for crimes that would not lead to arrest for other members of the population;
- Aggressive code enforcement, by a separately dedicated team of PCSO-employed code enforcement officers, for trivial violations like tall grass, missing house numbers, and trash; and
- A policy of "relentless pursuit, arrest, and prosecution" by PCSO deputies with the avowed goal of using harassment, arrest, and prosecution to force these individuals to move out of Pasco County.

*See* First Am. Compl. ¶¶ 1, 2, 18–19, 26, 33, 73, 139–70, 171–93, 196–97, 205–06, 219, 239, 252, 272, 283. In other words, the PCSO has a policy of identifying a discrete class of residents for disfavored status and then subjecting that class of residents to what amounts to a separate system of policing.

This official policy of discrimination naturally implicates the Equal Protection Clause. Members of the PCSO's list—as well as their family and other associates—are subject to a "governmental classification" as members of a "discrete and identifiable group of citizens" who have been singled out for treatment that is "different[] from other groups." *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296–97 (11th Cir. 2012). Of course, not all classifications violate the Equal Protection Clause. But, as explained below, the PCSO's official policy of discrimination bears a particularly high burden because it implicates individuals' fundamental rights.

## II. PLAINTIFFS STATE A CLAIM THAT THE PCSO'S OFFICIAL DISCRIMINATION BURDENS FUNDAMENTAL RIGHTS.

While the initial Complaint alleged that the challenged Program fails even rational basis review, the First Amended Complaint reframes the Equal Protection claim by alleging that "the PCSO's discrimination between Targeted Persons and their family members, on the one hand, and ordinary citizens, on the other, affects

fundamental rights" and is therefore "subject to at least heightened scrutiny." First Am. Compl. ¶ 289.

There can be no serious question that an official policy of discrimination that affects fundamental rights is subject to heightened scrutiny. *See, e.g.*, *Jones*, 950 F.3d at 817. As the Eleventh Circuit has explained, just as discrimination based on race, gender, parentage, or certain other characteristics is subject to heightened scrutiny, "the Supreme Court has recognized that where a statute significantly interferes with the exercise of a protected right, it must also be reviewed under a similarly heightened level of scrutiny." *Hisp. Int. Coal. v. Governor*, 691 F.3d 1236, 1244 (11th Cir. 2012) ("*HICA*"). In such cases, courts "look beyond the benign glance of rational basis review and demand a tighter fit between the classification and the government's interests." *Jones*, 950 F.3d at 817; *see also Police Dep't v. Mosley*, 408 U.S. 92, 101 (1972) (statutes affecting fundamental rights must be "narrowly tailored to their legitimate objectives"). Defendant does not attempt to dispute this proposition.[1]

---

[1] For this reason, the equal protection claim at issue here is distinct from the claim at issue in *Brumit v. City of Granite City*, No. 19-CV-1090-SMY, 2021 WL 462624, at *5 (S.D. Ill. Feb. 9, 2021), which this Court previously cited in its order dismissing Plaintiffs' equal protection claim. *See* Dkt. # 30 at 8. The Court in *Brumit* held that the plaintiffs' equal protection claim failed because it was subject to rational basis review and "[c]rime deterrence and prevention are rational and legitimate reasons." 2021 WL 462624, at *5. However, *Brumit* did not involve an official policy of disparate treatment towards listed individuals, much less an official policy under which inclusion on a list affected fundamental rights.

Defendant, instead, largely denies that the Program implicates fundamental rights. Defendant asserts that the "Court should be hesitant to recognize any of the 'rights' described by Plaintiffs as 'fundamental,'" Mot. 11, and Defendant cites the Eleventh Circuit for the proposition that courts should "'exercise the utmost care whenever [they are] asked to break new ground' in the field of fundamental rights," *id.* at 12 (quoting *Lofton v. Sec'y of the Dep't of Child. & Fam. Servs.*, 358 F.3d 804, 815-16 (11th Cir. 2004)). However, the First Amended Complaint does not ask the Court to "break new ground" or to recognize any new fundamental rights; to the contrary, the First Amended Complaint invokes rights that have *already* been well accepted as fundamental.

**A. THE RIGHT TO BE SECURE IN ONE'S HOME.**

First, the First Amended Complaint states a claim that the PCSO's policy of discrimination burdens the fundamental right to be secure in one's home. *See* First Am. Compl. ¶ 287. The PCSO subjects individuals on the list (as well as their family and associates) to regular warrantless visits at their homes, including visits during which deputies trespass on the curtilage, look over fences, peer into windows, and seek entrance into the home. *See id.* ¶¶ 156–60. And the PCSO also subjects these same individuals to a policy of heightened property code enforcement, fining them for picayune violations like tall grass or missing house numbers on a mailbox. *Id.* ¶ 172. More broadly, PCSO subjects these individuals to

an official policy of harassment with the ultimate goal of forcing them out of their homes. *Id.* ¶¶ 192–93.

