UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR; TAMMY
HEILMAN; DARLENE DEEGAN;
and ROBERT A. JONES III,

   *Plaintiffs*,

v.

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

   *Defendant*.

Case No. 8:21-cv-00555-SDM-CPT

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER AS TO
PLAINTIFFS' SECOND REQUESTS FOR ADMISSION**

**INTRODUCTION**

    Both parties agree that this is a complex case involving multiple plaintiffs with several causes of action arising largely from dozens of interactions with Pasco County Sheriff's Office deputies. Plaintiffs' goal in serving their second set of requests for admission is to save the Court's and the parties' time by reducing the number of undisputed facts from those interactions that must be proven. The Defendant bears the burden of showing that the benefit to everyone of streamlining the litigation is outweighed by the burden of answering Plaintiffs' requests such

1

that a protective order is needed. Because Defendant has failed to carry that burden, this motion should be denied.

## ARGUMENT

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). A party seeking a protective order pursuant to Rule 26(c) bears the "heavy burden" of persuading the court that "good cause" exists for why the requested discovery should not be permitted. *Eres v. Progressive Am. Ins. Co.*, No. 17-cv-2354-T-17SPF, 2018 WL 11344801, at *2 (M.D. Fla. Sept. 21, 2018); *see also Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011). The Court's analysis of a motion for a protective order must "weigh[] the interests of the party moving for the order against the interests of the party seeking to obtain discovery." *Roland Corp. v. inMusic Brands, Inc.*, No. 17-cv-22405-Moreno/Louis, 2019 WL 13032405, at *1 (S.D. Fla. Sept. 24, 2019).

This response proceeds in two parts. Part I explains the purpose of Plaintiffs' requests for admission and breaks down the types of information Plaintiffs intend to verify through their requests. Part II explains why Defendant has not carried his heavy burden of showing that there is good cause for relieving him of his obligation to answer Plaintiffs' requests.

## I. PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION SEEK TO SAVE THE COURT'S AND THE PARTIES' TIME BY NAILING DOWN THE BASIC FACTS OF THIS CASE.

Rule 36 is "[e]ssentially . . . a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial.'" *Perez v. Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002) (emphasis omitted) (citing 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2252 (2d ed. 1994)). Requests for admission are meant to "reduce the cost of litigation by narrowing the scope of disputed issues, facilitating the succinct presentation of cases to the trier of fact, and eliminating the necessity of proving undisputed facts." *V.B. v. Advanced Bionics, LLC.*, No. 11-24496-CIV-Rosenbaum/Seltzer, 2013 WL 12094316, at *1 (S.D. Fla. Jan. 3, 2013) (citation omitted).

To that end, as the parties are transitioning from the discovery phase to the summary-judgment and trial phases, Plaintiffs designed their second set of requests for admission to create a skeleton of the undisputed facts in this case. The bulk of the claims in this case concern interactions between Pasco County Sheriff's Office (PSO) deputies and the Plaintiffs (or the Plaintiffs' children) at the Plaintiffs' homes; these requests are meant to establish basic, uncontested information about those interactions. For example:

- Fully half of the 305 requests seek to verify only the date, time, address, name of the deputy (or deputies), and sometimes the nature

3

      of PSO deputies' visits to the Plaintiffs' homes.[1] The nature of the interaction is indicated by the "Nature" field in PSO's Computer Aided Dispatch (CAD) reports, which are generated for almost all PSO deputy interactions with the public. The "Nature" field is one line, selected from a drop-down menu of options (one of which is "Prolific Offender Check") by the deputy filling out the report;

- About 30 requests ask Defendant to admit or deny information as entered by PSO deputies on a CAD report or Incident Report, such as whether a Plaintiff or a Plaintiff's child was arrested or whether a code citation was issued during a particular visit;

- Thirty-two requests ask Defendant to verify that certain quoted text appears in the PSO's "Offender Notes," a separate database where deputies entered notes after many of their interactions with the Plaintiffs and the Plaintiffs' children;

- Twenty-two requests seek verification of PSO deputies' roles—such as whether the deputy was a member of the STAR team or a code enforcement corporal—at the time they were making visits to the Plaintiffs' homes; and

- Thirty-nine requests ask Defendant to admit or deny quotes or actions in PSO deputies' body-worn camera footage from 27 incidents.

