UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR, TAMMY
HEILMAN, DARLENE DEEGAN,
and ROBERT A. JONES III,

    Plaintiffs,

v.   Case No. 8:21-cv-555-SDM-CPT

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

    Defendant.
_____/

**O R D E R**

    Before the Court is Defendant Sheriff Chris Nocco's *Motion to Order Release of Records*. (Doc. 78). With the benefit of oral argument and Nocco's supplemental submissions on the matter (Docs. 87, 94), Nocco's motion is granted.[1]

I.

    This action stems from the Pasco County Sheriff's Office's (PCSO) Intelligence-Led Policing (ILP) Program, by which the PCSO seeks to identify individuals who are

---

[1] The Court heard oral argument over the course of a number of the discovery hearings it has regularly conducted with the parties in this case, including at the most recent discovery hearing held on May 10, 2022. For the sake of simplicity, the Court will collectively refer to all of its discussions with the parties on the issues underlying Nocco's motion as "oral argument," except where the distinction between the hearings is material to the Court's analysis.

prolific offenders (including juveniles) and who should therefore be subject to "offender checks" by members of law enforcement. (Doc. 41). Plaintiffs Dalanea Taylor, Tammy Heilman, Darlene Deegan, and Robert A. Jones III allege in their operative complaint, *inter alia*, that the PCSO's ILP program violates the First, Fourth, and Fourteenth Amendments to the United States Constitution and principally seek declaratory and injunctive relief, as well as compensatory and nominal damages. *Id.*

As part of his discovery efforts, Nocco served Rule 45 subpoenas on Florida's Department of Juvenile Justice (DJJ) and the Pasco County Clerk of Court (PCCC), requesting certain juvenile delinquency records for Heilman's two sons, Anthony and Donnie McDougall, as well as Jones's son, Robert Jones IV. (Docs. 78 at 5, 78-1, 78-2). Although apparently now adults, all three of these individuals were designated as prolific offenders during their youth. (Doc. 78 at 1–2, 6). Nocco represented at oral argument and in his filings that the McDougalls, Jones IV, and the Plaintiffs were all notified of these Rule 45 subpoenas but have made no effort to challenge them. (Doc. 94 at 3).[2]

The DJJ and the PCCC did object to the subpoenas, however, asserting that the sought-after records were confidential under Florida law and could not be provided to Nocco without a judicial directive authorizing their release. (Docs. 78 at 4, 94 at 3).

---

[2] Nocco is also separately seeking the production of the juvenile delinquency records for Taylor, who was likewise denominated as a prolific offender when she was a youth. (Doc. 78 at 1, 5). According to Nocco, however, Taylor has executed a waiver allowing for the disclosure of those materials, and the DJJ and PCCC are currently in the process of producing them. *Id.* at 5. As such, the Court need not address the discoverability of these items.

To buttress that assertion, the DJJ and the PCCC cited Florida Statute section 985.04, which is found in the Florida Statutes' "Juvenile Justice" chapter, and which permits the production of juvenile records "upon order of the court." (Doc. 94 at 3).

By way of the instant motion and as supplemented at oral argument, Nocco now asks that the Court direct the DJJ and the PCCC to comply with his Rule 45 subpoenas by turning over the requested materials regarding the McDougalls and Jones IV. (Doc. 78 at 5). In support of this request, Nocco asserts that these items are relevant to his defense given the nature of the Plaintiffs' allegations and the evidence he believes the Plaintiffs may seek to introduce at trial. *Id.* at 2–3. Nocco also maintains that he drafted the language in the subpoenas with the assistance of the DJJ and the PCCC to "minimize [the disclosure of] any personal and sensitive information" not directly related to juvenile delinquency matters (such as medical and mental health treatment and evaluations), and that the sought-after materials will be subject to one or both of the confidentiality agreements the parties have executed during the course of this lawsuit. (Docs. 78 at 4, 78-5, 78-6). While the Plaintiffs maintained at oral argument that they take no position on Nocco's motion, they clarified at the May 10 hearing that they believe at least some of the requested records may be helpful to their claims as well.

II.

The principles defining the scope of Rule 45 subpoenas are the same as those governing discovery under Federal Rule of Civil Procedure 26(b). *See WhereverTV, Inc. v. Comcast Cable Communications, LLC*, 2021 WL 1320814, at *3 (M.D. Fla. Feb. 1,

3

2021) ("The scope of discovery under Rule 45 is the same as set forth in Rule 26(b)(1).") (citation omitted) ; *Fed. Trade Comm'n v. Roca Labs, Inc.*, 2017 WL 131574, at *2, n.2 (M.D. Fla. Jan. 13, 2017) ("It is well settled that the scope of discovery [for] a [Rule 45] subpoena is the same as the scope of discovery under Rule 26(b)."); 9A Wright & Miller, Federal Practice & Procedure § 2459 (3d ed.) (noting discovery standards outlined in Rule 26 are applicable to Rule 45) (collecting cases).  Rule 26(b) allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1).

The Eleventh Circuit has instructed that "relevance" under Rule 26(b) (and, presumably by extension, Rule 45) is to be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Akridge v. Alfa Mutual Ins. Co.*, 1 F. 4th 1271, 1276 (11th Cir. 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  As a result, civil litigants are "generally entitled to 'any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence'" regardless of whether it is admissible at trial.  *Id*. (quoting *Degen v. U.S.*, 517 U.S. 820, 825–26 (1996) and citing Fed. R. Civ. P. 26(b)(1)).[3]

The breadth of discovery under Rule 26(b), however, is not defeasible.  *Id*. at 1277 (observing that "'discovery, like all matters of procedure, has ultimate and

---

[3] *Cf.* Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendment (stating that the "provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence'" has been deleted because the phrase "reasonably calculated" could "swallow any other limitation on the scope of discovery" and is therefore too broad).

