**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **DALANEA TAYLOR, et al.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **Case No.** |
| **vs.** | ) **8:21-CV-00555-SDM-CPT** |
| | ) |
| | ) |
| **CHRIS NOCCO,** *in his official* | ) |
| *capacity as Pasco County Sheriff,* | ) |
| | ) |
| **Defendant.** | ) |

---

**STATUS CONFERENCE**
***(held via Zoom videoconference)***
**BEFORE THE HONORABLE CHRISTOPHER P. TUITE**
**UNITED STATES MAGISTRATE JUDGE**

**APRIL 5, 2022**
**11:03 A.M.**
**TAMPA, FLORIDA**

---

        Proceedings transcribed via courtroom digital audio
recording by transcriptionist using computer-aided
transcription.

---

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

1    **APPEARANCES:**

2

3    **FOR THE PLAINTIFFS:**

4            *Robert E. Johnson*

5            *Ari Bargil*

6            *Caroline Grace Brothers*

7            Institute for Justice

8            16781 Chagrin Boulevard, Suite 256

9            Shaker Heights, Ohio   44120

10           (703) 682-9320

11

12

13   **FOR THE DEFENDANT:**

14           *Thomas W. Poulton*

15           DeBevoise & Poulton, PA

16           1035 South Semoran Boulevard, Suite 1010

17           Winter Park, Florida   32792-5512

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2                    – – – o0o – – –
 3          THE COURT:  Good morning, everyone.
 4          Madam Clerk, if you could please call the case.
 5          COURTROOM DEPUTY:  Dalanea Taylor, et al. versus
 6   Chris Nocco, Civil Case Number 8:21-CV-555.
 7          THE COURT:  If I could please have the appearances of
 8   counsel for the record, beginning with plaintiff.
 9          MR. JOHNSON:  Good morning, Your Honor.  It's
10   Robert Johnson appearing for plaintiffs, and I am joined by my
11   colleagues Ari Bargil and Caroline Grace Brothers, and I should
12   also add that Ms. Brothers is taking the lead on our side on
13   the motion for a protective order, so to the extent that you
14   have any questions about that, she'll be prepared to address
15   those.
16          THE COURT:  Good morning to you all.
17          And for the defense?
18          MR. POULTON:  Your Honor, I'm Tom Poulton here on
19   behalf of Defendant Sheriff Nocco.
20          THE COURT:  Good morning to you as well.
21          MR. POULTON:  Good morning.
22          THE COURT:  The Court had scheduled this for a
23   status, but it does have the motions in front of it, we'll see
24   how that goes, to determine how best to proceed moving forward.
25          Let me just begin with the status.  Mr. Poulton or
```

1    Mr. Johnson, the two of you have been very good about handing

2    off responsibility for taking the initial lead on advising the

3    Court as to where things stand, putting aside the motions for

4    the moment.  Which of you would like to handle that today?

5              MR. JOHNSON:  I'm happy to take it.

6              MR. POULTON:  Go ahead.

7              MR. JOHNSON:  Go ahead, Tom.

8              MR. POULTON:  From the defense perspective, I think

9    things are going well.  The only -- there's a couple

10   depositions which remain, and they're scheduled.  I still need

11   to depose one of the plaintiffs for medical reasons that's been

12   postponed a couple of times, but we'll work around that.  I'm

13   sure that will be fine.

14             MR. JOHNSON:  Yeah.  And from plaintiffs'

15   perspective, everything is proceeding at pace.  I think,

16   you know, we -- there's a document that we mention in here that

17   we're still waiting on production of, but I'm told that that

18   should be forthcoming shortly.  You know, otherwise there are a

19   few discovery requests that are outstanding where we're

20   expecting responses in, you know, late April, but otherwise

21   I think we're -- we're on track.

22             THE COURT:  Okay.  Mr. Poulton, let me just ask you

23   about the Answer.  It's not something that's been referred to

24   me, but have you alerted Judge Merryday as to what's going on

25   there?

