```
 1                IN THE UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
 2                        TAMPA DIVISION

 3

 4   DALANEA TAYLOR, et al.,          )
                                      )
 5                Plaintiff,          )
                                      )
 6                                    ) Case No.
            vs.                       ) 8:21-CV-00555-SDM-CPT
 7                                    )
                                      )
 8   CHRIS NOCCO, in his official     )
     capacity as Pasco County Sheriff,)
 9                                    )
                  Defendant.          )
10

11

     _____
12

                        STATUS CONFERENCE
13                (held via Zoom videoconference)
           BEFORE THE HONORABLE CHRISTOPHER P. TUITE
14              UNITED STATES MAGISTRATE JUDGE

15                      APRIL 21, 2022
                          11:05 A.M.
16                      TAMPA, FLORIDA
     _____
17

18

19

20

21       Proceedings transcribed via courtroom digital audio
     recording by transcriptionist using computer-aided
22   transcription.
     _____
23
                   DAVID J. COLLIER, RMR, CRR
24              FEDERAL OFFICIAL COURT REPORTER
                801 NORTH FLORIDA AVENUE, 7TH FLOOR
25                  TAMPA, FLORIDA  33602
```

1    **APPEARANCES:**

2

3    **FOR THE PLAINTIFFS:**

4            *Robert E. Johnson*

5            *Ari Bargil*

6            *Caroline Grace Brothers*

7            Institute for Justice

8            16781 Chagrin Boulevard, Suite 256

9            Shaker Heights, Ohio   44120

10           (703) 682-9320

11

12

13   **FOR THE DEFENDANT:**

14           *Thomas W. Poulton*

15           DeBevoise & Poulton, PA

16           1035 South Semoran Boulevard, Suite 1010

17           Winter Park, Florida   32792-5512

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2                    -  -  -  o0o  -  -  -
 3          THE COURT:  Good morning, everyone.
 4          Madam Clerk, if you could please call the case.
 5          COURTROOM DEPUTY:  Dalanea Taylor, et al. versus
 6   Chris Nocco, Civil Case Number 8:21-CV-555.
 7          THE COURT:  And if I could please have the
 8   appearances of counsel for the record, beginning with the
 9   plaintiff.
10          MR. JOHNSON:  Good morning, Your Honor.  This is
11   Robert Johnson for plaintiffs, and I'm joined by my co-counsel
12   Caroline Grace Brothers as well as Ari Bargil.
13          MR. POULTON:  And I'm Tom Poulton.
14          THE COURT:  Thank you, all.
15          For the defense?
16          MR. POULTON:  Tom Poulton here on behalf of
17   Sheriff Nocco.
18          THE COURT:  Good morning to you as well, Mr. Poulton.
19          The Court is here for what has become one of many
20   regular status conferences that we have been conducting.
21   I have, I believe, the most recent status report filed, which
22   was submitted on April 18th at document 91.
23          Do I have that correctly, Mr. Johnson and
24   Mr. Poulton?
25          MR. JOHNSON:  Yes, Your Honor.
```

```
 1              MR. POULTON:  Yes.

 2              THE COURT:  It appears to myself and my staff that

 3   while we may have some things to discuss, there's nothing

 4   imminently of note here.

 5              Mr. Johnson, is that correct?

 6              MR. JOHNSON:  I believe that's correct, Your Honor.

 7              THE COURT:  Mr. Poulton?

 8              MR. POULTON:  Yes, Your Honor.

 9              THE COURT:  I know that the parties conducted,

10   I believe, a mediation yesterday; is that right, Mr. Poulton or

11   Mr. Johnson?

12              MR. JOHNSON:  Yes, that correct, Your Honor.

13              THE COURT:  And I take it that that did not resolve

14   in a full settlement?

15              MR. JOHNSON:  It did not.

16              THE COURT:  All right.  Will something get filed,

17   do you know, by the mediator as to whether -- or what the

18   results were?

19              MR. POULTON:  Not yet.  I think he was traveling back

20   from Tampa to Jacksonville, so he might just not have gotten to

21   it yet.

