**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| **DALANEA TAYLOR, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No.** |
| **vs.** | ) | **8:21-CV-00555-SDM-CPT** |
| | ) | |
| | ) | |
| **CHRIS NOCCO,** *in his official* | ) | |
| *capacity as Pasco County Sheriff,* | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**STATUS CONFERENCE**
***(held via Zoom videoconference)***
**BEFORE THE HONORABLE CHRISTOPHER P. TUITE**
**UNITED STATES MAGISTRATE JUDGE**

**MAY 23, 2022**
**11:02 A.M.**
**TAMPA, FLORIDA**

---

Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.

---

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA 33602

**APPEARANCES:**

**FOR THE PLAINTIFFS:**

*Robert E. Johnson*
*Ari Bargil*
*Caroline Grace Brothers*
Institute for Justice
16781 Chagrin Boulevard, Suite 256
Shaker Heights, Ohio 44120
(703) 682-9320

**FOR THE DEFENDANT:**

*Thomas W. Poulton*
DeBevoise & Poulton, PA
1035 South Semoran Boulevard, Suite 1010
Winter Park, Florida 32792-5512

P R O C E E D I N G S

- - - o0o - - -

THE COURT: Good morning, everyone.

Madam Clerk, if you could kindly call the case.

COURTROOM DEPUTY: Case Number 21-CV-555-SDM-CPT, Taylor, et al. versus Nocco.

THE COURT: If I could please have the appearances of counsel for the record, beginning with the plaintiff.

MR. JOHNSON: Good morning, Your Honor. Rob Johnson for plaintiffs, joined by my co-counsel, Mr. Ari Bargil and Ms. Caroline Grace Brothers.

THE COURT: Good morning to you all.

And for the defense?

Mr. Poulton, I think your microphone is muted.

MR. POULTON: Tom Poulton here on behalf of the Sheriff.

THE COURT: Good morning to you well -- as well, rather, Mr. Poulton. As Yogi Berra often would say, it's like déjà vu all over again.

So we're here for another status conference, perhaps the last, we'll see.

I've looked at the status report. It appears that most of the issues that are or have been pending or percolating have been largely resolved.

I'll focus, if I could, on, Mr. Poulton, your

response to the plaintiffs' seventh set of requests for production. Can you tell us where that stands now.

MR. POULTON: Yes. It's a question of the volume of the e-mails that were generated by the words, the word searches the plaintiffs wanted. My associate, Rob Holborn, has been working with plaintiffs' counsel, including this morning, narrowing it and narrowing it and narrowing it. They've got it down now, I think, to a couple of thousand on a couple of the searches and they're still working to reduce it further. My understanding is that a lot of progress is being made, and it seemed like from our end we were hopeful that we would be able to come up with something that made sense.

I don't know, maybe opposing counsel can elaborate further, but my impression is that it's being worked on and seems like we'll be able to resolve it.

THE COURT: Okay. Mr. Johnson, I take it that you're, as has been the case, taking the lead here?

MR. JOHNSON: Yes. Yes, Your Honor.

Yeah, we've been working with opposing counsel, Ralph Holborn, on the e-mail searches. You know, we've -- we have suggested some narrower search terms. I mean, the requests themselves are fairly narrow, so I'm not really -- we haven't really -- obviously we haven't seen these thousands of e-mails, so we don't know why the searches are turning up thousands of e-mails. You know, what we've asked for are

communications about Robert Jones or his son with the Pasco County Code Enforcement, which is separate from the Sheriff's Office, Code Enforcement Division of the County, and, you know, frankly, it's a little confusing why thousands of e-mails would be turning up. I find it hard to believe, although perhaps it's true, that there were thousands of e-mails concerning these individuals. My guess is that the search terms just need to be refined.

I've been working with, you know, Mr. Holborn on that. The only thing I would say is that I think obviously we're two weeks out from the motions for summary judgment and there -- and I don't think there's any -- I don't think this is intentional or anything like that, but it's just perhaps a fact that we have to sort of coordinate with the Sheriff's Office, but it seems to take a few days, at least, every time there is a suggestion of how to narrow the search results, it takes some time to get that back, although I can't imagine it takes longer to run the searches, so I don't know -- you know, I'm hopeful that we'll get that done in the next few days, but it's obviously largely outside of plaintiffs' control.

THE COURT: Mr. Poulton, what is the timing on --

MR. POULTON: I don't know, Your Honor.

THE COURT: -- disclosure?

