UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR; TAMMY
HEILMAN; DARLENE DEEGAN;
and ROBERT A. JONES III,

      Plaintiffs,

v.                                     CASE NO.: 8:21-cv-00555-SDM-CPT

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

      Defendant.
_____/

## SUPPLEMENTAL AFFIDAVIT OF LARRY KRAUS

On this day, Larry Kraus, appeared before me, the undersigned authority, and after being placed under oath, attests to the following:

1. My name is Larry Kraus, I am a citizen of the United States and a resident of Florida. I am over 18 years of age and am otherwise competent. I have personal knowledge of the facts set forth in this affidavit.

2. I am currently the Captain of the Research and Analysis Division (RAD) of the Pasco Sheriff's Office. This was formerly termed the Intelligence-Led Policing Section. Part of my duties since October of 2017 has been to oversee this unit of the Sheriff's Office.

3. Since I became employed by the Pasco Sheriff and began oversight of the ILP approach to criminal intelligence at the Sheriff's Office, I have frequently revised both the practices and written documentation concerning and governing ILP. The effort to improve the ILP approach and adapt to community needs and agency resources is ongoing and is part of normal policy review. For example, with input from others, I have repeatedly edited and revised the ILP Manual and then most recently, both the ILP Manual and Directive, which I understand have been provided to the Court.

4. I was not previously aware that there is legal significance to changes which have occurred to the practices of the Sheriff's Office in the last year in terms of the lawsuit by Ms. Taylor and others and was not aware that any changes were important for the claimants' request for changes in the future to either the written documentation governing ILP or to the agency's practices. The changes described below were not made in response to the Taylor, et. al., lawsuit, but I have recently been made aware of the need to update the Court and the parties in this case on these changes and so note that the following has occurred or will occur in the near future:

    a. Beginning in approximately March of this year, the Sheriff's Office stopped scoring for prolific offenders and discontinued generating of the prolific offender pool. This used to be done quarterly, *i.e.,* every 90 days, but has since been discontinued.

b. The agency no longer uses the prolific offender designation. That was discontinued at approximately the same time that we stopped using the scoring technique.

c. Crime analysts at the district level still review reports of criminal activity and consult with command staff at the district level to identify persons who are actively contributing to the criminal environment in Pasco County and still meets with district staff approximately once a week to discuss those persons who have repeatedly committed crimes or been involved in criminal activity; however, those persons are no longer identified as prolific offenders.

d. The Sheriff's Office instead will designate those persons so-identified as a "focused offender" such that, when a crime or series of crimes is committed and which might involve that offender, deputies in that district will be alert to their possible involvement and be aware as they patrol and investigate criminal activity.

e. There is no longer a requirement for a quarterly check of prolific offenders, as discussed in previous versions of the ILP manual or the Directive, and the Sheriff's Office no longer conducts such checks, either on persons previously designated as prolific offenders or as to focused offenders. A deputy might visit a focused offender if there is a reason to believe that person has been involved in or had knowledge of recent criminal activity, but the agency has stopped performing any sort of routine or random visits to prolific offenders or focused offenders. I cannot recall when that process was discontinued, but believe it was prior to the discontinuation of the prolific offender designation process discussed above.

f. The primary manner in which information about focused offenders is used is to share the agency's information on that person's involvement in criminal activity with the State Attorney's Office whenever such a person is arrested so that the State Attorney might consider that information in its approach to a given prosecution.

g. As a result of these changes, we have also discontinued the "zero tolerance" policy of arrests towards prolific offenders.

h. Also, as a result of these changes, we also do not have zero tolerance for County Code violations. If a location is a problem location, *i.e.,*

repeat illegal activity or drug use or similar circumstances, or if a safety hazard is observed deputies will still report the location to County Code Enforcement officials for review, but this is not tied in any way to a person formerly being a prolific offender or a focused offender.

      i.     ILP concepts evolve, not just at the Pasco Sheriff's Office but nationally and even internationally. The overall focus of the ILP approach moving forward at the Pasco Sheriff's Office is to particularly to address the problem areas in the community. Problem Places or Place-Based Policing is a component of Intelligence-Led Policing and in essence it uses crime data to determine locations within the county with the highest concentration of crime. Once the high crime areas are identified the crime itself is analyzed as all crime cannot be treated equally. The analyst will prioritize violent crime, crimes with high victimization, and crimes causing the most social harm within an identified geographic location. This information is then provided to district command staff and to deputies to help them focus their attention on the areas where crime is occurring.

5.     In addition, and to highlight the time we spend reviewing our practices and procedures, we have developed a Training and Audit Coordinator within RAD. The Training and Audit Coordinator (TAC) is responsible for maintaining annual and specialized training for the Research and Analysis Division (RAD) to ensure operational readiness and continuum of training required for career development and enhanced position performance.

6.     The TAC will conduct research related to analytical tradecraft and current policing practices being deployed globally by law enforcement agencies to better develop and maintain a high level of training for RAD analysts and detectives. The TAC will be responsible for audit readiness as it relates to 28 CFR Part 23 and law enforcement databases used for analytical purposes so as to ensure compliance

by PSO Members. In addition, the TAC will be responsible for PSO's yearly criminal intelligence data purge required under 28 CFR Part 23 as it relates to submission/entry (collection) of criminal intelligence/information, inquiry, dissemination, review and purge or validation, audit and inspection, and security of PSO's identified data. The TAC will also be responsible in training new hires. The TAC will also:

    a.    Will conduct monthly, quarterly and yearly audits on all of RAD's intelligence resources as needed. Should an audit require a purge of data, the appropriate steps will be taken to ensure data is handled properly.

    b.    Will identify gaps in training, not only for the unit as a whole, but also for each individual member within the unit.

    c.    Will identify instructors, both internally and externally, for advanced training to ensure the needs of the unit are met.

    d.    Will ensure required access is given to all intelligence programs to new hires and interns during the onboarding process.

    e.    Will provide initial training upon hire to new RAD employees, interns and volunteers.

    f.    Will be the keeper of the unit's Standard Operating Procedures.

    g.    Will monitor and maintain that all employees complete required retraining of certain education that is required for recertification and needed to uphold policies

7.   I am currently working on revisions to the Directive to reflect these changes. It must be reviewed at numerous levels of the Sheriff's Office. My best estimate is that the revised version of the Directive will be reviewed and approved within the next 90 days.

FURTHER AFFIANT SAYETH NAUGHT.

LARRY KRAUS

STATE OF FLORIDA  }
COUNTY OF Pasco   }

BEFORE ME, the undersigned Notary Public, this day appeared LARRY KRAUS via audio-video communication, who has provided proper identification in the form of (personally known), and he acknowledged under oath that he executed the foregoing affidavit freely and voluntarily.

SWORN AND SUBSCRIBED TO before me this 21st day of December, 2022.

NOTARY PUBLIC

Signature of Notary

Shelley Gardner
Printed Name of Notary
My Commission Expires: 5/10/24

SHELLEY A. GARDNER
Notary Public · State of Florida
Commission # GG 986039
My Comm. Expires May 10, 2024
Bonded through National Notary Assn.