1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

2

**TAMPA DIVISION**

3

DALANEA TAYLOR, et al.,

4

                    Plaintiff,

5

     vs.                      CASE NO. 8:21-cv-555-SDM-CPT
                              June 6, 2023

6

                              Tampa, Florida
                              9:10 - 10:18 a.m

7

CHRIS NOCCO,

8

                    Defendant.

9

_____/

10

11

12

            TRANSCRIPT OF MOTION HEARING
               (Via Zoom Videoconference)

13

       BEFORE THE HONORABLE CHRISTOPHER P. TUITE
               UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

Proceedings transcribed via courtroom digital audio

25

recording by transcriptionist using computer-aided
transcription.

1    **APPEARANCES:**

2

   For the Plaintiff:     ROBERT E. JOHNSON, ESQ.
3                             Institute for Justice
                         16781 Chagrin Boulevard, Suite 256
4                             Shaker Heights, Ohio 44120
                         703/682-9320
5
                         ARI SIMON BARGIL, ESQ.
6                             Institute for Justice
                         2 South Biscayne Blvd., Suite 3180
7                             Miami, Florida 33131
                         305/721-1600
8
                         CAROLINE GRACE BROTHERS, ESQ.
9                             JOSHUA A. HOUSE, ESQ.
                         Institute for Justice
10                            901 North Glebe Road, Suite 900
                         Arlington, Virginia 22203
11                            703/682-9320

12
   For the Defendant:     ROBERT D. HOLBORN, ESQ.
13                            THOMAS W. POULTON, ESQ.
                         DeBevoise & Poulton, P.A.
14                            1035 South Semoran Blvd.
                         Suite 1010
15                            Winter Park, Florida 32792
                         407/673-5000
16
   Also present:         PATRICK KENNY, ESQ.
17

18      Court Reporter:      Howard W. Jones, RDR, RMR, FCRR
                         801 N. Florida Avenue, Suite 15A
19                            Tampa, Florida 33602
                         813/301-5024
20

21                 * * * * * * * * * *

22

23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**I N D E X**

| | PAGE |
|---|---|
| ARGUMENT BY MR. BARGIL: | |
| ARGUMENT BY MR. POULTON: | 7 |
| ARGUMENT BY MR. BARGIL: | 10 |
| ARGUMENT BY MR. POULTON: | 12 |
| ARGUMENT BY MR. BARGIL: | 13 |
| ARGUMENT BY MR. POULTON: | 15 |
| ARGUMENT BY MR. BARGIL: | 19 |
| ARGUMENT BY MR. POULTON: | 22 |
| ARGUMENT BY MR. BARGIL: | 24 |
| ARGUMENT BY MR. POULTON: | 25 |
| ARGUMENT BY MR. BARGIL: | 26 |
| ARGUMENT BY MR. POULTON: | 32 |
| ARGUMENT BY MR. BARGIL: | 36 |
| ARGUMENT BY MR. POULTON: | 41 |
| ARGUMENT BY MR. BARGIL: | 43 |
| ARGUMENT BY MR. POULTON: | 43 |
| ARGUMENT BY MR. BARGIL: | 45 |
| ARGUMENT BY MR. POULTON: | 46 |
| ARGUMENT BY MR. BARGIL: | 48 |
| ARGUMENT BY MR. POULTON: | 53 |
| ARGUMENT BY MR. BARGIL: | 54 |
| CERTIFICATE OF COURT REPORTER: | 56 |

\* \* \* \* \* \* \* \* \* \*

**P R O C E E D I N G S**

1

2          (Court called to order.)

3          THE COURT:  Good morning, everyone.

4          Madam Clerk, if you could please call the case.

5          THE DEPUTY CLERK:  Certainly.  Dalanea Taylor,

6 et al., vs. Nocco, Civil Case No. 8:21-cv-555.

7          THE COURT:  If I could please have the appearances

8 of counsel for the record beginning with the plaintiff.

9          MR. BARGIL:  Good morning, Your Honor.  Ari Bargil

10 on behalf of the plaintiffs this morning.  And I'm joined by

11 my colleagues, Robert Johnson, Caroline Grace Brothers, and

12 Joshua House.

13          THE COURT:  Good morning to you all.

14          And for the defense?

15          MR. POULTON:  Good morning, Your Honor.  I'm Tom

16 Poulton, I'm here on behalf of Defendant Sheriff Nocco.  I

17 have with me my associate, Rob Holborn, and we also have

18 Patrick Kenny, an attorney with the Florida Sheriff's Risk

19 Management Fund.

20          THE COURT:  Good morning to you all as well.

21          Mr. Bargil, I take it from the fact that you

22 announced your presence first that you're taking the lead

23 here?

24          MR. BARGIL:  That is correct, Your Honor.

25          THE COURT:  And, Mr. Poulton, fair to assume that

1  you're taking the lead here as well?

2        MR. POULTON:  Yes, Your Honor.

3        THE COURT:  Okay.  For the parties' benefit, I've

4  allocated an hour for argument this morning.  I won't rule

5  out the fact that we may be coming back together at a later

6  time for further argument or further inquiry, but I want to

7  go through a number of issues raised in the filings.

8        Let me begin with the issue of mootness.  And if

9  the parties could help me out, just given the time

10  constraints here, I'll ask a number of direct questions

11  covering a variety of topics.  So if you could all do your

12  best just to answer the question.  I know there's an

13  interest in advocating, but it would help me out in just

14  dealing with some of these issues.

15        Mr. Bargil, let me begin with you.  There's some

16  suggestion in the submissions here, at least as to the

17  April 2023 visit to Heilman, if I've got the pronunciation

18  of her last name correctly, to the house about discovery, an

19  allusion in the filing to the fact that plaintiffs' haven't

20  had an opportunity to conduct discovery regarding the

21  matter.

22        Where does that stand?  Are you seeking discovery

23  on the matter or are you standing pat on where you are?

24        MR. BARGIL:  Well, I think it would be helpful to

25  know more about it.  At this stage, all we can say is that

1   that was a visit that had a lot of the ingredients of a

2   prolific offender check.  And so to the extent that the

3   other side is arguing that this case is moot, we would point

4   at something like that and say, well, this is a really

5   strong indication that in fact it's not -- that this could

6   have been a prolific offender check and certainly cast a lot

7   of doubt on their assertion that the case is moot and

8   that -- I'm sorry, that the case is moot and now they've

9   stopped.  And that they've ceased the process.  I'm sorry.

10          THE COURT:  That's okay.  What discovery in

11   particular are you looking for?

12          MR. BARGIL:  Well, you know, I don't know that we

13   necessarily need to reopen discovery, but what I would say

14   is that it would -- you know, if we knew more about the

15   basis for this.  Obviously, they've said this isn't pursuant

16   to the policies and customs that we've challenged.  We

17   aren't really sure ultimately.  We have challenged the

18   policies and customs that were in place before and this is

19   just an indication of how easily they could restart the

20   programs if in fact they were taking them at their word and

21   they have restarted them and they have --

22          THE COURT:  So I'm looking for little clarity here

23   if you could help me out.  Is the plaintiff looking for --

24   or plaintiffs, rather, looking for discovery on the matter

25   or are they not?

1          MR. BARGIL:  Officially, no, Your honor.  We're

2    not -- we're not asking for additional discovery.  There are

3    some things here that we don't know, but as I said, I don't

4    think it's critical to know those things for this -- for us

5    to be able to show that they haven't met their burden on

6    mootness.

7          THE COURT:  To be clear, for purposes of the

8    summary judgment motions, competing summary judgment

9    motions, you're not resting on any argument that you lack

10   discovery on the matter?

11         MR. BARGIL:  No, Your Honor.  I think we've put

12   quite a bit of evidence into the record to establish that

13   we're entitled it relief on summary judgment.  And so I

14   don't think that we necessarily need more just as it relates

15   to this one visit.

16         THE COURT:  Okay.  Thank you.

17         Mr. Poulton, let me turn to you.  As I understand

18   it, at least preliminarily at this point, whether something

19   is a question of standing versus mootness, related concepts,

20   but different, involves a difference in who bears the

21   burden.  So would you agree that if it's mootness, the

22   defendants bear the burden here?

23         MR. POULTON:  Yes.

24         THE COURT:  Okay.  Why is this not a question of

25   mootness as opposed to standing?

1          MR. POULTON:  Well, I think it depends on which

2     issue you're talking about.  If you're talking about, for

3     example, the claims that would be -- that would belong

4     theoretically to the individual children, the plaintiffs'

5     don't have standing to bring those.  Taylor would, because

6     she was a prolific offender, but the others -- the other

7     plaintiffs were not.

8          If you're talking about mootness in the sense of

9     the change in the Sheriff's policies, I think that we've

10    carried that burden by demonstrating that the policy began

11    to shift actually in 2021.  There was a de-emphasis on the

12    prolific offender checks, they reduced to zero in 2022, and

13    then there was a formal adoption of a new ILP approach

14    going -- moving from prolific offenders to focused

15    offenders.

16         In the first part of this year, we had some -- I'm

17    sure Your Honor is aware, some depositions and whatnot that

18    got into that.  I found out about it and alerted the Court

19    and then plaintiffs' counsel took depositions to delve into

20    that.

21         THE COURT:  Let me just have you pause for a

22    moment.  So why don't the parents -- I'm familiar with

23    standing, I've read your filings.  Why don't the parents

24    have standing here?

25         MR. POULTON:  Well, I, again, have to further

 1    break it down into what is the claim.  If the claim is a

 2    prolific offender check in and of itself is problematic as

 3    to the individual children, that claim belongs to them.  If

 4    the claim is that the prolific offender check represents in

 5    the words of plaintiff harassment of the parents, then they

 6    would have that claim.  I would agree that they would have

 7    standing as to that claim, but they wouldn't have standing

 8    as to the claims of their children.

 9            THE COURT:  Well, let me just, if I could, break

10    it down.  So there's four claims here.  I'll begin with what

11    may be the easiest one, the First Amendment right of

12    association, intimate association to be specific, the

13    parents have standing to bring that claim?

14            MR. POULTON:  In part, yes.  For themselves, yes.

15            THE COURT:  Okay.  And on the Fourth Amendment

16    claim?

17            MR. POULTON:  I lost you for a second.  The Fourth

18    Amendment --

19            THE COURT:  On the Fourth Amendment claim, would

20    they have standing?

21            MR. POULTON:  On occasion, yes.  When the

22    plaintiffs themselves were the ones -- again, we have to

23    break it down a little bit, are we talking about an arrest,

24    are we talking about simply, you know, the knock-and-talk

25    scenario.  You kind of have to go one by one.  But in -- I

1    would say in the bulk of them, yes.

2              THE COURT:  In the bulk of them being which type

3    of scenario?

4              MR. POULTON::  The knock-and-talk scenario.  If

5    they were the person with whom the encounter occurred.  The

6    reason I point that out is that if you watch -- and I won't

7    get into specific instances, but if you watch the videos,

8    some of the interactions are not with the plaintiffs,

9    they're with the children.

10             THE COURT:  The due process claim, parents have

11   standing?

12             MR. POULTON:  No.  No.

13             THE COURT:  And the substantive due process claim,

14   parents have standing?

15             MR. POULTON:  Yes.

16             THE COURT:  Mr. Bargil, your response.  Let's just

17   stay on standing for the moment.  It's been conceded here

18   that the parents have standing as to three of the four

19   claims.  The only one being -- largely the only one being

20   challenged here is procedural due process.

21             What do you say to that one claim and the parents'

22   standing?

23             MR. BARGIL:  So I think on procedural due process,

24   if I'm not mistaken, he -- did he concede that they would?

25   You know, I think --

1          THE COURT:  No, the answer -- just to be clear, I

2    understood -- Mr. Poulton can certainly correct me if I'm

3    wrong -- the only one in which he said the parents did not

4    have standing was procedural due process.

5          MR. POULTON:  That's correct, Your Honor.  That's

6    our position.

7          THE COURT:  Okay.  Mr. Bargil, solely as to that

8    claim, because the others are conceded.

9          MR. BARGIL:  Okay.  I think that's pretty

10   straightforward, Your Honor.  Parents of minors have

11   standing to challenge when actions are taken against their

12   children or implicating their children.  I think that's

13   pretty black letter principle of law.  And that's the basis

14   for articulation of standing of the parents here.

15          I would go back also, and maybe Your Honor was

16   about to get to this, but I would also like to touch on the

17   Fourth Amendment argue that Mr. Poulton made, which is to

18   suggest that we've got to, you know, divvy up all of these

19   different interactions.  I think in every single instance,

20   Your Honor, whether it was a prolific offender check or, as

21   Mr. Poulton describes them, knock and talks, those

22   interactions took place on the properties of the parent

23   plaintiffs.  And so for those reasons alone, just on

24   those -- just on the basis of that they have standing as

25   well.

1          THE COURT:  Okay.  And then as to mootness,

2   Mr. Poulton, to what extent does mootness apply here?  And

3   there are three prongs to the test, one of which is the

4   termination of the program would have to be unambiguous.  If

5   there is a contested issue of fact with respect to Heilman,

6   how is the Court supposed to resolve that on summary

7   judgment?

8          MR. POULTON:  Well, if you're talking about the

9   April -- when the deputies went to the residence to deliver

10  the pamphlet on community resources, is that the incident

11  you are talking about?

12          THE COURT:  Yes.

13          MR. POULTON:  Well, I mean -- well, first, it --

14  it -- I think the evidence is uncontested that that had

15  nothing to do with ILP.  That was a practice for all persons

16  who are released from prison.  There's no indication that

17  that has anything to do with prolific offender checks at

18  all.  And I mean, if you watch the video, it's -- there's no

19  underlying constitutional violation there, period.  But

20  certainly it doesn't even causally relate in Monell sense to

21  the claim.  So it's -- I don't think it changes anything

22  about the evolution of ILP over the 2122 and '23 changes

23  that were made, including the directive.  There's no

24  contribution there at all.

25          THE COURT:  Mr. Bargil, how is the Court supposed

1    to address, if there truly is an issue of material fact

2    that's contested on threshold issues like mootness and

3    standing, what's the Court to do there, hold an evidentiary

4    hearing?

5              MR. BARGIL:  I think that's one way that the Court

6    could handle it.  I think if Your Honor is speaking though

7    only in terms of our claims for forward-looking relief,

8    that's one way to handle it.  I don't think that there is

9    much dispute over the legitimacy of our standing with

10   respect to our backward-looking relief.  I think in every

11   instance we've argued that the plaintiffs have concrete and

12   complete constitutional injuries.  We've alleged damages,

13   including nominally --

14             THE COURT:  Let me just -- it's a fair point.  So

15   let me just -- I should have been more particular.  As to

16   mootness and forward-looking relief, how is the Court to

17   resolve that if there truly is a material issue that's

18   contested, fairly?

19             MR. BARGIL:  I think that that's something that we

20   could deal with in trial or some other sort of fact-finding

21   process.

22             THE COURT:  Even though it's a threshold finding

23   that has to be made for the Court to address it?

24   Ordinarily, these issues, mootness and standing, are of a

25   jurisdictional dimension, so is that left to the trial to

1    decide or is that decided in advance?

2         MR. BARGIL:  I would say two things and the first

3    is that I would like to push back a little bit on the idea

4    that Your Honor can't conclude that as a matter of law they

5    haven't met their burden to establish mootness.  We know

6    that they have a heavy burden and that what they need to

7    show is that there is -- it's absolutely clear that the

8    behavior cannot be reasonably expected to recur and that

9    they won't reimpose it.  And a lot of the factors that the

10   Court would look at in order to reach that issue I think are

11   not in dispute, things like whether or not they're

12   vigorously defending the prior action, things like whether

13   the change is based on a good-faith change in heart or based

14   on, you know, some other need, which is what they've argued

15   here, that this is a resource allocation move.  And so there

16   are a lot of different factors that I don't think are in

17   dispute that the government can -- that Your Honor can take

18   into consideration here and make a finding as a matter of

19   law that the case is not moot.

20        THE COURT:  Well, there's two different things to

21   say that the defendant has not met its burden and to say

22   definitively -- could the jury later decide that it's been

23   rendered moot?

24        MR. BARGIL:  I suppose --

25        THE COURT:  As far as forward-looking relief is

1  concerned?

2      MR. BARGIL:  As far as forward-looking relief is

3  concerned, I think that that's potentially a different

4  matter.  And again, Your Honor, I wouldn't want to -- I

5  don't think that we need to like die on this hill.  I think

6  that as long as we've established that we've got standing

7  for backward-looking relief, you know, that we would be

8  entitled to relief that I think would be satisfactory to our

9  clients.

10     THE COURT:  Mr. Poulton, just to return to you,

11 I've already suggested that there's a fair amount of factual

12 circumstances at issue with respect to mootness.  If the

13 defense has to show that it's unambiguous and/or absolutely

14 clear that it's not -- policy is not reasonably expected to

15 reoccur.  That's a pretty stark phrasing, it could be said,

16 I suppose.

17     Here you've got a number of factors to which you

18 point as to the reason for change in policy, but that's one

19 version of the facts.  So how have you met your burden to

20 show that it's been mooted as far as injunctive relief is

21 concerned?

22     MR. POULTON:  For prospective relief -- one point

23 of clarification before I start on that is that it's -- we

24 don't have a jury trial, it's a bench trial, just an aside

25 on that.

1    THE COURT:  I should have said the fact-finder.

2  My apology.

3    MR. POULTON:  That's getting -- there's just been

4  a comment about it, I just wanted to be clear we were all on

5  the same page on that.

6    You know, we disclosed to the Court and to

7  plaintiff the evolution of the changes and that a written

8  policy change was anticipated.  We did that back in

9  December, I believe.  Plaintiffs' counsel is then able to

10  depose Major Sanborn and Larry Kraus from the Sheriff's

11  Office to establish that the formal policy has been changed.

12  We've also introduced evidence of the dramatic drop in

13  prolific offender checks and down to zero in 2022.

14    The only -- I just think that the question that

15  generically gets posed up, is it possible that one day --

16  just theoretically possible one day you could change your

17  policy back is not enough to overcome the evidence of all of

18  the changes which have occurred and there's just no

19  reasonable likelihood of a return back to the prolific

20  offender check, the random prolific offender check process,

21  which is the core of this case.  And I just -- I just think

22  that the theoretical possibility is always going to be there

23  for any government program, because they -- they adapt to

24  the circumstances.  And the evidence is that they've

25  changed, they don't have any intent to change back.  There's

1   no evidence they have.  Got a written directive for two

2   years, the -- you know, there was a tremendous dropoff and I

3   think that's sufficient to meet that test, to show that

4   future relief is moot for ILP and the claims that are being

5   made here.

6           THE COURT:  What would you say to the argument

7   that why then not just agree to some form of stipulation

8   that you won't go back to the policy?

9           MR. POULTON:  Well, number one is that it's not --

10  you have to overcome mootness first.  You know, a generic

11  stipulation that we won't return to the policy, I mean,

12  that's asking the defendant to, you know, concede ground it

13  doesn't need to concede.  I mean, it's just not -- I don't

14  think that's a proper remedy to ask the Sheriff to promise

15  that it won't, you know, return to a policy when there's no

16  indication that that's even on the table.

17          THE COURT:  Well, as I understand it, and again, I

18  get the point.  But in other words, parties talk informally

19  sometimes and they come to agreements on things, but

20  reasonable suspicion, for example, it appears to be part of

21  the new policy that checks are not required, although,

22  arguably permitted, but there seems to be some area where

23  the parties could maybe reach an agreement that would

24  eliminate that element of the case perhaps, but --

25          MR. POULTON:  Well, in practical terms, you know,

1    if that were to ever occur, you would have plaintiffs'

2    counsel, you know, proclaiming victory where it doesn't --

3    it's not warranted, because the changes are not as a result

4    of the litigation, they're a result of a lot of extraneous

5    factors, COVID and then -- and then, you know, the drug

6    epidemic.  And that leads to a host of other, you know,

7    problems for the Sheriff.

