# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DALANEA TAYLOR; TAMMY
HEILMAN; DARLENE DEEGAN;
and ROBERT A. JONES III,
    *Plaintiffs*,

v.

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

    *Defendant.*

Case No. 8:21-cv-00555-SDM-CPT

## PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Ari S. Bargil
(FL Bar No. 71454)
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1601
abargil@ij.org

Caroline Grace Brothers
(DC Bar No. 1656094)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
cgbrothers@ij.org

Robert E. Johnson
(OH Bar No. 0098498)*
INSTITUTE FOR JUSTICE
16781 Chagrin Boulevard, Suite 256
Shaker Heights, OH 44120
Tel.: (703) 682-9320
Fax: (703) 682-9321
rjohnson@ij.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

I.     THE R&R INCORRECTLY RECOMMENDS GRANTING
       PARTIAL SUMMARY JUDGMENT FOR DEFENDANT ................... 1

       A.    None of Plaintiffs' Claims Are *Heck*-Barred ................................. 1

             1.    *Heck* is inapplicable because Heilman has no available
                   habeas remedy ........................................................................ 1

             2.    None of Plaintiffs' claims would *necessarily* imply
                   the invalidity of Plaintiff Heilman's convictions .................. 3

       B.    Defendant Was Not Entitled To Summary Judgment On
             Plaintiffs' Substantive Due Process Claim ...................................... 6

             1.    The Magistrate improperly applied the "shocks the
                   conscience" standard ............................................................. 6

             2.    The Magistrate erroneously concluded that the right
                   to personal guilt is not fundamental ...................................... 8

             3.    Even if the "shocks the conscience" standard applies,
                   the Magistrate should have allowed that fact-intensive
                   inquiry to proceed to trial ..................................................... 11

II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON
       AT LEAST SOME ASPECTS OF THEIR REMAINING CLAIMS .... 13

       A.    The R&R Correctly Rejected Defendant's Threshold
             Procedural Arguments But Applied An Erroneous Mootness
             Standard ......................................................................................... 13

       B.    The Undisputed Facts Establish That Prolific Offender Checks
             Are Unconstitutional Searches And Seizures ................................. 14

             1.    Prolific offender checks are unconstitutional searches ........ 14

             2.    Prolific offender checks are unconstitutional seizures ........ 17

C.   Plaintiffs Are Entitled To Summary Judgment On Their Procedural Due Process Claim ........................................................ 18

D.   Plaintiffs Are Entitled To Summary Judgment On Their First Amendment Claim ................................................................ 21

     1.  The R&R incorrectly applied the "direct and substantial interference" test to Plaintiffs' claim ................................... 22

     2.  Plaintiffs have provided enough evidence to win their claim at summary judgment even under the "direct and substantial interference" test ................................................ 24

CONCLUSION ....................................................................................... 25

CERTIFICATE OF SERVICE ................................................................ 27

# TABLE OF AUTHORITIES

**Case**          **Page(s)**

*A.W. v. State,*
82 So. 3d 1136 (Fla. 4th DCA 2012) ...................................................................4

*Beach Blitz Co. v. City of Miami Beach,*
2018 WL 11260453 (S.D. Fla. Feb. 5, 2018).....................................................12

*Bd. of Regents v. Roth,*
408 U.S. 564 (1972).............................................................................................19

*Butler v. Georgia,*
2022 WL 17484910 (11th Cir. Dec. 7, 2022) .......................................................3

*Cohen v. Longshore,*
621 F.3d 1311 (10th Cir. 2010) .............................................................................2

*Cook v. Stewart,*
2014 WL 12521335 (N.D. Fla. Apr. 22, 2-14)............................................10–11

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998).......................................................................................11, 12

*DeKalb Stone, Inc. v. County of DeKalb,*
106 F.3d 956 (11th Cir. 1997) ...............................................................................7

*Dyer v. Lee,*
488 F.3d 876 (11th Cir. 2007) .....................................................................3, 4, 6

*Espanola Way Corp. v. Meyerson,*
690 F.2d 827 (11th Cir. 1982) ..................................................................7, 12, 13

*FBI v. Fikre,*
144 S. Ct. 771 (2024).........................................................................................14

*Florida v. Jardines,*
569 U.S. 1 (2013)........................................................................................15, 16

*Gilbert v. Merritt,*
    901 So. 2d 334 (Fla. 4th DCA 2005) .................................................................9

*Harden v. Pataki,*
    320 F.3d 1289 (11th Cir. 2003) .................................................................2–3

*Heck v. Humprey,*
    512 U.S. 477 (1994) ................................................................................*passim*

*Hensler v. City of Davenport,*
    790 N.W.2d 569 (Iowa 2010) .................................................................9–10

*Latif v. Holder,*
    28 F. Supp. 3d 1134 (D. Or. 2014) ..............................................................20

*Leather v. Eyck,*
    180 F.3d 420 (2d Cir. 1999) ..........................................................................2

*Lewis v. Brown,*
    409 F.3d 1271 (11th Cir. 2005) ....................................................................7

*Livingston v. Florida,*
    610 So. 2d 696 (Fla. 3d DCA 1992) .............................................................5

*Lyng v. UAW,*
    485 U.S. 360 (1988) ......................................................................22, 23, 25

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ....................................................................................20

*McCabe v. Sharrett,*
    12 F.3d 1558 (11th Cir. 1994) ...............................................................23, 24

*McClish v. Nugent,*
    483 F.3d 1231 (11th Cir. 2007) ....................................................................2

*McKinney v. Pate,*
    20 F.3d 1550 (11th Cir. 1994) ......................................................................8

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982)...............................................................11, 22, 23, 24

*OIC Dreams Green County IV, Inc. v. Benison*,
   --- F. Supp. 3d ---, 2023 WL 8634789 (N.D. Ala. Dec. 13, 2023)......................7

