UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DALANEA TAYLOR, et al.,

      Plaintiffs,

v.                              CASE NO. 8:21-cv-555-SDM-CPT

CHRIS NOCCO,

      Defendant.

_____/

## **ORDER**

Alleging that under 42 U.S.C. § 1983 the Pasco County Sheriff's Office (PCSO) unconstitutionally infringed their constitutional rights, Dalanea Taylor, Tammy Heilman, Darlene Deegan, and Robert A. Jones III sue Chris Nocco, in his official capacity as Pasco County Sheriff.  The plaintiffs[1] allege that Nocco infringed their First Amendment, Fourth Amendment, and Fourteenth Amendment rights by implementing from 2013 to 2022 "Intelligence-Led Policing (ILP)," in which the PCSO aimed to lessen crime by classifying certain offenders as "prolific offenders" and by more frequently monitoring and visiting the offenders, including at their home.

Each party moves (Docs. 219 and 224) for summary judgment, each party responds (Docs. 240 and 238), and each party replies (Docs. 249 and 247).  An order refers (Doc. 237) the renewed cross-motions for summary judgment to the magistrate

---

[1] The PCSO identified Taylor as a "prolific offender" and identified Heilman, Deegan, and Jones as the parents of "prolific offenders."

judge, who permitted each party to move for summary judgment in forty pages, to respond in thirty pages, to reply in ten pages, and to supplement the record with additional exhibits.  Additionally, the magistrate judge held a hearing (Doc. 266) on the parties' motions.

The magistrate judge files a report (Doc. 273) and recommends granting-in-part Nocco's motion (Doc. 219) for summary judgment and denying the plaintiffs' motion (Doc. 224) for summary judgment on all claims.  The plaintiffs object (Doc. 280) to the report and argue their entitlement to summary judgment on their First Amendment claim, their Fourth Amendment claim, and their Fourteenth Amendment procedural due process claim.  Nocco objects (Doc. 281) and argues that *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978), compels summary judgment for Nocco because the PCSO never established or practiced a "custom" of infringing the plaintiffs' constitutional rights.  Because the parties timely object in accord with Rule 72(b), Federal Rules of Civil Procedure, this order reviews *de novo* the cross-motions for summary judgment.

Because Nocco ceased the ILP program in 2022, Nocco moves based on mootness for summary judgment on the plaintiffs' claim for prospective injunctive relief.  The magistrate judge recommends denying Nocco's motion for summary judgment.  Nocco objects and argues that his lack of intent to re-start the ILP program renders moot the plaintiffs' claim for prospective injunctive relief.  Under *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024), a "governmental defendant," such as Nocco, moots a case by establishing "that [he] cannot reasonably be expected

- 2 -

to resume [the] challenged conduct."[2]  The magistrate judge's recommendation is consistent[3] with *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014), which affirms that, to prevail under the cessation doctrine, Nocco must show "that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to re-cur."  The magistrate judge correctly found that the record presents a genuine dispute of fact about the prospect of Nocco's resuming the ILP program or a practice akin to the ILP program.

Nocco emphasizes that in 2022 he "unambiguously" disbanded the PCSO's "zero tolerance policy" and the "randomized checks" associated with the ILP pro-gram because of "manpower problems and a focus on an alarming drug problem as-sociated with fentanyl."  (Doc. 281 at 12–13)  The PCSO "phased out" prolific of-fender checks with the number of checks "plummet[ing] from 229 in 2021 to just two in 2022."[4]  (Doc. 219 at 2–3; Doc. 281 at 9)  But in January 2023, the PCSO created a new program that identifies "focused offenders" instead of "prolific offenders." (Doc. 219 at 37–38)  "Focused offenders" include those "demonstrat[ing] a pattern of criminal behavior" and "currently affecting the crime environment."  (Doc. 225-73

---

[2] Fikre sued the United States for violating his constitutional rights when the United States placed him on the "no-fly" list. While the action pended, the United States removed Fikre from the list. The Supreme Court permitted Fikre's claim.

[3] The plaintiffs insist that, although correctly concluding that the cessation doctrine does not moot this action, the magistrate judge erred by not citing *Fikre*. But the magistrate judge stays con-sistent with *Fikre*, which affirms that "[w]hat matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct." In discussing relevant cases, *Fikre*, 601 U.S. at 244, notes that "[r]ather than resolve who has the better reading of another court's deci-sions, it is enough to underline the reason for our own."

