# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DALANEA TAYLOR; TAMMY
HEILMAN; DARLENE DEEGAN;
and ROBERT A. JONES III,

     *Plaintiffs*,

v.

CHRIS NOCCO, in his official
capacity as Pasco County Sheriff,

     *Defendant*.

Case No. 8:21-cv-00555-SDM-CPT

## JOINT FINAL PRETRIAL STATEMENT

The parties to this action file this Joint Final Pretrial Statement pursuant to the Court's Order (Dkt. 290), and Local Rule 3.06(b), and state as follows:

**1.      The Basis for This Court's Jurisdiction**

This case is a civil rights challenge seeking declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983. Accordingly, the parties agree that this Court has jurisdiction under 28 U.S.C. § 1331. Plaintiffs further maintain this Court may grant the relief sought in light of 28 U.S.C. §§ 1343, 2201, and 2202.

1

**2.      A Concise Statement of the Action**

**a.      Plaintiffs' Concise Statement:**

Over a period of several years, deputies of the Pasco Sheriff's Office ("PSO") made numerous visits to Plaintiffs' homes. Those visits were conducted pursuant to PSO's overall "Intelligence Led Policing" ("ILP") approach to law enforcement—a set of strategies and directives that required PSO deputies to subject certain residents (or their children) to enhanced police scrutiny and enforcement, regular "checks," and code-enforcement action if those residents (or their children) had been placed on one of several PSO "offender" lists.

The Plaintiffs in this action are residents of Pasco County who were (or whose children were) placed on those "offender" lists. This lawsuit raises three constitutional challenges to Defendant's use of offender lists. First, Plaintiffs allege that Defendant violated the Fourth Amendment because deputies' visits to their homes amounted to unconstitutional searches and seizures. Second, Plaintiffs allege that Defendant violated the First Amendment right to familial association by targeting parents on account of the actions (or alleged actions) of their listed children. And, third, Plaintiffs Jones, Heilman, and Taylor allege that Defendant violated their right to procedural due process by placing them (or their minor

children) on offender lists without sufficient notice or an opportunity to be heard.[1]

**b.     Defendant's Concise Statement:**

Defendant Sheriff denies all claims and has raised certain defenses, including statute of limitations defense as to certain incidents as to all Plaintiffs, and all incidents as to Plaintiff Jones. Defendant Sheriff also contends that any claims for false arrest or for allegedly invalid or unlawful code violation citations are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), or abstention doctrine, such as *Younger v. Harris*, 401 U.S. 37 (1971). Defendant also contends that Plaintiffs do not have standing to seek injunctive relief and that any such relief has been rendered moot by prior changes to the challenged policies or customs of the Sheriff. Finally, pursuant to concepts of separation of powers and sovereign immunity, the Court should abstain from entering any relief based on policy-making by the Sheriff.

**3.     A Concise Statement of Each Party's Position**

**a.     Statement of Plaintiffs:**

The Plaintiffs allege that PSO's repeated visits reflect a policy or custom of unconstitutional behavior on the part of Defendant. Specifically, Plaintiffs contend that they were subject to repeated, unwanted law-enforcement attention at their

---

[1] This Court previously dismissed Plaintiffs' claims under the Fourteenth Amendment's Equal Protection Clause (Dkt. 30, 81) and granted summary judgment in favor of Defendant on Plaintiffs' First Amendment claim (as to Plaintiff Dalanea Taylor) and Plaintiffs' substantive due process claim (as to all Plaintiffs) (Dkt. 283). This Court also indicated that some of Plaintiff Tammy Heilman's claims may be *Heck*-barred. *Id*. Plaintiffs preserve each of these issues—along with any other issues resolved on the pleadings or at summary judgment—for appellate review.

homes in the form of routine visitation and interrogation, warrantless and suspicionless intrusions on their property, code enforcement, arrest, and general (but targeted) harassment. All of these events, Plaintiffs argue, were compelled by the Defendant's explicitly stated policies—its manuals and guidance documents—and Defendant's customs.

Because inclusion on one of PSO's lists led to severe probation-like consequences, Plaintiffs argue, placement on a list triggered procedural due process protections that should have afforded Plaintiffs notice and an opportunity to be heard prior to their (or their children's) inclusion. But no notice at all—much less constitutionally satisfactory notice—was provided. Informal statements by police to the Plaintiffs did not explain the nature of the prolific offender list, the reason for adding Plaintiffs (or their children) to the list, or how Plaintiffs might challenge the decision to add them (or their children) to the list. Nor was there any procedure to challenge inclusion on the list. Under the *Mathews* factors, more was required: Inclusion on the list interferes with significant private interests (similar to when a person is put on probation), there is a serious risk of erroneous deprivation, additional safeguards would have significant value, and the government has a minimal interest in putting people on such a list without notice or a hearing.