Defendant does not really dispute that the right to be secure in one's home is a fundamental right. Perhaps that is because the right has long been recognized as such. *See, e.g.*, *Berger v. New York*, 388 U.S. 41, 53 (1967) ("The security of one's privacy against arbitrary intrusion by the police . . . is basic to a free society." (marks and citation omitted)); *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006) (recognizing that the right to be secure in one's "persons, houses, papers, and effects" is a "fundamental right"); *United States v. Shrum*, 908 F.3d 1219, 1230 (10th Cir. 2018) (recognizing the "fundamental constitutional guarantee of sanctity of the home" (marks and citation omitted)); *Pearson v. United States*, 150 F.2d 219, 220 (10th Cir. 1945) (recognizing the "fundamental right" of the people to "be secure in their homes and possessions against unreasonable searches and seizures," which "goes back many years prior to the foundation of our government"). There can be no real question that the right to security in the home is a fundamental right.

Rather than seriously argue otherwise, Defendant argues that these claims are essentially redundant with Plaintiffs' claim brought directly under the Fourth Amendment. *See* Mot. 10. However, the same official policy may violate multiple constitutional provisions, and the fact that the Complaint states a claim under the

Fourth Amendment is not a reason to hold that it does not also state a claim under the Equal Protection Clause. *See, e.g.*, *Floyd v. City of New York*, 959 F. Supp. 2d 540, 562 (S.D.N.Y. 2013) (holding that official police policy violated both the Fourth Amendment and the Equal Protection Clause). Moreover, these two claims are meaningfully distinct: Under the Equal Protection Clause, heightened scrutiny applies to a classification that "burdens" or "significantly interferes" with the exercise of a fundamental right. *See, e.g.*, *Jones*, 950 F.3d at 817 ("burdens"); *HICA*, 691 F.3d at 1244 ("significantly interferes"). And that is true even if the burden or interference does not itself violate the Constitution. *See, e.g.*, *Jones*, 950 F.3d at 817 (applying heightened scrutiny to classification that burdened the right to vote, although the Constitution does not guarantee the right to vote). Regardless of whether any *particular* visit to the home would or would not violate the Fourth Amendment if considered in isolation, the PCSO's official policy of subjecting listed individuals (and their family members and associates) to regular home visits and heightened code enforcement draws a classification that burdens the right to security in the home and must therefore satisfy heightened scrutiny under the Equal Protection Clause.

### B. THE RIGHT TO PERSONAL LIBERTY.

Second, the First Amended Complaint states a claim that the PCSO's classification burdens the right to personal liberty, as the PCSO subjects listed

individuals and their family members to a "zero-tolerance arrest policy." First Am. Compl. ¶ 288. This means that "deputies do not have discretion to elect to not pursue charges" for offenses that otherwise would not typically lead to arrest. *Id.* ¶¶ 146–49. The right not to be arrested, of course, also implicates a fundamental right to personal liberty, with the result that heightened scrutiny is also appropriate on this basis as well. *See Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (applying heightened scrutiny to equal protection challenge to civil commitment) (citing *Baxstrom v. Herold*, 383 U.S. 107, 110 (1966)).

To this, Defendant responds that the right to be free from arrest is limited to a "right to be free from arrest *without probable cause*," Mot. 10, suggesting that deputies are free to single out a class for arrest so long as the arrests are technically supported by probable cause. However, this argument incorrectly conflates the due process right to be free from wrongful arrest with the separate equal protection right to be free from an official policy of discrimination with respect to arrests. *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 608 (1985) (explaining that "[s]electivity in the enforcement of criminal laws is . . . subject to constitutional constraints"). Probable cause may defeat a claim of wrongful arrest, but it does not insulate conduct from constitutional scrutiny where, as here, an individual was subject to discretionary police action while "otherwise similarly situated individuals" were not. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019); *see also id.*

(suggesting that probable cause is not a defense where "officers have probable cause to make arrests, but typically exercise their discretion not to do so"); *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1417–18 (S.D. Fla. 2014) ("[T]he determination of probable cause does not preclude a plaintiff from pursuing a claim that the state chose to prosecute him due to invidious discrimination.").