All of Plaintiffs' requests ask Defendant to verify narrow, discrete facts drawn from a lengthy factual record.

      Plaintiffs agree with Defendant that this case is "complex." Mot. 5. That is precisely why these requests are "fact-specific," Mot. 2, 6, so that the parties can nail down the many uncontested facts in this case "to conserve the time of the

---

[1] As an example, Request for Admission 286 reads: "PSO CAD records reflect that, on December 29, 2015, at 9:46 p.m., Corporal Royce Rodgers visited 3810 Headsail Drive to perform a prolific offender check on Bobby Jones."

4

Court, counsel, litigants and all persons involved in the proceedings." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2252 n.2 (3d ed. 2010) (citation omitted). Because "the benefits enjoyed by all in reducing the number of issues disputed at trial outweigh the harms suffered by Defendant in answering [Plaintiffs'] requests," Defendant's motion for a protective order should be denied. *Roland Corp*, 2019 WL 13032405 at *2.

## II. DEFENDANT HAS FAILED TO MEET HIS BURDEN TO SHOW GOOD CAUSE FOR A PROTECTIVE ORDER.

Defendant raises three main points in his motion: (1) Plaintiffs' requests are "excessive in number;" (2) Defendant does not have time to respond to the requests; and (3) Plaintiffs' requests are "unnecessary" because Defendant does not contest the authenticity of the documents and body-worn camera footage that form the basis of Plaintiffs' requests. Each of these arguments lack merit.

### A. The volume of Plaintiffs' second set of requests for admission is justified by the complexity of the case.

Defendant's argument that 305 requests for admission is "excessive" is unfounded and misses the point of the role of Rule 36 in a case like this. Mot. 3, 4. "A dispute's overall complexity is a central consideration when determining the propriety of a protective order" and "[t]he volume of requests for admission is not, in a vacuum, sufficient grounds for a protective order." *Roland Corp.*, 2019 WL

13032405, at *2 (finding that a set of 511 requests for admission was not "excessive, overly burdensome, or disproportional" because the case—which involved multiple patent infringement claims concerning eight different patents—was complex enough to warrant a high number of requests); *see also League of Women Voters of Fla., Inc. v. Lee*, No. 21-cv-186-MW/MAF, 2021 WL 4963439, at *2 (N.D. Fla. Oct. 22, 2021) (denying motion for protective order concerning 483 requests for admission listed on over 131 pages because the complexity of the case "justifie[d] voluminous requests for admissions").

Defendant does not dispute that this case is "complex." Mot. 5. This case involves four plaintiffs (and four of plaintiffs' children), five causes of action, and dozens of PSO interactions per plaintiff going back several years. Discovery in this case has yielded "tens of thousands of pages of reports, emails, and other Sheriff's documents" as well as body-worn camera footage for many of the interactions between PSO deputies and the Plaintiffs. Mot. to Enlarge Case Deadlines 2 (ECF 67). "Simply put, this is not a mine-run case; if any case justifies voluminous requests for admissions, this is it." *League of Women Voters of Fla., Inc.*, 2021 WL 4963439, at *2.