4

necessary boundaries'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Pertinent to Nocco's motion, Rule 26(c) grants federal courts the discretion to issue protective orders that cabin the extent and manner of discovery where necessary to shield "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

With these principles in mind, it appears from the representations made at oral argument that the sought-after records are discoverable. Indeed, as alluded to above, even the Plaintiffs accede that at least a portion of these materials may be relevant to their claims.

The only remaining question for the Court to address is whether, if at all, section 985.04 of the Florida Statutes restricts Nocco's ability to subpoena these items. The Court's preliminary research on the issue suggests that section 985.04 poses no such bar. *See*, *e.g.*, *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000) (noting that "discovery disputes in federal courts are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence," and that "state statutory confidentiality provisions[, including those dealing with juvenile records,] do not directly govern [such matters, except] to the extent that federal law may recognize the force of those provisions"); *Seales v. Macomb Cty.*, 226 F.R.D. 572, 577 (E.D. Mich. 2005) (finding that state confidentiality statutes pertaining to youth records "d[id] not have controlling weight" in the context of a motion to compel their disclosure and that "the discoverability of [such] information [was] governed instead by the general principles set forth in Fed. R. Civ. P. 26(b)").

Notwithstanding this case authority, the Court will assume without deciding that section 985.04 has at least some applicability here. *Seales,* 226 F.R.D. at 577 (concluding that, while not dispositive, state confidentiality statutes relating to youth records "should be allotted some weight, along with other factors in deciding which materials should be discoverable").[4]  Section 985.04 states, in pertinent part, that "confidential and exempt information" regarding juveniles which are governed by the provision may be disclosed only to a limited number of individuals and entities (including law enforcement agents) "or upon order of the court."  Fla. Stat. § 985.04(1)(b).  Section 985.04 creates an exemption, however, for "the name, photograph, address, and crime or arrest report of a child," who is (a) "[t]aken into custody by a law enforcement officer for a violation of law which, if committed by an adult, would be a felony;" (b) [c]harged with a violation of law which, if committed by an adult, would be a felony;" (c) "[f]ound to have committed an offense which, if committed by an adult, would be a felony; or (d) "[t]ransferred to adult court pursuant to part X of this chapter." *Id.* § 985.04(1)(c)(2)(a).

There appears to be a dearth of authority delineating the standard courts should employ in determining whether to order the release of juvenile delinquency records under section 985.04.  At the May 10 hearing, representatives from the DJJ (Susan Bodnar, Esq.) and the PCCC (Stacey Osborne), both of whom have had prior

---

[4] Such a restrained approach is particularly appropriate in this case given that Nocco's motion is unopposed and has not been the subject of briefing by any party with a vested interested in the sought-after juvenile records.

experience in dealing with section 985.04, did not have much information to offer on this topic. Ms. Bodnar did state, however, that at least with respect to the DJJ, such records are traditionally deemed to be subject to disclosure pursuant to a court order under section 985.04 where, as here, they are represented by counsel to be necessary for litigation.

After careful consideration of the matter and in the absence of any contrary authority, the Court finds that the disclosure of the requested records is warranted given the particular circumstances presented. Several considerations inform the Court's conclusion.

To begin, as discussed previously, the sought-after materials appear to be relevant to Nocco's defenses and potentially the Plaintiffs' claims as well, and are thus discoverable under Rule 26(b). In addition, Nocco claimed at the May 10 hearing it was "highly likely" that at least some of these items related to felonies committed by the McDougalls and Jones IV[5] and thus would seemingly be exempt altogether from the restrictions imposed by section 985.04.

Moreover, even assuming that all of these items fall squarely within the ambit of section 985.04, the subpoenas have been specifically crafted to minimize the release of any personal or sensitive information not directly related to juvenile delinquency matters. Further, none of the interested third parties (including the McDougalls and Jones IV) have interposed any objections to the subpoenas despite being made aware

---

[5] Ms. Bodnar echoed this sentiment at the May 10 hearing based upon her review of the records at issue.

7

of them.  And finally, any juvenile records provided to the parties will be covered by one or both of the confidentiality agreements the parties have executed in connection with the discovery process.  By the Court's view, these circumstances strike an appropriate balance between the parties' legitimate discovery interests and any legitimate interests of the McDougalls and Jones IV in the confidential portions of the requested materials.  *Pearson*, 211 F.3d at 73.

### III.

In light of the foregoing, it is hereby ORDERED:

1. Nocco's *Motion to Order Release of Records* (Doc. 78) is granted.

2. The DJJ and the PCCC shall provide a complete response to their respective subpoenas (Docs. 78-1, 78-2) within ten (10) days of the date of this Order, with the caveat that all social security numbers, dates of birth, and financial-account information in those disclosed documents shall be redacted.  Pursuant to Nocco and the PCCC's request at the May 10 hearing, the PCCC is also directed to provide a copy of this Order to the appropriate state court judge for handling.

3. Upon receipt of the records at issue, Nocco shall promptly provide a copy of all such materials to the Plaintiffs.

4. This Order shall not be construed as expressing any opinion as to the admissibility of these records.

5. The Court reserves the right to modify the parameters of this Order should the McDougalls or Jones IV object to it by way of an appropriate motion.

SO ORDERED in Tampa, Florida, this 19th day of May 2022.

*[signature: Christopher P. Tuite]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record