```
 1              MR. POULTON:  Well, circumstances changed.  I think
 2    we filed the report with Your Honor on Thursday, and on Friday
 3    Judge Merryday ruled on the pending motion to dismiss and gave
 4    me 14 days to file an Answer, so I think that that issue is
 5    resolved at the moment.
 6              THE COURT:  I guess we missed that.  Thank you for so
 7    advising.
 8              I guess that then brings me to the motions.
 9              Before I do that, the mediation deadline is
10    April 23rd.  Is that all set up?
11              MR. POULTON:  Yes, April 20th, I believe, Your Honor.
12              THE COURT:  Are you doing that in person or by Zoom?
13              MR. POULTON:  In person.
14              THE COURT:  All right.  Let's talk about the motions.
15              Mr. Poulton, I'll begin with the motion for
16    protective order.
17              Ms. Brothers, I understand you're taking the lead on
18    it; is that correct?
19              MS. BROTHERS:  That's correct, Your Honor.
20              THE COURT:  Mr. Poulton, I'll hear a brief discussion
21    by the parties.  I've read the motions.  I have some thoughts
22    on the matter.  Why don't I hear from you first and then
23    Ms. Brothers.
24              If you could keep it to a modest length, I'd
25    appreciate it.
```

1           MR. POULTON:  Very briefly, Your Honor.

2           I appreciate that -- plaintiffs' position that the

3    point of doing a request for admissions was to try to reduce

4    the disputed facts that plaintiffs would allude to in their own

5    motion for summary judgment, but I think all that does is shift

6    back then to the defense the need to then go through each of

7    the, you know, alleged and disputed facts that are out of

8    context to then place context on them.  So regardless of

9    whether it's the plaintiff in their initial motion for summary

10   judgment saying here is the video, here is what we think is

11   important from it, the defense would then have to go one-by-one

12   and counter that, so I don't think that it really would save

13   the Court any time, it would just be, you know, which party it

14   is that's making the representation about what's in the video

15   or what's in a report.  So I respectfully disagree with

16   counsel's position that it would in any way save the Court any

17   time.  In fact, I think we'd just get mired down in debating

18   those nuances.

19           You know, also, I mean, just frankly, there is no way

20   that I would be able to, within the time remaining, go through

21   those and responsibly admit what I can and carve out the

22   context that I think is important to give a qualified response,

23   which I think would be, you know, in good faith and called for

24   here, given the volume of requests.  It's just not a practical

25   possibility, with all the other things that I have going on.

1    Even if I didn't have those things going on, it would take

2    a lot of time, I think.

3            THE COURT:  Ms. Brothers?

4            MS. BROTHERS:  Um, sure.  So defendant doesn't

5    dispute that this is a complex case and that the purpose of

6    Rule 36 in a case like this is -- with a lengthy factual record

7    is to save the Court itself from having to review and interpret

8    all those documents by identifying those facts that the parties

9    don't dispute.

10           Defendant agrees that these are -- these are

11   undisputed facts in plaintiffs' requests, and in -- we're not

12   trying to stipulate out the entire case here, plaintiffs are

13   trying to create just a skeleton of the facts in this case,

14   where we're going to be using these facts in our motion for

15   summary judgment, so it makes sense to have the parties verify

16   these facts now rather than make the Court verify them later

17   on.

18           Each of the requests is asking defendant to verify

19   narrow, discreet facts drawn from the materials produced in

20   this case, and the more uncontested facts that we can establish

21   now, the fewer disputes of material facts will arise later on

22   and the more time will be saved by the Court later on.  And

23   defendant has the burden of showing that the benefit to all the

24   parties of streamlining the litigation outweighs the burden on

25   him to answer these requests, and, respectfully, we think the

1    defendant hasn't carried that burden.

2         To the extent that he is -- defendant said that there

3    isn't time to answer the requests, we have offered an extension

4    of this time, even past the discovery deadline, to answer these

5    requests, and we're still willing to do that, and we're more

6    than willing to compromise there.

7         So that's -- that's where we stand.

8         THE COURT:  Okay.  I appreciate the argument of

9    counsel.

10        These are just some observations directed at both

11   sides, and I'm going to direct the parties at the end to confer

12   about the matter, for reasons that I'll explain.

13        Having not reviewed all 300-some-odd requests for

14   admission, I'm not in a position to state with any definitive

15   nature or sense exactly what's in them, but I have looked at

16   the filings of the parties, which generally appear to be in

17   agreement in characterizing the requests.

18        So it's represented in the plaintiffs' response that

19   a fair number of the requests for admission involve items as

20   the date and time, address and name of a deputy, or things that

21   deal specifically with a description provided in a report, so

22   that arguably would fall in one category.  As the defense

23   points out in its motion, there is a separate set of items that

24   deal with items or statements that people made during an

25   incident.  So that's not the full state of all of the things

1    that -- the requests for admission, but those two items strike

2    me as being conceptually different.

3            So to the point about saving time, which is a very

4    admirable goal here, I'm sure the Court, particularly

5    Judge Merryday would greatly appreciate it, because,

6    Ms. Brothers, when it comes down to a statement that is made in

7    a -- let's say an interaction, if there is a dispute about the

8    context of the statement and the defense is left with do

9    I admit or deny, and there's a disagreement about the context,

10   in other words, it doesn't fulsomely describe the nature of the

11   interaction, if you were in the same position, how would you

12   handle that?  Would you deny it or would you admit it with

13   contextual proof?  And then by the time you do all that, where

14   do you end up?

15           MS. BROTHERS:  I think I would admit it and provide

16   the context, as defendant has said that he would likely do, and