22              THE COURT:  I take it -- did it result in an impasse?

23              MR. POULTON:  Yes.

24              THE COURT:  Okay.  One item that the Court wishes to

25   address, Mr. Poulton, it's on your end, it's regarding your
```

1    pending motion for the release of records.  You've submitted

2    two items, the motion and the supplemental memorandum.

3            So let me just -- if I could confirm a few things.

4            I take it that you issued subpoenas pursuant to

5    Rule 45 to the Florida Department of Juvenile Justice and the

6    Pasco County Clerk of Court?

7            MR. POULTON:  Yes, Your Honor.  We spoke to them

8    actually ahead of time about how they wanted those done,

9    knowing that they would have to send them back and ask for

10   either a release or an order, and in fact I can -- I can

11   apprize the Court that we just received -- my associate

12   received yesterday an inquiry from Assistant General Counsel at

13   DJJ trying to follow up with us on that, asking whether or not

14   an order had been entered yet.  So I think that the -- the gist

15   of it is that the -- we tried to narrowly tailor that in a way

16   that would be acceptable to those two agencies upon entry of a

17   Court order.

18           THE COURT:  Mr. Johnson, any dispute -- I know that

19   you've taken generally a position that you do not have a

20   position, but any dispute as to the relevance of these

21   documents, putting aside whatever protections are afforded

22   them?

23           MR. JOHNSON:  I want to distinguish between relevance

24   for purpose of discovery and relevance for purpose of

25   admissibility at trial, because I think those -- at least in my

1    mind, those are different standards, and my understanding of

2    the relevance standard for discovery is that it's quite broad.

3            I think these are materials -- I think many of them,

4    you know, are not going to be admissible, you know, and I am --

5    I read through the motion that was filed and the supplemental

6    memorandum that was filed and I was -- I did take a bit of

7    objection to the suggestion that these are relevant to

8    essentially justify putting these individuals on the list as

9    prolific offenders.  You know, obviously my take on that would

10   be that if the defendant doesn't already have these materials,

11   then it's hard to see how they could justify actions that were

12   taken before now, you know.  I just don't -- I don't see how

13   that exactly computes.

14           So, you know, in terms of looking at these materials

15   to sort of retroactively justify what was done in this case,

16   I don't see how that's going to work.  I think many of these

17   materials certainly we're going to take the position that

18   they're not admissible at trial, they are attempts to

19   essentially, you know, make the children of these plaintiffs,

20   or in one case one of the plaintiffs, essentially look bad

21   based on materials that had no real relevance to the actions

22   that were taken, because the defendant didn't even have these

23   documents in its possession.

24           THE COURT:  Can I have you pause for a moment?

25           MR. JOHNSON:  Yes.  Of course.

1          THE COURT:  Just in the interest, perhaps, of maybe

2    more refining my question.

3          For purposes of Rule 26, do you have any dispute that

4    they would meet the relevance standard under Rule 26?

5          MR. JOHNSON:  So, no, and I would just note that

6    I think there's a certain irony in that plaintiffs have

7    consistently asked broadly for all information about these

8    plaintiffs and have had to narrow our requests.  You know,

9    I think these -- the subpoena asked broadly for all information

10   about these plaintiffs or their children, which, you know, is

11   I think a broader approach than plaintiffs have had to take in

12   this case, but, you know, I suppose it's really more for the

13   agency to object if it has any concern about proportionality,

14   so, you know, with that -- with that observation, which is

15   maybe not entirely relevant, I apologize for that, but with

16   that observation, no, we have no objection that these are

17   relevant in the Rule 26 sense.

18         THE COURT:  Okay.  Mr. Poulton, I was going to go on

19   to a further area of inquiry that's just directed more to where

20   things stand between you and the subpoenaed entities, but I --

21   if you wanted to add something there, that would be in brief,

22   it's not necessary that you do, the only question I had is if

23   there's a dispute about relevance under Rule 26, and I hear

24   Mr. Johnson to say no.

25         MR. POULTON:  Right.  I mean, I just -- my only --

 1    just very briefly, there are disputes within the case about

 2    what happened with regard to, for example, certain search and

 3    arrests of one of the plaintiffs and their -- their child,

 4    there is a dispute about what happened there, as to the outcome

 5    of that criminal matter, and so that, for example, is a reason

 6    that we'd like to see the outcome of that.  We don't have

 7    access to that.

 8            You know, additionally, there are -- well, we might

 9    have a record of an arrest, we don't have a record of the

10    outcome, you know, we don't have a record of what went on in

11    the criminal case that might have then led to a prolific