MR. POULTON: Sorry. Am I -- okay, I don't know, Your Honor, because I'm not -- I'm not intimately involved in

the resolution of these search terms. I can tell you Mr. Holborn had been out ill, but he's back in the office now, so maybe that will help expedite it.

The only thing that I can guess myself as to why there are so many results coming back is the nature of search terms like "Jones," you know, but that would just be my speculation, but I can't give you a specific date because, as I say, I think that Counsel are still working on narrowing the search terms to try to reduce the number of responses.

THE COURT: Are you looking, Mr. Johnson, to use these e-mails in the motion for summary judgment, to defend against one?

MR. JOHNSON: I think we may, Your Honor, yes. There's -- it's not -- it's a sort of -- it's not the center of the case, but I think there is one citation that was issued to Robert Jones by this separate office, and so, you know, it's important for us to understand any communications between the defendant and then this other office.

THE COURT: Mr. Poulton, I understand that you're not the individual who is handling this who is out ill, but the discovery deadline -- or the summary judgment deadline is two weeks from today, so it would be helpful at a minimum to have greater clarity about when this will be resolved so that the Court is aware as to whether there's a problem here in terms of the summary judgment deadline.

MR. POULTON: Can I ask for a moment on mute to check with my associate on that to see if he has a sense of that?

THE COURT: Sure.

MR. POULTON: Thank you.

Your Honor, Mr. Holburn advises that he hopes that it will be wrapped up this week, and that with the Court asking that it be expedited, he will share that with the client, in hopes that that can speed up the back and forth on the -- you know, we get new search terms, hopefully it can speed up having that run, to get the results faster than it has been in the past.

THE COURT: Mr. Johnson?

MR. JOHNSON: That would be very helpful.

THE COURT: Okay. In terms of deciding how best to handle it, from the Court's perspective, one way to keep an eye on this would be to schedule this for a status on the 31st, which would be the first day after the Federal holiday, which may be largely, if not entirely, to address the singular issue, but what I hear, Mr. Poulton, is that the Court would be advised that that issue has been resolved and therefore we could perhaps cancel the status conference. Any reason to think that wouldn't be an appropriate way of handling this?

MR. POULTON: I think that's fine. What we would do is on Friday, if it's been resolved by then, or earlier, we could file a notice with the Court that that -- just a status

update that that's been resolved, and if you would tell us what you'd like in the title to put it in the right queue to let Your Honor cancel the hearing, we could do that.

THE COURT: Okay. Let's take, if we could, just a look at the other -- any other issues that are outstanding here, I know there's at least one, and then we'll decide what's best in terms of the mechanics of these remaining matters.

There was the additional issue, again, having to do with the seventh set -- seventh set of requests for productions having to do with Anthony McDougall. I get the sense though, like this matter, Mr. Poulton, that it's anticipated this will be resolved shortly?

MR. POULTON: I'm sorry, Your Honor, you're going to have to remind me of what that particular Anthony McDougall issue was.

THE COURT: The information on when and if McDougall was listed as a prolific offender.

MR. POULTON: Right. That's either been resolved or about to be resolved. Opposing counsel can correct me if I'm wrong.

THE COURT: There was a password protected issue, Mr. Johnson?

MR. JOHNSON: We did receive accessible versions of those documents.

THE COURT: Okay. So that issue is resolved,

Mr. Johnson?

MR. JOHNSON: I believe it's largely resolved. There is still this question -- there's apparently a document that the Sheriff's Office is looking at to be able to say that Anthony was listed as a Target of the Month for eight minutes, and, you know, I don't -- I would just like to see that document, whatever it is that that's being based on.

THE COURT: Mr. Poulton?

MR. POULTON: Yeah, the -- my understanding is that what that's about is that the Target of the Month means that you have a warrant, and the warrant was served very quickly after he was listed and that's why it's such a short period of time. I will check with the agency and my associate on this, this additional document that might shed some light on that that Mr. Johnson is referring to. I don't -- I wouldn't think that would take much time at all.

THE COURT: Mr. Johnson, is that the only matter outstanding with respect to Mr. McDougall?

MR. JOHNSON: I believe so, Your Honor.

THE COURT: Okay. Well, that leaves us with -- so far with the e-mails regarding Mr. Jones. There's also a separate set of e-mails that you've been reviewing, Mr. Poulton, for some time. What's the status with that secondary category of e-mails?