8            THE COURT:  Okay.  Let me go to your *Heck vs.*

9    *Humphrey* argument.  How do the convictions, sentences of the

10   individuals involved, how are they undermined by the claims

11   here?

12           MR. POULTON:  Are you speaking to me, Your Honor,

13   or to plaintiff?

14           THE COURT:  I'm sorry, Mr. Poulton.  Yes.

15           MR. POULTON:  Okay.  Well, again, I think it

16   depends on which conviction or payment of a fine, for

17   example, on the code citations that we're talking about.  We

18   did cite some case law that *Heck vs. Humphrey* applies to the

19   payment of code citation violations, compromise of those.

20   And I believe the evidence is that that happened in every

21   case.  I'm not aware of one where there's a claim that a

22   plaintiff actually prevailed, that one was not objectively

23   justified, they paid them, you know.  And/or fixed them.

24           THE COURT:  So let me just have you pause there.

25           Mr. Bargil, I understand the thrust of your

1   argument to be you're not contesting the validity of the

2   code violations or a particular arrest or conviction.  You

3   use the term harassment, but isn't the argument that whether

4   the violations are legitimate or not is irrelevant,

5   effectively, as an example, and that it's the fact that

6   individuals are targeted?

7            MR. BARGIL:  Well, I think that's one --

8            THE COURT:  Broadly saying.  But in other words,

9   are you challenging the legitimacy of the code violations?

10  Any searches?

11           MR. BARGIL:  We're not -- we're not challenging

12  the legitimacy of the violations, we're not conceding their

13  legitimacy either, because a lot of that goes to the issue

14  of harassment as Your Honor indicated.  But ultimately, I

15  think the -- your framing of your question to Mr. Poulton at

16  the outset gets it exactly right.  In order for the *Heck* bar

17  to apply, any relief that we would get on our constitutional

18  claims would need to undermine any findings made in

19  connection with those arrests or ordinance citations and I

20  just don't think that that's possible.  It's totally

21  possible and, in fact, likely that if we were to get the

22  relief that we're seeking here, it would have no bearing

23  whatsoever on the underlying facts with respect to the

24  findings in those code enforcement citation cases.

25           THE COURT:  Well, I understand you're looking for

1    permanent injunctive relief.  I understand you're looking

2    for, among other things, nominal damages, but let's say, as

3    I understand you're looking for some form of compensatory

4    relief.  Do I understand that correctly?

5            MR. BARGIL:  That's right, Your Honor.  At this

6    stage we're just seeking for a finding on liability, though.

7            THE COURT:  Well, if you're looking for

8    compensatory relief, what is the relief for?  In other

9    words, is it for the reimbursement of a fine, and if that

10   were the case, wouldn't that potentially undermine the

11   validity of the fine?

12           MR. BARGIL:  I don't think so, Your Honor, because

13   it doesn't -- it doesn't mean that the grass wasn't tall,

14   for example.  But if the citation was issued pursuant to a

15   policy and custom that has officers going onto properties

16   for the purposes of harassing people to get them to move or

17   for the purpose of imposing penalties and one person for the

18   actions of another, that doesn't mean the grass wasn't tall,

19   Your Honor.  It doesn't mean there were --

20           THE COURT:  Well, let me have you pause for a

21   moment.  Forgive me, just in the interest of time.  So a

22   motorist is stopped for an infraction allegedly that he

23   didn't commit.  There's a search of the car and they find

24   five kilos of cocaine in the car.  So much to your

25   hypothetical about the grass being too high, there's no

1    doubt that there's five kilos in the back.  If you were

2    allowed compensatory relief on a 1983 claim for an

3    unconstitutional stop, let's say it was done on the basis of

4    some prohibited category or classification of the

5    individual, wouldn't that undermine the conviction?

6             MR. BARGIL:  I mean, I don't -- I'm not sure, Your

7    Honor.  I think the other aspect of this is that, you know,

8    you need to be imprisoned and sentenced to a term of

9    incarceration for *Heck* to even be part of the conversation.

10            THE COURT:  And that's a different argument.  I'm

11   staying with your first argument that just because -- it

12   seems to me that an argument could be made anyway, at least

13   at first blush, that your contention about the legitimacy of

14   the violation would be true in any of these situations where

15   the underlying basis for declaring the evidence was infirm

16   and that would invalidate or cause an issue with respect to

17   the conviction.

18            MR. BARGIL:  So to address the hypothetical

19   directly, and I -- you know, correct me if I'm not doing

20   that, I think that the person in your hypothetical scenario

21   would be entitled to relief for things perhaps like the

22   amount of money they had to pay to hire a lawyer to defend,

23   you know, the criminal case after they were pulled over and

24   other ancillary, you know, harm that --

25            THE COURT:  The conviction, if it was a

1  wrongful -- if the violation was improper constitutionally

2  infirm, the conviction would get tossed, because the

3  evidence would be derived from the stop.

4          MR. BARGIL:  So I think we're conflating different

5  theories.  I think in that example what the person actually

6  would be challenging is the legitimacy of the traffic stop,

7  which has direct, you know, Fourth Amendment concerns.  Here

8  we're not -- we're not challenging the legitimacy of, you

9  know, whether the grass was tall, you know, or something

10  like that, it's why were they there?  Maybe I'm not

11  answering Your Honor's question directly, but that's --

12  that's my response.

13          THE COURT:  I appreciate it.

14          Mr. Poulton, what do you say to the argument that

15  there has to be a conviction -- there has to be a sentence

16  of imprisonment for *Heck* to apply.

17          MR. POULTON:  Well, in the case of the code

18  citations, if they paid them, I think that that's the

19  equivalent, you know, in the code citation context.  With

20  *Heilman*, my recollection is -- and I could be mistaken, but

21  she's got two arrests.  Of course, my threshold point is

22  neither occurred in the context of a prolific offender

23  check, but putting that aside.  One of them she was -- she

24  pled guilty in both and in one of them she was convicted and

25  she had been in jail for some period of time.  So there was

1    a -- you know, whether it was time served or -- that is my

2    recollection.  But, you know, I don't want to be mistaken

3    about which one is which.

4            The other one I believe she was not adjudicated.

5    So that might be -- that might have less behind it in terms

6    of *Heck*, the one where she was not adjudicated.  But she was

7    adjudicated in the other.

8            THE COURT:  Again, this is -- how many instances

9    are there, help me out here, where you actually have

10   something ripening into a criminal conviction as opposed to

11   a fine?

12           MR. POULTON:  Well, with *Heilman* it's at least

13   one.  *Jones* -- *Jones* gets very complicated, because *Jones*

14   has a number of arrests for failure to appear and

15   apparently, according to him, the resolution of that was

16   that that would be resolved by him paying the fine, the

17   underlying fine on the code citation.  There is one arrest

18   that he has for possession of marijuana and I believe that

19   that was nol pros'd is the evidence.  However, as a

20   threshold matter, that arrest occurred when deputies found

21   marijuana after going into the residence with a search

22   warrant, it was not a prolific offender check.  And again,

23   relating back to the two *Heilman* arrests, neither of those

24   were prolific offender checks either.  Neither --

25           THE COURT:  Any other convictions here besides

1    those to which you referred?

2              MR. POULTON:  Well, not that I can recall.

3              THE COURT:  Okay.

4              MR. POULTON:  For arrests.

5              THE COURT:  Forgive me, I didn't mean to

6    interrupt, Mr. Poulton.

7              But, Mr. Bargil, my recollection of jurisprudence

8    is that a fine is deemed to be -- it's subject to an Eighth

9    Amendment analysis anyway.  So isn't that a punitive

10   sanction?

11             MR. BARGIL:  I would agree, Your Honor --

12             THE COURT:  Only applied as to -- in term of

13   incarceration or does it to apply to any punishment?

14             MR. BARGIL:  I think it only applies to a term of

15   incarceration.  And we know that because of the basis for

16   the *Heck* bar.  It's that, you know, plaintiffs aren't

17   supposed to be using 1983 where a habeas petition is the

18   appropriate vehicle for relief and I don't think that that's

19   something that somebody would be filing where they're

20   seeking relief from a fine.

21             Mr. Poulton's arguments on *Heck* generally I think

22   also suffer from another infirmity, which is that they're

23   mostly attuned to claims we haven't made.  We haven't argued

24   that these individual arrests are false arrests.  What we've

25   argued is that they're just reflective of a pattern and

1   policy and custom of misbehavior on the part of the

2   Sheriff's Office.  And so whether, you know, we'd be *Heck*

3   barred if we were challenging the legitimacy of the

4   individual arrests as false arrests is a separate question

5   from what's going on here.

6           THE COURT:  Now, Mr. Poulton, as to *Jones* claims

7   being time barred, the suggestion here is that an awareness

8   of something -- the potential to bring a claim would be

9   alone sufficient as opposed to knowledge that the challenged

10  conduct is tied to a policy or custom here that would be

11  subject *Monell*.  So what do you say to the argument that the

12  *Monell* claim doesn't ripen until information that the

13  challenged conduct is tethered to some kind of policy or

14  custom?

15          MR. POULTON:  The case that the plaintiff cites

16  for that proposition, let's see here, give me one -- well, I

17  won't find it.  It's in the briefing.  But the case that

18  plaintiff cited on that has been dis-avowed as dicta, the

19  conclusion that you have to know of the existence of the

20  policy or custom to say that the *Monell* claim accrues.  The

21  same Court has dis-avowed that as dicta and said, no, it

22  accrues when the constitutional violation occurs, not when

23  you have the particular knowledge of the *Monell* policy or

24  custom that you would later argue is behind it.  And, you

25  know, plaintiff testified repeatedly that he believed his

1    rights were being violated at the time, ergo, causing

2    great --

3              THE COURT:  Thank you, Mr. Poulton.

4              Mr. Bargil?

5              MR. BARGIL:  So the case that we rely on, the

6    Second Circuit decision from 1995 is *Pinaud* and Mr. Poulton

7    says that it was overturned.  That's an unreported decision

8    called *Lawson* from the Second Circuit in 2011.  But the

9    specific principle we cite was reaffirmed by the Second

10   Circuit in a case called, *Butch* -- or *Birch vs. New York* in

11   2017.  The exact same proposition of law that we offer it

12   for in this case under *Pinaud* cited again favorably

13   basically that in order for a *Monell* claim -- for the

14   statute of limitations to be triggered in a *Monell* claim,

15   you need to know about the policy or custom.

16             But even if that weren't true, one thing that we

17   know about all of these cases talking about the statute of

18   limitations is that they tend to ask like what a reasonable

19   person exercising ordinary diligence would find out and

20   when.  And I think it's especially important to point out

21   that in this case much of the information that this case and

22   these claims are based on was not available.  It took a

23   Pulitzer winning expose' from the Tampa Bay Times to make a

24   lot of these people aware of the full scope of the policies

25   or the existence of the policies at all, and much of that

1   reporting was based on leaked documents.  Many of the

2   documents in this case are under seal or confidential,

3   including, you know, aspects of the AIM slides that we rely

4   on heavily.  So to say that they should have had the

5   information necessary to file this claim, you know, earlier

6   than they did is simply just wrong.

7          And in any case, all of our clients had -- you

8   know, these are continuing injuries that extend well into

9   the last four years or within the four years of the filing

10  of the lawsuit, including with Robertson Bobby (ph), who was

11  on the prolific offender list as late as March of 2017 and

12  we filed on March 11th of 2021.  So I think, you know,

13  there's -- I don't think that there's any way that they can

14  really argue around both the *Pinaud* decision and just the

15  general facts on the ground that it would have been

16  impossible for anybody exercising ordinary diligence to be

17  able to file this lawsuit any sooner than when they did.

18          THE COURT:  Mr. Bargil, let me stay with you.

19  Turning to the first of the claims here, the warrant

20  offender checks violating the Fourth Amendment.  I take the

21  argument to be that the standard checks amount to a

22  knock-and-talk.  Do I understand the plaintiffs' argument in

23  that regard?

24          MR. BARGIL:  Not quite, Your Honor.  We don't --

25  we don't -- I'm sorry?

1          THE COURT:  No, I didn't say anything.

2          MR. BARGIL:  Oh.  We don't -- we don't think that

3    these are legitimate knock-and-talks, you know, and not

4    the --

5          THE COURT:  No, I didn't say legitimate.  They

6    amount to a knock-and-talk.  In other words, they should be

7    analyzed under that rubric.

8          MR. BARGIL:  Um, I think, you know, the first

9    stage of the analysis asks whether these visits fall within

10   the implied license and I don't think there is an implied

11   license to enter onto somebody's property and knock on their

12   door for purposes of discovering information that you're

13   going to use against them in criminal court or for purposes

14   of antagonizing them or harassing them because you want to

15   get them to leave town.

16         So I think, you know, as a topline answer to your

17   question, Your Honor, I wouldn't necessarily agree that we

18   think that the best way to look at these is, you know, under

19   the rubric of presumptively constitutional knock-and-talks.

20   I think even if we -- go ahead.

21         THE COURT:  No, I was just gonna say that I heard

22   your argument or read your argument to be that reasonable

23   suspicion is required and I thought it was tethered to a

24   knock-and-talk theory type thing.

25         MR. BARGIL:  Well, that part, Your Honor -- and

1   I'm sorry, if I confused Your Honor.

2          THE COURT:  I'm sure it's because of an inartfully

3   asked question, so --

4          MR. BARGIL:  I appreciate that.  So if the purpose

5   of a, quote-unquote, knock-and-talk, if the Court thinks

6   that this does fall within the implied license or something

7   like that and a knock-and-talk is otherwise permissible, the

8   question then becomes, is, well, what is the purpose of the

9   knock-and-talk?  And if they're there to gather information,

10  to investigate, et cetera, then the Eleventh Circuit has

11  said that reasonable suspicion is required.

12         THE COURT:  There's some intimation that more than

13  reasonable suspicion is required under a theory that it

14  amounts to a search.  Do I understand that there's at least

15  an intimation in your filings that probable cause was

16  required for these encounters?

17         MR. BARGIL:  Yes, you're -- I mean, to the extent

18  that the purpose of going over to these properties is to

19  gather information for purposes of investigating a crime,

20  that is a search under the Fourth Amendment.

21         THE COURT:  Let me just ask you, though, in a

22  *Terry* stop, which is subject only to reasonable suspicion,

23  isn't the goal of that -- it's an investigatory detention to

24  gather information?  So under the theory, why would that not

25  be a search subject to probable cause?

1          MR. BARGIL:  I mean, I think one of the major, you

2     know, distinctions between a *Terry* stop and what the police

3     are doing here is that here it takes place in the home.

4          THE COURT:  No, but I'm asking you specifically

5     your theory is the gathering of information.  That's the

6     phrasing that I think you used and I think that mimics

7     largely what's in the filings.  The gathering of information

8     constitutes a search.  Well, wouldn't that make every *Terry*

9     stop into a search?

10          MR. BARGIL:  No, Your Honor.  I suppose it has to

11     do with the -- the intent of the officer going onto the

12     property.

13          THE COURT:  Let me just have you pause for a

14     moment.  Isn't -- aren't these encounters largely by law

15     enforcement, for example, in motor vehicle stops, isn't it

16     an objective analysis?  There could be an improper motive

17     for stopping a motorist, but I think the case law is very

18     clear that -- and those are *Terry* stops or at their outset

19     are a *Terry* stop when there's an infraction, but the

20     subjective motives of an officer are irrelevant.

21          MR. BARGIL:  So I think that's sort of a separate

22     doctrinal category where the question is, you know, could

23     any officer reasonably have pulled this person over for any

24     reasonable law enforcement purpose?  That's not really what

25     we have here.  These are, again, intrusions onto the private

1  property of the plaintiffs and those intrusions extend not

2  just onto the property, but they're in the curtilage and

3  they're looking around, and that is the defining

4  characteristic that moves these off of, you know, either

5  *Terry* stops or in Your Honor's hypothetical, you know, takes

6  them out of the box of, well, it just needs to be -- you

7  know, we're not gonna consider objective intent here, you're

8  on the private property of a homeowner looking for formation

9  that you're going to use against them hopefully in the

10  prosecution of a crime, you're going onto the side yards,

11  rear yards, looking through windows, those are searches

12  under the Fourth Amendment.

13         THE COURT:  So I understand the argument, it's not

14  so much gathering information, it's more closely anchored to

15  where it occurs, it's gathering information on the footstep

16  or on the doorstep of a resident's home?

17         MR. BARGIL:  Yes, Your Honor.  And the case that I

18  would point the Court to on that point is *Jardines*, which

19  provides kind of a lengthy discussion of the property roots

20  orientation of the Fourth Amendment.  I'm sorry, did I

21  say -- property rights orientation of the Fourth Amendment.

22  There the court basically explains that the defining

23  characteristic of a search is something -- well, the court

24  goes into the explanation of the home being, you know, the

25  first among equals, as we know, and explaining that -- I'm

```
1    sorry, that's my answer.  I'm sorry, I lost my train of

2    thought.

3             THE COURT:  That's okay.

4             MR. BARGIL:  But I think you've got it.

5             THE COURT:  Mr. Poulton, would you agree that a

6    knock-and-talk requires reasonable suspicion?

7             MR. POULTON:  No.

8             THE COURT:  You're gonna say that it has to be

9    connected to a search?

10            MR. POULTON:  It depends on which stage -- and the

11   back and forth you just had I think illustrates this.  It

12   depends on -- well, first and foremost, on which particular

13   incident we're talking about, but then it also depends on

14   which stage, right?  The mere approach to the door for any

15   legitimate police purpose, which I would argue we have here,

16   is a knock-and-talk that does not require reasonable

17   suspicion where we -- that we branch into the Fourth

18   Amendment is whether or not it then either results in an

19   actual search and I don't agree that simply asking are you

20   staying out of trouble and, you know, good for you and those

21   sorts of things amounts to a search, but be that aside.  The

22   other part would be if there is an expressed desire that it

23   end.  And you have to go incident by incident on that and,

24   frankly, there are shades of gray on that in the context of

25   this case.  There are many where the interaction is not just
```

33

1   benign, but appears to be, you know, pleasant.  We've talked

2   about this at length.  There's one I think where -- the most

3   problematic one would certainly be the June 2018 incident

4   where the deputies go onto Darlene Deegan's property without

5   a warrant or exigency.  But that was not a prolific offender

6   check.  That wasn't going to the front door for a prolific

7   offender check, that was them looking for Tyler Paneson

8   based on probable cause.  So again, you have to break these

9   down and you have to look at the individual ones.

10          To answer your question, the big picture issue, do

11  they need reasonable suspicion to go to the front door?  I

12  believe the answer to that question is no.

13          THE COURT:  Well, these are two related questions.

14  Mr. Poulton, I'll start with you.  There's a lot of talk

15  here about whether plaintiffs have demonstrated a custom,

16  but isn't there a written policy that certain of these

17  actions by law enforcement are to be taken?  In other words,

18  if there is a written policy that an officer is to do X,

19  does the Court even need to see if there's a custom?

20          MR. POULTON:  Yes, in this case, because the

21  written policy is simply that they do a prolific offender

22  check once a quarter.  It does not tell them how to do the

23  prolific offender checks, it doesn't tell them how many

24  deputies, it doesn't tell them where they should go, what

25  questions they should ask.  It has no direction that could

1    be called unconstitutional.