*Parks v. City of Warner Robbins*,
   43 F.3d 609 (11th Cir. 1995)..........................................................22, 25

*Post v. City of Ft. Lauderdale*,
   7 F.3d 1552 (11th Cir. 1993) ...............................................................12

*Reid v. Pautler*,
   36 F. Supp. 3d 1067 (D.N.M. 2014) ...........................................18, 20

*Reilly v. Herrera*,
   729 F. App'x 760 (11th Cir. Apr. 3, 2018) ...........................................3

*Rivas v. City of Passaic*,
   365 F.3d 181 (3d Cir. 2004) ...............................................................11

*Rodriguez v. JPay, Inc.*,
   No. 19-14137, 2019 WL 11623939 (S.D. Fla. Oct. 30, 2019) ............................7

*Scales v. United States*,
   367 U.S. 203 (1961)..........................................................................8, 9

*Simpson v. Thomas*,
   528 F.3d 685 (9th Cir. 2008)..........................................................5, 18

*St. Ann v. Palisi*,
   495 F.2d 423 (5th Cir. 1974)..........................................................8, 9

*Swint v. City of Wadley*,
   51 F.3d 988 (11th Cir. 1995)...............................................................13

*Topa v. Melendez*,
   739 F. App'x 516 (11th Cir. 2018) .......................................................3

*United States v. Ratcliff,*
  725 F. App'x 894 (11th Cir. 2018) ........................................................16

*United States v. Tobin,*
  923 F.2d 1506 (11th Cir. 1991) ..........................................................16

*Waldman v. Conway,*
  871 F.3d 1283 (11th Cir. 2017) ...........................................................7

*Wilkinson v. Dotson,*
  544 U.S. 74 (2005)...............................................................................2

*Wills v. U.S. Parole Comm'n,*
  882 F. Supp. 2d 60 (D.D.C. 2012)......................................................18

## **Statutes and Rules**

28 U.S.C. § 636(b)(1)...............................................................................1

Fla. Stat. § 776.051 ..................................................................................4

M.D. Fla. L.R. 3.01 ..................................................................................1

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 3.01, Plaintiffs respectfully make the following objections to the Report and Recommendation entered in this matter on March 31, 2024. *See* Doc. 273 (hereinafter "R&R").

Part I, below, focuses on the two areas where the R&R suggests granting judgment in favor of Defendant. Here, the R&R errs. None of Plaintiffs' claims are *Heck*-barred. And Plaintiffs' substantive due process claim, at a minimum, raises factual issues that should proceed to trial.

Part II discusses the remaining issues, which the R&R suggests are all appropriate for trial. Here, Plaintiffs highlight ways that the issues could be narrowed before trial—with summary judgment granted to Plaintiffs on at least some aspects of some claims. Plaintiffs also state their objections to the legal standard adopted by the R&R in some respects, both to preserve the issues and to set the stage for trial.

## I.   THE R&R INCORRECTLY RECOMMENDS GRANTING PARTIAL SUMMARY JUDGMENT FOR DEFENDANT.

### A. None of Plaintiffs' Claims Are *Heck*-Barred.

The R&R (at 32–34) correctly concludes that *Heck* does not bar claims addressed to code citations or Plaintiff Jones's arrests. But the R&R errs (at 34–35) when it reaches the contrary conclusion with respect to Plaintiff Heilman's arrests.

1. <u>*Heck* is inapplicable because Heilman has no available habeas remedy.</u>

To begin, the R&R (at 32 n.9) wrongly concludes that *Heck* bars Plaintiff Heilman's claims even though she could not pursue them through habeas. The

1

purpose of *Heck* is to ensure that § 1983 is not used where a plaintiff could instead proceed through habeas. *See McClish v. Nugent*, 483 F.3d 1231, 1251 (11th Cir. 2007); *see also Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (*Heck* applies to claims "within the core of habeas corpus" (citation omitted)). As a result, "§ 1983 claims are barred only when the alternative remedy of habeas relief is available." *McClish*, 483 F.3d at 1251 n.19; *see also Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (*Heck* inapplicable where "no remedy in habeas existed").

That reasoning applies squarely to Plaintiff Heilman. Plaintiff Heilman was briefly incarcerated after her arrest, but that alone does not trigger *Heck*. *See McClish*, 483 F.3d at 1251 (*Heck* inapplicable where individual was arrested but not convicted). Plaintiff Heilman was never incarcerated after her conviction. *See* Doc. 227 ¶ 38. She had only a few months remaining on her probation when she learned of her claims. *See id.* ¶ 33; Doc. 124 at 27:5-7. And, even more to the point, today Plaintiff Heilman is neither incarcerated nor on probation. *See* Doc. 223 ("JSF") ¶ 257; Doc. 124 at 27:5-7. Where Plaintiff Heilman sits, habeas is unavailable.

It is true that there is a circuit split on this issue, as courts disagree about whether *Heck* applies to an individual who does not have an available habeas remedy. *See Cohen v. Longshore*, 621 F.3d 1311, 1316–17 (10th Cir. 2010). Courts outside the Eleventh Circuit treat it as having adopted the approach favorable to Plaintiffs here. *See id.* at 1315–16 (citing *Harden v. Pataki*, 320 F.3d 1289, 1298–99

2

(11th Cir. 2003)). An unpublished opinion, meanwhile, says that the Eleventh Circuit has not yet weighed in, while also acknowledging "cases from this circuit that have suggested that *Heck* never applies to such a suit." *Topa v. Melendez*, 739 F. App'x 516, 519 n.2 (11th Cir. 2018) (citing *Harden*). The Eleventh Circuit has more than "suggested" as much; the Eleventh Circuit has held that where "federal habeas corpus is not available … § 1983 must be." *Harden*, 320 F.3d at 1299. That holding is dispositive here.[1]

2.  <u>None of Plaintiffs' claims would *necessarily* imply the invalidity of Plaintiff Heilman's convictions.</u>

*Heck* also does not apply to Plaintiff Heilman's claims because success would not "necessarily imply the invalidity of [her] conviction or sentence." *Heck v. Humprey*, 512 U.S. 477, 486–87 (1994). This requirement is strictly applied: "as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not *Heck*-barred." *Dyer v. Lee*, 488 F.3d 876, 879–80 (11th Cir. 2007).