[4] The plaintiffs note that the sharpest decline in the prolific offender checks occurred after the plaintiffs initiated this action in March 2021, but *post hoc ergo propter hoc* is frequently fallacious.

at 11)  The new program uses no objective scoring and still permits checks, but not "random checks," on a focused offender.  (Doc. 219 at 38)  None of the named plaintiffs or their children is designated as a focused offender.  (Doc. 219 at 38)  Also, Nocco insists that the plaintiffs lack standing[5] because, even if the challenged policy returned, the policy would not affect them.  Jones's son, whom the PCSO stopped labeling as a prolific offender after 2016, moved from the area; Heilman's son, whom the PCSO stopped labeling as a prolific offender in 2020, was, until recently, in state prison; Deegan's son, whom the PCSO labeled as a prolific offender in 2017, died; and Taylor's prolific offender designation ceased in 2019.  (Doc. 219 at 29–30, 37)

But the record shows a factual dispute about the PCSO's continuing "random checks" of the plaintiffs.  Heilman swears (Doc. 254) that even after the PCSO adopted the new program in January 2023, two deputies visited her home to "check on" her son who was no longer on probation.  Deegan insists that the PCSO still unfairly subjects her to code enforcement, and Jones swears that for no apparent reason the PCSO surrounded his residence with PCSO vehicles.  (Doc. 245 at 23–25)  Nocco maintains that the plaintiffs' swearing to "occasional sightings of law enforcement" fails to connect "in any way" to the ILP program and fails "to overcome the Sheriff's substantial documentary and testimonial evidence that the prolific offender check process ended several years ago."  But construing the record most favorably to

---

[5] Citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 170 (2000), Nocco emphasizes how "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness."

the non-moving party, a factual dispute remains about the ILP program's continuing after 2022 and about the record's supporting a reasonable expectation of Nocco's re-instating the ILP program. Unlike an "unambiguous" enactment from a legislative authority, Nocco's rescission of the ILP program is a readily changeable executive policy. *See Colonel Fin. Mgmt. Officer v. Austin*, 2023 WL 2764767, at *2 (M.D. Fla. 2023) (finding that the Secretary of Defense's decision, resulting from Congress's constitutional authority, to remove a policy rendered the request for an injunction moot). The magistrate judge did not err, and the plaintiffs' request for injunctive relief is not — on this record — indisputably moot.

Also, Nocco argues that the plaintiffs' claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which prohibits a Section 1983 claim for damages if the claim's success "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence." *Harrigan v. Metro Dade Police Dep't Station #4,* 977 F.3d 1185, 1192 (11th Cir. 2020). The PCSO issued code citations against the plaintiffs, arrested but never convicted Jones, and arrested and convicted Heilman. The magistrate judge correctly concluded that resolving the plaintiffs' claims fails to necessarily affect the validity of the code citations issued against the plaintiffs and fails to necessarily affect the validity of Jones's arrest. Because the code citations and Jones's arrest are not convictions,[6] the plaintiffs' success on the claims encompassing the citations and

---

[6] The plaintiffs argue that Nocco used code enforcement to harass and intimidate. According to the amended complaint (Doc. 41 ¶¶ 44-45, ¶ 62), the PCSO ticketed Heilman for missing mailbox numbers, for failing to remove a cinderblock from her front yard, and for having chickens in her backyard, and cited Deegan for missing a street-address number on her home, for having "overly

(continued…)

Jones's arrest invalidates nothing. *McClish v. Nugent*, 483 F.3d 1231, 1233 (11th Cir. 2007) (reversing a judgment that a Section 1983 claim for wrongful arrest was *Heck*-barred for a plaintiff never convicted of a crime).