Once Plaintiffs or their children were listed, Plaintiffs were subject to repeated visits at their property that amounted to unconstitutional searches and seizures in

violation of the Fourth Amendment. These visits were conducted pursuant to PSO's written policies, which mandate regular "prolific offender checks" for listed individuals in order to effectuate a policy of "focused deterrence." They also were conducted to PSO's practices and customs surrounding those "checks," including policies and customs under which checks were used for enhanced police scrutiny, code enforcement, surveillance, and harassment of listed persons and their families; under which checks were conducted frequently and often late at night or in large numbers; under which PSO would stray from the front door to seek out evidence of crimes; under which PSO would continue making checks even after individuals indicated they wanted them to stop; and under which PSO would retaliate against individuals who attempted to terminate the visits or otherwise failed to cooperate. The visits exceeded the implied license to visit the property—both because of their purpose and the manner in which they were conducted—and therefore were unconstitutional searches. The checks also were involuntary—as Plaintiffs reasonably did not feel free to terminate the encounters—and thus were unconstitutional seizures.

Finally, Plaintiffs Heilman, Jones, and Deegan also were subjected to an official practice, policy, and custom under which PSO subjected the family members of listed persons to enhanced police attention—including arrests, code enforcement, and unwanted police visits. Under this practice, policy, and custom PSO deputies

cited, arrested, and otherwise harassed these Plaintiffs because of their association with their children. This unwanted law enforcement attention resulted in direct and substantial interference with the relationships between these Plaintiffs, their children, and other members of their families, impermissibly disrupting their First Amendment right of association.

Because of these constitutional violations, Plaintiffs have suffered harms meriting compensatory and nominal damages and declaratory and injunctive relief.

### b.    Statement of Defendant:

Defendant denies the Fourth Amendment claims.  As to individual incidents, the prolific offender checks (POCs) at issue in this case did not violate the Fourth Amendment.  There is no authority for the proposition that some undefined number of such checks collectively convert from constitutional to unconstitutional simply based on number or frequency.

Defendant denies the First Amendment claims.  The POCs did not intrude on the personal family relationships of the Plaintiffs to an unconstitutional degree and there were many other events in the lives of the Plaintiffs which were far more disruptive than occasional offender checks. Additionally, the issued code violation citations were objectively justified, and neither prolific offender checks nor issuance of such citations represents retaliation or punishment or a violation of Plaintiffs' First Amendment rights.

Defendant denies the procedural due process claims. The Intelligent Led Policing approach generally, and POCs specifically, do not attach "probation-like" conditions on the Plaintiffs to the degree that formal notice and opportunity to be heard or challenge a prolific offender designation need occur.[2] Moreover, Plaintiffs were aware that they were being checked frequently and either made complaints, or complaints were made on their behalf, satisfying whatever due process requirement there might have been.

As there is no underlying constitutional violation, there can be no *Monell* liability against the Sheriff, as a matter of law. Even if Plaintiffs could establish the possibility of an underlying constitutional violation, no official policy or custom of the Sheriff was the moving force behind such violation, also defeating *Monell* liability. The Court has previously recognized in this case that the written policies do not set out any unconstitutional provisions and by definition this is a custom case. The incidents in this matter are so varied, both in terms of frequency, conduct of the deputies that performed the POCs, and the full context of the checks that no custom is present. Plaintiffs have also not shown that any custom of unconstitutional conduct was adopted with deliberate indifference by the final policymaker.

---

[2] Additionally, of the four named Plaintiffs, only Dalanea Taylor was actually designated a prolific offender and therefore only she has standing to raise a procedural due process claim. The other Plaintiffs were sometimes indirectly affected by ILP or POCs, but as no such "probation-like" conditions were applied to them, the incidental effect does not give them a constitutional right to notice and opportunity to be heard or challenge someone else's designation as a prolific offender.

As to prospective injunctive relief, the Sheriff discontinued the randomized checks and code enforcement related to prolific status approximately three years ago. The Plaintiffs do not have standing to seek the injunctive relief they have loosely defined and the issue is moot given the changes to the ILP approach which have occurred.  Prospective relief is unwarranted and unlawful in this case.