Here, the First Amended Complaint alleges that PCSO has adopted an explicit policy of discrimination towards listed individuals and their associates, who are subject to an expressly stated "zero-tolerance" arrest policy for even minor offenses. That express and intentional policy of class-based discrimination with respect to a fundamental right requires heightened equal protection scrutiny regardless of whether any individual arrest is supported by probable cause.

### C. THE RIGHT TO BE PRESUMED INNOCENT.

Third, the First Amended Complaint states a claim that the PCSO's classification burdens the right to be presumed innocent. *See* First Am. Compl. ¶ 295. The First Amended Complaint alleges that "inherently uncertain predictions about a person's possible future behavior are not a legitimate basis to subject a person to a formalized program of disparate treatment," and, "[b]y discriminating against Targeted Persons based on hypothetical future crimes, the PCSO disregards the fundamental principle that individuals are innocent until proven guilty." *Id.*

In response, Defendant contends that no court has acknowledged a fundamental right "to be 'presumed innocent.'" Mot. 10–11. That is simply wrong. The Supreme Court has unequivocally held that "[t]he presumption of innocence unquestionably [is a] . . . principle of justice so rooted in the traditions and conscience of our people as to be *ranked as fundamental*." *Nelson v. Colorado*, 137 S. Ct. 1249, 1256 n.9 (2017) (emphasis added); *see also United States v. Padgett*, 422 F. App'x 287, 288 (4th Cir. 2011). "Axiomatic and elementary, the presumption of innocence lies at the foundation of our criminal law." *Nelson*, 137 S. Ct. at 1255–56. The PCSO's classification burdens this fundamental right because the PCSO subjects listed individuals and their family members to an entire system of disparate treatment based on a determination that those individuals will commit future crimes that have not yet occurred.

### D. THE RIGHT NOT TO BE PUNISHED FOR ANOTHER'S CRIMES.

Finally, with respect to family members and associates of listed individuals, the First Amended Complaint states a claim that the PCSO's classification burdens the fundamental right not to be punished for the crimes of another. *See* First Am. Compl. ¶ 286. Indeed, Plaintiffs have alleged that their families were subjected to a pattern of harassment because of their association with children who were included on the PCSO's list. *Id.* ¶¶ 170, 184, 186, 211, 229.

In response, the PCSO argues that Plaintiffs do not possess "a 'fundamental right' not to be 'punished' for the crimes of another." Mot. 11. However, that too is incorrect. Much to the contrary, "personal guilt is a *fundamental* element in the American scheme of liberty," and, therefore, "predicating punishment only on personal guilt is such a *fundamental* notion," that "*fundamental* concepts of justice" prohibit "the imposition of punishment . . . by reference to . . . other concededly criminal activity." *St. Ann v. Palisi*, 495 F.2d 423, 425 (5th Cir. 1974) (emphasis added).[2] And this fundamental principle applies not only to prosecutions, but investigations as well. *See Ybarra v. Illinois*, 444 U.S. 85, 86 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); *see also Swint v. City of Wadley*, 51 F.3d 988, 997 (11th Cir. 1995).

In other words, Plaintiffs have a fundamental right not to be punished for—or deprived of their rights as the result of—the offenses of another. That practice—punishing one person "in lieu of" the true target—is impermissible because it constitutes a "punishment of association." *Ward v. Athens City Bd. of Educ.*, No. 97-5967, 1999 WL 623730, at *7 (6th Cir. Aug. 11, 1999) (emphasis omitted)

---

[2] "Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in this circuit." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 n.9 (11th Cir. 2007) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)).

(citing *Adkins v. Bd. of Educ.*, 982 F.2d 952, 954 (6th Cir. 1993)). But "punishment of association" is exactly what the Program metes out. *See* First Am. Compl. ¶ 85 (alleging that "[a] PCSO deputy . . . explained that they arrested Robert because, 'we couldn't get the kids, so we arrested the dad.'"). The Court has already held that the PCSO's policy of guilt-by-association states a plausible claim for relief under principles of substantive due process, *see* Dkt. # 30 at 7, and, because the PCSO has adopted this policy with respect to a discrete list of individuals, that official policy also gives rise to a claim under the Equal Protection Clause as well.