Nor does any of the authority cited by Defendant suggest otherwise. In *Wilson v. Jackson National Life Insurance Company*, the court found that the 527 requests for admission served by the defendant—accompanied by over 5,000 pages

6

of attachments—were unduly burdensome because even the defendant had "characterized [that case] as a 'simple "breach of contract" action' between only two parties." No. 15-cv-926-J-39JBT, 2017 WL 10402569, at *2 (M.D. Fla. Feb. 13, 2017). In each of the other cases cited by Defendant, a motion for a protective order was granted either because requests for admission were largely irrelevant, *see United States v. Medtronic, Inc.*, No. 95-cv-1236-MLB, 2000 WL 1478476, at *3-4 (D. Kan. July 13, 2000); *Joseph L. v. Conn. Dep't of Children & Families*, 225 F.R.D. 400, 403 (D. Conn. 2005), or because a set of several hundred requests for admission was structured so that it "effectively propound[ed] many thousands of requests," *Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV-Marra/Seltzer, 2006 WL 8433856, at *3 (S.D. Fla. Dec. 29, 2006). Here, Defendant does not contest the complexity of the case or the relevance of any of Plaintiffs' requests. Nor has Defendant argued that the number of Plaintiffs' requests is any higher than it appears to be.

Out of the vast number of documents and other materials already produced in this case, Plaintiffs' requests hardly represent "an attempt to pick every nit that a squad of lawyers could possibly see in it." *Wilson v. Jackson Nat'l Life Ins. Co.*, No. 15-cv-926-J-39JBT, 2017 WL 10402569, at *1 (M.D. Fla. Feb. 13, 2017). The requests are based primarily on 160 CAD reports—most of which are one to two pages in length, and all of which have already been compiled by counsel and

7

introduced as exhibits in the 30(b)(6) deposition—10 incident reports, and body-worn camera footage for 27 incidents.[2] Most of the videos are also fairly short, and Plaintiffs are asking Defendant to verify only discrete facts and statements from the footage. Counsel for both parties have been reviewing the body-worn camera footage, as evidenced by the fact that both sides have introduced segments of the footage at depositions, and Defendant also reviewed all of the footage prior to production to make sure that it did not contain sensitive law enforcement information. Defendant's initial review took place in a reasonable amount of time then and reviewing the subset of footage referenced in Plaintiffs' requests should take even less time now.

**B. Defendant's belief that some requests require context and assertion that his counsel lacks the time to provide that context does not constitute good cause for a protective order.**

Defendant also argues that he should be excused from his obligation to answer Plaintiffs' requests for admission because he does not have time to answer the requests and include some of the context he believes is necessary. Plaintiffs do not contest Defendant's ability to provide additional relevant facts. As explained above, these requests for admission do not attempt to "cover all the issues . . . of [this] complex case." *Wilson*, 2017 WL 10402569, at *1. Instead, the requests

---

[2] For ease of reference, Plaintiffs are also willing to provide Defendant with the case numbers that correspond to each report and the file names that correspond to each video.

8

cover basic information concerning PSO's interactions with Plaintiffs, and both Plaintiffs and Defendant will likely use other relevant facts and information down the road that do not appear in these requests.

But the contention that facts outside a set of requests for admission might be relevant as well does not constitute good cause for a protective order. *See Lewis v. Michaels Stores, Inc.*, No. 05-cv-1323-J-33HTS, 2007 WL 2021833, at *2-3 (M.D. Fla. July 12, 2007) (noting that an objection that requests sought "only some of the facts . . . taken out of context" was "meritless"). It is a "common occurrence" for parties to "use an admission to establish a fact contained within a document rather than introduce the whole document." *Stiefel Labs. Inc. v. Brookstone Pharms., L.L.C.*, No. 08-cv-3773-CAP, 2011 WL 13136820, at *1 (N.D. Ga. June 17, 2011), *report and recommendation adopted*, 2011 WL 13137128 (July 15, 2011). "There is no inherent unfairness in a request to admit the contents of a document," and to the extent Defendant "believes [] fact[s] must be understood in context [he] may use the full document accordingly." *Id.* at *1, *2; *see also id.* at *2 (overruling an objection that a request for admission "gives the impression that the point cited is the most important point in [a] lengthy document" because there is not "any basis to support such an objection").