17   plaintiffs don't contest defendant's ability to do that.

18   They're -- as we've said, these requests don't encompass all of

19   the facts that are relevant to this case, and both parties will

20   probably provide additional relevant facts down the road, so

21   it -- to the extent defendant believes that context is needed,

22   he's at perfect liberty to provide that context.

23           THE COURT:  Where there is context, is it just going

24   to end up to be a material issue of fact in dispute, or -- in

25   other words, I'm trying to think about this not only from the

1  parties' perspective but from the Court's, so the parties use

2  their resources efficiently.  Do you end up in the same place?

3              MS. BROTHERS:  I -- so I don't think -- well, first

4  of all, I don't think that the statements included in

5  plaintiffs' requests are disputed.  I think defendant would be

6  providing additional facts from the interaction, which,

7  depending on what defendant provides there, I don't anticipate

8  plaintiffs' disputing the additional facts that defendant

9  provides in terms of context, so it would just be a matter of

10  defendant adding additional undisputed facts in response to a

11  request.

12              THE COURT:  The other question I had is how are the

13  statements admissible?  I'm just curious.

14              For example, if an officer shows up to a residence

15  and speaks with that individual to which you're referring in

16  your requests for admission, how is the statement of the

17  individual admissible, under what rule?

18              MS. BROTHERS:  Um, I believe it would be in the --

19  I mean, the video itself isn't -- its authenticity isn't

20  contested, and so it would be admitted as a document created by

21  defendant as a -- as a Government record.

22              THE COURT:  So there's -- yeah.  So there's an

23  exception, a hearsay exception for business record, I think

24  it's 806.

25              MS. BROTHERS:  Um-hum.

1     THE COURT:  There's -- when you refer to something

2   that the Government -- it's a Government video, you could argue

3   it's an adopted admission.

4     The reason I raise these issues is because before the

5   parties dedicate a fair amount of resources into all of this,

6   I'm going to have them confer.  There might be some examination

7   of the grounds for admissibility of some of these statements

8   and how they're coming in.

9     The other thing I would encourage the parties to

10  think, how is it envisioned this is going to go at trial?  If

11  you're putting a video on, are you going to have a transcript,

12  Ms. Brothers?

13     MS. BROTHERS:  Potentially.  We'll -- we'll see

14  where -- we're figuring out now how we would use that.

15  That's -- that's part of the reason why these admissions would

16  be so helpful, is to establish some of these things now, but

17  we're still figuring out how we would put that evidence on.

18     THE COURT:  So if you're going to use a transcript,

19  you're going to have to go through an exercise anyway in

20  advance of trial in a meet and confer addressing the

21  transcript.

22     MS. BROTHERS:  Correct, and -- but to the extent that

23  we can narrow down some of those -- that we can nail down some

24  of those issues now, that would still save time down the road.

25     THE COURT:  Well, let me just say this, in your

1    motion for summary judgment, can't you just put in the quote

2    anyway, because it's -- and say that it's a quote from the

3    video?

4            I'm cognizant of proportionality here, to be honest,

5    and so -- I'm sure Mr. Poulton -- as I'm sure is true of

6    plaintiffs' counsel, everybody has work to do, and so the Court

7    has to consider proportionality, but if you're going to be in a

8    position where you have a summary judgment motion where you're

9    going to represent something was said and you have evidence to

10   support it and you're going to claim it's undisputed and you'll

11   have some grounds for admissibility, because it will have to be

12   admissible, then why not just leave it at that and let the

13   defendant respond to each of those in response to the motion

14   for summary judgment?

15           I'm going to have the same questions for Mr. Poulton,

16   quite frankly.  He's going to be in the same boat on a lot of

17   this stuff.

18           MS. BROTHERS:  Well, in the circumstances of using --

19   or putting a quote in a motion for summary judgment, that's

20   still -- that shifts the burden to the Court to verify that

21   that statement is in fact in the body-worn camera video.

22   That -- and that work could be accomplished now.  In fact, it

23   makes sense for the parties to do that now, since the parties

24   have been reviewing the body-worn camera video for

25   several months and are in a better position to verify that now

1    rather than making the Court do it later on.

2         THE COURT:  I'm just thinking about summary judgment

3    motion.  In defense of the motion, if it's opposed, doesn't the

4    opposing party have to show there's a disputed issue of

5    material fact?  I'm just thinking out loud, if you will.  Won't

6    the burden be on Mr. Poulton to show that that's an inaccurate

7    statement?

8         MS. BROTHERS:  I don't think that it -- that he would

9    argue that it's an inaccurate statement, but to the extent the

10   burden is on Mr. Poulton at that point to argue that it is

11   inaccurate, if he believes that, then there's still the

12   additional burden on the Court of resolving that dispute, and

13   that -- that dispute could be resolved right now.  We could --

14        THE COURT:  The dispute won't be that it's not

15   necessarily accurately stated, the dispute will be that there's

16   context.

17        MS. BROTHERS:  Right.  Right.

18        THE COURT:  So, in other words, I guess there's

19   points for both sides here.  One would be, it would seem to me,

20   this is a very preliminary thought, that you can use these

21   statements anywhere, any way in your motion for summary

22   judgment and perhaps include a declaration of somebody who can

23   authenticate that they've reviewed the transcript and it's an

24   accurate thing.  There's -- you have evidence.  I assure you

25   that Judge Merryday is not going to go through every video and

1    listen to them and verify that they are accurate.  And then the

2    burden arguably would be on the defense to show, again, a

3    preliminary look, as to why the statement is inaccurate.  And

4    what you're saying is the defense is not going to say it, it's

5    just going to be contextual.  So going through the requests for

6    admissions exercise puts you in the same position.

7    Irrespective of whether you do an RFA or not, you can still

8    present this evidence in your summary judgment motion and