12    offender designation for one of the juveniles at issue, and, as

13    I say, I think that that -- part of the undercurrent of

14    plaintiffs' claim is that the agency is heavy-handed in its

15    approach to prolific offenders and to their families, and so we

16    do think that it matters that the Court be apprized of what was

17    going on with those -- those kids and the need for what we --

18    what we call focused deterrence -- or focused attention on

19    them.  That's why in our view it's relevant.

20            THE COURT:  Let me just have you pause for a moment,

21    if I could.

22            The argument about how these juveniles were

23    designated at the time, wouldn't you have the documents at the

24    time to make the designation?

25            MR. POULTON:  Well, we can't -- I don't know the

1    extent to which the agency has -- I don't know the extent of

2    their reports on the underlying arrests or inclusion of the

3    plaintiffs in underlying circumstances other than in the CAD

4    report sense, but when the plaintiffs are contending that the

5    underlying designation of the prolific offenders status was not

6    justified, then I -- because, you know -- I'll give you an

7    example.  I'm just -- I kind of alluded to it.

8          Plaintiff Jones, his son is -- the plaintiff is

9    Robert Jones, III and the son is Robert Jones, IV, and there

10   was an incident caught on the body cam where deputies are there

11   to talk to Robert Jones, IV, the son, as a prolific offender

12   check, trying to dissuade him from committing crime, and they

13   ask Mr. Jones if they could go into the residence to search,

14   and he grants them permission to do so.  They go in, they find

15   a bunch of empty baggies or near empty baggies in his room,

16   some of them are torn, they were suspicious of narcotics, they

17   test them, they say they field test positive for marijuana.

18         Mr. Jones insists that his son was ultimately found

19   completely innocent, exonerated, that there was never anything

20   in those baggies, and that that was the conclusion of the

21   Court.  I don't have that information.  For sure I don't have

22   that information right now, the agency wouldn't, because that's

23   going to be within DJJ, within the clerk.

24         THE COURT:  If I could just have you pause for a

25   moment.  That example I understand, you've got that in your

1    motion, but what about this comment that he made that these

2    juveniles were designated as prolific offenders, wouldn't that,

3    to Mr. Johnson's point, be predicated on information at hand at

4    the time of the designation?

5              MR. POULTON:  Yes, but since the plaintiffs counter

6    that with it was incorrect or undeserved, and this is kind of

7    the -- again, part of the undercurrent of the whole claim is

8    it's overreaching by the agency, they're doing too much, they

9    are rude, oppressive, they call it harassing, the plaintiffs

10   do, I think we need to be able to demonstrate to the Court that

11   in fact there was a need for this.

12             I mean, as a further example, Dalanea Taylor, now,

13   she gave us a release.

14             THE COURT:  If I could have you pause just for a

15   moment.  And, again, I don't want to be impolite, but just --

16   because otherwise I'll lose track of a thought that I had based

17   on something you said.

18             When I asked you the question, isn't designation

19   based on documents that are had at the time, in the possession,

20   or to which they have access at the time, and the plaintiffs

21   you said might say that's incorrect, but can't you point them

22   to the documents that you have had that you base the

23   designation on at the time?

24             MR. POULTON:  As a threshold matter, yes, but then

25   when they counter that the arrest or the -- or the incident

1  that might have been part of the prolific offender designation

2  was incorrect, then I think we need to look behind the scenes

3  at what happened.  If it's a precursor incident, for example.

4        And the example I was going to give is Dalanea Taylor

5  acknowledged in an interview that she had committed 50 auto

6  burglaries, and then she was prosecuted as an adult, even

7  though she was, I believe, under 18 at the time, and went to

8  State prison, and they -- their -- part of their complaint

9  is that the agency sometimes seeks to have the State Attorney

10  prosecute some of these juveniles as adult offenders, and so

11  I think we need to look at what happened in that case to

12  understand.

13        Now, she gave us a release, but we need to understand

14  what happened in that.  I think the same thing happened with

15  Donnie McDougall.  I believe that he was prosecuted as an

16  adult, and he might have been a juvenile at the time, I'm not

17  100 percent sure on that, maybe Mr. Johnson can clarify, but

18  he's in State prison now, and we need to, I think, explain to

19  the Court why that is and how that came to be, to explain why

20  it is that the agency was focused on these folks.

21        And it -- as Mr. Johnson, I think, you know,

22  commendably acknowledged, for purples of Rule 26 discovery

23  certainly we can look at that and then they can make whatever

24  argument they want as to excluding it later.  We're going to

25  give them copies, so --