MR. POULTON: That would be early next week when

I would finish that up. What it is is that this goes back quite a ways in the case of just sort of generic search terms, and we -- right now what we're down to is just looking for anything unusual or out of the ordinary that would be relevant to plaintiffs' claims, and it's just across a broad spectrum of deputies, and so it's something that I'm doing, you know, very quickly, but there are a lot of deputies, so I just have to go through and make sure there's nothing unusual there that would be of note to plaintiffs' counsel.

By way of an example of what was produced before is that when the Sheriff's Office would identify somebody as a prolific offender, there might be what some people refer to as like a spider chart that would show their associates, and we did that over a period of time, and I think that the plaintiff has plenty of those exemplars now where they can show that, you know, this is how the Sheriff's Office is viewing not just a prolific offender but a person associated with a prolific offender, which could include a family member.

So those sorts of things I'm not interested in producing again. If we happen across an e-mail or some report regarding the plaintiffs or an associated prolific offender that is unusual or that hasn't been produced before, that's what I'm looking for now, but I would think I would be able to have that done at the beginning of the week.

THE COURT: I think maybe a good timeframe would be

the end of this week, just so we have some sense of what we're going to do next week.

MR. POULTON: Um, I'm trying to -- I'm on a lot of deadlines.

THE COURT: Well, let's do this. Why don't --

MR. POULTON: I'll get it done. I'll get it done. I'll get it done by Friday.

THE COURT: Okay. I may make it easier, because then we don't have to have a status, might free up some time for you.

MR. POULTON: I understand. It's just a lot.

THE COURT: Well, let's do this, Mr. Poulton, we'll -- you do your best, and we'll have a status on the 31st. I've got a matter currently scheduled for eleven o'clock, so we'll have to pick a different time.

Any reason that counsel is not generally available on the 31st? Mr. Johnson, I'll begin with you.

MR. JOHNSON: No, Your Honor. It looks like my schedule is pretty open on the 31st.

THE COURT: Mr. Poulton?

MR. POULTON: I am open.

THE COURT: Okay. My courtroom deputy is out for the moment, so I may have to address that tomorrow, in terms of scheduling.

I do have a note about the juvenile records. The

Court issued an order last week, which I'm sure you've seen by this point, Mr. Poulton, authorizing the production of those e-mails. Any issues there?

MR. POULTON: No. In fact, the Department of Juvenile Justice just sent us their records, and so we'll be turning a copy of those around to plaintiffs' counsel today.

The Clerk asked us, along with your order, to send a copy of the motion that we had filed so they can provide it to the Circuit Court Judge, to give them an additional order, as we discussed, as relates to the -- regarding the county records, so that's all moving along quickly.

THE COURT: Okay. I'm just taking a quick note.

That appears to be all the matters that we have to address.

Mr. Johnson, anything that I've missed?

MR. JOHNSON: No. I don't think so, Your Honor.

THE COURT: Okay. Mr. Poulton, anything you think I've missed or --

MR. POULTON: No, Your Honor.

THE COURT: -- you would like me to address?

MR. POULTON: No, Your Honor. Thank you.

THE COURT: Thank you.

So we'll schedule this for another status on Tuesday and then we'll have to address the one remaining status that's on the books for after summary judgment deadline. I believe

that's on the 7th. So we can talk next week about the merits of that.

As far as the mechanics, Mr. Poulton, I think filing a joint status, if the matter is not resolved, relating to where things stand would be appropriate on Friday, or a motion to cancel it and the reason why. Doesn't have to be complicated.

MR. POULTON: Okay.

THE COURT: It will come to my attention quickly, so --

MR. POULTON: Understood.

THE COURT: Okay?

With that, anything further, Mr. Johnson?

MR. JOHNSON: No. Thank you, Your Honor.

THE COURT: Thank you.

Mr. Poulton, anything further?

MR. POULTON: No, Your Honor. Thank you.

THE COURT: Thank you to you both.

Hearing nothing further, we'll be in recess.

MR. POULTON: Thank you.

THE COURT: Thank you.

- - - - -

(Proceedings concluded at 11:19 a.m.)

- - - - -

C E R T I F I C A T E

This is to certify that the foregoing transcript of proceedings taken in a status conference in the United States District Court is a true and accurate transcript of the proceedings taken by me in machine shorthand from a digital audio recording and transcribed by computer under my supervision, this the 15th day of July, 2022.

/S/ DAVID J. COLLIER

DAVID J. COLLIER
OFFICIAL COURT REPORTER