2         THE COURT:  Let me just have you pause there.  I

3    understand the argument, but couldn't it be said that, for

4    example, the policy doesn't include a reasonable suspicion

5    requirement?  Does it have to be an affirmative statement in

6    the policy or can there be the lack of a better

7    characterization, something drawn from the omission of a

8    requirement?

9         MR. POULTON:  I don't believe so.  Because by that

10   logic, I mean, every -- I mean, every Sheriff's Office has a

11   slew of policies that governs such things as arrests and if

12   the argument were, well, your policy doesn't say don't use a

13   chokehold, you know, during an arrest, therefore, every

14   chokehold is causally related in the *Monell* sense to your

15   policy, I don't think that's what is contemplated under

16   *Monell*.  The policy --

17        THE COURT:  I guess the response -- I understand

18   argument, but the response may be -- in the interest of time

19   I'll just make the argument.

20        MR. POULTON:  Sure.

21        THE COURT:  The response might be that's a little

22   granular.  Concepts like reasonable suspicion and probable

23   cause are -- they have a constitutional dimension, in fact,

24   they're a constitutionally mandated requirement depending on

25   whether they apply or not and that's different than

1    something as granular as how you effectuate the arrest of an

2    individual in terms of do you cuff their hands in a certain

3    position or something like that.

4            MR. POULTON:  Yes, and the point being here that,

5    you know, from our perspective, that when you look across

6    the entirety of all of these interactions, what you're

7    looking for is something, you know, as we've said

8    repeatedly, happens -- a constitutional violation that

9    happens so often it has the force of law.  We just don't see

10   that.  There are a few that they can point to that are

11   problematic, but they're dissimilar and, you know, in

12   context do not happen at that level to be a custom.

13           THE COURT:  Mr. Bargil, let me turn to you.

14   Obviously, the parties have filed motions for summary

15   judgment, I'll just focus on yours for the moment.

16           On this Fourth Amendment claim, how does the Court

17   deal with all these purported factual disputes about whether

18   something was missed -- a standard offender check, what

19   actually occurred?  I mean, there's a lot of talk, even in

20   the realm of whether, for example, something is improper --

21   I think this is even out of the plaintiffs' own filing,

22   references to the tone of the officer, whether behavior is

23   threatening, whether the presence of the officer is

24   threatening, things to that effect, whether the officer used

25   a raised voice.

1        In other words, in a summary judgment context,

2   putting aside what both parties may be able to demonstrate

3   to the fact finder here, what do you say to the argument

4   that these inquiries on this Fourth Amendment claim are so

5   fact intensive that it's challenging, if not impossible, to

6   make a definitive determination without a trial?

7        MR. BARGIL:  Sure.  And I'm assuming to answer

8   Your Honor's question that you're speaking about whether we

9   can demonstrate the existence of a custom based on, you

10  know --

11       THE COURT:  I'm talking about -- I'm trying to

12  keep this very broad.

13       MR. BARGIL:  So --

14       THE COURT:  It's a custom customer or a written

15  policy, whether -- you know, whether there's reasonable

16  suspicion actually occurred at it, and what drew the officer

17  to be at a particular location.

18       MR. BARGIL:  Here's -- here's what I would say.  I

19  think on the question of whether there's a policy, we've got

20  the written intelligence-lead policing manual that in no

21  uncertain terms outlines certain behaviors that police are

22  expected to engage in in this case.  And then I -- you know,

23  I think also, speaking about the entire universe of

24  information related to all of these interactions, I think

25  for the most part there's actually not too much -- too much

1    dispute when it comes to how and when they happened.  And I

2    think the only really, you know, divergence between the

3    parties is on the question of, you know, whether or not

4    those things are similar enough to establish a custom, which

5    is why I initially answered the question in the way that I

6    did.

7            But I think on that point there's no need to dive

8    into the individual facts and circumstances of every single

9    interaction, because to show a custom all you need to show

10   is a basic pattern of behavior on the part of the Sheriff's

11   Office.  And I think we have done that overwhelmingly here.

12   And you don't need to do it by showing, you know, dozens or

13   hundreds of instances.  And in the *Depew* case that we cite,

14   their --

15           THE COURT:  Let me just have you pause for a

16   moment.  I understand the argument and am familiar with

17   litigation in large cases where you have multiple -- not

18   just multiple, you have a large number of incidents.  But

19   you used the term behavior, but if it's the scenario where

20   an officer is there at a residence for multiple reasons, one

21   of which is for an offender check, but would otherwise be

22   there anyway, for example, so how does the Court treat that?

23   Does it include that in your analysis of -- as an offender

24   check, does it give it diminished weight as an offender

25   check?  So if you're going to say, Your Honor, you should --

1    you need at least more than one, maybe multiple incidents,

2    to make a case.  But if you look at these cases a lot of

3    these decisions are upholding verdicts rendered by a fact

4    finder.  They're not saying as a matter of law you prevail.

5           So let's assume for the moment that you have

6    sufficient evidence to defeat a summary judgment motion.

7    I'm not saying that you do, but I'm just saying just to

8    remove that off the table.  What you're asking for is a

9    matter of law you prevail.  That's a different -- that's

10   wholly different question.  So what is the Court to do with

11   all of these pretty fact intensive scenarios about whether

12   there's multiple reasons for the officer to be there.  And

13   then what actually happened at the incident.  For example,

14   the door, is the door closed and opened the nix of a pinky

15   toe as opposed to, you know, knocking the officer in the

16   nose in an aggressive manner where the officer is sent

17   reeling back?  I realize some of these things have video and

18   maybe many of them do.  I can't put a number on them.  But

19   the point being, is isn't that something where it's informed

20   by testimony and other evidence that you get a sense of it?

21          MR. BARGIL:  So in the scenarios you're

22   describing, Your Honor, and others like it, I think those

23   instances are mostly on the margins here and outside of what

24   I think I would describe as just like the universe of

25   undisputed evidence.  It's undisputed that the policy calls

1   for routine suspicionless visits, so every prolific offender

2   check began with one of those.  It's undisputed that the

3   purpose of those visits was to gather information and so

4   every prolific offender check was done for that purpose.

5   There is no requirement for a warrant, as Your Honor pointed

6   out.  So every prolific offender check was done without a

7   warrant.  So there's a lot of commonalty across each and

8   every one of these.

9           And on question of, well, whether -- do we know

10  whether it was a prolific offender check or maybe it was

11  something else, if you focus on just the ones that everyone

12  agrees are prolific offender checks and you look at the

13  pattern of the -- of conduct within that classification of

14  interactions, it becomes evident that there is a pattern of

15  behavior and tactics that the Sheriff's Office was using as

16  it was engaging with our clients.  And if you look at the

17  New York City policing case that we cite from the Southern

18  District of New York from 2021, there the court really

19  rejected essentially the exact same argument being made by

20  Mr. Poulton here, which is we've got to look, you know, with

21  granularity at each and every interaction to determine

22  whether there was, you know, a common pattern of behavior.

23  And the court there said, no, all we need to do is uncover

24  whether this was part of an overall arsenal of tactics being

25  used by police.  And, you know, having established that, and

1    I think that was a motion to dismiss, the court said the

2    claims could go forward.  And I think that's what we've done

3    here, we've shown that across the universe of prolific

4    offender --

5              THE COURT:  See, there's my -- here's the point,

6    though, it's on a motion to dismiss, so you let the case go

7    forward.  It's not ruling as a matter of law.  I'm not

8    trying to corner you here, but I think these are

9    challenging.  And listen, both sides are very well

10   represented, it's an excellent job of briefing, I'm duly

11   impressed, so I'm not taking anything away from the level of

12   briefing here, but I'm just asking what I believe to be some

13   of the hard questions for both sides.

14             So where is the evidence the case law supports

15   summary judgment like you prevail, not just survive a motion

16   to dismiss or you defeat a motion for summary judgment?

17             MR. BARGIL:  I would like at the *Losman* (ph) case

18   from the Southern District of Florida.  There the court

19   said, you know, a string of incidents that's close in

20   temporal proximity to a policy-making event can establish a

21   custom, even just one incident could do that.  Again, the

22   *Depew* case.  I know that was a jury decision finding for

23   instance is enough and the *Rivas vs. Figueroa* case, five

24   instances was enough to establish a policy or custom.

25             And then generally speaking, Your Honor, I think

 1   what we can glean from all of these interactions is that

 2   there was an obvious go-to toolkit, whether it be citing

 3   people for tall grass, missing mailbox numbers, which

 4   happened to all of my clients, trash and debris, which

 5   happened -- which either happened or was threatened to

 6   happen to all of our clients.  And so, you know, you see

 7   this pattern development across and there's no bright line

 8   rule, Your Honor, but the law does require the showing of a

 9   pattern of behavior and I think we've done that.

10          THE COURT:  Okay.  Mr. Poulton, just to

11   Mr. Bargil's point, I can't remember the number, 76 seems or

12   72, something like that, that are in the joint statement of

13   facts about agreed upon instances where there is an offender

14   check.  There's some suggestion, though, in your filings of

15   you moving away from that a bit.  You stand by the joint

16   statement of facts on the offender checks?

17          MR. POULTON:  Yes, except that there are a few

18   which we pointed out where the deputy chose the drop-down

19   menu prolific offender check when it really wasn't.  But we

20   spelled out the -- where that occurred.  The one in

21   particular that the parties have gone back and forth about

22   is the Tyler Paneson visit in June of 2018 where they went

23   over Darlene Deegan's fence.  One of the deputies hit that

24   on in the pull-down menu, but if you watch the video and you

25   look at -- in fact, you look at his report, they're there

1   for PC to arrest Tyler Paneson for theft of a kayak as

2   opposed to a prolific offender check.

3          THE COURT:  Just in the interest of time, I have

4   to go back and look at all of these and there's so many

5   facts here.  Are those fairly reflected in the parties'

6   joint statement of facts?

7          MR. POULTON:  Yes, I think we got into the

8   individual ones where there is some ambivalence about

9   whether or not the drop-down menu selection was correct.

10         And just to kind of follow up on Your Honor's --

11  and I realize we're out of time.  The inherent contradiction

12  here from the plaintiffs' case is they want to say we want

13  to talk big picture.  It's all these suspicionless visits

14  followed immediately by and they're harassing.  Right?  And

15  it's the claim of they're harassing that then forces

16  everybody's attention to the individual ones.  Was it really

17  prolific offender check?  Was there a constitutional

18  violation?  Is it tied to policy?  Are there enough of those

19  that constitute a custom?  So I don't think that it is

20  possible to speak in this case, because of the way it was

21  brought, just in global terms like that.  I just -- I just

22  don't think it can be done.  It has to be looked at

23  individually to see whether it fits classic *Monell*.

24         THE COURT:  Let me move if I could to the second

25  claim here, I'm going to try to dispose of these in short

1    order.

2            Mr. Poulton, would you agree that you could have a

3    situation where the government undertakes action against a

4    parent, for example, for the conduct of their -- his or her

5    children that would amount to a violation of a parent's

6    right to intimate association, in theory?

7            MR. POULTON:  In theory, yes.

8            THE COURT:  Mr. Bargil, a similar question here on

9    summary judgment?  Where is there sufficient evidence to

10   rule as a matter of law that the plaintiffs prevail on the

11   intimate association claim at summary judgment as opposed to

12   going to trial?

13           MR. BARGIL:  Sure.  And this is primarily in our

14   motion for summary judgment on pages 32 to 33, but in

15   various instances, the Sheriff's Office indicated to our

16   clients that they were there because of their children.

17   Robert was told that little Bobby Jones is bringing this on

18   this house, Dolly was told that for every offender they have

19   in the county, we go to their house and ensure that all the

20   law are being followed and the ordinances are being followed

21   and then that's why she was getting code enforcement

22   citations.  Tammy was told in the back of a police car that

23   if people who live in the house are committing crimes, the

24   direction we receive from our Sheriff's Office is to go out

25   there and for every single violation that person commits to

1   enforce it upon them.

2          So there is plenty of evidence in the record I

3   think to support the contention that these parents are being

4   penalized for the behaviors of their children.  And I would

5   point Your Honor to the Eleventh Circuit decision in *Wilson*

6   *vs. Taylor* where the court said that it need only be a

7   substantial factor in the action taken against somebody.

8   And I think here there's quite a bit of evidence to

9   establish that our parents were punished or at least

10  there's -- the behavior of their children was a substantial

11  factor animating the police's desire to punish the parents.

12          THE COURT:  Let me just switch if I could, thank

13  you, to the due process argument, procedural due process

14  argument.

15          You mention a number of instances where parents

16  are informed of what's going on.  To what extent does that

17  constitute notice?

18          MR. POULTON::  Are you asking me, Your Honor?

19          THE COURT:  I'm sorry, I'm staying with

20  Mr. Bargil.  I've been trying to stay with the person with

21  whom I last spoke as I move from one claim, just to make it

22  easy.

23          MR. BARGIL:  I'm sorry, the question was how is --

24  how it is established notice?

25          THE COURT:  No, to what extent does that amount to

1    notice.  In other words, it doesn't seem like it was any

2    secret that the children were prolific or considered

3    prolific offenders or top five irrespective of their

4    placement.  In fact, that was part of a deterrent policy,

5    was to make it known to the parent so that they would

6    exercise purportedly some control or influence over the

7    children.  So to what extent does that constitute some form

8    of or adequate notice?

9            MR. BARGIL:  I don't think it constitutes adequate

10   notice.  I mean, I think surely you can say that they might

11   have been to one degree or another aware that the police

12   were more interested in their children than other people's

13   children.  But what's critical for procedural due process

14   requirements to be met is that the notice be meaningful and

15   what makes it meaningful is that there be an opportunity to

16   be heard, to contest the findings that led to the placement

17   on the list in the first place.

18           THE COURT:  Isn't that a separate -- let me just

19   have you pause.  Isn't notice separate and distinct from an

20   opportunity to be heard?  I'm just asking about notice.  So

21   in other words, one of the claims here is that they

22   weren't -- they didn't get adequate notice.

23           The second question -- and I'm gonna ask

24   Mr. Poulton about it -- is the opportunity to be heard on

25   it.  But those are -- it's a notice and opportunity to be

1   heard.  That's how I understand procedural due process.

2           So as to the notice prong, just stay there if you

3   would, you don't think it's adequate notice?

4           MR. BARGIL:  No, I don't, because part of adequate

5   notice requires the ability to contest how you landed on,

6   you know, a list in the first place.  And so it's post hoc

7   notice, it's effectively meaningless.

8           THE COURT:  Okay.  Mr. Poulton, the argument, at

9   least on an opportunity to be heard in general on procedural

10  due process, is that a plaintiff can make a complaint down

11  the road to challenge that.

12          What do you say to the argument that that's not

13  adequate after the fact, especially at 2:00 in the morning

14  when you're getting awoken about something, that it's hard

15  to undue that at that point?

16          MR. POULTON:  Well, there would never be

17  meaningful opportunity to be heard, you know, for that

18  particular scenario, whether it was an arrest, a prolific

19  offender check or any other police action.  I don't think

20  what's contemplated by opportunity to be heard is a stop

21  doing, you know, your law enforcement function, we're gonna

22  have a -- hold a hearing.

23          THE COURT:  Well, let me just have you pause

24  though.  But the argument here, though, is not -- and I

25  don't want to conflate two scenarios.  It's not police

1  activity that is directed to ongoing criminal behavior or

2  past conduct.  So that's one scenario.  This is I think, by

3  the terms of the policy, directed at future conduct.  So

4  future conduct doesn't implicate the same investigative

5  concerns that are ongoing or past conduct where you have an

6  investigation.  In fact, the purpose here is to provide

7  notice and act as a deterrence.

8            So why not let people know that they're on such a

9  list -- I understand the argument about ongoing criminal

10  behavior and past criminal conduct that you're

11  investigating.

12            MR. POULTON:  I think our threshold point is that

13  we don't believe that formal notice or formal opportunity to

14  be heard, apart from the normal process, is implicated here,

15  because we don't believe that it is constitutionally

16  protected liberty or property interest at stake to begin

17  with.  So it is correct to say that there is no formalized

18  process for notice, there's no -- there wasn't a formalized

19  process unique to prolific offender status or checks.  There

20  were complaints by the plaintiffs themselves or family

21  members, which are documented in the record.  But we don't

22  think that this rises to the level of requiring that in the

23  first place.

24            THE COURT:  Mr. Bargil, substantive due process,

25  I'm gonna attempt to restate what I understand the two

1   fundamental rights are.  The first is freedom from

2   punishment for misdeeds of others.

3          Do you have a case that recognizes that as a

4   fundamental right, that framing?

5          MR. BARGIL:  On that specific point, no, Your

6   Honor, but there is quite a bit of language, and part of

7   this goes to our First Amendment claim, establishing that,

8   you know, is axiomatic element of American liberty that you

9   not be punished for the crimes of others.  And that's the

10  *St. Anne* (ph) case on our First Amendment argument that

11  talks about how in that case children can't be punished for

12  the misdeeds of their parents.

13         THE COURT:  There is an obvious, it seems to me at

14  least, arguably distinction between talking about

15  punishing -- being punished by the misdeeds of your parents

16  from misdeeds of your children to begin, but you're framing

17  isn't freedom from punishment for misdeeds of your children

18  or your parents, it's of others.  In other words, my

19  understanding of substantive due process is the courts are

20  recalcitrant to announce fundamental rights.  So it would

21  seem to me that one of the challenges for a plaintiff

22  bringing this type of claim is to identify the right in the

23  case law that supports it.  So are you relying on

24  *St. Anne's* --

25         MR. BARGIL:  Again, Your Honor, I would point the

1    Court to *St. Anne*, yes.

2             THE COURT:  Okay.

3             MR. BARGIL:  But that is but one component of our

4    substantive due process argue.

5             THE COURT:  Pardon?

6             MR. BARGIL:  That is one component of our

7    substantive due process argument, which you might have been

8    getting to and I apologize.

9             THE COURT:  Yeah.  The second part is freedom from

10   arbitrary or protectoral enforcement, it lacks any rational

11   basis.

12             Isn't that any state action.  Isn't that the test

13   for any state action?

14             MR. BARGIL:  Well, yes and no, Your Honor.  So I

15   mean, to the extent that, you know, a fundamental right

16   isn't implicated or something like that and you're

17   referencing like the rational basis test.

18             THE COURT:  But I'm just -- let me just have you

19   pause.  I believe this is how you framed your fundamental

20   rights.  That was the second of two.  So I'm just trying to

21   make sure that I understand what the fundamental rights

22   alleged -- if I've got this wrong, then my notes are bad,

23   I'm reading from my notes now.  But the second right is the

24   one that you identified, at least in your summary judgment

25   motion.

1          MR. BARGIL:  Right.  And the second right -- and I

2    think if we're on the same page here, the second right is

3    the right to be free from purely arbitrary conduct on the

4    part of the government.  And the way that we define that

5    right in our briefing is to say where the government is --

6    is motivated by an improper purpose that that violates your

7    right to substantive due process.  And the -- the touchstone

8    of that inquiry is the finding of a stated goal to do

9    something illegitimate.  In *Español Ole*, it was to push

10   people out of business.  In the *Beach Blitz* case, same

11   thing.  *Bennini* (ph), the Ninth Circuit case, same thing,

12   trying to get a bar to close down.

13          And here we actually have that.  This goes back to

14   something Mr. Poulton said earlier about, you know, the

15   assertion of harassment being something that we've just

16   brought up.  That's not quite true.  Our -- the basis for

17   our, quote-unquote, harassment claim, it's not just that

18   they were harassed, it's they were harassed with the goal of

19   getting them to leave down.  And that is where the line is

20   crossed from what the court in *Chalti* (ph) said was just

21   zealous enforcement to the realm of improper behavior on the

22   part of the government.  And here we've got the information

23   in emails that -- for example, that the goal is to get them

24   to either go to jail or to move.  Depositions confirm this.