The R&R erred because it concluded that Plaintiff Heilman's claims are *Heck*-barred without finding that *any* claim would necessarily invalidate any conviction. The R&R did not say what claims are barred, instead referencing "such causes of action." R&R 35. The R&R did identify the elements of the underlying state-law

---

[1] The cases cited by the R&R are not to the contrary. Both are unpublished, and, in any event, both address this issue in dicta. *See Butler v. Georgia*, 2022 WL 17484910 (11th Cir. Dec. 7, 2022) (concluding that even if *Heck* applied it would not bar claims); *Reilly v. Herrera*, 729 F. App'x 760, 763 (11th Cir. 2018) (applying law of the case doctrine).

offenses, but then, in circular fashion, held that *Heck* would bar claims "involving these elements." *Id.* This lack of clarity is ultimately due to Defendant's briefing, which raised *Heck* only in blunderbuss fashion.

The R&R (at 35) broadly reasoned that unspecified claims might negate the requirement, for the offenses of resisting arrest and battery on an officer, that the officer be "engaged in the 'lawful' execution or performance of his or her duties." But this gives an unduly broad reading to the word "lawful." Florida law is clear that the fact that an officer is violating the Constitution does not negate a charge of battery on an officer. *See* Fla. Stat. § 776.051; *see also A.W. v. State*, 82 So. 3d 1136, 1139 (Fla. 4th DCA 2012). And, in a case involving resisting arrest, the Eleventh Circuit similarly explained that the fact that a constitutional violation in some way pertains to an arrest does not make the arrest unlawful. *See Dyer*, 488 F.3d at 879 ("use of excessive force may not necessarily make Dyer's arrest unlawful"). To negate a charge of resisting arrest without violence, Florida cases require a showing that the arrest itself violated the Constitution—for example, because it was unsupported by reasonable suspicion. *See, e.g.*, *A.W.*, 82 So. 3d at 1139. Plaintiffs are aware of no case holding that an arrest would be "unlawful" because it occurred in the vicinity of the types of constitutional violations at issue here.

The R&R, after addressing the elements of the convictions, failed to proceed to the next step of the analysis; the R&R did not analyze whether any claims would

4

*necessarily* invalidate the convictions. They would not. Plaintiff Heilman was convicted of resisting arrest and battery on an officer because she refused to exit her vehicle (in 2016) and kicked a screen door into an officer (in 2018). None of Plaintiffs' claims would necessarily justify that conduct:

- Plaintiffs' Fourth Amendment claim focuses on the practice of conducting prolific offender checks, and neither arrest occurred during such a check or otherwise involved such a check. *See* JSF ¶¶ 237, 252.[2]

- Plaintiffs' procedural due process claim contends that Plaintiffs were entitled to notice and a hearing and does not challenge the legality of any arrest.

- Plaintiffs' First Amendment claim challenges a policy of enhanced enforcement against the families of listed individuals. No case suggests that an individual may resist arrest or batter a law enforcement officer because of the existence of such a policy, and it would be possible to find such a policy without concluding that it in any way tainted Plaintiff Heilman's arrests.[3]

---

[2] The arrests provide relevant evidence with respect to her Fourth Amendment claim insofar as they show that prolific offender checks are not voluntary; at trial, Plaintiffs will show that officers used arrests to punish parents if they did not comply with the checks. *See* JSF ¶ 338. But that is beside the point, as "*Heck* does not create a rule of evidence exclusion." *Simpson v. Thomas*, 528 F.3d 685, 691 (9th Cir. 2008). The *Heck* doctrine bars claims, not evidence.

[3] Florida cases involving the crime of resisting arrest without violence do hold that an arrest may be "unlawful" if the individual is being arrested for constitutionally protected speech. *See, e.g.*, *Livingston v. State*, 610 So. 2d 696 (Fla. 3d DCA 1992). However, Plaintiff Heilman does not allege anything of the sort. Plaintiff Heilman's conduct refusing to exit her vehicle, or opening a screen door, was in no sense protected by the First Amendment.

- Plaintiffs' substantive due process claim challenges a policy of systemic harassment. No case suggests that an individual may resist arrest or batter a law enforcement officer because of the existence of such a policy, and it would be possible to find such a policy without concluding that it in any way tainted Plaintiff Heilman's arrests.

Ultimately, two things can be true at once: that Defendant violated the Constitution by applying a policy of systematic harassment against Plaintiff Heilman; and that Plaintiff Heilman might be subject to lawful arrest for refusing to exit her vehicle or hitting an officer with a screen door. *See Dyer*, 488 F.3d at 881 (*Heck* inapplicable where it is "possible that the facts could allow both a successful § 1983 suit and the underlying conviction both to stand"). Accordingly, no claim is *Heck*-barred.

### B. Defendant Was Not Entitled To Summary Judgment On Plaintiffs' Substantive Due Process Claim.

The R&R also erred (at 82–94) when it found that Defendant was entitled to summary judgment on Plaintiffs' substantive due process claim. The R&R applied the wrong legal standard and wrongly resolved factual issues at summary judgment.

1. <u>The Magistrate improperly applied the "shocks the conscience" standard.</u>

The R&R (at 88) concluded that this claim required Plaintiffs to show "that the PCSO's challenged conduct shocked the conscience." That was error.

The substantive due process claim has two components: (1) that PSO's policy deprived them of their fundamental right to personal guilt; and (2) that PSO's policy

6

violated their right against arbitrary and pretextual enforcement. The "shocks the conscience" test is inapplicable to the first because infringement of a fundamental right must instead be "narrowly tailored to serve a compelling interest." *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017).