According to Heilman, her son's status as a prolific offender led to the PCSO's patrolling her home and arresting her in 2016 and 2018. (Doc. 227 ¶ 38) She pleaded guilty to each charge but served no sentence and instead remained on probation for only a few months. The plaintiffs allege that Heilman's "arrest and prosecution would not have occurred but for PCSO's enforcement of the Program and its perception that [Heilman] was not cooperating with the Program." (Doc. 41 ¶ 42) The plaintiffs argue that, rather than identifying which of Heilman's claims *Heck* bars, the magistrate judge erred by "generally" concluding that *Heck* bars certain elements of the underlying state offenses.[7] But the magistrate judge thoroughly discusses the elements of battery and the elements of resisting an officer to explain why Heilman's success on her constitutional claims affects the validity of her conviction for battery and her conviction for resisting an officer. The magistrate judge concluded that Heilman's success on her claims would imply that the PCSO's behavior during each arrest was unlawful and that each of Heilman's convictions was invalid. *Harden v. Pataki*, 320 F.3d 1289, 1295 (11th Cir. 2003) (applying *Heck*, 512 U.S. 486, n. 6).

---

long grass," and for having construction material on the property. PCSO similarly cited Jones for "overly long grass," for missing a number on the mailbox, and for "having a trailer on" the property. (Doc. 41 ¶ 79)

[7] The plaintiffs argue that *Heck* is inapplicable because Heilman was never imprisoned for her conviction, but *Heck*, 512 U.S. at 487, explicitly applies to a "conviction or sentence."

The plaintiffs note that, although Heilman was convicted, Heilman's claim is not *Heck*-barred because she was never in jail and has "no available habeas remedy." But that is a "bizarre extension of *Heck*." *See Wallace v. Kato*, 549 U.S. 384, 392–93 (2007) (affirming that Congress "has determined that habeas corpus is the appropriate remedy for state prisoners" or those with an "outstanding criminal judgment"). Because a judgment for Heilman might imply that the PCSO acted unlawfully during each arrest, the magistrate judge correctly found that a judgment in Heilman's favor for the entirety of her claims would "negate" Heilman's convictions.

But if "[i]t is possible that a [Section] 1983 suit would not negate the underlying conviction, then the suit is not *Heck*-barred." *Dyer v. Lee*, 488 F.3d 876, 879–80 (11th Cir. 2007). Heilman's claim is not strictly a false arrest claim. Heilman claims (Doc. 41 ¶¶ 29–31) that, because of her son's status as a prolific offender, the PCSO repeatedly, sometimes many times a day, visited her property and harassed her for five years. Although Heilman's Section 1983 claim might appear "logically contradictory" to each conviction, a factual dispute remains about PCSO's committing constitutional violations against her at a time other than during each arrest. *Dyer*, 488 F.3d at 884. As stated by the magistrate judge, the plaintiffs' "claims that [are] predicated on the code citations are not *Heck*-barred." (Doc. 273 at 33) In other words, Heilman's claim, to the extent the claim does not encompass her arrests, is not *Heck*-barred. The magistrate judge's recommendation to partially bar Heilman's

claim is adopted, and Heilman's claim against Nocco is barred insofar as the claim affects the 2016 and 2018 arrests and convictions.[8]

Finally, Nocco argues that that a four-year limitation bars Jones's Section 1983 claims against Nocco because in September 2015 a PCSO deputy warned Jones that his crimes "will not be tolerated" and that Nocco "wants to encourage kids to grow up and become good citizens." (Doc. 281 at 24)  Nocco insists that after one conversation Jones reasonably understood the nature of the ILP program.  Contrary to Nocco's assertion, a deputy's statement about preventing crime fails to indisputably notify Jones of the PCSO's policy.  Jones swears he was unaware of the program until 2020, and nothing in the record indicates that Jones reasonably should have known about the PCSO's policy in 2015.  The record shows a factual dispute about when Jones's should have known about the PCSO's alleged violations of his rights.[9]

## I. Constitutional Violations under *Monell*

### A. Fourth Amendment

Both parties moved for summary judgment on the plaintiffs' Fourth Amendment claim, and the magistrate judge recommends denying summary judgment for each party.  Although concluding that no written policy (the ILP manuals or the

---

[8] The plaintiffs want to present the arrests as "relevant evidence" showing that the checks are involuntary, and as the plaintiffs argue, *Heck* bars claims, not evidence. The complaint (Doc. 41), directly incorporating the arrests into Heilman's constitutional claims, states that Heilman's arrest and prosecution would "not have occurred but for" the ILP program.