Federal courts apply the residual statute of limitations of a given state to determine the applicable statute of limitations to a §1983 action in that state.  The four-year statute of limitations applicable to §1983 claims in Florida bars a claim for relief based on any incident occurring more than four years prior to the filing of the initial complaint.  Defendant contends that any claim of any Plaintiff occurring more than four years prior to the filing of the original Complaint on March 10, 2021 (Dkt. 1) is barred.  This includes all of Plaintiff Jones' claims, in particular.  Defendant also maintains that accrual of a *Monell* cause of action does not depend on knowing the specifics of the challenged policy or custom, only that it exists and, given Plaintiffs' allegations, they were aware of such alleged custom more than four years prior to filing of the Complaint.

Finally, there is a separation of powers issue which predominates over the case.  Respectfully, the Court's role here is not to oversee how the Defendant law enforcement agency conducts day-to-day operations so that it works in optimal policy fashion.  That is, even if there are individual components to ILP with which

one might disagree, if it is not unconstitutional, it is not a basis for relief from this Court.

**4.     A List of Each Exhibit With a Notation of Each Objection**

a.     The parties' Joint Exhibit List is attached hereto.

b.     Plaintiffs' Exhibit List is attached hereto.

c.     Defendant's Exhibit List is attached hereto.

Plaintiffs object to any of Defendant's exhibits to the extent that any such exhibits were previously unproduced despite having been responsive to any of Plaintiffs' discovery requests or otherwise subject to production. Plaintiffs raise this contingent objection in light of Defendant's furnishing of a 356-item exhibit list one day prior to this filing's due date, as well as the fact that technical difficulties prevented Defendant from providing copies of the exhibits prior to the deadline to file this joint statement. Plaintiffs reserve the right to object on this basis but will confer with Defendant prior to raising any objection.

Defendant does not believe that any exhibit was not previously produced and the facts of each incident are well known to the parties such that any additional documentation, if any, is not prejudicial in any way to Plaintiffs.  In the event that Plaintiffs notify the Defendant prior to or at trial that there is a question as to prior production of any exhibit, defense counsel will work with Plaintiffs' counsel to resolve the issue.  However, it should be noted that defense counsel will be displaced

from their office during trial and so investigation into whether, when, and in what form an exhibit was produced may take some time.

Both parties agree that documentation relating to post-summary judgment incidents is relevant to the issue of mootness for forward-looking injunctive relief, and both parties have proposed to submit exhibits relating to such incidents. *See* Pl.'s Ex. 16; Def.'s Exs. 326, 327. To accommodate each other's positions, and to provide the fullest record possible, the parties agree to waive lack of production of these items as a grounds to exclude them. As with other exhibits, the parties maintain the right to argue the amount of weight to be given to these exhibits.

5.     **A List of Each Witness**

   a.     **Plaintiffs' Witnesses:**

      i.     Plaintiff Dalanea Taylor (highly likely);

      ii.     Plaintiff Robert Jones (highly likely);

      iii.     Plaintiff Darlene Deegan (highly likely);

      iv.     Plaintiff Tammy Heilman (highly likely);

      v.     Larry Kraus (Rule 30(b)(6) witness) (highly likely);

      vi.     Justin Ross (Rule 30(b)(6) witness) (highly likely);

      vii.     Tait Sanborn (Rule 30(b)(6) witness) (highly likely);

      viii.     Paul Regan (somewhat likely);

      ix.     Andrew Denbo (somewhat likely);

x.      Mark Celeste (somewhat likely);

xi.     Ross Brummett (somewhat likely);

xii.    Ashley Burch (somewhat unlikely);

xiii.   Timothy Brock (somewhat unlikely);

xiv.    Pedro Ojeda (somewhat unlikely);

xv.     Stephen Hiebert (unlikely); and

xvi.    Shelley Gardner (unlikely).

xvii.   While Plaintiffs (as noted below) object to Defendant listing individuals who have not previously been disclosed as witnesses, if Defendant is allowed to call such witnesses, Plaintiffs likewise reserve all rights to call any individual identified on Defendant's witness list or otherwise identified in any of the parties' exhibits.

xviii.  While the parties have agreed that there is no dispute as to the authenticity of any documents produced in discovery, Plaintiffs reserve the right to call custodians of records should that become necessary.