## III. PLAINTIFFS STATE A CLAIM THAT THE PCSO'S LIST CANNOT PASS HEIGHTENED SCRUTINY.

Because the PCSO's classification burdens fundamental rights, it must be subject to heightened scrutiny—meaning the Court should "look beyond the benign glance of rational basis review and demand a tighter fit between the classification and the government's interests." *Jones*, 950 F.3d at 817. That alone should end the inquiry on a motion to dismiss: Whether the classification can satisfy heightened scrutiny should be decided on a complete factual record. *See* Dkt. # 30 at 7 (holding that analogous substantive due process claim "must await analysis on a more informative record"). Perhaps for that reason, Defendant does not even attempt to argue that the Complaint would fail to state a claim in the event that heightened scrutiny applies.

In any event, the First Amended Complaint alleges that the PCSO's classification is drawn in a manner that is arbitrary and unreasonable and—thus—certainly cannot satisfy heightened scrutiny. *See* First Am. Compl. ¶ 290. Among other things, the PCSO's algorithm does not consider offenses committed outside of Pasco County, *id.*; assigns points merely for "being a witness, victim, or a reporting party" to an offense, *id.* ¶ 128; calculates points in a manner such that "an individual who commits (or is suspected of committing) several small crimes in a short period of time is more likely to be identified . . . than an individual who has spent a lifetime committing more severe crimes," *id.* ¶ 131; and is geared to identify a set number of offenders within Pasco County, with the result that "[i]f Pasco County has fewer serious offenders, the Prolific Offender list will include more people with relatively minor criminal histories," *id.* ¶ 132. More broadly, PCSO itself concedes that its algorithm "does not guarantee that the individual will reoffend" because "past and present behavior . . . may not predict future behavior." *Id.* ¶ 136. The PCSO's classification cannot survive heightened scrutiny.

Moreover, the First Amended Complaint further alleges that, after this flawed algorithm has identified a pool of prolific offenders, an analyst then makes a subjective determination as to which individuals should be included on the PCSO's list. *Id.* ¶ 137. And, in making that determination, the analyst considers a host of impermissible factors, including whether a person is "[s]ocio-economically

deprived"; comes from a "broken home"; has "[l]ow intelligence"; has "[r]eceived poor rearing as a child"; has been known to exhibit "[a]ntisocial behavior," or been seen "[h]anging around in public"; or has been "a victim of personal crime." *Id.* ¶¶ 138, 291–94. Defendant, in response, argues that "Plaintiffs have not alleged how a crime analyst would even have this information," Mot. 7, but, to the contrary, the First Amended Complaint alleges that this information is "provided by the Pasco County public school system and the Florida Department of Children and Families." First Am. Compl. ¶ 124. The use of these impermissible criteria increases the degree of necessary scrutiny, particularly in conjunction with the Program's impact on fundamental rights, *see Jones*, 950 F.3d at 817, and confirms that the Plaintiffs here have stated an Equal Protection Claim.[3]

[3] Defendant argues that "Plaintiffs do not have standing to challenge the use of that criteria absent an allegation that they had been deemed 'Targeted Persons' due to application of those criteria *to them*." Mot. 6 (emphasis in original). However, Plaintiffs allege that the analysts who determine whether to list an individual make use of this criteria, *see* First Am. Compl. ¶¶ 137–38, and Plaintiffs further allege that they (or their children) were listed as prolific offenders, *see id.* ¶¶ 15, 195, 204, 215, 223, 234, 260, 294. It follows that these factors were applied when Plaintiffs were added to the PCSO's list. *See, e.g.*, *Duran v. City of Satellite Beach*, No. 05-cv-906, 2005 WL 2129300, at *2 (M.D. Fla. Sept. 2, 2005) ("For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.").

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Dismiss Count V of the First Amended Complaint be denied.

Dated: October 1, 2021.

Respectfully submitted,

/s/ Ari S. Bargil
Ari S. Bargil (FL Bar No. 71454)
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
abargil@ij.org

Joshua A. House (CA Bar No. 284856)*
Caroline Grace Brothers (DC Bar No. 1656094)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
jhouse@ij.org
cgbrothers@ij.org

Robert E. Johnson (OH Bar No. 0098498)*
INSTITUTE FOR JUSTICE
16781 Chagrin Boulevard, Suite 256
Shaker Heights, OH 44120
Tel.: (703) 682-9320
Fax: (703) 682-9321
rjohnson@ij.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of October, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Thomas W. Poulton
poulton@debevoisepoulton.com

Jeffrey K. Grant
grant@debevoisepoulton.com

Erin M. Tueche
tueche@debevoisepoulton.com

Robert D. Holborn, II
holborn@debevoisepoulton.com

DEBEVOISE & POULTON, PA
1035 S Semoran Blvd, Suite 1010
Winter Park, FL 32792-5512

/s/ Ari S. Bargil