Nor does Defendant's counsel's busy schedule justify issuing a protective order. The discovery remaining in this case—which Defendant argues hampers his

9

ability to respond to Plaintiffs' requests—has dwindled since Defendant filed his motion on March 21, 2022. *See* Mot. 3-4. Defendant has disclosed his experts, completed three depositions, and filed another motion to release certain juvenile records in the past week. The parties anticipate only four additional depositions in this case: two of Defendant's experts, one of Plaintiffs' second expert, and one of Plaintiff Dalanea Taylor. Plaintiffs are sympathetic to the demands on Defense counsel's time, which is why Plaintiffs' counsel tried to offer Defendant "an extension of time even beyond the formal discovery close date for Defendant to respond." Mot. 4-5. Plaintiffs remain willing to offer an extension. But Defendant cannot rely on his counsel's commitments in other cases to avoid his discovery responsibilities in this one, especially when Plaintiffs "have reasonably attempt[ed] to accommodate the schedule[]" of Defendant by offering to extend his deadline to comply. Middle District Discovery (2021) at Section I.A.3. And in any event, any "burden [placed on] defense counsel to review and respond to so many requests," Mot. 8, is far outweighed by the benefit of saving the Court from having to decide each of those many undisputed facts, *see Roland Corp.*, 2019 WL 13032405, at *2.

C. **The purpose of requests for admission is to establish uncontested facts, regardless of the authenticity of the documents that provide the basis for those facts.**

The goal of Rule 36 is "to promote trial efficiency by eliminating *uncontested* factual matters." *Stevens v. United States*, No. 3-81110-CIV-Hurley,

2011 WL 13173610, at *1 (S.D. Fla. July 25, 2011) (emphasis added) (citing *Am. Auto Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1121 (5th Cir. 1991)). Defendant's argument that Plaintiffs' requests concerning the content of certain documents and videos are not "necessary" because "there is no question . . . as to the authenticity of the subject documents or body worn camera [footage]" again misapprehends the Rule's purpose, which is to establish precisely those facts which are "no[t] question[ed]." Mot. 2. Establishing undisputed facts—even when those facts are drawn from documents and videos whose authenticity is undisputed—serves the dual function of helping the Court understand documents that are not always easy to interpret and reducing the time the Court must spend reviewing documents and video in this case. Indeed, Defendant's objection that answering these requests will require time and effort on the part of counsel just highlights the fact that the requests will save an equal *or greater* amount of the Court's time down the road in the case. The fact that no one contests the authenticity of the materials in this case is not a valid reason for a protective order. *See Lewis*, 2007 WL 2021833, at *3 n.1 ("The tautological 'objection' that the finder of fact can read the document for itself to see if the quote is accurate is not a legitimate objection but an evasion of the responsibility to either admit or deny a request for admission.") (cleaned up).

11

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion for Protective Order As To Plaintiffs' Second Requests for Admission be denied.

Dated: March 30, 2022.

Respectfully submitted,

/s/ Ari S. Bargil
Ari S. Bargil (FL Bar No. 71454)
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
abargil@ij.org

Joshua A. House (CA Bar No. 284856)*
Caroline Grace Brothers (DC Bar No. 1656094)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
jhouse@ij.org
cgbrothers@ij.org

Robert E. Johnson (OH Bar No. 0098498)*
INSTITUTE FOR JUSTICE
16781 Chagrin Boulevard, Suite 256
Shaker Heights, OH 44120
Tel.: (703) 682-9320
Fax: (703) 682-9321
rjohnson@ij.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of March, 2022, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to the following counsel of record:

Thomas W. Poulton
poulton@debevoisepoulton.com

Jeffrey K. Grant
grant@debevoisepoulton.com

Erin M. Tueche
tueche@debevoisepoulton.com

Robert D. Holborn, II
holborn@debevoisepoulton.com

DEBEVOISE & POULTON, PA
1035 S Semoran Blvd, Suite 1010
Winter Park, FL 32792-5512

/s/ Ari S. Bargil