9    effectively be in the same spot, I guess that's the thought, if

10   I'm correct in my preliminary thought about respective burden.

11   But I'm curious as to your thought.

12          MS. BROTHERS:  Well, just as an additional point,

13   there's -- as we've said, there's -- there are a lot of things

14   going on in this case, and there's -- we have -- we got an

15   extension of the number of pages that we're allowed for our

16   summary judgment motion, but to the extent we have to dedicate

17   space in our -- in our motions and responses to going back and

18   forth on these undisputed facts, I think that it's -- it makes

19   more sense for us to establish now, those facts right now, so

20   that we can devote that space in our summary judgment motions

21   to the real disputed issues in this case, the bigger legal

22   issues here.

23          THE COURT:  I guess the thought there would be -- I'm

24   just thinking how this mechanically would go -- that you would

25   present in your motion for summary judgment so-and-so said X,

1    another individual said Y, and yet another individual said Z,

2    okay, that's the full dedication, whether you have an RFA or

3    not, and then the defense would be in the same position of

4    countering that.  Either way, whether it's an in RFA or not,

5    he'll say the same thing, that it's contextual.  So I just

6    don't know in terms of the summary judgment if it helps that

7    much.

8              Mr. Poulton, so that I can share with you some of the

9    same coin but a different side, in a summary judgment motion,

10   it sounds to me like you're going to be going through this

11   exercise anyway.

12             MR. POULTON:  That's the point of the response -- or

13   the need for requests for admissions.  If the plaintiff --

14   let's take it from the plaintiffs' perspective.  If the

15   plaintiff files a motion for summary judgment and says that

16   according to body-worn camera video, on a visit on June 2nd,

17   2018, the following occurred, I can't say, "We disagree, see

18   video," I have to explain why, what it is that I disagree

19   about, why I think that's incorrect, why I think there's

20   context.  So, I mean, I don't see that the requests for

21   admissions dodge that problem, it's just -- because I'm going

22   to do the same thing in responses to the requests for

23   admissions and then it will be debating the same points on

24   summary judgment, both in the motion and then in their

25   response.  I just don't --

1          THE COURT:  Let me just have you pause -- if I could

2     just have you pause for a moment.

3          I guess the point I was trying to make is, in terms

4     of workload, you'll be faced with doing this anyway.

5          MR. POULTON:  Yes, but in a different timeframe.

6     The -- plus I don't know which ones -- you know, right now

7     I can't anticipate, are they going to, you know, assert all 300

8     facts?  You know, probably not, by the time they get down to

9     it.  But let's even assume that they did.  You know, my having

10    to spend the time to do that now, given what I have -- part of

11    it is I have a major summary judgment motion due on May 4th,

12    another 60 page motion in another matter, that I've blocked off

13    two weeks to work on, and I'm desperately trying to keep that

14    space clear because it's an enormously factually complicated

15    case that spans 20 years, you know, it's the case where the

16    gentleman was on death row for a decade, and the intensity of

17    that case makes this one pale in comparison, I will tell you,

18    in terms of the volume of work and discovery, and up until then

19    I'm busy every single day through the mediation in this case,

20    which is April 20th.  So, I mean, it's just a physical

21    impossibility for me to get this done by the deadline, and even

22    if they gave me a little bit of extra time, it wouldn't be

23    until after, what is it, May 6th?  Yeah, May -- no, May 4, that

24    I can even really spend any time on it.  I'm just being candid.

25    I know everyone is busy, everyone's got this problem, but it

1   just will not happen.

2         Again, I just don't see the value of it, because

3   we're going to have this debate, whether it's in the form of my

4   lengthy, you know, response to requests for admissions, and the

5   response is of no value to the plaintiff in saying this issue

6   is resolved, to Judge Merryday, to say they admitted it, right?

7   They can't do that, because they're going to have to point out

8   that I admitted it with, you know, three or four or five

9   sentences of additional context.  So it's not going to help, in

10  my view.

11        THE COURT:  Let me go back though, Mr. Poulton.

12  There are issues here that the plaintiff points out that seem

13  less -- I'll just use the phrase "involved," for example,

14  requests for admission, or at least portions of them, that ask

15  for a date or a time or something that is set forth in a

16  record.  That would strike me as being less contextual.

17        MR. POULTON:  Well, I view -- there are two versions

18  of that, in my view.  One is that they're -- the lead questions

19  are, you know, the sheriff is the final policy maker and things

20  like that are easily dealt with.

21        If -- you know, if request number 210, I'm just

22  making up that number, is admit that on such-and-such a day at

23  such-and-such a time, deputy whatever conducted a prolific

24  offender check, two things.  Number one is I would still have

25  to go hunt that one down, going to take time, each one; and

1  number two is my -- you know, frankly, my temptation would be

2  to say the record speaks for itself.

3        I'm not arguing the authenticity of the record.  I'm

4  not saying that the record is wrong, whatever that report is.

5  We've had some issues come up with whether or not a --

6  you know, a deputy designated something correctly, so I suppose

7  there's some nuance there, you know.  For example, I think that

8  the prolific offender check designation came into effect,

9  I want to say, in either -- and Rob Johnson can correct me,

10  because we talked about this before, it's either 2015 or 2017,

11  I think '15, that the drop -- that came into the drop-down menu

12  for the deputy, so prior to that they might have called a

13  prolific offender check something else, and even after that

14  they might have used a different designation, or they might

15  have used prolific offender check when in reality they were

16  there for some other reason, we've seen that in the case,

17  just -- I won't bore you with the details, but we have seen

18  cases where a deputy would call something a prolific offender

19  check when it was really something else.  So I would have to go