```
 1              THE COURT:  Let me talk, if I could, Mr. Poulton,
 2      just about Rule 45.  Again, your subpoenas were issued under
 3      Rule 45, correct?
 4              MR. POULTON:  I have to look.  I'm pulling one up
 5      now.
 6              Yes.
 7              THE COURT:  Okay.  So it appears from a preliminary
 8      review of Rule 45 that the subpoenaed party has two mechanisms
 9      for challenging the subpoena, the first would appear to be
10      under Rule 45(d), as in David, so I have that rule before me,
11      and (d)(2)(B), as in bravo, deals with objections, it states,
12      in part:  A person commanded to produce documents or tangible
13      things or to permit inspection may serve on the party or
14      attorney designated in the subpoena a written objection to
15      inspecting, copying, testing or sampling any or all of the
16      materials or to inspecting the premises, or to producing ESI in
17      the form or forms requested.
18              It goes on to state:  The objection must be served
19      before the earlier of the time specified for compliance or
20      14 days after the subpoena is served.  And then it has
21      procedures that would apply if an objection is made.
22              Let me just ask, has an objection formally been made,
23      a written objection, by the subpoenaed party?
24              MR. POULTON:  I knew you were going to ask me that
25      and I don't know the answer.  My associate was dealing with it.
```

1    I don't know how he communicated with them.  I know that we

2    received some -- we've had some e-mail back and forth with

3    them, DJJ in particular.  If you'd like, I could -- if I could

4    have one minute, I could find out exactly what form that took.

5    But I don't know as I -- as I sit here right now exactly what

6    form their communication took.

7            THE COURT:  I haven't researched the issue, but as my

8    law clerk pointed out, under *Erie,* procedural rules would

9    appear to apply here on the Federal side.  So I realize it's a

10   State entity, just -- I'm trying to get a sense of the degree

11   to which the procedures under Rule 45 have been followed.

12           The other provision that potentially could be in

13   place is Rule 45(d)(3), which deals with quashing or modifying

14   a subpoena.

15           That applies, among other things, where a disclosure

16   of privileged or other protected matter, if no exception or

17   waiver applied, but there hasn't been a motion to quash by the

18   subpoenaed party, so the only applicable provision here would

19   appear to be 45(d)(2)(B).

20           Do you agree, Mr. Poulton?

21           MR. POULTON:  Yes, there's no motion to quash or

22   modify, so (3)(A) would not apply.

23           THE COURT:  Mr. Johnson, any reason to think that the

24   Court has misconstrued these rules?

25           MR. JOHNSON:  No, Your Honor.

 1              THE COURT:  Okay.  Well, I think it is important to

 2    know if there's a written objection, because if they haven't

 3    made a written objection, the question is have they -- to what

 4    extent is that excusable.

 5              Let's hear it.

 6              MR. POULTON:  If you'll -- if I can have one minute,

 7    I will find out.

 8              THE COURT:  Sure.

 9              MR. POULTON:  Thanks.

10              THE COURT:  Mr. Johnson's time is cheap.

11    Ms. Brothers', on the other hand, I'm sure much more expensive.

12              Mr. Johnson, is there a reason, while Mr. Poulton is

13    doing his research, that Mr. Bargil is only allowing us to look

14    at his wonderful photo?