25   Performance reviews confirm this.  The goal of this program

1   was not just to find charges to put on people, but it was,

2   failing that, to get their families to leave town, and

3   that's an improper purpose.

4         THE COURT:  Is there any difference between the

5   way you're framing the second issue and way I framed it?  So

6   I'm reading from your brief at page 37.

7         The second fundamental right is that one has

8   freedom from arbitrary and protectoral enforcement that

9   lacks any rational basis.

10        So I think the -- the reason I'm focusing on the

11  verbiage is because the framing of these fundamental rights,

12  I take from the case law is important and so each time the

13  wording changes, for example, freedom from improper

14  behavior, that is a -- that would be establishing a

15  fundamental right that would cut a fairly wide swath --

16        MR. BARGIL:  Sure.

17        THE COURT:  -- seem to -- I think your second

18  right I guess is the one I'm suggesting strikes me as the

19  right -- or the minimal test, rational basis test, for any

20  state action.  So is that really a fundamental right or is

21  that just a rational basis test?

22        MR. BARGIL:  So let me -- yeah.  Let me clarify

23  that, Your Honor.  I mean, to the extent that we describe

24  that second claim as being a fundamental right, I don't

25  think that was our intention in the briefing if that's what

1    Your Honor took away.  So we've articulated that that first

2    one is a fundamental right subject to strict scrutiny, that

3    one not be punished for the -- for the misconduct of

4    another.  But then secondarily we've argued that it also

5    violates due process to mistreat somebody where motivated by

6    an improper purpose.  And that Your Honor is correct is more

7    akin to a rational basis-type review and we're saying that

8    we satisfy that standard here, because even though it's a

9    high bar, what it takes is a showing of a stated goal to do

10   something improper.  It's not enough that the government

11   just be zealously, you know, enforcing its laws against you,

12   it's that it be doing that for an improper reason.  And

13   *Espanol Ole* looked at things like the creation of task

14   forces, frequent inspections, issuance of code enforcement

15   citations, all things that are present in this case.  And so

16   that is the basis for our second due process argument, which

17   I again would reiterate is not suggesting that a fundamental

18   right is implicated.

19        THE COURT:  Deeming it -- the fundamental right

20   here to be freedom from punishment for misdeeds of others,

21   really which is children, isn't that just a restatement of

22   your intimate association First Amendment argument?

23        MR. BARGIL:  Um, yes and no.  I mean, in this case

24   it happens to overlap, because we're dealing with family,

25   but there could be a scenario in which doctrinally speaking

1    someone you wouldn't have an intimate association with for

2    purposes of triggering the First Amendment --

3            THE COURT:  Do you have standing to raise such a

4    claim here?  Your claim is really limited, is it not, to

5    children?

6            MR. BARGIL:  Oh, I absolutely think we have

7    standing to make that claim.  Yeah, I think that, you know,

8    if -- we're arguing that, you know, parents ever being

9    punished for the behavior of their children, I think that

10   that violates two separate constitutional provisions.  Given

11   the nature of the relationship, it definitely puts it in the

12   First Amendment box.  But the fact that it's happening at

13   all makes it a due process violation.

14           THE COURT:  Okay.  Thank you, Mr. Bargil.

15           Mr. Poulton, any brief comments in closing as to

16   the substantive due process claim?

17           MR. POULTON:  Two, Your Honor.  One is that I want

18   to emphasize that this notion of forcing people to move out

19   as the goal comes from an email, maybe two, from individual

20   deputies, it's not fairly traceable to the final policy

21   maker.  All right?  It's nothing in the written policy on

22   that and if you've got a deputy that makes some straight

23   comment like that, I don't think that that's *Monell* policy

24   or custom.

25           Second is that on this issue of the *St. Anne's*

1    cases, pages 28, 29 to 30 of our response to plaintiffs'

2    renewed motion, we discuss the *St. Anne's* case and a

3    subsequent case called *Cook* out of the Northern District of

4    Florida, which broke that down a bit and explained that when

5    you talk about punishment, it doesn't mean every adverse

6    action, it means things like criminal punishment or

7    something so concrete as removing children from school for

8    the acts of their parents.  It has to be, in the words of

9    *Cook*, true punishment.  That's a quote from *Cook*.  And we

10   don't think that prolific offender checks meet that

11   standard.

12          THE COURT:  Okay.  Thank you to you all.  I

13   appreciate your advocacy.  We went a little over.  As I

14   indicated that we may be coming back and having a subsequent

15   argument perhaps here in Tampa.

16          With that, Mr. Bargil, anything further from the

17   plaintiffs?

18          MR. BARGIL:  If Your Honor would allow me to

19   briefly rebut what Mr. Poulton said, I would appreciate it.

20          THE COURT:  Briefly.

21          MR. BARGIL:  Very briefly.  The person who made

22   the comment about the goal is to get them to move was one of

23   their 30(b)6 witnesses in this case.  It was Ross, I

24   believe.

25          And then on the question of -- well, I can leave

```
1   it at that.

2           THE COURT:  Okay.  Anything further besides that,

3   Mr. Bargil?  Mr. Bargil, anything further?

4           MR. BARGIL:  Oh, I'm sorry.  No, nothing further,

5   Your Honor.

6           THE COURT:  Thank you.

7           Mr. Poulton?

8           MR. POULTON:  Nothing further, Your Honor.

9           THE COURT:  Thank you to you all.  We'll be in

10  recess.

11                  (Proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    UNITED STATES DISTRICT COURT )
                                  )
2    MIDDLE DISTRICT OF FLORIDA   )

3
```

### REPORTER TRANSCRIPT CERTIFICATE

```
4
        I, Bill Jones, Official Court Reporter for the United
5    States District Court, Middle District of Florida, certify,
     pursuant to Section 753, Title 28, United States Code, that
6    the foregoing is a true and correct transcription of the
     stenographic notes taken by the undersigned in the
7    above-entitled matter (Pages 1 through 55 inclusive) and
     that the transcript page format is in conformance with the
8    regulations of the Judicial Conference of the United States
     of America.

9

10                              /s   Bill Jones
                                _____
11                              Bill Jones, RDR, RMR, FCRR
                                Official Court Reporter
12                              United States District Court
                                Middle District of Florida
13                              Tampa Division
                                Date:  07-27-23
14

15

16

17

18

19

20

21

22

23

24

25
```

**MR. BARGIL:**
**[56]** 4/9 4/24 5/24
6/12 7/1 7/11 10/23
11/9 13/5 13/19
14/2 14/24 15/2
19/7 19/11 20/5
20/12 21/6 21/18
22/4 24/11 24/14
26/5 27/24 28/2
28/8 28/25 29/4
29/17 30/1 30/10
30/21 31/17 32/4
36/7 36/13 36/18
38/21 40/17 43/13
44/23 45/9 46/4
48/5 48/25 49/3
49/6 49/14 50/1
51/16 51/22 52/23
53/6 54/18 54/21
55/4
**MR. POULTON:**
**[37]** 4/15 5/2 7/23
8/1 8/25 9/14 9/17
9/21 10/12 10/15
11/5 12/8 12/13
15/22 16/3 17/9
17/25 18/12 18/15
22/17 23/12 24/2
24/4 25/15 32/7
32/10 33/20 34/9
34/20 35/4 41/17

47/12 53/17 55/8
**MR. POULTON::**
**[2]** 10/4 44/18
**THE COURT: [97]**

**THE DEPUTY**
**CLERK: [1]** 4/5

**'**

'23 [1] 12/22

**/**

/s [1] 56/10

**0**

07-27-23 [1] 56/13

**1**

10 [1] 3/5
1010 [1] 2/14
1035 [1] 2/14
10:18 [1] 1/6
11th [1] 27/12
12 [1] 3/6
13 [1] 3/7
15 [1] 3/8
15A [1] 2/18
1600 [1] 2/7
16781 [1] 2/3
19 [1] 3/9
1983 [2] 21/2 24/17
1995 [1] 26/6

2011 [1] 26/8
2017 [2] 26/11
 27/11
2018 [2] 33/3 41/22
2021 [3] 8/11 27/12
 39/18
2022 [2] 8/12 16/13
2023 [2] 1/5 5/17
2122 [1] 12/22
22 [1] 3/10
22203 [1] 2/10
23 [1] 56/13
24 [1] 3/11
25 [1] 3/12
256 [1] 2/3
26 [1] 3/13
28 [2] 54/1 56/5
29 [1] 54/1
2:00 [1] 46/13

**3**

30 [2] 54/1 54/23
305/721-1600 [1]
 2/7
3180 [1] 2/6
32 [2] 3/14 43/14
32792 [1] 2/15
33 [1] 43/14
33131 [1] 2/7
33602 [1] 2/19
36 [1] 3/15

**3**

37 [1]  51/6

**4**

407/673-5000 [1]  2/15
41 [1]  3/16
43 [2]  3/17 3/18
44120 [1]  2/4
45 [1]  3/19
46 [1]  3/20
48 [1]  3/21

**5**

5000 [1]  2/15
5024 [1]  2/19
53 [1]  3/22
54 [1]  3/23
55 [1]  56/7
555 [1]  4/6
56 [1]  3/24

**7**

703/682-9320 [2]  2/4 2/11
72 [1]  41/12
753 [1]  56/5
76 [1]  41/11

**8**

801 [1]  2/18
813/301-5024 [1]  2/19
8:21-cv-555 [1]  4/6
8:21-cv-00555-SDM-CPT [1]  1/5

**9**

900 [1]  2/10
901 [1]  2/10
9320 [2]  2/4 2/11
9:10 [1]  1/6

**A**

a.m [1]  1/6
ability [1]  46/5
able [4]  7/5 16/9 27/17 36/2
about [41]  5/18 5/25 6/14 8/2 8/2 8/8 8/18 9/23 9/24 11/16 12/8 12/11 12/22 16/4 18/17 20/25 21/13 23/3 26/15 26/17 26/17 32/13 33/2 33/15 35/17 36/8 36/11 36/23 38/11 41/13 41/21 42/8 45/20 45/24 46/14 47/9 48/11 48/14 50/14 54/5 54/22
above [1]  56/7
above-entitled [1]  56/7
absolutely [3]  14/7 15/13 53/6
according [1]  23/11
accrues [2]  25/20 25/22
across [4]  35/5 39/7 40/3 41/7
act [1]  47/7
action [8]  14/12 43/3 44/7 46/19 49/12 49/13 51/20 54/6
actions [3]  11/11 20/18 33/17
activity [1]  47/1
acts [1]  54/8
actual [1]  32/19
actually [9]  8/11 18/22 22/5 23/9 35/19 36/16 36/25 38/13 50/13
adapt [1]  16/23
additional [1]  7/2
address [3]  13/1 13/23 21/18
adequate [6]  45/8 45/9 45/22 46/3 46/4 46/13
adjourned [1]  55/11
adjudicated [3]  23/4 23/6 23/7
adoption [1]  8/13
advance [1]  14/1

**A**

adverse [1]  54/5
advocacy [1]  54/13
advocating [1]  5/13
affirmative [1]  34/5
after [3]  21/23
23/21 46/13
again [13]  8/25
9/22 15/4 17/17
18/15 23/8 23/22
26/12 30/25 33/8
40/21 48/25 52/17
against [6]  11/11
28/13 31/9 43/3
44/7 52/11
aggressive [1]
38/16
agree [8]  7/21 9/6
17/7 24/11 28/17
32/5 32/19 43/2
agreed [1]  41/13
agreement [1]
17/23
agreements [1]
17/19
agrees [1]  39/12
ahead [1]  28/20
aided [1]  1/24
AIM [1]  27/3
akin [1]  52/7
al [2]  1/3 4/6
alerted [1]  8/18

all [30]  4/13 4/20
5/11 5/25 11/18
12/15 12/18 12/24
16/4 16/17 26/17
26/25 27/7 35/6
35/17 36/24 37/9
38/11 39/23 41/1
41/4 41/6 42/4
42/13 43/19 52/15
53/13 53/21 54/12
55/9
alleged [2]  13/12
49/22
allegedly [1]  20/22
allocated [1]  5/4
allocation [1]  14/15
allow [1]  54/18
allowed [1]  21/2
allusion [1]  5/19
alone [2]  11/23 25/9
already [1]  15/11
also [9]  2/16 4/17
11/15 11/16 16/12
24/22 32/13 36/23
52/4
although [1]  17/21
always [1]  16/22
am [1]  37/16
ambivalence [1]
42/8
Amendment [20]
9/11 9/15 9/18 9/19

27/20 29/20 31/12
31/20 31/21 32/18
35/16 36/4 48/7
48/10 52/22 53/2
53/12
America [1]  56/8
American [1]  48/8
among [2]  20/2
31/25
amount [6]  15/11
21/22 27/21 28/6
43/5 44/25
amounts [2]  29/14
32/21
analysis [4]  24/9
28/9 30/16 37/23
analyzed [1]  28/7
anchored [1]  31/14
ancillary [1]  21/24
animating [1]
44/11
Anne [2]  48/10 49/1
Anne's [3]  48/24
53/25 54/2
announce [1]  48/20
announced [1]  4/22
another [4]  20/18
24/22 45/11 52/4
answer [7]  5/12
11/1 28/16 32/1
33/10 33/12 36/7

## A

answered [1] 37/5
answering [1] 22/11
antagonizing [1] 28/14
anticipated [1] 16/8
any [24] 7/9 16/23 16/25 19/10 19/17 19/18 21/14 23/25 24/13 27/7 27/13 27/17 30/23 30/23 32/14 45/1 46/19 49/10 49/12 49/13 51/4 51/9 51/19 53/15
anybody [1] 27/16
anything [7] 12/17 12/21 28/1 40/11 54/16 55/2 55/3
anyway [3] 21/12 24/9 37/22
apart [1] 47/14
apologize [1] 49/8
apology [1] 16/2
apparently [1] 23/15
appear [1] 23/14
appearances [2] 1/25 4/7
appears [2] 17/20 33/1

applied [1] 24/12
applied as [1] 24/12
applies [2] 18/18 24/14
apply [5] 12/2 19/17 22/16 24/13 34/25
appreciate [4] 22/13 29/4 54/13 54/19
approach [2] 8/13 32/14
appropriate [1] 24/18
April [2] 5/17 12/9
April 2023 [1] 5/17
arbitrary [3] 49/10 50/3 51/8
are [72]
area [1] 17/22
aren't [3] 6/17 24/16 30/14
arguably [2] 17/22 48/14
argue [5] 11/17 25/24 27/14 32/15 49/4
argued [5] 13/11 14/14 24/23 24/25 52/4
arguing [2] 6/3 53/8

argument [19] 3/3 3/4 3/5 3/6 3/7 3/8 3/9 3/10 3/11 3/12 3/13 3/14 3/15 3/16 3/17 3/18 3/19 3/20 3/21 3/22 3/23 5/4 5/6 7/9 17/6 18/9 19/1 19/3 21/10 21/11 21/12 22/14 25/11 27/21 27/22 28/22 28/22 31/13 34/3 34/12 34/18 34/19 36/3 37/16 39/19 44/13 44/14 46/8 46/12 46/24 47/9 48/10 49/7 52/16 52/22 54/15
arguments [1] 24/21
ARI [2] 2/5 4/9
Arlington [1] 2/10
around [2] 27/14 31/3
arrest [8] 9/23 19/2 23/17 23/20 34/13 35/1 42/1 46/18
arrests [10] 19/19 22/21 23/14 23/23 24/4 24/24 24/24 25/4 25/4 34/11
arsenal [1] 39/24
articulated [1] 52/1

# A

articulation [1] 11/14
as [69]
aside [4] 15/24 22/23 32/21 36/2
ask [6] 5/10 17/14 26/18 29/21 33/25 45/23
asked [1] 29/3
asking [8] 7/2 17/12 30/4 32/19 38/8 40/12 44/18 45/20
asks [1] 28/9
aspect [1] 21/7
aspects [1] 27/3
assertion [2] 6/7 50/15
associate [1] 4/17
association [6] 9/12 9/12 43/6 43/11 52/22 53/1
assume [2] 4/25 38/5
assuming [1] 36/7
attempt [1] 47/25
attention [1] 42/16
attorney [1] 4/18
attuned [1] 24/23
audio [1] 1/24
available [1] 26/22

# A venue [1]

avowed [2] 25/18 25/21
aware [4] 8/17 18/21 26/24 45/11
awareness [1] 25/7
away [3] 40/11 41/15 52/1
awoken [1] 46/14
axiomatic [1] 48/8

# B

back [17] 5/5 11/15 14/3 16/8 16/17 16/19 16/25 17/8 21/1 23/23 32/11 38/17 41/21 42/4 43/22 50/13 54/14
backward [2] 13/10 15/7
backward-looking [2] 13/10 15/7
bad [1] 49/22
bar [4] 19/16 24/16 50/12 52/9
BARGIL [30] 2/5 3/3 3/5 3/7 3/9 3/11 3/13 3/15 3/17 3/19 3/21 3/23 4/9 4/21 5/15 10/16 11/7 12/25 18/25 24/7 26/4 27/18 35/13 43/8 44/20 47/24

55/3
Bargil's [1] 41/11
barred [2] 25/3 25/7
based [6] 14/13 14/13 26/22 27/1 33/8 36/9
basic [1] 37/10
basically [2] 26/13 31/22
basis [14] 6/15 11/13 11/24 21/3 21/15 24/15 49/11 49/17 50/16 51/9 51/19 51/21 52/7 52/16
basis-type [1] 52/7
Bay [1] 26/23
be [92]
Beach [1] 50/10
bear [1] 7/22
bearing [1] 19/22
bears [1] 7/20
because [22] 8/5 11/8 16/23 18/3 19/13 20/12 21/11 22/2 23/13 24/15 28/14 29/2 33/20 34/9 37/9 42/20 43/16 46/4 47/15 51/11 52/8 52/24

**B**

becomes [2]  29/8 39/14
been [13]  6/6 10/17 13/15 14/22 15/20 16/3 16/11 22/25 25/18 27/15 44/20 45/11 49/7
before [3]  1/13 6/18 15/23
began [2]  8/10 39/2
begin [5]  5/8 5/15 9/10 47/16 48/16
beginning [1]  4/8
behalf [2]  4/10 4/16
behavior [13]  14/8 35/22 37/10 37/19 39/15 39/22 41/9 44/10 47/1 47/10 50/21 51/14 53/9
behaviors [2]  36/21 44/4
behind [2]  23/5 25/24
being [19]  10/2 10/19 10/19 17/4 20/25 25/7 26/1 31/24 35/4 38/19 39/19 39/24 43/20 43/20 44/3 48/15 50/15 51/24 53/8
believe [11]  16/9

33/12 34/9 40/12 47/13 47/15 49/19 54/24
believed [1]  25/25
belong [1]  8/3
belongs [1]  9/3
bench [1]  15/24
benefit [1]  5/3
benign [1]  33/1
Bennini [1]  50/11
besides [2]  23/25 55/2
best [2]  5/12 28/18
better [1]  34/6
between [4]  30/2 37/2 48/14 51/4
big [2]  33/10 42/13
Bill [3]  56/4 56/10 56/11
Birch [1]  26/10
Biscayne [1]  2/6
bit [7]  7/12 9/23 14/3 41/15 44/8 48/6 54/4
black [1]  11/13
Blitz [1]  50/10
blush [1]  21/13
Blvd [2]  2/6 2/14
Bobby [2]  27/10 43/17
both [5]  22/24