As for Plaintiffs' claim that the government acted arbitrarily, the "shocks the conscience" test applies only if action is executive; legislative action violates due process if it is "arbitrary and irrational." *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005). The policies at issue here—such as the creation of a policy requiring deputies to "[u]tilize County Ordinance citations as a strategic tool to target" individuals, JSF ¶ 144—are legislative. After all, "policy-making" is legislative, *DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956, 959 (11th Cir. 1997), and policies promulgated by executive agencies are also legislative, *see, e.g.*, *OIC Dreams Green Cnty. IV, Inc. v. Benison*, --- F. Supp. 3d ---, 2023 WL 8634789, at *5 (N.D. Ala. Dec. 13, 2023) (regulations enacted by Sheriff were legislative); *Rodriguez v. JPay, Inc.*, 2019 WL 11623939, at *7 (S.D. Fla. Oct. 30, 2019) (policy changes were "legislative in nature"). Indeed, PSO's policy of harassment is of a piece with the actions the R&R deemed "legislative" in *Espanola Way Corp. v. Meyerson*, 690 F.2d 827 (11th Cir. 1982): the creation of a task force of code inspectors designed to target certain individuals. *See* R&R 92. The R&R thus wrongly found that PSO's actions were executive, *see id.*, wrongly applied the

7

"shocks the conscience" test to legislative action, and wrongly granted PSO summary judgment because Plaintiffs have shown that PSO's policy was arbitrary and irrational. *See* Doc. 224 at 39–40.[4]

2. <u>The Magistrate erroneously concluded that the right to personal guilt is not fundamental.</u>

The Magistrate also incorrectly found (at 85–88) that Plaintiffs established neither a fundamental right to personal guilt nor a violation of that right.

*First*, the right to personal guilt (or to be free from guilt by association) has already been acknowledged as fundamental. As the R&R acknowledged elsewhere, binding pre-Eleventh Circuit case law from the Fifth Circuit recognizes that "the imposition of punishment based only upon personal guilt" is a "fundamental liberty guaranteed . . . by the [Fourteenth] Amendment's due process clause." R&R 72 (citing *St. Ann v. Palisi*, 495 F.2d 423, 425–27 (5th Cir. 1974)). That fundamental right is also supported by "[s]ubstantial Supreme Court authority." *St. Ann*, 495 F.2d at 425–26 (citing *Scales v. United States*, 367 U.S. 203, 224–25 (1961)).

The R&R (at 86) disregarded this authority on the theory that this right "would seemingly fall within the ambit of the First Amendment." That was error. The First

---

[4] Further, even putting all that aside, the "shocks the conscience" test is categorically inapplicable here because it does not apply to "a civil case for money damages." *McKinney v. Pate*, 20 F.3d 1550, 1556 n.7 (11th Cir. 1994) (en banc). While the R&R deemed this issue irrelevant because Plaintiffs also seek injunctive and declaratory relief, at a minimum this precedent suggests that standard should not apply to Plaintiffs' damages claims. To the extent that other Eleventh Circuit precedent (cited by the R&R) is to the contrary, Plaintiffs raise this issue in part to preserve that intra-circuit conflict for consideration by the full Eleventh Circuit.

Amendment does protect the right not to be penalized based on association, *see infra* pp. 21–25, but the Fourteenth Amendment separately protects the right to not be punished "in the absence of personal guilt," *St. Ann*, 495 F.2d at 425; *see also Scales*, 367 U.S. at 225 (analyzing claim based on "the concept of personal guilt" protected by due process "independently of the claim made under the First Amendment"). Application of one right does not preclude application of another.

The R&R also distinguished *St. Ann* on the theory that, whereas children have no ability to control their parents, "parents arguably have the power and duty to control their children." R&R 86–87 (marks omitted) (quoting *St. Ann*, 495 F.2d at 428).[5] The word "arguably" bears a great deal of weight in that sentence; any parent could testify that power is not unlimited, and courts recognize the corresponding duty has limits as well. At common law, "a parent is not liable for the tort of his minor child because of the mere fact of paternity." *Gilbert v. Merritt*, 901 So. 2d 334, 336 (Fla. 4th DCA 2005) (citation omitted). Just as "it is irrational to . . . use the mere occurrence of an incident to presume a person was negligent," courts hold that "parental responsibility" laws violate due process if they presume (without proof) that a child's crime is ascribable to a parent's failure to control. *Hensler v.*

---

[5] In quoting this language, the R&R also took the Fifth Circuit's words out of context. The Fifth Circuit made this comment in the portion of its decision addressing claims under the rational basis test, not its fundamental-rights analysis. *See St. Ann*, 495 F.2d at 428. Moreover, the court noted that "statutes that make parents liable for the misconduct of their children have been similarly criticized as irrational and violative of personal guilt." *Id.*

*City of Davenport*, 790 N.W.2d 569, 586–89 (Iowa 2010). Defendant's actions were predicated on just such an unconstitutional presumption. That is inappropriate for all Plaintiffs, but it is doubly inappropriate for Plaintiff Deegan—whose child was not a minor when he was listed. *See* JSF ¶¶ 40–41.