[9] Also, Nocco asserts that the limitation bars Heilman's 2016 arrest.  Because this order agrees with the magistrate judge that Heilman's claims, insofar as the claims rely on the 2016 arrest, are *Heck*-barred, analyzing the limitation applicable to Heilman's arrest is unnecessary.

2021 directive) reveals a facial, constitutional violation, the magistrate judge found a factual dispute.  The plaintiffs object and argue that because the ILP manual and the 2021 directive required checking with "enhanced focus" prolific offenders, the ILP program exceeded the "background social norms that invite a visitor to the front door."  (Doc. 280 at 15, quoting *Fla. v. Jardines,* 569 U.S. 1, 9 (2013)).[10]  But nothing explicitly states, as the plaintiffs contend, that the "purpose of prolific offender checks is to intimidate listed individuals . . ."  (Doc. 280 at 15)  In other words, a complete record might show that the ILP program served a different, wholly constitutional purpose.

Nocco objects and argues that the magistrate judge erred by failing to evaluate whether each incident identified by each plaintiff was "causally traceable" to the PCSO's policy or custom as required by *Monell,* 436 U.S. at 694.  But by thoroughly examining whether Nocco established a custom of "similarly substantial" unconstitutional behavior, the magistrate judge correctly concluded that the record presents a factual dispute.  The sum of the frequency of the checks, the nature of the checks, the PCSO's movement and communication in each plaintiff's home, and the PCSO's intent while visiting each home determines whether the PCSO established a custom of unconstitutional behavior.  The plaintiffs assert, and Nocco disputes, that the PCSO's "knock and talk" at each plaintiff's home required reasonable suspicion,

---

[10] Contrary to the plaintiffs' assertion, the magistrate judge does not "overread" *Jardines*, 569 U.S. 1, 9 at n. 4, but instead correctly applies *Jardines* and other cases resolving a motion for summary judgment. (Doc. 273 at 51) The plaintiffs maintain that the PCSO possessed an "objective purpose" that extends beyond the "implied license" permissible under a "knock and talk." But Nocco presents a genuine dispute of fact about the PCSO's intent when conducting each "knock and talk."

which the PCSO failed to always possess.[11]  By differentiating the facts in the cited opinions from the facts in this action, the magistrate judge correctly determines that "knock and talks" require only a "legitimate police purpose."  *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) (citing cases) ("The Fourth Amendment, which prohibits unreasonable searches and seizures by the government, is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises.").

The plaintiffs attest that, when the PCSO visited each of their homes, the plaintiffs did not "feel free to decline the officers' request or otherwise terminate the encounter."  *Berndlin v. California,* 551 U.S. 249, 254 (2007).  Both parties present documents showing conflicting facts about the plaintiffs' freedom of movement during the PCSO's visits to their homes.  The plaintiffs discuss moments in which they felt "trapped" by the PCSO, and the record shows that some deputies apologized for conducting the checks.  In their objection, the plaintiffs again cite the ILP manual and two instances in which they felt unable to leave their property because the PCSO threatened them with a citation.  But the ILP manual is not facially unconstitutional, and only two episodes of feeling "trapped" fail to amount to a "custom" that warrants summary judgment in the plaintiffs' favor.  The plaintiffs emphasize that the PCSO continued the checks after the plaintiffs complained to the PCSO about the

---

[11] Nocco counters the plaintiffs' claims with examples of "knock and talks" allegedly not associated with the ILP program for which the PCSO possessed probable cause or reasonable suspicion. *See* examples discussed in the magistrate judge's report (Doc. 273 at 57).

checks.  In contrast, Nocco presents occasions in which the plaintiffs felt "at ease" during the PCSO's visits and when the plaintiffs cooperated without complaint.  A genuine dispute of fact remains about whether a reasonable person would "feel free to end the encounters."

Also, the plaintiffs claim that the PCSO's nighttime checks at their residences and the plaintiffs' receiving excessive code citations violate the Fourth Amendment. The plaintiffs support this assertion with bodycam footage and statistics, but Nocco identifies testimony and instances showing that these checks and citations are not "substantially similar" and might not amount to a "custom."  Emphasizing that no authority exists to support the conclusion that the nighttime checks are facially unconstitutional, the magistrate judge discussed why an order should not grant the plaintiffs' motion for summary judgment on the constitutionality of nighttime prolific offender checks.[12]  Like the daytime checks, the nature, timing, and duration of the nighttime checks require a complete record to determine if a constitutional violation occurred.  As the magistrate judge explains, determining whether the PCSO created a custom violative of the plaintiffs' Fourth Amendment rights is a "fact-intensive inquiry." Each party's motion for summary judgment on the plaintiffs' Fourth Amendment claim warrants denial.