**b.    Defendant's Witnesses:**

i.      Dalanea Taylor (likely to call)

ii.     Tammy Heilman (likely to call)

iii.    Robert Jones (likely to call)

iv.   Darlene Deegan (likely to call)

v.   Larry Kraus (likely to call)

vi.   Tait Sanborn (likely to call)

vii.   Mark Celeste (likely to call)

viii.   Justin Ross (likely to call)

ix.   Ross Brummett (likely to call)

x.   Andrew Denbo (likely to call)

xi.   Paul Reagan (likely to call)

xii.   Pedro Ojeda (likely to call)

xiii.   Dr. Richard Hough (likely to call)

xiv.   William Watson (may call)

xv.   Donnie McDougall (may call)

xvi.   Anthony McDougall (may call)

xvii.   Jeffrey Zander (may call)

xviii.   Robert Jones, IV (may call)

xix.   Ashley Burch (may call)

xx.   Stephen Hiebert (may call)

xxi.   Shelley Gardner (may call)

xxii.   Michael Jenkins (may call)

xxiii.  Deputies whose statements, including CAD reports, are placed into evidence by Plaintiffs. This includes but is not limited to Hans Bollenbacher, Thomas Garmon, Tiffany Bronson and Timothy Brock.

Plaintiffs' Objection: As discussed in greater detail in Plaintiffs' Motion *In Limine*, filed contemporaneously with this document, Plaintiffs object to any witnesses offered by Defendant who were not previously disclosed, as well as to Defendant's broad designation of deputies whose statements are placed into evidence by Plaintiffs. This objection includes but is not limited to family members Donnie McDougall, Anthony McDougall, Jeffrey Zander and Robert Jones, IV, and deputies Hans Bollenbacher, Thomas Garmon, Tiffany Bronson, William Watson, and Michael Jenkins.

## 6.    A List of Each Expert Witness

### a.    Plaintiffs' Expert Witnesses:

i.  <u>Michael Carrasco:</u> Mr. Carrasco is a Public Sector Services Managing Director with Alvarez & Marsal, a national consultancy firm. His anticipated testimony, based on his analysis of records produced by Defendant in discovery, will

13

address the likelihood of code-enforcement scrutiny at prolific-offender residences, particularly as compared to other households in Pasco County.

Defendant's Objection/Response: Defendant does not object to Mr. Carrasco testifying but notes that the Defendant believes that his conclusions are unsupported by the information on which they are based and so does object to his conclusions as incorrect or of limited utility. This will be established through cross-examination. Defendant will also object to any testimony beyond the scope of Mr. Carrasco's Rule 26 expert disclosure.

ii.  David Kennedy: Professor Kennedy is a criminologist who is widely credited with developing the tactic of "focused deterrence"—the strategy purportedly at the core of PSO's intelligence-led policing philosophy. Professor Kennedy's anticipated testimony will focus on the faithfulness and propriety of PSO's application of focused deterrence and its general likelihood of effectiveness in a generally nonviolent and non-urban environment like Pasco County, Florida. In addition, Professor Kennedy provide testimony in response to Richard Hough's critique of his expert report in this case.

Defendant's Objection/Response: Defendant does not object to this witnesses testifying, but will contend that Professor Kennedy is not qualified to render certain of his opinions as he lacks the education, experience, or credentials to make them. Defendant also believes that some of his conclusions are unsupported by the information on which they are based and so does object to his conclusions as incorrect or of limited utility. This will be established through cross-examination. Defendant will also object to any testimony beyond the scope of Professor Kennedy's Rule 26 expert disclosure. This includes, but is not limited to, any testimony concerning revised ILP manuals or agency directives.

**b.    Defendant's Expert Witnesses:**

i.    Ross Brummett: Mr. Brummett is a non-retained expert and a civilian employee of the Sheriff. He serves as a Strategic Analyst in the Research and Development section of the Sheriff's Office. He generated statistical materials and compiled events during the litigation, and those materials were used by both parties in the litigation. Mr. Brummett can testify to the number of prolific offender and other types of interactions between deputies and

Plaintiffs or other citizens, and explain the limits of comparisons based on computer aided dispatch (CAD) records. Mr. Brummett is expected to also testify as to shortcomings and mistakes of fact and opinion in the conclusions, calculations, and opinions of Plaintiffs' expert, Mr. Carrasco.