20  through those, you know, one-by-one, if I was held to anything

21  other than that the document is authentic, and we can debate

22  the details of it in the motions.  So I'm still stuck doing

23  that process, still stuck hunting each one down.  You know,

24  it's not like I could just press a button and up comes that

25  report.  It could take quite a bit of time just to find that

1    one.

2         THE COURT:  So I'm going to end up directing the

3    parties to confer on these issues, on these items that are the

4    subject of the requests for admission, so -- I'll just be

5    candid.  I haven't looked at this with any great detail, but,

6    you know, a motion for a protective order is in a way an

7    anticipatory move to a motion to compel, so if there's a motion

8    to compel, it implicates Rule 37, and Rule 37 holds both sides

9    to having to pay for the expenses associated with the bringing

10   of a motion if their position, among other things, is not

11   substantially justified.  So I don't see any discussion about

12   proportionality here, from either side, though it's intimated,

13   I didn't see any case law in Mr. Poulton's briefing about

14   proportionality, so that's a concern, but it's not dispositive,

15   so I would caution Mr. Poulton there.

16         But in the end, the parties are doing a good job, an

17   admirable one, of winnowing this case down, and, again, I'll

18   reiterate what I said before, which is the Court appreciates

19   saving the Court time, but I question how much of this will

20   really save time.  That doesn't mean that it won't, but if the

21   parties are going to proceed forward with the idea of setting

22   up this case for dispositive motions, if they're going to have

23   to go through a back-and-forth anyway -- I mean, one school of

24   thought would be you've got a lot on your plate in terms of

25   focusing on depositions and other things.  To do that, is that

1  really going to gain either of you any material benefit?  Just

2  something to think about.

3          The other thing to think about would be making sure

4  that you've got evidence here that the Court can entertain on a

5  summary judgment motion, for example, that it's admissible.

6          Both sides are very capably represented, these are

7  all things that you would think about anyway, but I would just

8  encourage you to do that as part of the meet and confer.  And

9  if the parties can't resolve it, then the Court will have a

10 hearing on the matter, at which point -- and I've done this

11 before -- at that juncture the Court would hear two aspects,

12 one is the merits of their motion and the defense of the

13 motion, but then it would also hear argument on the

14 applicability of Rule 37 and the substantially justified

15 standard, because that is compulsory.

16         If you look at Rule 37, it doesn't leave the Court a

17 choice.  If one side is not substantially justified and it

18 doesn't prevail, the rule uses the term "shall" in terms of

19 imposing a cost-shifting provision, which the Court does not

20 want to do, because the parties have worked well together, and

21 I just think if you go through this with an eye toward what you

22 really obtain and gain -- that's for both sides.  Mr. Poulton,

23 on your end, if you have to deal with it down the road, you're

24 going to have to deal with it down the road.  From the

25 plaintiffs' side, I would encourage the plaintiffs to look at

1   what really is going to end up adding something to the summary

2   judgment motion and going from there.

3          The other thing you could do in a meet and confer, to

4   make it helpful and efficacious, would be if there's a question

5   about what's in documents, is to actually at the meet and

6   confer have the documents so the plaintiffs could in the meet

7   and confer -- hey, I've got this document.  If you do it in

8   person it would be much more helpful, and point to the

9   document, and maybe you could set that up in advance and

10  provide the documents.  You've obviously put a lot of work into

11  the RFA, so I suspect you've drawn from the documents already,

12  and that would help.  Mr. Poulton doesn't have to necessarily

13  live or die by what you show him, but these are things that

14  I think, with parties that have worked well together, it can

15  resolve the issue better that way.

16         So, Ms. Brothers, I'll -- because I began with you,

17  I'll turn to you.  What do you think of the Court's thoughts

18  generally, and how much time would you need to confer?

19         MS. BROTHERS:  Um, in terms of scheduling?

20         THE COURT:  That would be the first thing, and then

21  the second thing in terms of some of the Court's considerations

22  that it's encouraged the parties to look at.

23         MS. BROTHERS:  Um, so in terms of scheduling, first

24  of all, I think the limiting factor here is going to be

25  Mr. Poulton's schedule.  We can -- we can be available to

1    confer sometime in the next couple of weeks, before discovery

2    closes on the 18th, depending on what Mr. Poulton's schedule is

3    in the next couple of weeks.

4            Regarding the others issues, I'll just -- I mean,

5    I'll just say that the -- it seems to make sense for all

6    parties to have a list of when each of these incidents happened

7    and the date and the time and the name of the deputy.

8    That's -- that's why plaintiffs created these -- these requests

9    for admission, because the parties and the Court are going to

10   need to have a list in front of them as we're going through

11   summary judgment, and so it makes sense to establish that prior

12   to summary judgment so that we're all able to draw from that

13   list.

14           And to the extent that it would help defendant to go

15   through and check plaintiffs' requests against the reports,

16   plaintiffs are -- we're willing to provide the report numbers

17   for each of these requests so that defendant is able to

18   cross-reference them more easily, so -- and I think that would

19   speed it up quite a bit.

20           THE COURT:  Okay.  Mr. Poulton, you mentioned a date

21   after which your calendar cleared, not that that's dispositive,

22   but did I hear you to say May 4th?

23           MR. POULTON:  Well, I'm just looking right now.

24           The due date of response to the response -- or to the

25   requests for admission is April 18.  We have depositions

1    scheduled on the 11th -- next Monday and Tuesday, the 11th and

2    12th, so perhaps we can schedule -- I can schedule a conference

3    with plaintiffs' counsel to coincide with those depositions,

4    their expert depos.

5           THE COURT:  So that makes sense.

6           MR. POULTON:  Right.

7           THE COURT:  So I'm going to reiterate what I said