15              MR. JOHNSON:  I believe that the internet connection

16    is kind of lagging this morning.

17              MR. POULTON:  I just spent yesterday in a mediation

18    with him all day.  The picture is better.

19              MR. BARGIL:  I am -- I am here, Your Honor.

20              THE COURT:  Now we see why, Mr. Bargil.

21              Mr. Bargil, if you're going to come in Zoom from your

22    bedroom --

23              MR. BARGIL:  Well, it was --

24              THE COURT:  -- it's best to make the bed in advance.

25              MR. BARGIL:  I apologize.  This is in fact the guest

1   room, and I typically have a virtual background and a made bed,

2   but both of those things are not true this morning, one as the

3   result of technical difficulties, the other as a result of

4   house guests.  So I apologize.

5            THE COURT:  The unmade bed was a technical

6   difficulty; is that --

7            MR. BARGIL:  No, one was the result of technical

8   difficulties, the other was the result of house guests, but in

9   either case I apologize for that.

10            THE COURT:  Mr. Poulton, when you have guests over to

11  your hacienda, do you have struggles with unmade beds?

12            MR. POULTON:  I have to hire a maid usually

13  afterwards to take care of it.

14            But I did find out the answer to Your Honor's

15  question is that both DJJ and the Clerk e-mailed us and asked

16  us to get an order.

17            THE COURT:  Okay.

18            MR. POULTON:  If you'd like, I can --

19            THE COURT:  And they do that --

20            MR. POULTON:  (Inaudible.)

21            THE COURT:  No, that's okay.

22            The question, I suppose, is that's a written

23  objection, but did you include that with your submission?

24  Remind me.

25            MR. POULTON:  I don't think so.  I was just looking

1  at it just now, and I think that we did not -- you know, part

2  of it is, obviously, as a -- as a fellow Government agency,

3  we're trying to accommodate their concerns as well, so I don't

4  think that we, you know --

5        MR. JOHNSON:  Tom, before you -- before you justify

6  it, actually, sorry to interrupt you, but they're on the record

7  at document 78-3 and 78-4.

8        THE COURT:  Okay.  I thought there had been some

9  reference to them in the motion, so -- 78 is the motion.  Okay.

10 So you were a step ahead, Mr. Poulton.

11       MR. POULTON:  He always is.

12       THE COURT:  I was saying you were a step ahead

13 because you had included the e-mail, and then Mr. Johnson

14 followed up, an assist to Mr. Johnson.

15       Was that e-mail or e-mails sent within the timeframe

16 indicated in (d)(2)(B), which is 14 days from the date of --

17       MR. POULTON:  Yes.  Yes.

18       THE COURT:  -- service or the date specified for

19 compliance?

20       MR. POULTON:  Yes, they would have -- the -- the

21 e-mail from the Clerk came in on March 17, which would have

22 been about -- I believe, about, let's see -- well, actually, we

23 sent them our request, they even did it before the subpoena, it

24 looks like, asked us for a -- if we sent them a copy --

25       THE COURT:  Now, if you look at (d)(2)(B)(i), it

1    says:  At any time, on notice to the commanded person, the

2    serving party may move the Court for the District where

3    compliance is required for an order compelling production or

4    inspection.

5            So have the two entities here, which I think are

6    Pasco County Sheriffs and Juvenile Justice, have they both

7    received notice, as required by Rule 42 -- 45, rather,

8    (d)(2)(B)(i)?

9            MR. POULTON:  Well, the notice that we contemplated