40/13
Boulevard [1]  2/3
box [2]  31/6 53/12
branch [1]  32/17
break [4]  9/1 9/9 9/23 33/8
brief [2]  51/6 53/15
briefing [5]  25/17 40/10 40/12 50/5 51/25
briefly [3]  54/19 54/20 54/21
bright [1]  41/7
bring [3]  8/5 9/13 25/8
bringing [2]  43/17 48/22
broad [1]  36/12
Broadly [1]  19/8
broke [1]  54/4
BROTHERS [2]  2/8 4/11
brought [2]  42/21 50/16
bulk [2]  10/1 10/2
burden [8]  7/5 7/21 7/22 8/10 14/5 14/6 14/21 15/19
business [1]  50/10
Butch [1]  26/10

C

called [5]  4/2 26/8
26/10 34/1 54/3
calls [1]  38/25
can [15]  5/25 11/2
14/17 14/17 24/2
27/13 34/6 35/10
36/9 40/20 41/1
42/22 45/10 46/10
54/25
can't [4]  14/4 38/18
41/11 48/11
cannot [1]  14/8
car [3]  20/23 20/24
43/22
CAROLINE [2]
2/8 4/11
carried [1]  8/10
case [50]  1/5 4/4
4/6 6/3 6/7 6/8
14/19 16/21 17/24
18/18 18/21 20/10
21/23 22/17 25/15
25/17 26/5 26/10
26/12 26/21 26/21
27/2 27/7 30/17
31/17 32/25 33/20
36/22 37/13 38/2
39/17 40/6 40/14
40/17 40/22 40/23
42/12 42/20 48/3
48/10 48/11 48/23

52/15 52/23 54/2
54/3 54/23
cases [5]  19/24
26/17 37/17 38/2
54/1
cast [1]  6/6
category [2]  21/4
30/22
causally [2]  12/20
34/14
cause [5]  21/16
29/15 29/25 33/8
34/23
causing [1]  26/1
ceased [1]  6/9
certain [3]  33/16
35/2 36/21
certainly [5]  4/5 6/6
11/2 12/20 33/3
CERTIFICATE [2]
3/24 56/3
certify [1]  56/5
cetera [1]  29/10
Chagrin [1]  2/3
challenge [2]  11/11
46/11
challenged [5]  6/16
6/17 10/20 25/9
25/13
challenges [1]
48/21

challenging [1]
19/9 19/11 22/6
22/8 25/3 36/5 40/9
Chalti [1]  50/20
change [7]  8/9
14/13 14/13 15/18
16/8 16/16 16/25
changed [2]  16/11
16/25
changes [6]  12/21
12/22 16/7 16/18
18/3 51/13
characteristic [2]
31/4 31/23
characterization [1]
34/7
charges [1]  51/1
check [25]  6/2 6/6
9/2 9/4 11/20 16/20
16/20 22/23 23/22
33/6 33/7 33/22
35/18 37/21 37/24
37/25 39/2 39/4
39/6 39/10 41/14
41/19 42/2 42/17
46/19
checks [12]  8/12
12/17 16/13 17/21
23/24 27/20 27/21
33/23 39/12 41/16
47/19 54/10
children [21]  8/4

C

children... [20]  9/3
9/8 10/9 11/12
11/12 43/5 43/16
44/4 44/10 45/2
45/7 45/12 45/13
48/11 48/16 48/17
52/21 53/5 53/9
54/7
chokehold [2]
34/13 34/14
chose [1]  41/18
CHRIS [1]  1/7
CHRISTOPHER
[1]  1/13
Circuit [6]  26/6
26/8 26/10 29/10
44/5 50/11
circumstances [3]
15/12 16/24 37/8
citation [5]  18/19
19/24 20/14 22/19
23/17
citations [5]  18/17
19/19 22/18 43/22
52/15
cite [4]  18/18 26/9
37/13 39/17
cited [2]  25/18
26/12
cites [1]  25/15
citing [1]  41/2

Civil [1]  4/6
claim [36]  9/1 9/1
9/3 9/4 9/6 9/7 9/13
9/16 9/19 10/10
10/13 10/21 11/8
12/21 18/21 21/2
25/8 25/12 25/20
26/13 26/14 27/5
35/16 36/4 42/15
42/25 43/11 44/21
48/7 48/22 50/17
51/24 53/4 53/4
53/7 53/16
claims [14]  8/3 9/8
9/10 10/19 13/7
17/4 18/10 19/18
24/23 25/6 26/22
27/19 40/2 45/21
clarification [1]
15/23
clarify [1]  51/22
clarity [1]  6/22
classic [1]  42/23
classification [2]
21/4 39/13
clear [6]  7/7 11/1
14/7 15/14 16/4
30/18
Clerk [1]  4/4
clients [6]  15/9 27/7
39/16 41/4 41/6

close [2]  40/19
50/12
closed [1]  38/14
closely [1]  31/14
closing [1]  53/15
cocaine [1]  20/24
code [11]  18/17
18/19 19/2 19/9
19/24 22/17 22/19
23/17 43/21 52/14
56/5
colleagues [1]  4/11
come [1]  17/19
comes [2]  37/1
53/19
coming [2]  5/5
54/14
comment [3]  16/4
53/23 54/22
comments [1]
53/15
commit [1]  20/23
commits [1]  43/25
committing [1]
43/23
common [1]  39/22
commonalty [1]
39/7
community [1]
12/10
compensatory [3]

C

compensatory... [3]  20/3 20/8 21/2
competing [1]  7/8
complaint [1]  46/10
complaints [1]  47/20
complete [1]  13/12
complicated [1]  23/13
component [2]  49/3 49/6
compromise [1]  18/19
computer [1]  1/24
computer-aided [1]  1/24
concede [3]  10/24 17/12 17/13
conceded [2]  10/17 11/8
conceding [1]  19/12
concepts [2]  7/19 34/22
concerned [3]  15/1 15/3 15/21
concerns [2]  22/7 47/5
conclude [1]  14/4
conclusion [1]  25/19
concrete [2]  13/11

conduct [11]  5/20 25/10 25/13 39/13 43/4 47/2 47/3 47/4 47/5 47/10 50/3
Conference [1]  56/8
confidential [1]  27/2
confirm [2]  50/24 50/25
conflate [1]  46/25
conflating [1]  22/4
conformance [1]  56/7
confused [1]  29/1
connected [1]  32/9
connection [1]  19/19
consider [1]  31/7
consideration [1]  14/18
considered [1]  45/2
constitute [3]  42/19 44/17 45/7
constitutes [2]  30/8 45/9
constitutional [9]  12/19 13/12 19/17 25/22 28/19 34/23 35/8 42/17 53/10
constitutionally [3]

constraints [1]  5/10
contemplated [2]  34/15 46/20
contention [2]  21/13 44/3
contest [2]  45/16 46/5
contested [3]  12/5 13/2 13/18
contesting [1]  19/1
context [5]  22/19 22/22 32/24 35/12 36/1
continuing [1]  27/8
contradiction [1]  42/11
contribution [1]  12/24
control [1]  45/6
conversation [1]  21/9
convicted [1]  22/24
conviction [8]  18/16 19/2 21/5 21/17 21/25 22/2 22/15 23/10
convictions [2]  18/9 23/25
Cook [3]  54/3 54/9 54/9
core [1]  16/21

C

corner [1] 40/8
correct [8] 4/24
11/2 11/5 21/19
42/9 47/17 52/6
56/6
correctly [2] 5/18
20/4
could [25] 4/4 4/7
5/9 5/11 6/5 6/19
6/23 9/9 13/6 13/20
14/22 15/15 16/16
17/23 21/12 22/20
30/16 30/22 33/25
40/2 40/21 42/24
43/2 44/12 52/25
couldn't [1] 34/3
counsel [4] 4/8 8/19
16/9 18/2
county [1] 43/19
course [1] 22/21
court [35] 1/1 2/18
3/24 4/2 8/18 12/6
12/25 13/3 13/5
13/16 13/23 14/10
16/6 25/21 28/13
29/5 31/18 31/22
31/23 33/19 35/16
37/22 38/10 39/18
39/23 40/1 40/18
44/6 49/1 50/20
56/1 56/4 56/5

courtroom [1] 1/24
courts [1] 48/19
covering [1] 5/11
COVID [1] 18/5
CPT [1] 1/5
creation [1] 52/13
crime [2] 29/19
31/10
crimes [2] 43/23
48/9
criminal [7] 21/23
23/10 28/13 47/1
47/9 47/10 54/6
critical [2] 7/4
45/13
crossed [1] 50/20
cuff [1] 35/2
curtilage [1] 31/2
custom [18] 20/15
25/1 25/10 25/14
25/20 25/24 26/15
33/15 33/19 35/12
36/9 36/14 37/4
37/9 40/21 40/24
42/19 53/24
customer [1] 36/14
customs [2] 6/16
6/18
cut [1] 51/15
cv [2] 1/5 4/6

D

DALANEA [2] 1/3
4/5
damages [2] 13/12
20/2
Darlene [2] 33/4
41/23
Date [1] 56/13
day [2] 16/15 16/16
de [1] 8/11
de-emphasis [1]
8/11
deal [2] 13/20 35/17
dealing [2] 5/14
52/24
DeBevoise [1] 2/13
debris [1] 41/4
December [1] 16/9
decide [2] 14/1
14/22
decided [1] 14/1
decision [5] 26/6
26/7 27/14 40/22
44/5
decisions [1] 38/3
declaring [1] 21/15
Deegan's [2] 33/4
41/23
deemed [1] 24/8
Deeming [1] 52/19
defeat [2] 38/6
40/16

**D**

defend [1] 21/22
defendant [5] 1/8
2/12 4/16 14/21
17/12
defendants [1] 7/22
defending [1] 14/12
defense [2] 4/14
15/13
define [1] 50/4
defining [2] 31/3
31/22
definitely [1] 53/11
definitive [1] 36/6
definitively [1]
14/22
degree [1] 45/11
deliver [1] 12/9
delve [1] 8/19
demonstrate [2]
36/2 36/9
demonstrated [1]
33/15
demonstrating [1]
8/10
depending [1]
34/24
depends [5] 8/1
18/16 32/10 32/12
32/13
Depew [2] 37/13
40/22

depose [1] 16/10
depositions [3] 8/17
8/19 50/24
deputies [6] 12/9
23/20 33/4 33/24
41/23 53/20
deputy [2] 41/18
53/22
derived [1] 22/3
describe [2] 38/24
51/23
describes [1] 11/21
describing [1]
38/22
desire [2] 32/22
44/11
detention [1] 29/23
determination [1]
36/6
determine [1]
39/21
deterrence [1] 47/7
deterrent [1] 45/4
development [1]
41/7
dicta [2] 25/18
25/21
did [8] 10/24 11/3
16/8 18/18 27/6
27/17 31/20 37/6
didn't [5] 20/23
24/5 28/1 28/5

die [1] 15/5
difference [2] 7/20
51/4
different [10] 7/20
11/19 14/16 14/20
15/3 21/10 22/4
34/25 38/9 38/10
digital [1] 1/24
diligence [2] 26/19
27/16
dimension [2]
13/25 34/23
diminished [1]
37/24
direct [2] 5/10 22/7
directed [2] 47/1
47/3
direction [2] 33/25
43/24
directive [2] 12/23
17/1
directly [2] 21/19
22/11
dis [2] 25/18 25/21
dis-avowed [2]
25/18 25/21
disclosed [1] 16/6
discovering [1]
28/12
discovery [8] 5/18
5/20 5/22 6/10 6/13

**D**

discovery... [3] 6/24 7/2 7/10
discuss [1] 54/2
discussion [1] 31/19
dismiss [3] 40/1 40/6 40/16
dispose [1] 42/25
dispute [4] 13/9 14/11 14/17 37/1
disputes [1] 35/17
dissimilar [1] 35/11
distinct [1] 45/19
distinction [1] 48/14
distinctions [1] 30/2
DISTRICT [11] 1/1 1/1 39/18 40/18 54/3 56/1 56/2 56/5 56/5 56/12 56/12
dive [1] 37/7
divergence [1] 37/2
DIVISION [2] 1/2 56/13
divvy [1] 11/18
do [31] 5/11 10/21 12/15 12/17 13/3 18/9 20/4 22/14 25/11 27/22 29/14 30/11 33/10 33/18

33/21 33/22 35/2 35/12 36/3 37/12 38/7 38/10 38/18 39/9 39/23 40/21 46/12 48/3 50/8 52/9 53/3
doctrinal [1] 30/22
doctrinally [1] 52/25
documented [1] 47/21
documents [2] 27/1 27/2
does [16] 5/22 12/2 24/13 29/6 32/16 33/19 33/22 34/5 35/16 37/22 37/23 37/24 41/8 44/16 44/25 45/7
doesn't [15] 12/20 17/13 18/2 20/13 20/13 20/18 20/19 25/12 33/23 33/24 34/4 34/12 45/1 47/4 54/5
doing [4] 21/19 30/3 46/21 52/12
Dolly [1] 43/18
don't [44] 6/12 7/3 7/3 7/14 8/5 8/22 8/23 12/21 13/8 14/16 15/5 15/24

20/12 21/6 23/2 24/18 27/13 27/24 27/25 28/2 28/2 28/10 32/19 34/9 34/12 34/15 35/9 37/12 42/19 42/22 45/9 46/3 46/4 46/19 46/25 47/13 47/15 47/21 51/24 53/23 54/10
done [7] 21/3 37/11 39/4 39/6 40/2 41/9 42/22
door [6] 28/12 32/14 33/6 33/11 38/14 38/14
doorstep [1] 31/16
doubt [2] 6/7 21/1
down [12] 9/1 9/10 9/23 16/13 33/9 41/18 41/24 42/9 46/10 50/12 50/19 54/4
dozens [1] 37/12
dramatic [1] 16/12
drawn [1] 34/7
drew [1] 36/16
drop [3] 16/12 41/18 42/9
drop-down [2] 41/18 42/9

**D**

dropoff [1]  17/2
drug [1]  18/5
due [19]  10/10
 10/13 10/20 10/23
 11/4 44/13 44/13
 45/13 46/1 46/10
 47/24 48/19 49/4
 49/7 50/7 52/5
 52/16 53/13 53/16
duly [1]  40/10
during [1]  34/13

**E**

each [3]  39/7 39/21
 51/12
earlier [2]  27/5
 50/14
easiest [1]  9/11
easily [1]  6/19
easy [1]  44/22
effect [1]  35/24
effectively [2]  19/5
 46/7
effectuate [1]  35/1
Eighth [1]  24/8
either [6]  19/13
 23/24 31/4 32/18
 41/5 50/24
element [2]  17/24
 48/8
Eleventh [2]  29/10

eliminate [1]  17/24
else [1]  39/11
email [1]  53/19
emails [1]  50/23
emphasis [1]  8/11
emphasize [1]
 53/18
encounter [1]  10/5
encounters [2]
 29/16 30/14
end [1]  32/23
enforce [1]  44/1
enforcement [10]
 19/24 30/15 30/24
 33/17 43/21 46/21
 49/10 50/21 51/8
 52/14
enforcing [1]  52/11
engage [1]  36/22
engaging [1]  39/16
enough [6]  16/17
 37/4 40/23 40/24
 42/18 52/10
ensure [1]  43/19
enter [1]  28/11
entire [1]  36/23
entirety [1]  35/6
entitled [4]  7/13
 15/8 21/21 56/7
epidemic [1]  18/6
equals [1]  31/25

equivalent [1]
 22/19
ergo [1]  26/1
Espanol [1]  52/13
Español [1]  50/9
especially [2]  26/20
 46/13
ESQ [7]  2/2 2/5 2/8
 2/9 2/12 2/13 2/16
essentially [1]
 39/19
establish [7]  7/12
 14/5 16/11 37/4
 40/20 40/24 44/9
established [3]  15/6
 39/25 44/24
establishing [2]
 48/7 51/14
et [3]  1/3 4/6 29/10
et al [1]  4/6
even [11]  12/20
 13/22 17/16 21/9
 26/16 28/20 33/19
 35/19 35/21 40/21
 52/8
event [1]  40/20
ever [2]  18/1 53/8
every [16]  11/19
 13/10 18/20 30/8
 34/10 34/10 34/13
 37/8 39/1 39/4 39/6
 39/8 39/21 43/18

# E

every... [2]  43/25
54/5
everybody's [1]
42/16
everyone [2]  4/3
39/11
evidence [17]  7/12
12/14 16/12 16/17
16/24 17/1 18/20
21/15 22/3 23/19
38/6 38/20 38/25
40/14 43/9 44/2
44/8
evident [1]  39/14
evidentiary [1]
13/3
evolution [2]  12/22
16/7
exact [2]  26/11
39/19
exactly [1]  19/16
example [14]  8/3
17/20 18/17 19/5
20/14 22/5 30/15
34/4 35/20 37/22
38/13 43/4 50/23
51/13
excellent [1]  40/10
except [1]  41/17
exercise [1]  45/6
exercising [2]  26/19

exigency [1]  33/5
existence [3]  25/19
26/25 36/9
expected [3]  14/8
15/14 36/22
explained [1]  54/4
explaining [1]
31/25
explains [1]  31/22
explanation [1]
31/24
expose' [1]  26/23
expressed [1]  32/22
extend [2]  27/8
31/1
extent [8]  6/2 12/2
29/17 44/16 44/25
45/7 49/15 51/23
extraneous [1]  18/4

# F

fact [21]  4/21 5/5
5/19 6/5 6/20 12/5
13/1 13/20 16/1
19/5 19/21 34/23
36/3 36/5 38/3
38/11 41/25 45/4
46/13 47/6 53/12
fact-finder [1]  16/1
fact-finding [1]
13/20
factor [2]  44/7

factors [4]  14/9
14/16 15/17 18/5
facts [8]  15/19
19/23 27/15 37/8
41/13 41/16 42/5
42/6
factual [2]  15/11
35/17
failing [1]  51/2
failure [1]  23/14
fair [3]  4/25 13/14
15/11
fairly [4]  13/18
42/5 51/15 53/20
faith [1]  14/13
fall [2]  28/9 29/6
false [2]  24/24 25/4
familiar [2]  8/22
37/16
families [1]  51/2
family [2]  47/20
52/24
far [3]  14/25 15/2
15/20
favorably [1]  26/12
FCRR [2]  2/18
56/11
fence [1]  41/23
few [2]  35/10 41/17
Figueroa [1]  40/23
file [2]  27/5 27/17

filed [2]  27/12
35/14
filing [4]  5/19 24/19
27/9 35/21
filings [5]  5/7 8/23
29/15 30/7 41/14
final [1]  53/20
find [4]  20/23 25/17
26/19 51/1
finder [3]  16/1 36/3
38/4
finding [6]  13/20
13/22 14/18 20/6
40/22 50/8
findings [3]  19/18
19/24 45/16
fine [8]  18/16 20/9
20/11 23/11 23/16
23/17 24/8 24/20
first [22]  4/22 8/16
9/11 12/13 14/2
17/10 21/11 21/13
27/19 28/8 31/25
32/12 45/17 46/6
47/23 48/1 48/7
48/10 52/1 52/22
53/2 53/12
fits [1]  42/23
five [4]  20/24 21/1
40/23 45/3
five kilos [2]  20/24

fixed [1]  18/23
FLORIDA [12]  1/1
1/6 2/7 2/15 2/18
2/19 4/18 40/18
54/4 56/2 56/5
56/12
focus [2]  35/15
39/11
focused [1]  8/14
focusing [1]  51/10
follow [1]  42/10
followed [3]  42/14
43/20 43/20
footstep [1]  31/15
force [1]  35/9
forces [2]  42/15
52/14
forcing [1]  53/18
foregoing [1]  56/6
foremost [1]  32/12
Forgive [2]  20/21
24/5
form [3]  17/7 20/3
45/7
formal [4]  8/13
16/11 47/13 47/13
formalized [2]
47/17 47/18
format [1]  56/7
formation [1]  31/8
forth [2]  32/11

forward [6]  13/7
13/16 14/25 15/2
40/2 40/7
forward-looking [4]
13/7 13/16 14/25
15/2
found [2]  8/18
23/20
four [4]  9/10 10/18
27/9 27/9
Fourth [13]  9/15
9/17 9/19 11/17
22/7 27/20 29/20
31/12 31/20 31/21
32/17 35/16 36/4
framed [2]  49/19
51/5
framing [5]  19/15
48/4 48/16 51/5
51/11
frankly [1]  32/24
free [1]  50/3
freedom [6]  48/1
48/17 49/9 51/8
51/13 52/20
frequent [1]  52/14
front [2]  33/6 33/11
full [1]  26/24
function [1]  46/21
Fund [1]  4/19
fundamental [14]