*Second*, PSO violated that fundamental right by subjecting the Plaintiffs to code citations and arrests based on their children's placement on the prolific offender list. The R&R (at 87) wrongly concluded that neither of these penalties constituted "true punishments" that would infringe the right to personal guilt because they were "predicated—at least in part—on the Plaintiffs' violation" of the law. However, Plaintiffs do not concede that any of the citations or arrests were warranted and have in fact argued the contrary. *See, e.g.*, JSF ¶ 347 (disputing basis for code citation); *id.* ¶ 343 (disputing basis for arrest of Plaintiff Jones that did not lead to conviction). And, in any event, Defendant's officers were clear that, regardless of the formal basis for these arrests or citations, in reality their purpose was to penalize the parents for the actions of their children. *See* JSF ¶¶ 151–52; *see also* R&R 73. The fact that Defendant adopted a "zero-tolerance" enforcement policy for associates of prolific offenders, *see* JSF ¶ 13, confirms that Defendant targeted parents for punishments that would not otherwise have been imposed.[6]

---

[6] The R&R also incorrectly implied that code citations would not rise to the level of a "true punishment" because they are not "'criminal in nature.'" R&R 87 (citing *Cook v. Stewart*, 2014

3. Even if the "shocks the conscience" standard applies, the Magistrate should have allowed that fact-intensive inquiry to proceed to trial.

Finally, even applying a "shocks the conscience" standard, the R&R incorrectly dismissed this claim at summary judgment. Whether conduct "shocks the conscience" is a fact-intensive analysis. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). And where there are "contrasting facts" regarding whether government action shocked the conscience, "summary judgment [can] not be granted." *Rivas v. City of Passaic*, 365 F.3d 181, 196 (3d Cir. 2004).

The R&R's disposal of Plaintiffs' substantive due process claim wrongly resolved numerous factual issues at summary judgment. The R&R (at 88) states that it was "persuaded in this respect by the ILP Manual's language describing the Program as intending to prevent crime," as well as other facts in the record. It made factual findings (at 89) about the "apparent propriety of at least some of the encounters," and found that other visits "could be viewed as upsetting" but "do not rise to the level of conscience shocking." Plaintiffs, of course, dispute that any of Defendant's interactions with Plaintiffs were "neutral" or "positive." *See, e.g.*, Doc. 245 at 49–50, 55–58. And Plaintiffs submit that a fact-finder could certainly conclude that *all* of these interactions rise to the level of conscience-shocking,

___

WL 12521335, at *5 (N.D. Fla. Apr. 22, 2014). But in the First Amendment context, the Supreme Court has found that "impos[ing]" even "[c]ivil liability" based on an individual's association is an impermissible violation of the right against guilt by association. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982); *see also infra* pp. 22–24. The same is true in the due-process context.

11

particularly when the interactions are viewed in their totality—as binding Supreme Court law requires. *See Lewis*, 523 U.S. at 850 (due process inquiry must look at "the totality of facts in a given case"). These questions require fact finding at trial.

Similarly, the R&R impermissibly resolved factual questions at summary judgment when it concluded that "there is little, if any, evidence that . . . the ILP Program was . . . 'intended to injure [the listed individuals] in some way that is unjustifiable by any government interest.'" R&R 88 (emphasis added); *see also id.* at 94. That is wrong: a factfinder could conclude that a primary goal of the program was to get families of listed individuals to move out of the county—a motivation corroborated by PSO's tactics and reflected in deputies' performance reviews. *See* JSF ¶¶ 107, 152. Courts have held that no government interest—not even "prevent[ing] crime," R&R 88—justifies actions that are "designed to harass" and drive people out of town. *Espanola Way*, 690 F.2d at 828, 830 (interest in "reduc[ing]" "a large criminal element" did not justify inspections and citations that constituted "repeated harassment").[7] Plaintiffs submit that Defendant's

---

[7] The R&R erred (at 92) when it concluded that *Espanola Way* does not support this claim. The suggestion that *Espanola Way* involved procedural due process cannot be squared with that decision's reliance on "harassment," "malice," and "state of mind," 620 F.2d at 830, all of which would be irrelevant to procedural due process. *See Post*, 7 F.3d at 1560. And while it is true that *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993), did involve procedural due process, that does not change the fact that the opinion expressly acknowledged that "[i]ssuing an unreasonably high number of fully warranted citations might violate due process." *Id.* at 1560. Similarly, the R&R erred (at 93–94) when it distinguished *Beach Blitz Co. v. City of Miami Beach*, 2018 WL 11260453 (S.D. Fla. Feb. 5, 2018), as that decision applied *Espanola Way* to reiterate

impermissible goal to drive people out of town is not subject to reasonable dispute,
but, at a minimum, it raises a factual issue for trial.

## II.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON AT LEAST SOME ASPECTS OF THEIR REMAINING CLAIMS.

With respect to the remaining issues, Plaintiffs welcome the opportunity to
make their case at trial, but, as discussed below, the R&R missed opportunities to
streamline the issues and applied the wrong standard in some respects.[8]

### A. The R&R Correctly Rejected Defendant's Threshold Procedural Arguments But Applied An Erroneous Mootness Standard.

The R&R correctly concluded that Defendant is not entitled to summary
judgment on the issue of mootness, *see* R&R 27, or standing, *id.* at 29, and that
Plaintiff Jones's claims are not time-barred, *id.* at 37. For preservation purposes,
however, Plaintiffs note that the R&R states an incorrect standard of law in its
discussion of mootness. The R&R states that, when a government entity voluntarily
ceases challenged conduct, the plaintiff bears the burden to "show there is a
reasonable expectation the government will reverse course." R&R 21 (marks and

---

that due process is violated when code enforcement officers are "specifically dispatched . . . in an
effort to close" a business. 2018 WL 11260453 at *5; *see also Swint v. City of Wadley*, 51 F.3d
988, 1001 (11th Cir. 1995) (finding due process violation where police sought to force a nightclub
out of business through "repeated and improperly motivated raids").

[8] The R&R includes voluminous discussion of the facts of the case. *See, e.g.*, R&R 1–15. In
light of the R&R's overarching conclusion that the case presents numerous disputed issues of fact,
Plaintiffs do not understand that discussion as definitively resolving any factual issues (other than
with respect to the substantive due process claim, as discussed above). To the extent that the R&R
did make any fact-finding, that would be inappropriate at summary judgment.

citation omitted). The Supreme Court recently held the opposite: "In all cases, it is the defendant's 'burden to establish' that it cannot reasonably be expected to resume *its* challenged conduct." *FBI v. Fikre*, 144 S. Ct. 771, 778 (2024).