---

[12] The plaintiffs flag (Doc. 282) a quote from *Kidd v. Mayorkas*, 2024 WL 2190981, at *1 (C.D. Cal. 2024), in objection to the magistrate judge's report.  But *Kidd,* 2024 WL 2190981, at *1, acknowledges that, although the Supreme Court considers "knock and talks" constitutional, "knock and talks" by U.S. Immigration and Customs Enforcement differ from other "knock and talks." The case is neither binding nor persuasive.

### B. First Amendment

Each party moves for summary judgment on the plaintiffs' claim that the PCSO's enhanced scrutiny of each prolific offender's family "infringe[d] the[ir] right of intimate association implicit in the First Amendment." *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 611 (11th Cir. 1995). Specifically, the plaintiffs argue that the PCSO impermissibly interfered with Heilman's, Deegan's, and Jones's life with their children, whom the PCSO classified as prolific offenders, and that Nocco unconstitutionally interfered with Taylor's relation with a close friend. The magistrate judge recommends denying each party's motion for summary judgment.

The First Amendment safeguards the right to maintain "intimate human relations[ ]," which includes family and co-habitation with one's relatives. *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984)). A party obtains summary judgment if no genuine dispute of fact exists about the PCSO's interfering with the plaintiffs' right to associate with family. Nocco may rebut the plaintiffs' argument by showing that he narrowly tailored the PCSO's action to serve a compelling state interest.

Asserting that the magistrate judge incorrectly cites cases that analyze a government's denial of a benefit interfering with an intimate association, rather than the government's harassment interfering with an intimate association, the plaintiffs argue that they need not show the PCSO's "direct and substantial interference" with a relation to succeed on a motion for summary judgment. *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 611 (11th Cir. 1995); *see also Lyng v. Int'l Union, United Auto., Aero-*

- 12 -

*space & Agr. Implement Workers of Am., UAW*, 485 U.S. 360, 360 (1988) (finding that a government denial of food stamp benefits to families of striking workers did not interfere with the workers' right to associate with family because the denial of benefits did not "directly and substantially interfere with family living arrangements.").  But the difference between the government's denying a benefit or enforcing a code is negligible — each is a government action that might unconstitutionally interfere with an intimate association.  The magistrate judge did not err in applying the "direct and substantial interference" test.

In any event, the plaintiffs argue that they "provided enough evidence" to obtain summary judgment under the "direct and substantial interference" test, and Nocco objects and argues that the PCSO's behavior creates only an "incidental effect on [the plaintiffs']" relations.  Nocco distinguishes the PCSO's directing the parents to prevent their children's criminal behavior from "ordering" the plaintiffs to refrain from familial relations.  But the magistrate judge correctly found a factual dispute about the PCSO's interfering with the plaintiffs' relations.  The PCSO's "Actionable Intelligence Meetings" in 2016 referred to Heilman, Deegan, and Jones as "associated" with their "prolific offender" children and emphasized each plaintiff's violating the county code.  (Doc. 223, 225–16)  From 2016 to 2022, the PCSO repeatedly cited Heilman, Deegan, and Jones for code violations.   Each plaintiff swears that a PCSO deputy advised them about "parenting issues."  For example, a deputy informed Heilman that if people in her house "are committing crimes," the "direction" to the deputies from Nocco "is to go out there and for every single violation that person

- 13 -

commits, to enforce it upon them." (Doc. 223 at 31)  The record shows that a deputy might have reported Jones and Heilman to Child Protective Services as "a big f**k you" from Nocco.  But, as the magistrate judge acknowledges, the PCSO often visited the plaintiffs' homes after receiving calls about criminal activity, specifically "when the family members were committing crimes against one another."  In one instance, Deegan called the PCSO to complain about her son's criminal activity. The parties' objections, read together, affirm the correctness of the magistrate judge's finding a factual dispute about the PCSO's interfering with Heilman's, Deegan's, and Jones's life with their children.