<u>Plaintiffs' Objection/Response:</u> Plaintiffs do not object to Mr. Brummett's testimony generally. However, Plaintiffs object to his testimony insofar as it reflects conclusions that are incorrect, contrary to the evidence, unsupported by the evidence on which they are purportedly based or are otherwise inconsistent with the truthful and accurate testimony of the witnesses (including Plaintiffs' experts). For these reasons, and as Plaintiffs will show during cross-examination, Mr. Brummett's testimony is unlikely to help the Court in its consideration of the factual or legal issues in this case, and should be considered—if not fully rejected— accordingly.

ii.   <u>Richard Hough:</u> Dr. Hough, Ph.D., is a Professor in the Department of Criminology and Criminal Justice at East Tennessee State University. He is also a current and former law enforcement officer, in Florida and elsewhere. He is expected to

testify as to the value of intelligence led policing as a philosophy for law enforcement, generally, and its wide utilization in the United States. He will testify that the Pasco Sheriff's approach to ILP, both during the relevant timeframe of prolific offender designations and afterward, is consistent with and supported by industry norms and practices. He will also criticize the report and testimony of Professor Kennedy, and, for example, how he cites small portions of the Sheriff's Office's ILP written materials, out of context, to mischaracterize the whole. If Professor Kennedy is permitted to testify as to the most recent ILP Manual or agency directives, Dr. Hough will do the same.

Plaintiffs' Objection/Response: Plaintiffs do not object to Dr. Hough's testimony generally. However, Plaintiffs object to the his testimony insofar as it reflects conclusions that are incorrect, contrary to the evidence, unsupported by the evidence on which they are purportedly based or are otherwise inconsistent with the truthful and accurate testimony of the witnesses (including Plaintiffs' experts). For these reasons, and as Plaintiffs will show during cross-examination, Dr. Hough's testimony is unlikely to help the Court in its consideration of the factual or legal issues in

this case, and should be considered—if not fully rejected—accordingly.

## 7. Type and Amount of Monetary Damages

### a. Plaintiffs:

Plaintiffs seek compensatory damages for each respective plaintiff in the amounts as follows: Robert Jones, III: $30,000; Tammy Heilman: $59,217[3]; and Darlene Deegan: $2,410. In addition, Plaintiffs seek nominal damages in the amount of $1 with respect to each Plaintiff. Plaintiffs further reserve the right to seek appropriate costs and attorney's fees as provided by law.

### b. Defendant:

Defendant acknowledges that Plaintiffs are seeking compensatory damages in this case and does not object to the form or manner in which Plaintiffs have presented those figures here, though he does contest entitlement to any damages and amount. For the sake of clarity, however, Defendant further notes that in Rule 26 disclosures the Plaintiffs stated that they were not seeking damages for lost future income and

---

[3] Tammy Heilman's damages can be appropriately divided into two separate categories—damages incurred which stem from her arrest and damages incurred as a result of *other* harms caused by PSO. Plaintiffs note that Tammy is currently hospitalized and therefore Plaintiffs are currently unable to endorse these figures as final. Plaintiffs currently hope that Tammy will be out of the hospital before the December 2 settlement conference; if she is not, Plaintiffs will notify the Court as soon as possible. At the present moment, however, Plaintiffs represent that as to damages incurred as a result of her arrest, Tammy claims a total of $57,336. As to damages incurred as a result of other harms caused by PSO, Tammy claims a total of $1,881. Plaintiffs acknowledge that Tammy's arrest-related fines are likely not compensable at this stage in light of this Court's *Heck* ruling on summary judgment. Accordingly, Plaintiffs preserve Tammy's entitlement to such damages for appeal.

emotional and reputational harm." (Dkt. 124-1, p. 4).  In depositions, the Plaintiffs re-affirmed that no non-economic damages were sought, and they did so, agreeing that they were not seeking non-economic damages.  Deposition of Heilman, Dkt. 124, p. 11, through p. 14, line 5);  Deposition of Deegan, Dkt. 123, p. 9, lines 11-19);  Deposition of Taylor, Dkt, 137, p. 15, line 5, through p. 16, line 10);  Deposition of Jones, Dkt. 131, p. 30, line 1, through p. 32, line 13).

Defendant reserves the right to submit a Bill of Costs should circumstances warrant.

## 8.    A List of Each Deposition Offered in Lieu of Live Testimony

Plaintiffs' proposed deposition citations in lieu of live testimony, with Defendant's counter-designations, is attached.  Defendant however objects to use of depositions in lieu of live testimony as each witness is available to testify live and none meets the standards for use of depositions under Fed. R. Civ. P. 32(a)(3).