8    before.  If it's just -- if you're dealing with items for which

9    there is going to be some explanation, the argument may go

10   that -- is it necessary to do that now, and I'm still at a loss

11   as to what that gains for purposes of the summary judgment

12   motion and whether it saves time down the road if there's going

13   to be an argument about contextual proof.  Walking into this,

14   irrespective of what the parties said, you're still going to

15   end up playing the video, so I don't know that it saves time

16   for the Court in that regard.

17          Again, I'm not trying to give one side or the other

18   the benefit here, but at the same time if there are things that

19   are more discreet and not subject to fair dispute, those would

20   be seemingly things that you would resolve now or at the time

21   of a stipulation or meet and confer when you look at exhibits,

22   so -- I agree with Ms. Brothers that these are bridges that

23   will have to be crossed at some point, some of them anyway.

24          So if you're going to end up playing the video, what

25   do you say?  If you're going to have to -- Mr. Poulton, if

1    you're going to have to deal with some of this stuff, like the

2    date and time of a particular incident, or who the deputy was

3    who made the visit, I don't see why sitting down and looking at

4    records now that -- everything is electronic.  If you have a --

5    if you're in a meet -- or in you a deposition, you could put a

6    couple hours aside and have all this stuff loaded and go

7    through it electronically on your respective devices, whether a

8    laptop or something else, and look at these records and at

9    least make some headway on things that are not going to be

10   fairly disputed.

11          MR. POULTON:  Can I ask -- can I ask a question along

12   those lines, Your Honor, that might help when we --

13          THE COURT:  Sure.

14          MR. POULTON:  -- try that exercise?

15          Counsel mentioned they could send me the report

16   numbers, but we still then have to go find them, and it's -- as

17   you know, it was done over time, so they're not all necessarily

18   in the same place on my side, but it would appear certainly you

19   have them organized, so can you send to me the -- you know,

20   whatever it is, 8 through 303, you know, kind of in order, in

21   Drop Box or something, so that we can go through them

22   one-by-one so we can at least see if we can fashion something

23   that will work for you and protect my concern, so we don't have

24   to brother the Court with it?  Could you do that, so that we

25   don't have to spend the time to track each one down?

1          MS. BROTHERS:  We can.  We can.  Most of these --

2    I mean, these reports are the ones that we have already

3    compiled in the exhibits for the 30(b)(6) deposition, but we

4    can make sure that they're all there and we can send those back

5    over to you.

6          MR. POULTON:  Okay.  So that's for Mr. Brummet on the

7    13th, the statistics person, or was that from earlier?

8          Never mind.  That's okay.  We'll figure it out.  We

9    don't need to waste the Court's time with that.  We'll figure

10   that out.

11         THE COURT:  Today is the 5th.  Your deposition -- the

12   date of this conferral then would be combined with the

13   deposition on the 13th?  Ms. Brothers, is that the thought

14   here?

15         MS. BROTHERS:  Yes.  There's depositions on the 12th

16   and the 13th, so I think we could make -- make some time on

17   either of those days.

18         MR. POULTON:  And the 11th.  That's the deposition of

19   Dr. Huff, I believe.

20         MS. BROTHERS:  Okay.

21         MR. POULTON:  But that's in Asheville, so I don't

22   know if you want to do that one, if you want to have it --

23         MS. BROTHERS:  The 12th or 13th probably makes more

24   sense.

25         MR. JOHNSON:  I have in my calendar that that's on

1    the 18th.

2              MR. BARGIL:  Same here.

3              MR. POULTON:  My mistake.

4              THE COURT:  If the Court were to direct the parties

5    to confer no later than April 15, that would include the

6    timeframe the 12th and the 13th when there -- it appears that

7    counsel will be together in person.  I just mechanically see

8    that as working far better than doing it remote, but I leave

9    that to the parties.  Any reason to think that April 15th

10   wouldn't be a good deadline for the conferral?

11             Mr. Poulton, this time I'll begin with you.

12             MR. POULTON:  I think that's fine.  We'll probably

13   end up doing it by Zoom, looking at the schedule, I think these

14   depositions are by Zoom, but I think we can do it that way too.

15             THE COURT:  Okay.  Ms. Brothers, do you agree?

16             MS. BROTHERS:  I do.  No objection to that timeline

17   on our end.

18             THE COURT:  And again, just to put a fine point on

19   it, the things I would think about are where it gets you in the

20   end, on both sides, so whether you are going to be contesting

21   the summary judgment motion or there's going to be some

22   pushback on it; and then, Mr. Poulton, you're going to deal

23   with it anyway, knock out a fair amount of this stuff now

24   maybe.

25             We discussed admissibility, how some of these

1   statements may be coming in.  You might look at, Ms. Brothers,

2   whether you can get the video in as a business record when it's

3   kept by law enforcement.  Maybe.  I've crossed that bridge

4   before.  I don't know that Courts -- Courts might view it as a

5   business record, there might be another basis.

6           And I'd like to avoid any situation where we're

7   talking about Rule 37, as I'm sure the parties would.  You all

8   have worked well together.  But we'll see where it ends up.

9           The Court would then wait to hear from the parties.

10          The way I typically do this is as part of an endorsed

11  order I would direct the parties to provide a joint notice,

12  likely by, in this case, April 18th or 19th or something like

13  that, and then schedule a hearing.

14          I appreciate, by the way, the plaintiffs offering

15  Mr. Poulton additional time.  I think that's justified.  It

16  seems like a lot of things to go through, and the procedure

17  that you're going down I think will save everybody time in the

18  end.

19          The Court is not intimating in any way how it would

20  rule on this motion for protective order one way or the other,

21  in part or in full, it just had these preliminary thoughts,

22  so --

23          With respect to the other motion, Mr. Poulton, you'll

24  have to help us out here in a couple respects, one is some case

25  authority that the Court can issue an order pursuant to these