10   there went to the individuals whose records we were trying to

11   obtain.

12           THE COURT:  So just to be clear, let me just parse

13   that.  Are the three individuals here, I believe, right, three

14   juveniles, formerly juveniles -- do I have that number correct?

15           MR. POULTON:  Yes.  I'll -- at doc -- I believe it's

16   also at doc 78, we show the envelopes of Anthony McDougall,

17   Donnie McDougall and Robert Jones, IV as the three persons that

18   we provided notice to.

19           THE COURT:  Okay.  Let me just -- technology being

20   what it is, I can't turn off my phone.

21           The problem is that other judges have my direct line,

22   so I can't screen them.

23           So, Mr. Poulton, just to be clear, the three

24   individuals whose records are at issue have all received notice

25   of the subpoenas?

1          MR. POULTON:  Yes.

2          THE COURT:  And are the two entities here on notice?

3          MR. POULTON:  Yes.  I misspoke earlier when I said

4    that they objected before we got the subpoenas out.  I was

5    misreading the date.

6          We sent the subpoenas out on March 9, and,

7    for example, the Clerk responded to us on March 17th stating:

8    Please be advised our office may comply to sending out

9    records -- separate juvenile records under 985.041 or any

10   confidential records without a Court order directing us to do

11   so.

12         THE COURT:  Okay.

13         MR. POULTON:  So they were -- as an example.

14         THE COURT:  The motion under 42(d)(2)(B)(i) requires

15   notice, it appears, to the subpoenaed entity, which is the

16   commanded person.  Now, you've gone an additional step of

17   notifying the underlying individuals whose records are at

18   issue, but my preliminary read of notice to the commanded

19   person would be the entities from which the subpoenas -- or to

20   which the subpoenas have been sent.  Are they on notice of your

21   motion to compel, or motion for an order?

22         MR. POULTON:  Let's see.  We advised, excuse me,

23   Assistant General Counsel to the Department of Juvenile Justice

24   on April 7th that we had a status conference with you on our

25   motion to release juvenile records, and we asked for orders --

1   sample orders for any similar requests that we could use as a

2   template, which is what we did, noted that you had asked us to

3   confirm with each agency that the order would be acceptable,

4   and that it would be clear enough that it would exclude records

5   related to medical and mental health, and then we received, as

6   I say, yesterday a follow-up from Assistant General Counsel

7   asking whether we had an update on court orders for the release

8   of records.

9           THE COURT:  Did you file a document that simply sets

10  forth your compliance with these requirements of Rule 45?

11          MR. POULTON:  I will do so this afternoon.

12          THE COURT:  Okay.  I believe, at least for now,

13  that's all the matters that the Court needed to inquire about

14  with respect to the pending matters.

15          Mr. Johnson, is there anything else that the Court

16  needs to address?

17          MR. JOHNSON:  No, Your Honor.

18          THE COURT:  Mr. Poulton?

19          MR. POULTON:  No, Your Honor.  I'd just like to thank

20  counsel for working with me on the request for admission issue

21  and some of the other issues that we've had.  They've been

22  very -- very, I think, professional and accommodating to the

23  circumstances that I've had in terms of other work and other

24  things going on, so I really just wanted to express my

25  appreciation.