**F**

fundamental... [14] 48/1 48/4 48/20 49/15 49/19 49/21 51/7 51/11 51/15 51/20 51/24 52/2 52/17 52/19
further [8] 5/6 5/6 8/25 54/16 55/2 55/3 55/4 55/8
future [3] 17/4 47/3 47/4

**G**

gather [4] 29/9 29/19 29/24 39/3
gathering [4] 30/5 30/7 31/14 31/15
general [2] 27/15 46/9
generally [2] 24/21 40/25
generic [1] 17/10
generically [1] 16/15
get [14] 10/7 11/16 17/18 19/17 19/21 20/16 22/2 28/15 38/20 45/22 50/12 50/23 51/2 54/22
gets [3] 16/15 19/16 23/13

getting [5] 16/7 43/21 46/14 49/8 50/19
give [2] 25/16 37/24
given [2] 5/9 53/10
glean [1] 41/1
Glebe [1] 2/10
global [1] 42/21
go [17] 5/7 9/25 11/15 17/8 18/8 28/20 32/23 33/4 33/11 33/24 40/2 40/6 41/2 42/4 43/19 43/24 50/24
go-to [1] 41/2
goal [8] 29/23 50/8 50/18 50/23 50/25 52/9 53/19 54/22
goes [4] 19/13 31/24 48/7 50/13
going [15] 8/14 16/22 20/15 23/21 25/5 28/13 29/18 30/11 31/9 31/10 33/6 37/25 42/25 43/12 44/16
gone [1] 41/21
gonna [6] 28/21 31/7 32/8 45/23 46/21 47/25
good [7] 4/3 4/9 4/13 4/15 4/20

good-faith [1] 14/13
got [14] 5/17 8/18 11/18 15/6 15/17 17/1 22/21 32/4 36/19 39/20 42/7 49/22 50/22 53/22
government [7] 14/17 16/23 43/3 50/4 50/5 50/22 52/10
governs [1] 34/11
GRACE [2] 2/8 4/11
granular [2] 34/22 35/1
granularity [1] 39/21
grass [5] 20/13 20/18 20/25 22/9 41/3
gray [1] 32/24
great [1] 26/2
ground [2] 17/12 27/15
guess [2] 34/17 51/18
guilty [1] 22/24

**H**

habeas [1] 24/17
had [9] 5/20 6/1

Case 1:21-cv-00555-SDM-CPT   Document 204-1 Filed 05/19/23   Page 73 of 93 PageID 4916

had... [7]  8/16
12/14 21/22 22/25
27/4 27/7 32/11
handle [2]  13/6
13/8
hands [1]  35/2
happen [2]  35/12
41/6
happened [6]  18/20
37/1 38/13 41/4
41/5 41/5
happening [1]
53/12
happens [3]  35/8
35/9 52/24
harassed [2]  50/18
50/18
harassing [4]  20/16
28/14 42/14 42/15
harassment [5]  9/5
19/3 19/14 50/15
50/17
hard [2]  40/13
46/14
harm [1]  21/24
has [22]  12/17
13/23 14/21 15/13
16/11 20/15 22/7
22/15 22/15 23/14
23/18 25/18 25/21
29/10 30/10 32/8

33/25 34/10 35/9
42/22 51/7 54/8
have [79]
haven't [5]  5/19 7/5
14/5 24/23 24/23
having [2]  39/25
54/14
he [6]  10/24 10/24
11/3 20/22 23/18
25/25
heard [9]  28/21
45/16 45/20 45/24
46/1 46/9 46/17
46/20 47/14
hearing [3]  1/12
13/4 46/22
heart [1]  14/13
heavily [1]  27/4
heavy [1]  14/6
Heck [9]  18/8 18/18
19/16 21/9 22/16
23/6 24/16 24/21
25/2
Heights [1]  2/4
Heilman [5]  5/17
12/5 22/20 23/12
23/23
help [4]  5/9 5/13
6/23 23/9
helpful [1]  5/24
her [2]  5/18 43/4
here [58]

here's [3]  5/24 36/18
36/18 40/5
high [2]  20/25 52/9
hill [1]  15/5
him [2]  23/15 23/16
hire [1]  21/22
his [3]  25/25 41/25
43/4
hit [1]  41/23
hoc [1]  46/6
HOLBORN [2]
2/12 4/17
hold [2]  13/3 46/22
home [3]  30/3
31/16 31/24
homeowner [1]
31/8
honor [45]  4/9 4/15
4/24 5/2 7/1 7/11
8/17 11/5 11/10
11/15 11/20 13/6
14/4 14/17 15/4
18/12 19/14 20/5
20/12 20/19 21/7
24/11 27/24 28/17
28/25 29/1 30/10
31/17 37/25 38/22
39/5 40/25 41/8
44/5 44/18 48/6
48/25 49/14 51/23
52/1 52/6 53/17
54/18 55/5 55/8

## H

Honor's [4]  22/11
31/5 36/8 42/10
HONORABLE [1]
1/13
hopefully [1]  31/9
host [1]  18/6
hour [1]  5/4
house [6]  2/9 4/12
5/18 43/18 43/19
43/23
how [20]  6/19 12/6
12/25 13/16 15/19
18/9 18/10 23/8
33/22 33/23 35/1
35/16 37/1 37/22
44/23 44/24 46/1
46/5 48/11 49/19
Howard [1]  2/18
However [1]  23/19
Humphrey [2]  18/9
18/18
hundreds [1]  37/13
hypothetical [4]
20/25 21/18 21/20
31/5

## I

I'll [5]  5/10 9/10
33/14 34/19 35/15
I'm [46]  4/10 4/15
4/16 6/8 6/9 6/22
11/2 18/14 18/21
21/6 21/10 21/19
22/10 27/25 29/1
29/2 30/4 31/20
31/25 32/1 36/7
36/11 36/11 38/7
38/7 40/7 40/10
40/11 40/12 42/25
44/19 44/19 44/23
45/20 45/23 47/25
49/18 49/20 49/23
51/6 51/10 51/18
55/4
I've [6]  5/3 5/17
8/23 15/11 44/20
49/22
idea [1]  14/3
identified [1]  49/24
identify [1]  48/22
illegitimate [1]  50/9
illustrates [1]  32/11
ILP [4]  8/13 12/15
12/22 17/4
immediately [1]
42/14
implicate [1]  47/4
implicated [3]
47/14 49/16 52/18
implicating [1]
11/12
implied [3]  28/10

important [2]
26/20 51/12
imposing [1]  20/17
impossible [2]
27/16 36/5
impressed [1]
40/11
imprisoned [1]
21/8
imprisonment [1]
22/16
improper [10]  22/1
30/16 35/20 50/6
50/21 51/3 51/13
52/6 52/10 52/12
inartfully [1]  29/2
incarceration [3]
21/9 24/13 24/15
incident [7]  12/10
32/13 32/23 32/23
33/3 38/13 40/21
incidents [3]  37/18
38/1 40/19
include [2]  34/4
37/23
including [4]  12/23
13/13 27/3 27/10
inclusive [1]  56/7
indicated [3]  19/14
43/15 54/14
indication [4]  6/5

**I**

indication... [3]
6/19 12/16 17/16
individual [11]  8/4
9/3 21/5 24/24 25/4
33/9 35/2 37/8 42/8
42/16 53/19
individually [1]
42/23
individuals [2]
18/10 19/6
infirm [2]  21/15
22/2
infirmity [1]  24/22
influence [1]  45/6
informally [1]
17/18
information [14]
25/12 26/21 27/5
28/12 29/9 29/19
29/24 30/5 30/7
31/14 31/15 36/24
39/3 50/22
informed [2]  38/19
44/16
infraction [2]  20/22
30/19
ingredients [1]  6/1
inherent [1]  42/11
initially [1]  37/5
injunctive [2]  15/20
20/1

injuries [2]  13/23
27/8
inquiries [1]  36/4
inquiry [2]  5/6 50/8
inspections [1]
52/14
instance [3]  11/19
13/11 40/23
instances [8]  10/7
23/8 37/13 38/23
40/24 41/13 43/15
44/15
Institute [3]  2/3 2/6
2/9
intelligence [1]
36/20
intelligence-lead [1]
36/20
intensive [2]  36/5
38/11
intent [3]  16/25
30/11 31/7
intention [1]  51/25
interaction [3]
32/25 37/9 39/21
interactions [7]
10/8 11/19 11/22
35/6 36/24 39/14
41/1
interest [5]  5/13
20/21 34/18 42/3
47/16

interested [1]  45/11
interrupt [1]  24/6
intimate [5]  9/12
43/6 43/11 52/22
53/1
intimation [2]
29/12 29/15
introduced [1]
16/12
intrusions [2]  30/25
31/1
invalidate [1]  21/16
investigate [1]
29/10
investigating [2]
29/19 47/11
investigation [1]
47/6
investigative [1]
47/4
investigatory [1]
29/23
involved [1]  18/10
involves [1]  7/20
irrelevant [2]  19/4
30/20
irrespective [1]
45/3
is [200]
is a [1]  51/14
isn't [15]  6/15 19/3
24/9 29/23 30/14

isn't... [10] 30/15
33/16 38/19 45/18
45/19 48/17 49/12
49/12 49/16 52/21
issuance [1] 52/14
issue [12] 5/8 8/2
12/5 13/1 13/17
14/10 15/12 19/13
21/16 33/10 51/5
53/25
issued [1] 20/14
issues [4] 5/7 5/14
13/2 13/24
it [131]
it's [57]
its [2] 14/21 52/11
itself [1] 9/2

## J

jail [2] 22/25 50/24
Jardines [1] 31/18
job [1] 40/10
JOHNSON [2] 2/2
4/11
joined [1] 4/10
joint [3] 41/12
41/15 42/6
Jones [9] 2/18
23/13 23/13 23/13
25/6 43/17 56/4
56/10 56/11

4/12
JUDGE [1] 1/13
judgment [13] 7/8
7/8 7/13 12/7 35/15
36/1 38/6 40/15
40/16 43/9 43/11
43/14 49/24
Judicial [1] 56/8
June [3] 1/5 33/3
41/22
June 2018 [1] 33/3
jurisdictional [1]
13/25
jurisprudence [1]
24/7
jury [3] 14/22
15/24 40/22
just [74]
Justice [3] 2/3 2/6
2/9
justified [1] 18/23

## K

kayak [1] 42/1
keep [1] 36/12
KENNY [2] 2/16
4/18
kilos [2] 20/24 21/1
kind [4] 9/25 25/13
31/19 42/10
knew [1] 6/14
knock [14] 9/24

28/3 28/6 28/11
28/19 28/24 29/5
29/7 29/9 32/6
32/16
knocking [1] 38/15
know [85]
knowledge [2] 25/9
25/23
known [1] 45/5
Kraus [1] 16/10

## L

lack [2] 7/9 34/6
lacks [2] 49/10 51/9
landed [1] 46/5
language [1] 48/6
large [2] 37/17
37/18
largely [3] 10/19
30/7 30/14
Larry [1] 16/10
last [3] 5/18 27/9
44/21
late [1] 27/11
later [3] 5/5 14/22
25/24
law [20] 11/13 14/4
14/19 18/18 26/11
30/14 30/17 30/24
33/17 35/9 38/4
38/9 40/7 40/14
41/8 43/10 43/20

# L

law... [3]  46/21
 48/23 51/12
laws [1]  52/11
Lawson [1]  26/8
lawsuit [2]  27/10
 27/17
lawyer [1]  21/22
lead [3]  4/22 5/1
 36/20
leads [1]  18/6
leaked [1]  27/1
least [10]  5/16 7/18
 21/12 23/12 29/14
 38/1 44/9 46/9
 48/14 49/24
leave [4]  28/15
 50/19 51/2 54/25
led [1]  45/16
left [1]  13/25
legitimacy [8]  13/9
 19/9 19/12 19/13
 21/13 22/6 22/8
 25/3
legitimate [4]  19/4
 28/3 28/5 32/15
length [1]  33/2
lengthy [1]  31/19
less [1]  23/5
let [25]  5/8 5/15
 7/17 8/21 9/9 13/14
 13/15 18/8 18/24

 30/13 34/2 35/13
 37/15 40/6 42/24
 44/12 45/18 46/23
 47/8 49/18 51/22
 51/22
let's [5]  10/16 20/2
 21/3 25/16 38/5
letter [1]  11/13
level [3]  35/12
 40/11 47/22
liability [1]  20/6
liberty [2]  47/16
 48/8
license [3]  28/10
 28/11 29/6
like [25]  6/4 11/16
 13/2 14/3 14/11
 14/12 15/5 21/21
 22/10 26/18 29/7
 34/22 35/3 38/22
 38/24 40/15 40/17
 41/12 42/21 45/1
 49/16 49/17 52/13
 53/23 54/6
likelihood [1]  16/19
likely [1]  19/21
limitations [2]
 26/14 26/18
limited [1]  53/4
line [2]  41/7 50/19
list [4]  27/11 45/17

listen [1]  40/9
litigation [2]  18/4
 37/17
little [6]  6/22 9/23
 14/3 34/21 43/17
 54/13
live [1]  43/23
location [1]  36/17
logic [1]  34/10
long [1]  15/6
look [11]  14/10
 28/18 33/9 35/5
 38/2 39/12 39/16
 39/20 41/25 41/25
 42/4
looked [2]  42/22
 52/13
looking [19]  6/11
 6/22 6/23 6/24 13/7
 13/10 13/16 14/25
 15/2 15/7 19/25
 20/1 20/3 20/7 31/3
 31/8 31/11 33/7
 35/7
Losman [1]  40/17
lost [2]  9/17 32/1
lot [11]  6/1 6/6 14/9
 14/16 18/4 19/13
 26/24 33/14 35/19
 38/2 39/7

made [9]  11/17
12/23 13/23 17/5
19/18 21/12 24/23
39/19 54/21
MAGISTRATE [1]
1/13
mailbox [1]  41/3
major [2]  16/10
30/1
make [11]  14/18
26/23 30/8 34/19
36/6 38/2 44/21
45/5 46/10 49/21
53/7
maker [1]  53/21
makes [3]  45/15
53/13 53/22
making [1]  40/20
Management [1]
4/19
mandated [1]  34/24
manner [1]  38/16
manual [1]  36/20
many [6]  23/8 27/1
32/25 33/23 38/18
42/4
March [2]  27/11
27/12
March 11th [1]
27/12
margins [1]  38/23

marijuana [2]
23/18 23/21
material [2]  13/1
13/17
matter [13]  5/21
5/23 6/24 7/10 14/4
14/18 15/4 23/20
38/4 38/9 40/7
43/10 56/7
may [5]  5/5 9/11
34/18 36/2 54/14
maybe [7]  11/15
17/23 22/10 38/1
38/18 39/10 53/19
me [40]  4/17 5/8
5/9 5/13 5/15 6/23
7/17 8/21 9/9 11/2
13/14 13/15 18/8
18/12 18/24 20/20
20/21 21/12 21/19
23/9 24/5 25/16
27/18 29/21 30/13
34/2 35/13 37/15
42/24 44/12 44/18
45/18 46/23 48/13
48/21 49/18 51/18
51/22 51/22 54/18
me one [1]  25/16
mean [19]  12/13
12/18 17/11 17/13
20/13 20/18 20/19
21/6 24/5 29/17

30/1 34/10 34/18
35/19 45/10 49/15
51/23 52/23 54/5
meaningful [3]
45/14 45/15 46/17
meaningless [1]
46/7
means [1]  54/6
meet [2]  17/3 54/10
members [1]  47/21
mention [1]  44/15
menu [3]  41/19
41/24 42/9
mere [1]  32/14
met [5]  7/5 14/5
14/21 15/19 45/14
Miami [1]  2/7
MIDDLE [4]  1/1
56/2 56/5 56/12
might [5]  23/5 23/5
34/21 45/10 49/7
mimics [1]  30/6
minimal [1]  51/19
minors [1]  11/10
misbehavior [1]
25/1
misconduct [1]
52/3
misdeeds [6]  48/2
48/12 48/15 48/16
48/17 52/20
missed [1]  35/18

# M

missing [1] 41/3
mistaken [3] 10/24 22/20 23/2
mistreat [1] 52/5
moment [7] 8/22 10/17 20/21 30/14 35/15 37/16 38/5
Monell [11] 12/20 25/11 25/12 25/20 25/23 26/13 26/14 34/14 34/16 42/23 53/23
money [1] 21/22
moot [6] 6/3 6/7 6/8 14/19 14/23 17/4
mooted [1] 15/20
mootness [14] 5/8 7/6 7/19 7/21 7/25 8/8 12/1 12/2 13/2 13/16 13/24 14/5 15/12 17/10
more [9] 5/25 6/14 7/14 13/15 29/12 31/14 38/1 45/12 52/6
morning [8] 4/3 4/9 4/10 4/13 4/15 4/20 5/4 46/13
most [2] 33/2 36/25
mostly [2] 24/23 38/23

motion [9] 38/6 40/1 40/6 40/15 40/16 43/14 49/25 54/2
motions [3] 7/8 7/9 35/14
motivated [2] 50/6 52/5
motive [1] 30/16
motives [1] 30/20
motor [1] 30/15
motorist [2] 20/22 30/17
move [7] 14/15 20/16 42/24 44/21 50/24 53/18 54/22
moves [1] 31/4
moving [2] 8/14 41/15
MR [21] 3/3 3/4 3/5 3/6 3/7 3/8 3/9 3/10 3/11 3/12 3/13 3/14 3/15 3/16 3/17 3/18 3/19 3/20 3/21 3/22 3/23
Mr. [44] 4/21 4/25 5/15 7/17 10/16 11/2 11/7 11/17 11/21 12/2 12/25 15/10 18/14 18/25 19/15 22/14 24/6 24/7 24/21 25/6

27/18 32/5 33/14 35/13 39/20 41/10 41/11 43/2 43/8 44/20 45/24 46/8 47/24 50/14 53/14 53/15 54/16 54/19 55/3 55/3 55/7
Mr. Bargil [17] 4/21 5/15 10/16 11/7 12/25 18/25 24/7 26/4 27/18 35/13 43/8 44/20 47/24 53/14 54/16 55/3 55/3
Mr. Bargil's [1] 41/11
Mr. Poulton [25] 4/25 7/17 11/2 11/17 11/21 12/2 15/10 18/14 19/15 22/14 24/6 25/6 26/3 26/6 32/5 33/14 39/20 41/10 43/2 45/24 46/8 50/14 53/15 54/19 55/7
Mr. Poulton's [1] 24/21
much [7] 13/9 20/24 26/21 26/25 31/14 36/25 36/25

## M

multiple [5]  37/17
37/18 37/20 38/1
38/12
my [15]  4/11 4/17
16/2 22/12 22/20
22/21 23/1 24/7
32/1 32/1 40/5 41/4
48/18 49/22 49/23