### B. The Undisputed Facts Establish That Prolific Offender Checks Are Unconstitutional Searches And Seizures.

1. Prolific offender checks are unconstitutional searches.

Plaintiffs contend that prolific offender checks are unconstitutional searches that impermissibly intrude on the curtilage of the home without a warrant, probable cause, or even reasonable suspicion. The R&R found that this issue should go to trial because the evidence could establish that prolific offender checks were "performed in a harassing or objectively unreasonable manner," R&R 54, were conducted so often that they became unreasonable, *id.*, were unreasonably performed at odd times of day, *id.* at 55, and involved unreasonable intrusions on the privacy of the home, *id.* at 57. Plaintiffs agree that these (and other) facts support a finding that Defendant violated the Fourth Amendment. And, while Plaintiffs continue to maintain that these facts are not subject to reasonable dispute, Plaintiffs ultimately do not object to proving these facts at trial.

Plaintiffs do object, however, to the portion of the R&R (at 40–53) that rejected the argument that prolific offender checks violate the Fourth Amendment on their face, regardless of how they are performed. Defendant's own policy documents support that conclusion: Prolific offender checks are mandatory. Doc.

14

140-1 at 19. Written policy manuals state that prolific offender checks are "based on the theory of focused deterrence," and should be used to "communicate to these offenders that because of their criminal activity, they have been identified for an enhanced focus" and will face "relentless pursuit, arrest, and prosecution" if they do not stop committing crimes. *Id.* Prolific offender checks should also be used to "cultivate information about the criminal environment," *id.* at 20, and, with that in mind, officers kept copious notes on interactions during the checks, Doc. 140-3. And Defendant's policy manuals also direct deputies to use property code enforcement "as a strategic tool to target prolific offenders." Doc. 140-2 at 9.

The Court can and should conclude that these policies violate the Fourth Amendment on their face. The Supreme Court has held that, although police may take advantage of the implied license to approach the door of a home, just like any other member of the public, the "scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose." *Florida v. Jardines*, 569 U.S. 1, 9 (2013). When officers exceed the "background social norms that invite a visitor to the front door," *id.* at 9, a warrant is required. Here, Defendant's written policy manuals make clear that the purpose of prolific offender checks is to intimidate listed individuals and to conduct a search for incriminating information— neither of which falls within "background social norms."

The R&R's contrary conclusion is based on an overreading of a footnote from *Jardines*. *See* R&R 51. The Court in *Jardines* explained that "it is not a Fourth Amendment violation to approach the home in order to speak with the occupant," even if police have a subjective "purpose of discovering information." 569 U.S. at 9 n.4. But that is fully consistent with the holding that, although courts will not inquire into an officer's "real reason" for approaching the home, a knock and talk is invalid if the officer's "behavior *objectively* reveals a purpose" beyond the scope of the implied license. *Id.* at 10 (emphasis added). Here, the purpose for prolific offender checks is set forth in written policy manuals and is reflected in Defendant's objective behavior; and that objective purpose extends beyond the "implied license" or "background norms" that govern a typical approach to the home.

Support for this view is also provided by the Eleventh Circuit's opinion in *United States v. Ratcliff*, 725 F. App'x 894, 901 (11th Cir. 2018), which holds that the Fourth Amendment requires "reasonable suspicion to justify a knock and talk" when officers approach a home to investigate potential crime. *Ratcliff* in turn cited *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir. 1991) (en banc), which held that reasonable suspicion "can justify the agents' approaching the house to question the occupants" to investigate potential crime. These decisions indicate that when the objective purpose of approaching a home is to investigate potential crime at least reasonable suspicion is required; cases involving knock and talks without such an

objective purpose are not to the contrary. The R&R writes off these decisions, stating (at 45) that "I do not find *Ratcliff* persuasive" and (at 49) that "*Tobin* is merely dicta." But the decisions of the Eleventh Circuit are not so easily disregarded.

2. Prolific offender checks are unconstitutional seizures.

Plaintiffs also contend that prolific offender checks violate the Fourth Amendment because they are seizures effected without a warrant, probable cause, or reasonable suspicion. The R&R (at 58) found that this issue should go to trial because the evidence could establish that Plaintiffs would not "feel free to decline the officers' requests or otherwise terminate the encounter." Again, Plaintiffs agree those facts violate the Fourth Amendment. Plaintiffs maintain that those facts are not subject to reasonable dispute but also do not object to proving them at trial.

But Plaintiffs again submit that this issue could be resolved in their favor on the face of Defendant's policies. After all, the written policies are clear that prolific offender checks are *mandatory* and must occur at least once per quarter. Doc. 140-1 at 23. The record shows what happened if Plaintiffs did not comply. *See, e.g.*, Doc. 155-1 at 11 (noting that Robert was "not answering door" and stating that deputy "[w]ill be taking Cpl. Celeste (code enforcement) with him to visit dad"); Doc. 140-12 at 43 ("Tammy then said she was busy and did not have time to talk to me. At this point I noted an accumulation of junk in her front yard."). Because the visits are not

optional, the Court can hold as a matter of law that Plaintiffs were not free to terminate the encounters and may resolve this claim without trial.[9]

## C. Plaintiffs Are Entitled To Summary Judgment On Their Procedural Due Process Claim.

The R&R (at 81–82) also missed the opportunity to streamline proceedings by granting summary judgment for Plaintiffs on the procedural due process claim.