Also, Nocco opposes the magistrate judge's analysis of the plaintiffs' retaliation claim.  As explained by the magistrate judge, a reasonable factfinder could "infer [or not] that those citations and arrests constituted a form of retaliation by the PCSO against Heilman, Deegan, and Jones for their children's criminal conduct." *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1323 (S.D. Fla. 2014) (Altonaga, J.) ("'a retaliatory motive can be inferred' from a sequence of events, notwithstanding other non-retaliatory motives (here, purportedly lawful grounds) the defendant may have.").[13]  Finally, Taylor alleges that the PCSO interfered with her relations with a family friend, Dana Jones, by visiting Dana's home while Taylor lived

---

[13] Nocco argues that *Eisenberg,* 54 F. Supp. 3d at 1323, a case cited by the magistrate judge, is "inapposite" because the police in *Eisenberg* retaliated against the plaintiff for "protected conduct," which was protesting the manner in a which the city managed a property, and not because of an intimate association. But the plaintiffs argue that Nocco retaliated against prolific offenders' parents because the parents allegedly failed to discipline their children in accord with Nocco's instruction.

- 14 -

at the home temporarily.[14]  But Taylor fails to provide enough facts to support a fac-

tual dispute about the PCSO's substantially interfering with her friendship and fails

to show that her relations with Dana shares "the qualities distinctive to family rela-

tions[ ]," which trigger First Amendment protection.  *Owens v. Propes*, 601 F. Supp.

3d 1360, 1368 (M.D. Ga. 2022) (Land, J.) (citing cases).  Taylor swears (Doc. 226

¶ 18) that, after a PCSO visit, Dana stated that she would throw Taylor "out" if a

deputy visited again.  Taylor moved from Dana's house allegedly because of the

PCSO's "persisting" visits.  But, as emphasized by Nocco, the PCSO's visits never

caused Dana to receive a code citation.  Although a factual dispute remains about

the PCSO's infringing on Deegan's, Heilman's, and Jones's life with their children,

Taylor states only that the PCSO's "visits impacted [her] relations[ ] with Dana."

(Doc. 228 ¶ 19)  Summary judgment for Nocco is warranted on Taylor's First

Amendment claim.

### C.  Fourteenth Amendment

### i.  Procedural Due Process

The plaintiffs argue that Nocco's custom of targeting them without providing

notice or a hearing violates their procedural due process rights.  Each party moves for

summary judgment on this claim.  The magistrate judge found a genuine dispute

---

[14] Nocco does not oppose the magistrate judge's report identifying Taylor's relation to the close family friend as an "intimate association" under the First Amendment, but generally argues against the validity of Taylor's First Amendment claim.

about the PCSO's notifying the plaintiffs about their child's, or of their own, prolific offender status.

Nocco believes that the plaintiffs' "fail[ure] to identify which incidents represent such a violation" and the magistrate judge's failure "to identify the process due" warrants rejecting the magistrate judge's recommendation. Nocco insists that no law required the PCSO to notify the plaintiffs before the PCSO conducted "knock and talks" at the plaintiffs' homes. The plaintiffs emphasize that some courts outside of the Eleventh Circuit "hold that imposition of probation-like restrictions without a conviction implicates procedural due process." (Doc. 280 at 18) The plaintiffs argue that because "being listed as a prolific offender is effectively a form of probation" that "implicates a liberty interest" and because Nocco failed to notify the plaintiffs with a formal notice or hearing about their own or their children's prolific offender status, the magistrate judge erred in denying the plaintiffs summary judgment.

But the magistrate judge thoroughly explains that each motion for summary judgment warrants denial because a factual dispute remains about the PCSO's failure to notify the plaintiffs of their own or their children's status as a prolific offender and about the resulting harassment by the PCSO, which includes, but is not limited to, the "knock and talks." For example, Nocco cites instances in which the PCSO informed the plaintiffs about the consequences of status as a prolific offender, but the plaintiffs maintain that the PCSO only informally warned them about the effects. Because the record remains unclear if the PCSO committed a constitutional viola-

tion, identifying any notice required is premature.  The parties' objections confirm a factual dispute about the notice, if one was necessary, provided to the plaintiffs.