## 9.    A Concise Statement of Each Admitted Fact

Plaintiffs attach a recitation of facts that is a near-identical version of a previously agreed "undisputed" joint statement of facts on summary judgment. Plaintiffs maintain the attached document reflects a still-accurate description of the facts in this case and, in light of applicable case law, should bind the parties at trial; Defendant agrees to much of the contents of the attached document, but does not

agree to its complete application at trial.  The parties discuss their positions on this issue in the attached document.

**10.    A Concise Statement of Each Agreed Principle of Law**

    **a.    Agreed Principles of Law:**

        i.    This Court has jurisdiction over the parties and subject matter in this action.

        ii.    Venue is proper in this Court.

    **b.    Principles of Law as to Which Plaintiffs Contend There Should Be No Meaningful Dispute**

        i.    The statute of limitations for a Section 1983 action begins to run when a plaintiff becomes aware of the facts that support a cause of action, including, in a *Monell* case, when the plaintiff becomes aware of the challenged policy, practice, or custom;

        ii.    To establish liability on the part of the Defendant under *Monell*, there must be a policy, practice, or custom of, or deliberate indifference to, a constitutional violation.

        iii.    To establish a constitutional violation of Plaintiffs' right to procedural due process, Plaintiffs first must show that they possessed a protected liberty interest. If Plaintiffs establish a protected liberty interest, then some notice and procedure is required.

iv.    The *Mathews* balancing test applies to determine the adequacy of the notice and procedure (if any) afforded by the Defendant. Under *Mathews*, the Court considers (1) the private interest that will be affected; (2) the risk of erroneous deprivation through the procedures used and the probable value of any additional or substitute procedures; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that any additional or substitute procedures would entail.

v.    To establish a constitutional violation for an unreasonable search under the Fourth Amendment, Plaintiffs must show that Defendant had a policy, practice, or custom of conducting visits that exceeded the scope of any implied license to enter or remain on Plaintiffs' properties.

vi.    To establish a constitutional violation for an impermissible seizure under the Fourth Amendment, Plaintiffs must show that Defendant had a policy, practice, or custom of conducting nonconsensual home visits which Plaintiffs reasonably did not feel they could decline or otherwise terminate.

vii.    To establish a constitutional violation of Plaintiffs' right to free association under the First Amendment, Plaintiffs Jones,

Heilman, and Deegan must show that Defendant had a policy, practice or custom of subjecting them to adverse action—in the form of either direct enforcement or other retaliation—based on the conduct (or alleged conduct) of their children or otherwise directly and substantially interfered in their "intimate human relations." (Dkt. 283 at 12).

viii.    To establish that the case is moot following Defendant's voluntary cessation of the challenged conduct, Defendant bears the burden to prove that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

## 11.    A Concise Statement of Each Issue of Fact[4]

### a.    Agreed Issues of Fact

1.    At what time Plaintiffs became aware of the facts supporting their causes of action, including the existence of the challenged policies, customs, or practices, for purposes of the Court's consideration of any evidentiary questions regarding the statute of limitations as to the individual Plaintiffs;*

---

[4] As used in both this section and elsewhere, the parties' use of an asterisk (*) connotes that the statement is one implicating a mixed question of law and fact.

2.      Whether appropriate and sufficient evidence has been presented on which the Court can conclude that there were underlying violations of Plaintiffs' Fourth Amendment rights;*

3.      Whether appropriate and sufficient evidence has been presented on which the Court can conclude that there were underlying violations of Plaintiffs' First Amendment rights;*

4.      Whether appropriate and sufficient evidence has been presented on which the Court can conclude that there were violations of Plaintiffs' procedural due process rights under the Fourteenth Amendment;*

5.      Whether appropriate and sufficient evidence has been presented on which the Court can conclude that an official policy or custom of the Sheriff, under the conditions proscribed by *Monell* and its progeny, was the cause of underlying constitutional violations;*

6.      Whether appropriate and sufficient evidence has been presented on which the Court can conclude that Plaintiffs have standing to seek injunctive or other equitable relief;*

7.      Whether appropriate and sufficient evidence has been presented on which the Court can conclude that injunctive or other

equitable relief has been rendered moot given changes to the challenged policies;*

8.    Whether appropriate and sufficient evidence has been presented on which the Court can conclude that injunctive or other equitable relief is warranted or justified;*

9.    Whether appropriate and sufficient evidence has been presented on which the Court can conclude that nominal damages should be awarded;*

10.   Whether appropriate and sufficient evidence has been presented on which the Court can conclude that Plaintiffs' arrests, code citations, or other encounters with law enforcement led to conviction and imprisonment;

11.   Whether appropriate and sufficient evidence has been presented on which the Court can conclude that Plaintiffs' injuries were caused by a *Monell* policy or custom, including*:

        i.    A custom, policy, or practice of failing to provide constitutionally adequate notice or opportunity to be heard;

        ii.   A custom, policy, or practice of making visits to homes that amounted to unreasonable searches;

iii.    A custom, policy, or practice of making visits to homes that amounted to unreasonable seizures;

iv.    A custom, policy, or practice of unconstitutionally interfering with the First Amendment right to familial association.

12.    Whether the consequences of inclusion on PCSO's various lists are such that being listed (or having a child listed) implicates a liberty interest;*

13.    Whether Plaintiffs were provided any notice or an opportunity to be heard in connection with their inclusion (or their children's inclusion) on PSO's various offender lists;*

14.    If Plaintiffs were provided with notice or an opportunity to be heard, what that notice or procedure consisted of.*

## 12.    Additional Issues of Fact As Proposed By Plaintiffs

1.    What private and government interests are involved in inclusion in PCSO's various offender lists;*

2.    What risk of erroneous deprivation is involved when a person is put on the offender list, and what value would be provided by additional safeguards;*

3.      Whether Defendant had a systematic program of making warrantless, suspicionless visits to the homes of individuals on its offender lists;

4.      Whether visits to Plaintiffs' homes exceeded the implied license to visit the property,* including assessing the following:

        i.      The frequency of the checks;

        ii.      The timing of the checks;

        iii.      The duration of the checks;

        iv.       The purpose of the checks;

        v.      The systematic nature of the checks;

        vi.      PCSO's actions during the checks;

        vii.      PCSO's movement around the property during the checks;

        viii.      The questions asked during the checks;

        ix.      The use of information gathered during the checks;

        x.      The number of deputies present for the checks;

        xi.      Other relevant factors surrounding the checks;

5.      Whether a reasonable person would feel free to decline or otherwise terminate the encounter during the checks;*

26

6.     Whether the interactions between Plaintiffs and PCSO during the checks were voluntary interactions;

7.     Whether PCSO took retaliatory action against individuals who it perceived as not cooperating in the checks;

8.     Whether PCSO took adverse action against Plaintiffs  (including code enforcement, arrests, referrals to family services, and intrusive visits to their homes) because of their association with their children;*

9.     Whether PCSO retaliated against Plaintiffs because of the criminal activity of their children;*

10.    Whether PCSO caused direct and substantial interference with Plaintiffs' relationships with their children;*

11.    Whether Defendant can show that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.*

**13.    A Concise Statement of Each Issue of Law**

a.     Whether, or to what extent, Robert's claims are barred by the statute of limitations;

b.     Whether and to what extent the claims of any Plaintiff are barred by the statute of limitations.

27

c.  Whether, or to what extent, Tammy Heilman's or Robert Jones' claims are barred in light of *Heck v. Humphry*;

d.  Whether and to what extent claims of any Plaintiff related to code violation citations is barred by *Heck v. Humphrey* or the *Younger* abstention doctrine to the extent that such citations were paid or otherwise resolved;

e.  Whether Defendant's challenged practices constitute an official policy or custom triggering liability in light of *Monell v. Department of Social Services*;

f.  Whether Defendant violated Plaintiffs' right to procedural due process by failing to provide constitutionally adequate notice or procedures when placing Plaintiffs or their minor children on the prolific, Top 5, or other offender lists;

g.  Under the Fourth Amendment, whether Defendant's visits to Plaintiffs' homes, as well as Defendant's actions during those visits,  amounted to constitutionally unreasonable searches of Plaintiffs' private property;

h.  Under the Fourth Amendment, whether Defendant's visits to Plaintiffs' homes, as well as Defendant's actions during those visits, amounted to constitutionally unreasonable seizures;

i.      With respect to Plaintiffs Jones, Heilman, and Deegan, whether Defendant's visits to Plaintiffs' homes, as well as Defendant's actions during those visits, violated Plaintiffs' First Amendment right of association[5];

j.      Whether Plaintiffs' claims for forward-looking relief are moot in light of actions taken by Defendant following the filing of this lawsuit;

k.      Whether the Plaintiffs have standing to seek prospective injunctive or other equitable relief;

l.      Whether Plaintiffs' claims for prospective injunctive or equitable relief are moot;

m.      Whether Plaintiffs Heilman, Jones, and Deegan have standing to assert due process claims premised on the prolific offender or other designations made as to their children; and

n.      Whether Plaintiffs are entitled to forward-looking relief, compensatory damages, or nominal damages.

---

[5] Plaintiffs acknowledge that this Court concluded that the "direct and substantial interference test" likely governs the First Amendment's "intimate human relations" analysis. (Dkt. 283 at 13 (explaining that the magistrate judge "did not err" in applying same). Plaintiffs, however, maintain that a "direct and substantial" interference is not necessary to establish a First Amendment violation. Rather, as Plaintiffs have argued, they "need only show they were harmed *based on* their association." (Dkt. 247 at 8) (emphasis in original) (internal citations omitted). Plaintiffs preserve this question for appellate review.

14. **A List of Each Pending Motion or Other Unresolved Issue**

    a.    Plaintiffs' Motion *In Limine* (Dkt. 304)

15. **The Usefulness of Further Settlement Discussions**

The parties participated in good faith in court-ordered mediation (Dkt. 71, 74) on April 20, 2022, which resulted in an impasse. (Dkt. 95). The parties were further ordered to a mediation conference with the magistrate, which is set to occur on December 2, 2024. (Dkt. 299). In the event that the upcoming mediation does not yield a settlement agreement, the parties agree that further mediation or other alternative dispute resolution would be similarly unproductive.

16. **Joint Statement of Trial Counsel**

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

17. **The parties and counsel additionally agree as follows:**

    a.    The parties stipulate to the admissibility of each other's exhibits (subject to the proviso noted in Section 4, above), reserving the right to argue the relevance or relative weight the Court should give to each exhibit.

    b.    No records custodians are necessary.

    c.    To expedite matters, the parties are agreed that the defense may inquire of any witness called by Plaintiffs beyond the scope of Plaintiffs' direct

examination of each witness, as though presenting direct examination, and similarly the Plaintiffs may in re-direct then cross-examine the witnesses on those additional matters.  In such cases, the defense will then be permitted brief re-direct examination as to those additional matters.

d.     Plaintiffs agree to allow Ross Brummett of the Pasco Sheriff's Office to testify out of turn to the extent they do not call him as part of their own case in chief.

e.     Counsel shall provide two days' notice to opposing counsel of witnesses to be called.

Dated: November 27, 2024.                 Respectfully submitted,

/s/ Thomas W. Poulton                      /s/ Ari S. Bargil
THOMAS W. POULTON, ESQ.             Ari S. Bargil (FL Bar No. 71454)
Florida Bar No.: 0083798                    Katrin Marquez (FL Bar No. 1024765)
poulton@debevoisepoulton.com           INSTITUTE FOR JUSTICE
                                            2 S. Biscayne Boulevard, Suite 3180
JEFFREY K. GRANT, ESQ.                  Miami, FL 33131
Florida Bar No.: 0091197                    (305) 721-1600
grant@debevoisepoulton.com              abargil@ij.org
                                            kmarquez@ij.org
BENJAMIN BAIRD, ESQ.
Florida Bar No.: 106272                     Robert E. Johnson (OH Bar No. 0098498)*
baird@debevoisepoulion.com              INSTITUTE FOR JUSTICE
                                            16781 Chagrin Boulevard, Suite 256
MATTHEW A. KOZYRA, ESQ.            Shaker Heights, OH 44120
Florida Bar No.: 93425                       (703) 682-9320
kozyra@debevoisepoulton.com            rjohnson@ij.org
                                            *Lead Counsel for Plaintiffs*

DeBEVOISE & POULTON, P.A.
1035 S. Semoran Blvd., Suite 1010
Winter Park, Florida 32792
Telephone: 407-673-5000
Facsimile: 321-203-4304

*Attorneys for Defendant*

Robert McNamara (VA Bar No. 73208)*
William R. Aronin (NY Bar No. 4820031)*
Caroline Grace Brothers (DC Bar No. 1656094)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
rmcnamara@ij.org
waronin@ij.org
cgbrothers@ij.org

Michael Peña (TX Bar No. 24131580)*
INSTITUTE FOR JUSTICE
816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936
mpena@ij.org

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of November 2024, a true and correct copy of the foregoing document was served via the Court's CM/ECF system upon all counsel of record.

/s/ Ari S. Bargil