```
 1    type of requests.  If you've got anything -- I'm sure this is
 2    not the first time that the Sheriff's Office has crossed this
 3    threshold, and I'd be curious to see if you've got any State or
 4    Federal authority to support that relief.  And it would also
 5    help to have a proposed order.  Just experience tells me that
 6    if the Court were to grant the motion, it then has to go
 7    through the unenviable exercise of trying to craft language
 8    directed at a State entity that it may not typically have to
 9    deal with.
10         MR. POULTON:  I'm sorry, Your Honor.  I didn't mean
11    to interrupt.
12         THE COURT:  So case authority is important here.
13    By local rule, there's supposed to being supporting authority,
14    doesn't have to be case authority, but I'm looking for
15    authority for the Court to issue this type of an order under
16    these types of circumstances, and then a proposed order that
17    has specific language.
18         What I would encourage there, Mr. Poulton, is if you
19    think it's supported, that there's some discussion or
20    communication with the entity as to what language they require,
21    because what I can foresee is, having been through this kind of
22    thing in the past, that the Court issues an order and the
23    entity says, well, it doesn't say X, Y or Z that it's supposed
24    to say, and then you're moving for an amended order.  I'm not
25    suggesting that the Court would grant it, but I'm anticipating
```

1   that, so -- if you have already talked to the entity or

2   entities, so that you know the specific language -- and they

3   may need, for example, not just the name of the individual but

4   a date of birth or a social or some other type of identifier.

5   I don't know.  I don't know how common these names are, so --

6           MR. POULTON:  Well, we tailored the subpoenas based

7   on those conversations.  My associate did speak with the Clerk

8   and with the Department of Juvenile Justice and wrote them,

9   you know, basically on their advice on how they would want them

10  structured, and then they have to reject them, so we could

11  fashion the order to just mimic that.

12          My understanding is we -- I didn't do it myself, but

13  my understanding is we looked at the statute that governs it,

14  that they can be released upon order of the Court, and did not

15  locate any Federal or State case law, but we'll check again.

16          THE COURT:  Okay.  Courts like to see case law.

17          MR. POULTON:  Sure.  I do too.

18          THE COURT:  So how much time do you need to submit a

19  proposed order and case law?

20          MR. POULTON:  Can I do that also by the 15th?

21          THE COURT:  You're the one who is asking for this --

22  the order, so -- the motion is not ripe until 14 days after it

23  was filed.  I have it as filed March 28th.  I was going to ask

24  of Mr. Johnson if there is -- I know there's 301(g)

25  certification of no position, but I was going to confirm that

1   there's going to be no response, but I guess the long and the

2   short of it is April 15th is fine.  That, again, is a date that

3   you're proposing, and you'll be confined temporally by that,

4   but --

5           MR. JOHNSON:  Wouldn't they have --

6           THE COURT:  Mr. Johnson, I read the 301(g)

7   certification that the plaintiff doesn't take any opposition to

8   this motion found at document 78.  Does that mean you don't

9   anticipate filing a response?

10          MR. JOHNSON:  We do not anticipate filing a response.

11          One thing I would note though, Your Honor, is that,

12  you know, we're obviously getting close to the close of

13  discovery.  I don't know when the documents are going to come

14  in.  Obviously, even if discovery is closed, we would -- if the

15  defendant is going to rely on them at summary judgment, we

16  would want to see a copy of them before summary judgment

17  motions are filed.  You know, I'd be very concerned if

18  documents are coming in on the eve of summary judgment and,

19  you know, sort of being thrust into the record at that point.

20          THE COURT:  I don't have that matter before me, all

21  I have is a motion for an order.  It's a topic that we've

22  discussed at prior statuses, I know that.  I assume that

23  whenever Mr. Poulton gets something, he'll share it, but at

24  that point, Mr. Johnson, you'll -- whether there's an argument

25  about the timing of the disclosure, that will have to be

1    something that is addressed by a formal motion, which will have

2    to be referred to me for me to offer any thoughts on it.

3         The one thing I will say, for both sides,

4    Mr. Poulton, in terms of the records being sought, I would make

5    sure that they pertain to a matter that's relevant, and I don't

6    know if -- for example, on Rule 17 subpoenas, they have to

7    be -- they have to meet a threshold, the Nixon standard,

8    relevance, admissibility and some other one that escapes me at

9    the moment, whether that applies here, I don't know, but I just

10   want to make sure that these records that you're asking the

11   Court to direct another entity to provide, that they're

12   relevant and admissible, if that's in fact the standard.

13        In other words, if the officer showed up at a

14   property to speak with an individual and the officer did so

15   because of reason X and you want to submit evidence as to

16   reasons Y and Z, whether such a stop would be justified, but

17   the officer at the time didn't rely on that, I'd be curious as

18   to whether that is relevant and admissible at this trial, and

19   I don't know the answer to that, but I just want to make sure

20   that the Court is not being asked to direct the production of

21   documents that are not relevant or admissible.

22        Just another observation for the plaintiffs, it seems

23   like some of these documents may be of mutual interest to both

24   sides, and there's a representation in here, it seems, in sum

25   and substance, that a witness was going to say something to the

1    effect that -- something about one of these individuals that is
2    the subject of the motion and a subsequent prosecution, the
3    prosecution didn't go anywhere, and my question would be -- I'm
4    not going to try your case for you, the plaintiffs or the
5    defense, but why is that admissible, if the plaintiff or the
6    individual is making a statement, is relying on a hearsay
7    statement of somebody else?
8            MR. JOHNSON:  We're not -- we're not conceding that
9    these documents are relevant.  In fact, we think most of them
10   are not relevant.  And not to make Mr. Poulton's case for him,
11   but I think my understanding is the standard is potentially
12   relevant, you know, so I -- I think there probably are things
13   in this request that are relevant.  I think there's going to be
14   more things that are not relevant.  I don't know if that means
15   the subpoena is not adequately tailored, I think it's possible,
16   but, you know, I agree, I think there may be things in this
17   request that are relevant on both sides as well, which is
18   partly why -- as I said, I mean, I don't want to be in a
19   situation where these documents are obtained after the close of
20   discovery and then plaintiffs are not provided with a copy of
21   them.
22           THE COURT:  I understand that concern.
23           So, Mr. Poulton, any questions about the motion for
24   release of records that comes to mind?
25           MR. POULTON:  No, Your Honor.  We will doublecheck

 1  for any case law that would be of value to the Court or

 2  assistance of the Court, and then we will draft a proposed

 3  order and submit one or both, as the case may be, prior to the

 4  15th.

 5         And I will also -- I don't mind if -- I mean, I'll

 6  commit on the record, whatever we get in I will send to

 7  plaintiffs' counsel, we'll -- subject to the same

 8  confidentiality agreement that would be imposed on us, I'm sure

 9  they're fine with that, and -- you know, right as soon as we

10  get them in, so that they have the benefit of looking through

11  them as well.  You know, I don't have a problem with that at

12  all.

13         THE COURT:  Okay.  I just want to manage

14  expectations.  Whenever the Court gets your proposed order and

15  supplemental authority, as well as any further information you

16  have about the relevance or admissibility of these documents or

17  case law that governs such subjects, the Court is going to take

18  some time to look at that, so it's not as if the Court can do

19  that -- much like you, Mr. -- can do it as immediately as you

20  would like.  Much like you, Mr. Poulton, the Court has many

21  items on its docket and many decisions in the queue that it has

22  to get out, so the longer that waits before it's ripe for the

23  Court's consideration, the more challenging it is.  Just a

24  thought here.  I know I've discussed this topic with you

25  previously, so I'm sure you're aware of it.

1            To the parties, that would appear all the matters
2   that the parties have put before the Court.
3            Mr. Johnson, since you're the plaintiff, anything
4   that I've left out or should cover?
5            MR. JOHNSON:  No, Your Honor.
6            THE COURT:  Thank you.
7            Mr. Poulton, anything on your end?
8            MR. POULTON:  No, Your Honor.
9            THE COURT:  Okay.  I don't have the file in front of
10  me.  When is our next status?
11           Mr. Johnson, you always have this information at the
12  ready.
13           MR. BARGIL:  May 10th.
14           MR. JOHNSON:  Yes, I was just going to say May 10th,
15  which is -- which is after the close of discovery.  I wasn't
16  sure if the Court intended to continue with the conferences
17  after discovery is closed.  I could see either way.  I don't
18  know.
19           THE COURT:  I take my orders from on high,
20  Mr. Johnson.
21           The discovery deadline is the 18th, which is
22  two weeks from yesterday.  I'm just wondering if it makes sense
23  to get together the week of the 18th.
24           MR. POULTON:  We have the mediation -- we have a
25  deposition on the 18th in the case and we have the mediation on

1   the 20th, but on any other of those three days, the Tuesday,

2   Thursday, Friday, if counsel is available and the Court is

3   available, I can make myself available.

4           THE COURT:  I just wanted to make sure that it's,

5   you know, an efficient use of everybody's time.

6           Mr. Johnson, your thoughts on that?

7           I would be looking at the 21st.  You'd have an

8   outcome on the mediation on that date, the discovery deadline

9   and these various items would have just passed, and we'd have

10  maybe greater clarity by then on the motion for a protective

11  order and the motion for the release of the records, because we

12  have a deadline in place of April 15th.  So I would counsel in

13  favor of such a date.

14          I'm out of the office -- there's court business that

15  is being conducted on the 22nd, and I have responsibilities as

16  the duty attorney (sic) the week of the 25th, and I can

17  certainly meet with you all, you're obviously the Court's

18  favorite case on the docket, but that's challenging to do

19  during duty week, certainly giving everybody an hour, like we

20  have been doing, but I can manage, but I would suggest the

21  21st.

22          Mr. Johnson, I see you nodding your head a little

23  bit.

24          MR. JOHNSON:  Yes.  That would work for plaintiffs,

25  Your Honor.

```
 1              THE COURT:  Okay.  Is there any time on the 21st that
 2    does not work for you, Mr. Johnson, and Ms. Brothers?
 3    Mr. Bargil?
 4              Okay.  I see shaking of heads that all is well on the
 5    21st.
 6              Mr. Poulton?
 7              MR. POULTON:  At the Court's convenience.
 8              THE COURT:  Okay.  We'll pick a time.  I know I've
 9    got some things scheduled already.  Generally I do most of my
10    motions practice on the Tuesday and Thursday of each week,
11    so -- okay.  With that, hearing nothing further, thank you to
12    all.  I appreciate all your fine efforts, and we'll see you, it
13    appears, on the 21st.
14              Thank you, much.
15              MR. JOHNSON:  Thank you.
16                        -  -  -  -  -
17              (Proceedings concluded at 11:58 a.m.)
18                        -  -  -  -  -
19
20
21
22
23
24
25
```

```
1                    C E R T I F I C A T E

2

3           This is to certify that the foregoing transcript of

4    proceedings taken in a status conference in the United States

5    District Court is a true and accurate transcript of the

6    proceedings taken by me in machine shorthand from a digital

7    audio recording and transcribed by computer under my

8    supervision, this the 14th day of July, 2022.

9

10

11                                   /S/ DAVID J. COLLIER

12

13                              DAVID J. COLLIER

14                              OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25
```