```
 1              MR. JOHNSON:  Thank you to you as well, Mr. Poulton.

 2              THE COURT:  I wish all cases would proceed in this

 3    fashion.  It would be more enjoyable, I think, for all,

 4    particularly for counsel.  I think discovery often, having been

 5    through it myself, is challenging, and rendered more

 6    challenging when parties don't work together.  Not that they

 7    have to agree, but simply working together to see if they can

 8    arrive at a productive way forward.

 9              I don't know that we have the schedule -- I did not

10    look at the calendar before we went on the air, if you will.

11              You've got some deadlines coming up.  Dispositive

12    motions, I know, are due on June 6th.  We do have some things

13    that are outstanding, I know, that are being -- discovery

14    rather that's being done outside the timeframe, so that would

15    counsel in favor of maybe coming back again so that we have

16    something scheduled.

17              Mr. Johnson, any reason to think that wouldn't be

18    appropriate?

19              MR. JOHNSON:  No, I have no -- no objection to that,

20    Your Honor.

21              THE COURT:  Mr. Poulton, any reason to think that

22    wouldn't be appropriate?

23              MR. POULTON:  No, Your Honor.  I have been speaking

24    with counsel earlier about some of the timing of what we'd be

25    working on, and so if I might suggest sometime later in the
```

1   week of May 9th, if that's available to you, and also to

2   counsel, I think that that -- that would work well in terms of

3   seeing where we are with any of the lingering issues that we

4   identified in the status report.

5         THE COURT:  Okay.  How does the 12th look?

6         MR. POULTON:  That's fine for the defense.

7         MR. JOHNSON:  That's fine for the plaintiffs as well.

8         And I'm sure the Court is aware, just -- for your

9   convenience, I have in my calendar we have something scheduled

10  for the 10th currently.

11        THE COURT:  Do we?  Let me look.

12        We have an eleven o'clock.  Do I read that correctly?

13        MR. JOHNSON:  On the 10th, yes.  That's what I have

14  in my calendar.

15        THE COURT:  I do as well.  So it seems like that

16  would work, or do you want to move that?

17        Mr. Poulton, you had mentioned later that week.

18        MR. POULTON:  I think leaving it as is is fine.

19  Anything in that week -- we ought to know whether there are any

20  lingering problems that would require the Court's review, but

21  I suspect we'll work it all out.

22        THE COURT:  Okay.  I appreciate you pointing that

23  out, Mr. Johnson.  Any reason to think that that date is no

24  longer appropriate?

25        MR. JOHNSON:  No, Your Honor.

1          THE COURT:  Okay.  We'll leave it on for the next

2     status May 10th at eleven o'clock, as previously scheduled.

3          Mr. Poulton, what's the timeframe on this motion?  Is

4     it time sensitive?

5          MR. POULTON:  We're going to give a copy, without a

6     request, of whatever we would receive to plaintiffs' counsel.

7     I think that there would be adequate time to get that and to

8     have that and to make whatever motions need to be made

9     concerning it.  I'd love to have it sometime in the next,

10    you know, four or five business days, if the Court is going to

11    grant the motion.  We did send in a draft order.  I don't know

12    if that would be helpful.  We could send -- we could e-mail it

13    to whoever you would like us to in Word if that would be

14    helpful.

15         THE COURT:  I think it's going to be a bit more

16    involved.  Forgive me.

17         MR. POULTON:  Okay.

18         THE COURT:  I think it's going to be a bit more

19    involved because of the intersection between Rule 45 and some

20    of these State statutes and the dearth of case law or authority

21    on it, so I think it will be potentially a couple of weeks here

22    before we get something out.  It may be, to expedite matters,

23    something I can read into the record, saves a little time.

24    Perhaps I could do that on the 10th of May.

25         MR. POULTON:  I don't know what the turnaround time

1   would be for the agency.  That's probably why I was getting --

2   or my associate was getting an e-mail yesterday, to give us an

3   update.  I think they're probably worried about how much time

4   it would take to --

5           THE COURT:  Well, they can always -- I mean, they can

6   always put this stuff together now, so it's ready.

7           MR. POULTON:  We'll suggest they do that.

8           THE COURT:  From one law enforcement agency to

9   another.

10          The Court will work its way through this.  What

11  I hear Mr. Johnson to say is no position broadly but no

12  objection on relevance.  So there's a number of other things

13  the Court has to address, but I don't see why the entity here

14  on something like this couldn't move forward with putting

15  things together so that they have them done, so that they don't

16  hold things up.  We'll leave it at that.

17          Anything further besides that, Mr. Poulton, on your

18  end?

19          MR. POULTON:  No, Your Honor.  Thank you.

20          THE COURT:  Okay.  Hearing nothing then from either

21  side, we'll let Mr. Bargil get back to making the bed.

22          MR. BARGIL:  I do apologize for my indecency,

23  Your Honor.

24          THE COURT:  I wouldn't go so far as to say it was

25  indecent.

```
1              MR. BARGIL:  Unprofessional.

2              THE COURT:  It provided a moment of levity.

3              MR. BARGIL:  Okay.

4              THE COURT:  So, with that, we'll be in recess.

5    Thank you to you all.

6              MR. BARGIL:  Thank you.

7                         - - - - -

8              (Proceedings concluded at 11:37 a.m.)

9                         - - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    C E R T I F I C A T E

2

3          This is to certify that the foregoing transcript of

4    proceedings taken in a status conference in the United States

5    District Court is a true and accurate transcript of the

6    proceedings taken by me in machine shorthand from a digital

7    audio recording and transcribed by computer under my

8    supervision, this the 15th day of July, 2022.

9

10

11                                   /S/ DAVID J. COLLIER

12

13                              DAVID J. COLLIER

14                              OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25