## N

name [1]  5/18
nature [1]  53/11
necessarily [3]  6/13
7/14 28/17
necessary [1]  27/5
need [17]  6/13 7/14
14/6 14/14 15/5
17/13 19/18 21/8
26/15 33/11 33/19
37/7 37/9 37/12
38/1 39/23 44/6
needs [1]  31/6
neither [3]  22/22
23/23 23/24
never [1]  46/16
new [5]  8/13 17/21
26/10 39/17 39/18
Ninth [1]  50/11
nix [1]  38/14
no [37]  1/5 4/6 7/1
7/11 10/12 10/12

12/23 16/18 17/1
17/15 19/22 20/25
25/21 28/1 28/5
28/21 30/4 30/10
32/7 33/12 33/25
36/20 37/7 39/5
39/23 41/7 44/25
46/4 47/17 47/18
48/5 49/14 52/23
55/4
NOCCO [3]  1/7 4/6
4/16
nol [1]  23/19
nominal [1]  20/2
nominally [1]  13/13
normal [1]  47/14
North [1]  2/10
Northern [1]  54/3
nose [1]  38/16
not [79]
notes [3]  49/22
49/23 56/6
nothing [4]  12/15
53/21 55/4 55/8
notice [17]  44/17
44/24 45/1 45/8
45/10 45/14 45/19
45/20 45/22 45/25
46/2 46/3 46/5 46/7
47/7 47/13 47/18
notion [1]  53/18

49/23
number [9]  5/7
5/10 15/17 17/9
23/14 37/18 38/18
41/11 44/15
numbers [1]  41/3

## O

objective [2]  30/16
31/7
objectively [1]
18/22
obvious [2]  41/2
48/13
Obviously [2]  6/15
35/14
occasion [1]  9/21
occur [1]  18/1
occurred [7]  10/5
16/18 22/22 23/20
35/19 36/16 41/20
occurs [2]  25/22
31/15
off [2]  31/4 38/8
offender [39]  6/2
6/6 8/6 8/12 9/2 9/4
11/20 12/17 16/13
16/20 16/20 22/22
23/22 23/24 27/11
27/20 33/5 33/7
33/21 33/23 35/18
37/21 37/23 37/24

# O

**offender... [15]**
39/1 39/4 39/6
39/10 39/12 40/4
41/13 41/16 41/19
42/2 42/17 43/18
46/19 47/19 54/10

**offenders [3]** 8/14
8/15 45/3

**offer [1]** 26/11

**Office [7]** 16/11
25/2 34/10 37/11
39/15 43/15 43/24

**officer [12]** 30/11
30/20 30/23 33/18
35/22 35/23 35/24
36/16 37/20 38/12
38/15 38/16

**officers [1]** 20/15

**Official [2]** 56/4
56/11

**Officially [1]** 7/1

**often [1]** 35/9

**Oh [3]** 28/2 53/6
55/4

**Ohio [1]** 2/4

**okay [18]** 5/3 6/10
7/16 7/24 9/15 11/7
11/9 12/1 18/8
18/15 24/3 32/3
41/10 46/8 49/2
53/14 54/12 55/2

**omission [1]** 34/7

**once [1]** 33/22

**one [53]** 7/15 9/11
9/25 9/25 10/19
10/19 10/21 11/3
12/3 13/5 13/8
15/18 15/22 16/15
16/16 17/9 18/21
18/22 19/7 20/17
22/23 22/24 23/3
23/4 23/6 23/13
23/17 25/16 26/16
30/1 33/2 33/3
37/20 38/1 39/2
39/8 40/21 41/20
41/23 44/21 45/11
45/21 47/2 48/21
49/3 49/6 49/24
51/7 51/18 52/2
52/3 53/17 54/22

**ones [5]** 9/22 33/9
39/11 42/8 42/16

**ongoing [3]** 47/1
47/5 47/9

**only [10]** 10/19
10/19 11/3 13/7
16/14 24/12 24/14
29/22 37/2 44/6

**opened [1]** 38/14

**opportunity [9]**
5/20 45/15 45/20

46/17 46/20 47/13

**opposed [6]** 7/25
23/10 25/9 38/15
42/2 43/11

**order [5]** 4/2 14/10
19/16 26/13 43/1

**ordinance [1]** 19/19

**ordinances [1]**
43/20

**Ordinarily [1]**
13/24

**ordinary [2]** 26/19
27/16

**orientation [2]**
31/20 31/21

**other [24]** 6/3 8/6
13/20 14/14 17/18
18/6 19/8 20/2 20/8
21/7 21/24 23/4
23/7 23/25 28/6
32/22 33/17 36/1
38/20 45/1 45/12
45/21 46/19 48/18

**others [7]** 8/6 11/8
38/22 48/2 48/9
48/18 52/20

**otherwise [2]** 29/7
37/21

**our [25]** 11/6 13/7
13/9 13/10 15/8
19/17 27/7 35/5

# O

our... [17]  39/16
41/6 43/13 43/15
43/24 44/9 47/12
48/7 48/10 49/3
49/6 50/5 50/16
50/17 51/25 52/16
54/1
out [20]  5/5 5/9
5/13 6/23 8/18 10/6
23/9 26/19 26/20
31/6 32/20 35/21
39/6 41/18 41/20
42/11 43/24 50/10
53/18 54/3
outlines [1]  36/21
outset [2]  19/16
30/18
outside [1]  38/23
over [8]  12/22 13/9
21/23 29/18 30/23
41/23 45/6 54/13
overall [1]  39/24
overcome [2]  16/17
17/10
overlap [1]  52/24
overturned [1]  26/7
overwhelmingly [1]
37/11
own [1]  35/21

# P

P.A [1]  2/13
page [5]  3/2 16/5
50/2 51/6 56/7
pages [3]  43/14
54/1 56/7
paid [2]  18/23
22/18
pamphlet [1]  12/10
Paneson [3]  33/7
41/22 42/1
Pardon [1]  49/5
parent [3]  11/22
43/4 45/5
parent's [1]  43/5
parents [19]  8/22
8/23 9/5 9/13 10/10
10/14 10/18 11/3
11/10 11/14 44/3
44/9 44/11 44/15
48/12 48/15 48/18
53/8 54/8
parents' [1]  10/21
Park [1]  2/15
part [16]  8/16 9/14
17/20 21/9 25/1
28/25 32/22 36/25
37/10 39/24 45/4
46/4 48/6 49/9 50/4
50/22
particular [8]  6/11
13/15 19/2 25/23

46/18
parties [7]  5/9
17/18 17/23 35/14
36/2 37/3 41/21
parties' [2]  5/3 42/5
past [3]  47/2 47/5
47/10
pat [1]  5/23
PATRICK [2]  2/16
4/18
pattern [7]  24/25
37/10 39/13 39/14
39/22 41/7 41/9
pause [9]  8/21
18/24 20/20 30/13
34/2 37/15 45/19
46/23 49/19
pay [1]  21/22
paying [1]  23/16
payment [2]  18/16
18/19
PC [1]  42/1
penalized [1]  44/4
penalties [1]  20/17
people [8]  20/16
26/24 41/3 43/23
47/8 50/10 51/1
53/18
people's [1]  45/12
Performance [1]
50/25

**P**

perhaps [3]  17/24
21/21 54/15
period [2]  12/19
22/25
permanent [1]  20/1
permissible [1]
29/7
permitted [1]  17/22
person [9]  10/5
20/17 21/20 22/5
26/19 30/23 43/25
44/20 54/21
persons [1]  12/15
perspective [1]
35/5
petition [1]  24/17
ph [5]  27/10 40/17
48/10 50/11 50/20
phrasing [2]  15/15
30/6
picture [2]  33/10
42/13
Pinaud [3]  26/6
26/12 27/14
pinky [1]  38/14
place [6]  6/18 11/22
30/3 45/17 46/6
47/23
placement [2]  45/4
45/16
plaintiff [13]  1/4

16/7 18/13 18/22
25/15 25/18 25/25
46/10 48/21
plaintiffs [13]  4/10
6/24 8/7 9/22 10/8
11/23 13/11 24/16
31/1 33/15 43/10
47/20 54/17
plaintiffs' [9]  5/19
8/4 8/19 16/9 18/1
27/22 35/21 42/12
54/1
pleasant [1]  33/1
please [2]  4/4 4/7
pled [1]  22/24
plenty [1]  44/2
point [22]  6/3 7/18
10/6 13/14 15/18
15/22 17/18 22/21
26/20 31/18 31/18
35/4 35/10 37/7
38/19 40/5 41/11
44/5 46/15 47/12
48/5 48/25
pointed [2]  39/5
41/18
police [8]  30/2
32/15 36/21 39/25
43/22 45/11 46/19
46/25
police's [1]  44/11

policies [6]  6/16
6/18 8/9 26/24
26/25 34/11
policing [2]  36/20
39/17
policy [36]  8/10
15/14 15/18 16/8
16/11 16/17 17/8
17/11 17/15 17/21
20/15 25/1 25/10
25/13 25/20 25/23
26/15 33/16 33/18
33/21 34/4 34/6
34/12 34/15 34/16
36/15 36/19 38/25
40/20 40/24 42/18
45/4 47/3 53/20
53/21 53/23
policy-making [1]
40/20
posed [1]  16/15
position [2]  11/6
35/3
possession [1]
23/18
possibility [1]
16/22
possible [5]  16/15
16/16 19/20 19/21
42/20
post [1]  46/6
potential [1]  25/8

**P**

potentially [2]  15/3
20/10
POULTON [38]
2/13 2/13 3/4 3/6
3/8 3/10 3/12 3/14
3/16 3/18 3/20 3/22
4/16 4/25 7/17 11/2
11/17 11/21 12/2
15/10 18/14 19/15
22/14 24/6 25/6
26/3 26/6 32/5
33/14 39/20 41/10
43/2 45/24 46/8
50/14 53/15 54/19
55/7
Poulton's [1]  24/21
practical [1]  17/25
practice [1]  12/15
preliminarily [1]
7/18
presence [2]  4/22
35/23
present [2]  2/16
52/15
presumptively [1]
28/19
pretty [4]  11/9
11/13 15/15 38/11
prevail [4]  38/4
38/9 40/15 43/10
prevailed [1]  18/22

primarily [1]  43/23
principle [2]  11/13
26/9
prior [1]  14/12
prison [1]  12/16
private [2]  30/25
31/8
probable [4]  29/15
29/25 33/8 34/22
problematic [3]  9/2
33/3 35/11
problems [1]  18/7
procedural [7]
10/20 10/23 11/4
44/13 45/13 46/1
46/9
Proceedings [2]
1/24 55/11
process [25]  6/9
10/10 10/13 10/20
10/23 11/4 13/21
16/20 44/13 44/13
45/13 46/1 46/10
47/14 47/18 47/19
47/24 48/19 49/4
49/7 50/7 52/5
52/16 53/13 53/16
proclaiming [1]
18/2
program [3]  12/4
16/23 50/25
programs [1]  6/20

prohibited [1]  21/4
prolific [34]  6/2 6/6
8/6 8/12 8/14 9/2
9/4 11/20 12/17
16/13 16/19 16/20
22/22 23/22 23/24
27/11 33/5 33/6
33/21 33/23 39/1
39/4 39/6 39/10
39/12 40/3 41/19
42/2 42/17 45/2
45/3 46/18 47/19
54/10
promise [1]  17/14
prong [1]  46/2
prongs [1]  12/3
pronunciation [1]
5/17
proper [1]  17/14
properties [3]
11/22 20/15 29/18
property [9]  28/11
30/12 31/1 31/2
31/8 31/19 31/21
33/4 47/16
proposition [2]
25/16 26/11
pros'd [1]  23/19
prosecution [1]
31/10
prospective [1]
15/22

## P

protected [1]  47/16
protectoral [2]
 49/10 51/8
provide [1]  47/6
provides [1]  31/19
provisions [1]
 53/10
proximity [1]  40/20
Pulitzer [1]  26/23
pull [1]  41/24
pull-down [1]
 41/24
pulled [2]  21/23
 30/23
punish [1]  44/11
punished [6]  44/9
 48/9 48/11 48/15
 52/3 53/9
punishing [1]  48/15
punishment [7]
 24/13 48/2 48/17
 52/20 54/5 54/6
 54/9
punitive [1]  24/9
purely [1]  50/3
purported [1]
 35/17
purportedly [1]
 45/6
purpose [12]  20/17
 29/4 29/8 29/18

39/4 47/6 50/6 51/3
52/6
purposes [6]  7/7
 20/16 28/12 28/13
 29/19 53/2
pursuant [3]  6/15
 20/14 56/5
push [2]  14/3 50/9
put [3]  7/11 38/18
 51/1
puts [1]  53/11
putting [2]  22/23
 36/2

## Q

quarter [1]  33/22
question [23]  5/12
 7/19 7/24 16/14
 19/15 22/11 25/4
 28/17 29/3 29/8
 30/22 33/10 33/12
 36/8 36/19 37/3
 37/5 38/10 39/9
 43/8 44/23 45/23
 54/25
questions [4]  5/10
 33/13 33/25 40/13
quite [5]  7/12 27/24
 44/8 48/6 50/16
quote [3]  29/5
 50/17 54/9
quote-unquote [2]

## R

raise [1]  53/3
raised [2]  5/7 35/25
random [1]  16/20
rather [1]  6/24
rational [6]  49/10
 49/17 51/9 51/19
 51/21 52/7
RDR [2]  2/18 56/11
reach [2]  14/10
 17/23
read [2]  8/23 28/22
reading [2]  49/23
 51/6
reaffirmed [1]  26/9
realize [2]  38/17
 42/11
really [11]  6/4 6/17
 27/14 30/24 37/2
 39/18 41/19 42/16
 51/20 52/21 53/4
realm [2]  35/20
 50/21
rear [1]  31/11
reason [4]  10/6
 15/18 51/10 52/12
reasonable [14]
 16/19 17/20 26/18
 28/22 29/11 29/13
 29/22 30/24 32/6
 32/16 33/11 34/4

# R

reasonable... [2]
34/22 36/15
reasonably [3] 14/8
15/14 30/23
reasons [3] 11/23
37/20 38/12
rebut [1] 54/19
recalcitrant [1]
48/20
recall [1] 24/2
receive [1] 43/24
recess [1] 55/10
recognizes [1] 48/3
recollection [3]
22/20 23/2 24/7
record [4] 4/8 7/12
44/2 47/21
recording [1] 1/24
recur [1] 14/8
reduced [1] 8/12
reeling [1] 38/17
references [1]
35/22
referencing [1]
49/17
referred [1] 24/1
reflected [1] 42/5
reflective [1] 24/25
regard [1] 27/23
regarding [1] 5/20
regulations [1] 56/8

reimbursement [1]
20/9
reimpose [1] 14/9
reiterate [1] 52/17
rejected [1] 39/19
relate [1] 12/20
related [4] 7/19
33/13 34/14 36/24
relates [1] 7/14
relating [1] 23/23
relationship [1]
53/11
released [1] 12/16
relief [21] 7/13 13/7
13/10 13/16 14/25
15/2 15/7 15/8
15/20 15/22 17/4
19/17 19/22 20/1
20/4 20/8 20/8 21/2
21/21 24/18 24/20
rely [2] 26/5 27/3
relying [1] 48/23
remedy [1] 17/14
remember [1]
41/11
remove [1] 38/8
removing [1] 54/7
rendered [2] 14/23
38/3
renewed [1] 54/2
reoccur [1] 15/15
reopen [1] 6/13

repeatedly [2]
25/25 35/8
report [1] 41/25
Reporter [5] 2/18
3/24 56/3 56/4
56/11
reporting [1] 27/1
represented [1]
40/10
represents [1] 9/4
require [2] 32/16
41/8
required [5] 17/21
28/23 29/11 29/13
29/16
requirement [4]
34/5 34/8 34/24
39/5
requirements [1]
45/14
requires [2] 32/6
46/5
requiring [1] 47/22
residence [3] 12/9
23/21 37/20
resident's [1] 31/16
resolution [1] 23/15
resolve [2] 12/6
13/17
resolved [1] 23/16
resource [1] 14/15
resources [1] 12/10

# R

respect [5]  12/5
13/10 15/12 19/23
21/16
response [6]  10/16
22/12 34/17 34/18
34/21 54/1
restart [1]  6/19
restarted [1]  6/21
restate [1]  47/25
restatement [1]
52/21
resting [1]  7/9
result [2]  18/3 18/4
results [1]  32/18
return [4]  15/10
16/19 17/11 17/15
review [1]  52/7
reviews [1]  50/25
right [26]  9/11
19/16 20/5 32/14
42/14 43/6 48/4
48/22 49/15 49/23
50/1 50/1 50/2 50/3
50/5 50/7 51/7
51/15 51/18 51/19
51/20 51/24 52/2
52/18 52/19 53/21
rights [7]  26/1
31/21 48/1 48/20
49/20 49/21 51/11
ripen [1]  25/12

ripening [1]  23/10
rises [1]  47/22
Risk [1]  4/18
Rivas [1]  40/23
RMR [2]  2/18
56/11
road [2]  2/10 46/11
Rob [1]  4/17
ROBERT [4]  2/2
2/12 4/11 43/17
Robertson [1]
27/10
roots [1]  31/19
Ross [1]  54/23
routine [1]  39/1
rubric [2]  28/7
28/19
rule [3]  5/4 41/8
43/10
ruling [1]  40/7

# S

said [16]  6/15 7/3
11/3 15/15 16/1
25/21 29/11 34/3
35/7 39/23 40/1
40/19 44/6 50/14
50/20 54/19
same [8]  16/5 25/21
26/11 39/19 47/4
50/2 50/10 50/11
Sanborn [1]  16/10
sanction [1]  24/10

satisfactory [1]
15/8
satisfy [1]  52/8
say [29]  5/25 6/4
6/13 10/1 10/21
14/2 14/21 14/21
17/6 20/2 21/3
22/14 25/11 25/20
27/4 28/1 28/5
28/21 31/21 32/8
34/12 36/3 36/18
37/25 42/12 45/10
46/12 47/17 50/5
saying [5]  19/8 38/4
38/7 38/7 52/7
says [1]  26/7
scenario [8]  9/25
10/3 10/4 21/20
37/19 46/18 47/2
52/25
scenarios [3]  38/11
38/21 46/25
school [1]  54/7
scope [1]  26/24
scrutiny [1]  52/2
SDM [1]  1/5
seal [1]  27/2
search [11]  20/23
23/21 29/14 29/20
29/25 30/8 30/9
31/23 32/9 32/19
32/21

# S

searches [2]  19/10 31/11
second [17]  9/17 26/6 26/8 26/9 42/24 45/23 49/9 49/20 49/23 50/1 50/2 51/5 51/7 51/17 51/24 52/16 53/25
secondarily [1] 52/4
secret [1]  45/2
Section [1]  56/5
see [6]  25/16 33/19 35/9 40/5 41/6 42/23
seeking [4]  5/22 19/22 20/6 24/20
seem [3]  45/1 48/21 51/17
seems [4]  17/22 21/12 41/11 48/13
selection [1]  42/9
Semoran [1]  2/14
sense [4]  8/8 12/20 34/14 38/20
sent [1]  38/16
sentence [1]  22/15
sentenced [1]  21/8
sentences [1]  18/9
separate [5]  25/4

53/10
served [1]  23/1
shades [1]  32/24
Shaker [1]  2/4
she [9]  8/6 22/23 22/23 22/24 22/25 23/4 23/6 23/6 43/21
she's [1]  22/21
Sheriff [3]  4/16 17/14 18/7
Sheriff's [9]  4/18 8/9 16/10 25/2 34/10 37/10 39/15 43/15 43/24
shift [1]  8/11
short [1]  42/25
should [7]  13/15 16/1 27/4 28/6 33/24 33/25 37/25
show [7]  7/5 14/7 15/13 15/20 17/3 37/9 37/9
showing [3]  37/12 41/8 52/9
shown [1]  40/3
side [2]  6/3 31/10
sides [2]  40/9 40/13
similar [2]  37/4 43/8
SIMON [1]  2/5

simply [1]  9/24
27/6 32/19 33/21
single [3]  11/19 37/8 43/25
situation [1]  43/3
situations [1]  21/14
slew [1]  34/11
slides [1]  27/3
so [77]
solely [1]  11/7
some [23]  5/14 5/15 7/3 8/16 8/17 10/8 13/20 14/14 17/7 17/22 18/18 20/3 21/4 22/25 25/13 29/12 38/17 40/12 41/14 42/8 45/6 45/7 53/22
somebody [3]  24/19 44/7 52/5
somebody's [1] 28/11
someone [1]  53/1
something [25]  6/4 7/18 13/19 22/9 23/10 24/19 25/8 29/6 31/23 34/7 35/1 35/3 35/7 35/18 35/20 38/19 39/11 41/12 46/14 49/16 50/9 50/14 50/15 52/10 54/7

## S

sometimes [1] 17/19
sooner [1] 27/17
sorry [11] 6/8 6/9 18/14 27/25 29/1 31/20 32/1 32/1 44/19 44/23 55/4
sort [2] 13/20 30/21
sorts [1] 32/21
South [2] 2/6 2/14
Southern [2] 39/17 40/18
speak [1] 42/20
speaking [6] 13/6 18/12 36/8 36/23 40/25 52/25
specific [4] 9/12 10/7 26/9 48/5
specifically [1] 30/4
spelled [1] 41/20
spoke [1] 44/21
St [1] 49/1
St. [4] 48/10 48/24 53/25 54/2
St. Anne [1] 48/10
St. Anne's [3] 48/24 53/25 54/2
stage [5] 5/25 20/6 28/9 32/10 32/14
stake [1] 47/16
stand [2] 5/22

standard [4] 27/21 35/18 52/8 54/11
standing [25] 5/23 7/19 7/25 8/5 8/23 8/24 9/7 9/7 9/13 9/20 10/11 10/14 10/17 10/18 10/22 11/4 11/11 11/14 11/24 13/3 13/9 13/24 15/6 53/3 53/7
stark [1] 15/15
start [2] 15/23 33/14
state [3] 49/12 49/13 51/20
stated [2] 50/8 52/9
statement [4] 34/5 41/12 41/16 42/6
STATES [7] 1/1 1/13 56/1 56/5 56/5 56/8 56/12
status [1] 47/19
statute [2] 26/14 26/17
stay [4] 10/17 27/18 44/20 46/2
staying [3] 21/11 32/20 44/19
stenographic [1] 56/6

stipulation [2] 17/7 17/11
stop [8] 21/3 22/3 22/6 29/22 30/2 30/9 30/19 46/20
stopped [2] 6/9 20/22
stopping [1] 30/17
stops [3] 30/15 30/18 31/5
straight [1] 53/22
straightforward [1] 11/10
strict [1] 52/2
strikes [1] 51/18
string [1] 40/19
strong [1] 6/5
subject [5] 24/8 25/11 29/22 29/25 52/2
subjective [1] 30/20
submissions [1] 5/16
subsequent [2] 54/3 54/14
substantial [2] 44/7 44/10
substantive [7] 10/13 47/24 48/19 49/4 49/7 50/7 53/16
such [3] 34/11 47/8

# S

such... [1]  53/3
suffer [1]  24/22
sufficient [4]  17/3
 25/9 38/6 43/9
suggest [1]  11/18
suggested [1]  15/11
suggesting [2]
 51/18 52/17
suggestion [3]  5/16
 25/7 41/14
Suite [5]  2/3 2/6
 2/10 2/14 2/18
summary [13]  7/8
 7/8 7/13 12/6 35/14
 36/1 38/6 40/15
 40/16 43/9 43/11
 43/14 49/24
support [1]  44/3
supports [2]  40/14
 48/23
suppose [3]  14/24
 15/16 30/10
supposed [3]  12/6
 12/25 24/17
sure [9]  6/17 8/17
 21/6 29/2 34/20
 36/7 43/13 49/21
 51/16
surely [1]  45/10
survive [1]  40/15
suspicion [11]

29/13 29/22 32/6
 32/17 33/11 34/4
 34/22 36/16
suspicionless [2]
 39/1 42/13
swath [1]  51/15
switch [1]  44/12

# T

table [2]  17/16 38/8
tactics [2]  39/15
 39/24
take [4]  4/21 14/17
 27/20 51/12
taken [4]  11/11
 33/17 44/7 56/6
takes [3]  30/3 31/5
 52/9
taking [4]  4/22 5/1
 6/20 40/11
talk [15]  9/24 10/4
 17/18 27/22 28/6
 28/24 29/5 29/7
 29/9 32/6 32/16
 33/14 35/19 42/13
 54/5
talked [1]  33/1
talking [12]  8/2 8/2
 8/8 9/23 9/24 12/8
 12/11 18/17 26/17
 32/13 36/11 48/14
talks [4]  11/21 28/3

tall [4]  20/13 20/18
 22/9 41/3
Tammy [1]  43/22
TAMPA [6]  1/2 1/6
 2/19 26/23 54/15
 56/13
targeted [1]  19/6
task [1]  52/13
TAYLOR [4]  1/3
 4/5 8/5 44/6
tell [3]  33/22 33/23
 33/24
temporal [1]  40/20
tend [1]  26/18
term [5]  19/3 21/8
 24/12 24/14 37/19
termination [1]
 12/4
terms [7]  13/7
 17/25 23/5 35/2
 36/21 42/21 47/3
Terry [6]  29/22
 30/2 30/8 30/18
 30/19 31/5
test [7]  12/3 17/3
 49/12 49/17 51/19
 51/19 51/21
testified [1]  25/25
testimony [1]  38/20
tethered [2]  25/13
 28/23

1

than [6]  27/6 27/17
29/12 34/25 38/1
45/12
thank [7]  7/16 26/3
44/12 53/14 54/12
55/6 55/9
that [434]
that's [50]  6/10
11/5 11/5 11/9
11/12 11/13 13/2
13/5 13/8 13/17
13/19 15/3 15/15
15/18 16/3 17/3
17/12 17/14 17/16
19/7 19/20 20/5
21/10 22/11 22/12
22/18 24/18 26/7
30/5 30/21 30/24
32/1 32/3 34/15
34/21 34/25 38/9
38/9 40/2 40/19
43/21 46/1 46/12
47/2 48/9 50/16
51/3 51/25 53/23
54/9
theft [1]  42/1
their [24]  6/7 6/20
7/5 9/8 11/11 11/12
14/5 19/12 28/11
30/18 35/2 37/14
43/4 43/16 43/19

45/12 48/12 51/2
53/9 54/8 54/23
them [28]  6/20 6/21
9/3 10/1 10/2 11/21
18/23 18/23 20/16
22/18 22/23 22/24
28/13 28/14 28/14
28/15 31/6 31/9
33/7 33/22 33/23
33/24 38/18 38/18
44/1 50/19 50/23
54/22
themselves [3]  9/14
9/22 47/20
then [20]  8/13 8/19
9/5 12/1 16/9 17/7
18/5 18/5 29/8
29/10 32/13 32/18
36/22 38/13 40/25
42/15 43/21 49/22
52/4 54/25
theoretical [1]
16/22
theoretically [2]
8/4 16/16
theories [1]  22/5
theory [6]  28/24
29/13 29/24 30/5
43/6 43/7
there [66]
there's [38]  5/12

12/18 12/23 14/20
15/11 16/3 16/18
16/25 17/15 18/21
20/23 20/25 21/1
27/13 27/13 29/12
29/14 30/19 33/2
33/14 33/19 35/19
36/15 36/19 36/25
37/7 38/12 39/7
40/5 41/7 41/14
42/4 44/8 44/10
47/18
therefore [1]  34/13
these [36]  5/14
11/18 13/24 21/14
24/24 26/17 26/22
26/24 27/8 28/3
28/9 28/18 29/16
29/18 30/14 30/25
31/4 33/8 33/13
33/16 35/6 35/17
36/4 36/24 38/2
38/3 38/11 38/17
39/8 40/8 41/1 42/4
42/13 42/25 44/3
51/11
they [55]  6/19 6/20
6/21 6/21 6/25 7/5
8/12 9/5 9/6 9/7
9/20 10/5 10/24
11/24 14/4 14/6

they... [39]  14/6
14/9 16/23 16/23
16/25 17/1 17/19
18/10 18/23 20/23
21/22 21/23 22/10
22/18 26/18 27/4
27/6 27/13 27/17
28/5 28/6 33/11
33/21 33/24 33/25
34/23 34/25 35/10
37/1 41/22 42/12
43/16 43/18 45/5
45/10 45/21 45/22
50/18 50/18
they're [16]  10/9
14/11 18/4 24/19
24/22 24/25 29/9
31/2 31/3 34/24
35/11 38/4 41/25
42/14 42/15 47/8
they've [5]  6/8 6/9
6/15 14/14 16/24
thing [4]  26/16
28/24 50/11 50/11
things [17]  7/3 7/4
14/2 14/11 14/12
14/20 17/19 20/2
21/21 32/21 34/11
35/24 37/4 38/17
52/13 52/15 54/6
think [94]

think... [1]  29/5
this [59]
THOMAS [1]  2/13
those [21]  7/4 8/5
11/21 11/23 11/24
18/19 19/19 19/24
23/23 24/1 30/18
31/1 31/11 32/20
37/4 38/22 39/2
39/3 42/5 42/18
45/25
though [9]  13/6
13/22 20/6 29/21
40/6 41/14 46/24
46/24 52/8
thought [2]  28/23
32/2
threatened [1]  41/5
threatening [2]
35/23 35/24
three [2]  10/18 12/3
threshold [5]  13/2
13/22 22/21 23/20
47/12
through [3]  5/7
31/11 56/7
thrust [1]  18/25
tied [2]  25/10 42/18
time [11]  5/6 5/9
20/21 22/25 23/1
25/7 26/1 34/18
42/3 42/11 51/12

Title [1]  56/5
toe [1]  38/15
together [1]  5/5
told [3]  43/17 43/18
43/22
Tom [1]  4/15
tone [1]  35/22
too [3]  20/25 36/25
36/25
took [4]  8/19 11/22
26/22 52/1
toolkit [1]  41/2
top [1]  45/3
topics [1]  5/11
topline [1]  28/16
tossed [1]  22/2
totally [1]  19/20
touch [1]  11/16
touchstone [1]  50/7
town [2]  28/15 51/2
traceable [1]  53/20
traffic [1]  22/6
train [1]  32/1
transcribed [1]
1/24
transcript [3]  1/12
56/3 56/7
transcription [2]
1/25 56/6
transcriptionist [1]
1/24

# T

trash [1]  41/4
treat [1]  37/22
tremendous [1]
 17/2
trial [6]  13/20
 13/25 15/24 15/24
 36/6 43/12
triggered [1]  26/14
triggering [1]  53/2
trouble [1]  32/20
true [5]  21/14 26/16
 50/16 54/9 56/6
truly [2]  13/1 13/17
try [1]  42/25
trying [5]  36/11
 40/8 44/20 49/20
 50/12
TUITE [1]  1/13
turn [2]  7/17 35/13
Turning [1]  27/19
two [12]  14/2 14/20
 17/1 22/21 23/23
 33/13 46/25 47/25
 49/20 53/10 53/17
 53/19
Tyler [3]  33/7
 41/22 42/1
type [4]  10/2 28/24
 48/22 52/7

# U

ultimately [2]  6/17
 19/14
Um [2]  28/8 52/23
unambiguous [2]
 12/4 15/13
uncertain [1]  36/21
unconstitutional [2]
 21/3 34/1
uncontested [1]
 12/14
uncover [1]  39/23
under [9]  26/12
 27/2 28/7 28/18
 29/13 29/20 29/24
 31/12 34/15
underlying [4]
 12/19 19/23 21/15
 23/17
undermine [3]
 19/18 20/10 21/5
undermined [1]
 18/10
undersigned [1]
 56/6
understand [17]
 7/17 17/17 18/25
 19/25 20/1 20/3
 20/4 27/22 29/14
 31/13 34/3 34/17
 37/16 46/1 47/9
 47/25 49/21

understanding [3]
 48/19
understood [1]
 11/2
undertakes [1]  43/3
undisputed [3]
 38/25 38/25 39/2
undue [1]  46/15
unique [1]  47/19
UNITED [7]  1/1
 1/13 55/12 56/4
 56/5 56/8 56/12
universe [3]  36/23
 38/24 40/3
unquote [2]  29/5
 50/17
unreported [1]
 26/7
until [1]  25/12
up [4]  11/18 16/15
 42/10 50/16
upholding [1]  38/3
upon [2]  41/13 44/1
us [1]  7/4
use [4]  19/3 28/13
 31/9 34/12
used [4]  30/6 35/24
 37/19 39/25
using [3]  1/24 24/17
 39/15

**V**

variety [1]  5/11
various [1]  43/15
vehicle [2]  24/18
 30/15
verbiage [1]  51/11
verdicts [1]  38/3
version [1]  15/19
versus [1]  7/19
very [5]  23/13
 30/17 36/12 40/9
 54/21
via [2]  1/12 1/24
victory [1]  18/2
video [3]  12/18
 38/17 41/24
Videoconference
 [1]  1/12
videos [1]  10/7
vigorously [1]
 14/12
violated [1]  26/1
violates [3]  50/6
 52/5 53/10
violating [1]  27/20
violation [9]  12/19
 21/14 22/1 25/22
 35/8 42/18 43/5
 43/25 53/13
violations [5]  18/19
 19/2 19/4 19/9
 19/12

**Virginia [1]  2/10**

visit [4]  5/17 6/1
 7/15 41/22
visits [4]  28/9 39/1
 39/3 42/13
voice [1]  35/25
vs [7]  1/5 4/6 18/8
 18/18 26/10 40/23
 44/6

**W**

want [8]  5/6 15/4
 23/2 28/14 42/12
 42/12 46/25 53/17
wanted [1]  16/4
warrant [5]  23/22
 27/19 33/5 39/5
 39/7
warranted [1]  18/3
was [74]
wasn't [5]  20/13
 20/18 33/6 41/19
 47/18
watch [4]  10/6 10/7
 12/18 41/24
way [9]  13/5 13/8
 27/13 28/18 37/5
 42/20 50/4 51/5
 51/5
we [73]
we'd [1]  25/2
We'll [1]  55/9
we're [20]  7/1 7/2

19/11 19/12 19/22
 20/6 22/4 22/8 22/8
 31/7 32/13 42/11
 46/21 50/2 52/7
 52/24 53/8
we've [21]  6/16
 7/11 8/9 11/18
 13/11 13/12 15/6
 15/6 16/12 24/24
 33/1 35/7 36/19
 39/20 40/2 40/3
 41/9 50/15 50/22
 52/1 52/4
weight [1]  37/24
well [40]  4/20 5/1
 5/24 6/4 6/12 8/1
 8/25 9/9 11/25 12/8
 12/13 12/13 14/20
 17/9 17/17 17/25
 18/15 19/7 19/25
 20/7 20/20 22/17
 23/12 24/2 25/16
 27/8 28/25 29/8
 30/8 31/6 31/23
 32/12 33/13 34/12
 39/9 40/9 46/16
 46/23 49/14 54/25
went [3]  12/9 41/22
 54/13
were [25]  6/18 6/20
 8/7 9/22 10/5 12/23

W

were... [19]  16/4
18/1 19/21 20/10
20/19 21/1 21/23
22/10 23/24 25/3
26/1 34/12 43/16
44/9 45/2 45/12
47/20 50/18 50/18
weren't [2]  26/16
45/22
what [44]  6/10 6/13
9/1 9/10 10/21 12/2
14/6 14/14 17/6
20/8 22/5 22/14
24/24 25/11 26/18
29/8 30/2 30/24
33/24 34/15 35/6
35/18 36/2 36/3
36/16 36/18 38/8
38/10 38/13 38/23
40/2 40/12 41/1
44/16 44/25 45/7
45/15 46/12 47/25
49/21 50/20 51/25
52/9 54/19
what's [6]  13/3
25/5 30/7 44/16
45/13 46/20
whatnot [1]  8/17
whatsoever [1]
19/23
when [16]  9/21

23/20 25/22 25/22
26/20 27/17 30/19
35/5 37/1 37/1
41/19 46/14 54/4
where [35]  5/22
5/23 17/22 18/2
18/21 21/14 23/6
23/9 24/17 24/19
30/22 31/15 32/17
32/25 33/2 33/4
33/24 37/17 37/19
38/16 38/19 40/14
41/13 41/18 41/20
41/22 42/8 43/3
43/9 44/6 44/15
47/5 50/5 50/19
52/5
whether [31]  7/18
11/20 14/11 14/12
19/3 22/9 23/1 25/2
28/9 32/18 33/15
34/25 35/17 35/20
35/22 35/23 35/24
36/8 36/15 36/15
36/19 37/3 38/11
39/9 39/10 39/22
39/24 41/2 42/9
42/23 46/18
which [34]  8/1 10/2
11/3 11/17 12/3
14/14 15/17 16/18

23/3 23/3 24/1
24/22 29/22 31/18
32/10 32/12 32/14
32/15 37/4 37/21
39/20 41/3 41/4
41/5 41/18 47/21
49/7 52/16 52/21
52/25 54/4
who [5]  7/20 12/16
27/10 43/23 54/21
wholly [1]  38/10
whom [2]  10/5
44/21
why [9]  7/24 8/22
8/23 17/7 22/10
29/24 37/5 43/21
47/8
wide [1]  51/15
Wilson [1]  44/5
windows [1]  31/11
winning [1]  26/23
Winter [1]  2/15
within [4]  27/9 28/9
29/6 39/13
without [3]  33/4
36/6 39/6
witnesses [1]  54/23
won't [7]  5/4 10/6
14/9 17/8 17/11
17/15 25/17
word [1]  6/20

# W

wording [1]  51/13
words [11]  9/5
 17/18 19/8 20/9
 28/6 33/17 36/1
 45/1 45/21 48/18
 54/8
would [66]
wouldn't [7]  9/7
 15/4 20/10 21/5
 28/17 30/8 53/1
written [8]  16/7
 17/1 33/16 33/18
 33/21 36/14 36/20
 53/21
wrong [3]  11/3 27/6
 49/22
wrongful [1]  22/1

# Y

yards [2]  31/10
 31/11
yeah [3]  49/9 51/22
 53/7
year [1]  8/16
years [3]  17/2 27/9
 27/9
yes [19]  5/2 7/23
 9/14 9/14 9/21 10/1
 10/15 12/12 18/14
 29/17 31/17 33/20
 35/4 41/17 42/7

43/7 49/1 49/14
 52/23
York [3]  26/10
 39/17 39/18
you [195]
you're [28]  4/22 5/1
 7/9 8/2 8/2 8/8 12/8
 19/1 19/25 20/1
 20/3 20/7 28/12
 29/17 31/7 31/9
 31/10 32/8 35/6
 36/8 37/25 38/8
 38/21 46/14 47/10
 48/16 49/16 51/5
you've [3]  15/17
 32/4 53/22
your [86]
yours [1]  35/15

# Z

zealous [1]  50/21
zealously [1]  52/11
zero [2]  8/12 16/13
Zoom [1]  1/12