The R&R questions whether any case holds that Plaintiffs have a protected liberty interest in these circumstances, but courts hold that imposition of probation-like restrictions without a conviction implicates procedural due process. *See, e.g.*, *Reid v. Pautler*, 36 F. Supp. 3d 1067, 1195 (D.N.M. 2014) (finding a "protected liberty interest in not being placed on probation without first being convicted"); *Wills v. U.S. Parole Comm'n*, 882 F. Supp. 2d 60, 75–76 (D.D.C. 2012) (finding a liberty interest where individual was listed as a sex offender, and subjected to related

---

[9] The R&R (at 59–62) concludes that whether any Fourth Amendment violation was caused by a "policy or custom" is a fact-intensive inquiry appropriate for trial. However, as explained above, liability can be established based on the Defendant's written policies alone, and those written policies indisputably constitute a "policy."

To the extent that the Court relies on evidence of a "custom" beyond the written policies, Plaintiffs still maintain that the evidence is beyond reasonable dispute, but, nevertheless, do not object to making that showing at trial. Plaintiffs do, however, object to the R&R's conclusion (at 61 n.18) that Plaintiffs cannot rely on evidence of Heilman and Jones's arrests to establish the existence of a custom. As noted above, while Plaintiffs' Fourth Amendment claim does not directly challenge those arrests, the arrests are relevant evidence to show that the prolific offender checks were not voluntary. *See supra* note 2; *see also* JSF ¶ 338 (citing evidence that arrests were used to punish parents for not complying with prolific offender checks). *Heck* cannot bar that use of the arrests, as *Heck* is not a rule of evidence. *See Simpson*, 528 F.3d at 691. And the fact that Plaintiffs do not challenge the arrests as *themselves* violative of the Fourth Amendment does not change that the arrests demonstrate the consequences of failure to comply with the requirements of the prolific offender program.

18

restrictions, without being convicted of a sex crime). Being listed as a prolific offender is effectively a form of probation: The designation is imposed because of past criminal behavior, *see* JSF ¶ 1; Doc. 140-1 at 77; listed individuals are subject to a regular checks, akin to probation visits, *see* JSF ¶ 4; and listed individuals are subject to a zero-tolerance arrest policy, akin to restrictions on reoffense placed on probationers, *see* JSF ¶ 13. Cases holding that individuals have a liberty interest in not being placed on probation without a conviction therefore squarely apply.

The R&R (at 81) takes issue with the fact that other cases cited by Plaintiffs to establish a liberty interest do not involve procedural due process. However, courts often cite cases applying substantive constitutional protections to determine the scope of the "liberty" protected by procedural due process. *See, e.g.*, *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972). And while the R&R (at 80) criticizes Plaintiffs for invoking a broad variety of liberty interests, that is merely a reflection of the variety of interests affected by Defendant's program—including rights to be secure in the home, to be free from intrusive searches and seizures, to be free from punishment for the misdeeds (actual or predicted) of others, and to be free from pretextual and abusive government conduct.

Having improperly discounted the relevant precedent, the R&R (at 81) also wrongly concludes that there is a factual dispute as to whether the prolific offender designation implicates a liberty interest. To be sure, the R&R reasonably concludes

19

that there are factual questions concerning some of Defendant's more egregious conduct. But putting those disputes aside, the *undisputed* facts are more than enough to find a liberty interest: Defendant's own policy manuals make clear that individuals are listed based on allegations of past criminal activity, are subjected to mandatory "checks," and are subject to a "zero-tolerance" arrest policy. *See* JSF ¶¶ 1, 4, 13; Doc. 140-1 at 77.

The R&R ended the analysis there; having found a dispute as to whether any liberty interest is affected, it declined to address what process should be required. However, cases from the probation context hold that, before government can impose probation-like restrictions, notice and a hearing is required. *See Reid*, 36 F. Supp. 3d at 1200. This makes sense, given the importance of the interest in avoiding punishment without process, the procedural value of a hearing at which an individual may contest the allegations, and the government's lack of legitimate interest in punishment without process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

It is undisputed that Plaintiffs did not receive a hearing prior to the prolific offender designation. *See* Doc. 239 at 35 (responding to allegations concerning lack of a hearing by "object[ing] to the assumption that a formal hearing was constitutionally required"). And while the R&R (at 81–82) found a "factual dispute" as to the adequacy of notice, the factual material cited by the R&R all concerns informal statements that at most revealed that some Plaintiffs were subject to some

form of heightened attention by law enforcement. There is no suggestion anywhere that Defendant provided any Plaintiffs with notice of the basis for that heightened attention—much less notice of any procedure that could be used to obtain a hearing. *See Latif v. Holder*, 28 F. Supp. 3d 1134, 1162 (D. Or. 2014) (holding, in context of No-Fly List, that notice must include "reasons for placement on that List" and "must be reasonably calculated to permit each Plaintiff to submit evidence relevant to the reasons for their respective inclusions"). This lack of process violates due process.

Finally, although the R&R (at 76 n.23) correctly notes that both parties agree that Dalanea has standing to raise a procedural due process claim, it declines to address whether Tammy and Robert also have standing as parents of minor children who were listed as prolific offenders. However, Tammy and Robert were both directly affected by the decision to list their sons: they were subjected to regular checks at their homes, *see* JSF ¶¶ 38, 49, and they were subject to the zero-tolerance arrest policy as associates of their sons, *see* JSF ¶ 13. In effect, they were *themselves* placed on a form of probation, and they were entitled to an opportunity to challenge that designation. All of this can be resolved now, without need for a trial.

### D. Plaintiffs Are Entitled To Summary Judgment On Their First Amendment Claim.

The R&R also applied an incorrect test to Plaintiffs' First Amendment claim. And, under either standard, Plaintiffs are entitled to summary judgment.

1. <u>The R&R incorrectly applied the "direct and substantial interference" test to Plaintiffs' claim.</u>

The R&R correctly held (at 62–67) that Plaintiffs' relationships with their children are protected by the First Amendment but erred by holding (at 69–72) that Plaintiffs must prove "direct and substantial interference" with those relationships. The cases cited by the R&R are distinct. In *Lyng v. UAW*, 485 U.S. 360, 367 n.5 (1988), the Court considered a challenge to a law providing for "withdrawal of a government benefit" from a household—full eligibility for food stamps—when it included a member on strike. And in *Parks v. City of Warner Robbins*, 43 F.3d 609, 612 (11th Cir. 1995), a police sergeant argued that her city's anti-nepotism policy— which meant she would lose her job if she married a co-worker—violated the First Amendment by "conditioning her employment on the nonassertion of her right to marry." In both cases, the government allegedly violated the First Amendment by conditioning something (a job or benefit) on nonassertion of the right to associate; there, the plaintiffs had to prove "direct and substantial" interference.

Here, by contrast, Defendant did not merely condition a benefit and instead directly imposed civil and criminal penalties on Plaintiffs based on their association with their children. *See, e.g.*, JSF ¶¶ 150–51, 159 (code citations pursuant to zero-tolerance policy), 85–86 (arrests pursuant to zero-tolerance policy). That kind of direct penalty brings this case within the ambit of *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982), which holds that "[c]ivil liability may not be imposed

merely because an individual belonged to a group, some members of which committed acts of violence." The Court in that case did *not* require the NAACP and its members to show that they were prevented from associating or that Mississippi had "directly and substantially" interfered with their relationships. The same analysis applies here. Defendant imposed code citations and arrests on the parent-Plaintiffs "merely because [they] belonged to a group, some members of which committed [crimes in Pasco County]." *Id.* Because these direct penalties themselves burden the Plaintiffs' First Amendment right to association, Plaintiffs do not need to also demonstrate that they were prevented from associating with their children.

Case law confirms this distinction. In *Lyng*, the Supreme Court expressly distinguished its holding from *Claiborne Hardware* and the type of violation here; the Court explained that while conditioning food-stamp eligibility might not "directly and substantially" interfere with associational rights, 485 U.S. at 366, exposing the entire household to "civil liability" would of course "pose[] a much greater danger to the exercise of associational freedoms," *id.* at 367 n.5. Similarly, the Eleventh Circuit has recognized the difference between "impos[ing] a direct penalty" based on association and "condition[ing] the receipt of a government benefit on the relinquishment" of that association. *McCabe v. Sharrett*, 12 F.3d 1558, 1562 (11th Cir. 1994). That case involved a condition-based claim, requiring proof of direct and substantial interference, but the Eleventh Circuit explained that the

government "[o]bviously . . . burdens [the right to association] when it imposes a direct penalty such as a criminal fine on its exercise." *Id.* at 1562. Because this case involves such a "direct penalty," no showing of "interference" is required.[10]

2. Plaintiffs have provided enough evidence to win their claim at summary judgment even under the "direct and substantial interference" test.

Even under the "direct and substantial interference" standard, Plaintiffs are entitled to summary judgment on this claim. Unlike the anti-nepotism policy in *Parks* that was "unlikely" to "actually prevent affected couples from marrying," 43 F.3d at 616, here there is no real dispute that the ILP Program *did* "actually prevent affected [families] from [associating]" with each other. As a result of the stress caused by PSO's frequent checks, Tammy's husband kicked her oldest son out of the house. JSF ¶ 260. Darlene stopped allowing her son to stay with her because she feared it would invite more PSO visits. *See* JSF ¶ 309. When his son moved out, Robert was afraid to allow him to come home to visit. JSF ¶¶ 364, 366. And Dalanea's family friend forced her to move out. JSF ¶¶ 186, 198–99.

The R&R (at 74–75) found a factual dispute as to whether these harms were actually caused by the Program, and Plaintiffs do not object to proving that causal

---

[10] The Magistrate incorrectly concluded that *McCabe* "is thus of no help to the Plaintiffs here" because "[t]here was no discussion in *McCabe* about the extent of the harm suffered by the plaintiff" resulting from the adverse action. R&R 71, 72. However, where, as here, the government "impose[s] liability on an individual solely because of his association with another," *Claiborne Hardware*, 458 U.S. at 918–19, the First Amendment violation is not dependent the "extent of the harm" to that individual's relationship, R&R 71. The violation *is* the imposition of liability.

24

link at trial. Still, Plaintiffs maintain that such a showing should not be required, as there is no dispute that the ILP policy was *designed* to use code enforcement and arrests to interfere with parents' relationships with listed individuals. *See* JSF ¶ 153 (citations meant to "light a fire under the homeowner to do a better job in keeping that juvenile out of trouble"); *id.* ¶ 354 ("We're talking about parenting issues . . . . That's why, that's why all this [citations and arrests] today."). Moreover, while the R&R noted that there were other sources of tension in these relationships beyond Defendant's program, nothing in *Lyng* or *Parks* suggests that only perfectly happy relationships merit protection under the First Amendment. The undisputed evidence shows that Defendant's frequent visits and enforcement were specifically designed to "'directly and substantially' interfere with [Plaintiffs'] family living arrangements." *Lyng*, 485 U.S. at 366. That alone should be enough to grant Plaintiffs summary judgment on their First Amendment claim.

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment on liability and deny Defendant's motion for summary judgment.

Dated: April 29, 2024            Respectfully submitted,

/s/ Ari S. Bargil
Ari S. Bargil (FL Bar No. 71454)
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600

25

Fax: (305) 721-1601
abargil@ij.org

Caroline Grace Brothers (DC Bar No.
1656094)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
cgbrothers@ij.org

Robert E. Johnson (OH Bar No. 0098498)*
INSTITUTE FOR JUSTICE
16781 Chagrin Boulevard, Suite 256
Shaker Heights, OH 44120
Tel.: (703) 682-9320
Fax: (703) 682-9321
rjohnson@ij.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

26

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of April 2024, a true and correct copy of the foregoing document was served was served via the Court's CM/ECF system upon all counsel of record.

/s/ Ari S. Bargil