### ii. Substantive Due Process

"A violation of substantive due process occurs when an individual's fundamental rights are infringed, regardless of the fairness of the procedure." *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017).  The plaintiffs argue that the magistrate judge erred in concluding that "the right to personal guilt is not fundamental" because "binding precedent" describes the right as a "fundamental liberty." *St. Ann v. Palisi*, 495 F.2d 423, 426 (5th Cir. 1974) (finding unconstitutional a school board's policy of suspending children for their parents' misconduct).

But the plaintiffs craft no "careful description of the asserted right" that is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Waldman*, 871 F.3d at 1292; *Doe v. Moore*, 410 F.3d 1337, 1343–44 (11th Cir. 2005) (finding that "[a]lthough the Supreme Court has recognized fundamental rights in regard to some special liberty and privacy interests, it has not created a broad category where any alleged infringement on privacy and liberty will be subject to substantive due process protection.").  The plaintiffs fail to distinguish the "right to personal guilt" and the "right to be free from punishment or from liability based on mere association with their children" from their First Amendment right to associate with family.  As the magistrate judge discusses, in contrast to the plaintiffs in this action, the plaintiffs in *St. Ann*, 495 F.2d at 426, asserted no First Amendment claim.

Observing that "parent[s] arguably ha[ve] the power and duty to control [their] children," *St. Ann,* 495 F.2d at 428, distinguishes between laws "which cause children to pay for the sins of their parents and those that make parents liable for their children."

Substantive due process protects against "arbitrary and oppressive exercise of government power" including executive action that "shocks the conscience." *Waldman*, 871 F.3d at 1292 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)). Classifying the ILP program as "executive," the magistrate judge properly found that Nocco's actions do not "shock the conscience" under applicable law. Although the children in *St. Ann*, 495 F.2d at 428, were not responsible for any wrongdoing, the plaintiffs in this action "bear some relationship to individual responsibility or wrongdoing." As explained by the magistrate judge, no action under the ILP program was so "unjustifiable by any government interest" as to "shock the conscience."

The plaintiffs claim that the magistrate judge "improperly applied" the "shocks the conscience standard" to a legislative action, not an executive action, and that the magistrate judge should have found that the PCSO's legislative action was "arbitrary and irrational." A legislative action includes "policy-making instead of mere administrative application of existing policies" and affects "the public as a whole," rather than individuals. *Dibbs v. Hillsborough Cnty., Fla.*, 67 F. Supp. 3d 1340, 1352 (M.D. Fla. 2014) (Honeywell, J.), *aff'd*, 625 Fed. Appx. 515 (11th Cir. 2015); *Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla.*, 2013 WL 1774944, at *4 (M.D. Fla. 2013) (Hodges, J.), *aff'd*, 559 Fed. Appx. 811 (11th Cir. 2014). The

plaintiffs, emphasizing how the ILP program targeted their families, not the "public as a whole," argue that the magistrate judge did not err in identifying the PCSO's program as an executive, and not a legislative, action.

Even if the ILP program is legislative, Nocco's actions were "not so arbitrary or irrational as to compel" denial of summary judgment for Nocco. *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1263 (11th Cir. 2003) (finding that even if the deprivation of a "land disturbance permit" was a legislative action, the city did not act "so arbitrary or irrational" as to find for the plaintiff). As the magistrate judge explains, the record shows the plaintiffs bore some responsibility for each citation and that no citation nor arrest "was plainly unjustified." Substantive due process "with its 'scarce and open-ended' 'guideposts'" affords the plaintiffs no relief. *Albright v. Oliver*, 510 U.S. 266, 275 (1994) (citing *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)).

## CONCLUSION

The magistrate judge's recommendations are **ADOPTED-IN-PART**. The plaintiffs' renewed motion (Doc. 224) for summary judgment is **DENIED**. Nocco's motion based on *Heck* to bar Heilman's claims is **GRANTED-IN-PART** insofar as her claims include her 2016 and 2018 arrests. In other words, Heilman may proceed on her claims so long as the claims exclude the 2016 and 2018 arrests.

Nocco's motion for summary judgment on the plaintiffs' substantive due process claim and Nocco's motion for summary judgment on Taylor's First Amendment

claim are **GRANTED**.  The balance of Nocco's motion (Doc. 219) for summary

judgment is **DENIED**.

ORDERED in Tampa, Florida, on August 28, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE